**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

– – – – – – – – – – – – – – – – – – – – – – – – )
)
MICHAEL TERRILL, ROBERT BROWN,          )
MICHAEL VOGLER, PALECIA BOYD,           )
AND DENISE PACK on behalf of            )
themselves and all others similarly situated, )
)   CASE NO:  CV108-030
Plaintiffs,          )
)
 v.                                     )
)
ELECTROLUX HOME PRODUCTS, INC.          )
d/b/a FRIGIDAIRE®,                      )
)
Defendant.           )
– – – – – – – – – – – – – – – – – – – – – – – – )

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iv

PRELIMINARY STATEMENT .................................................................................1

FACTUAL BACKGROUND .......................................................................................2

ARGUMENT ...............................................................................................................7

I.      GEORGIA'S CHOICE-OF-LAW RULES MANDATE THAT THE LAW OF
        EACH PLAINTIFF'S HOME STATE APPLY TO HIS OR HER CLAIMS....................9

II.     PLAINTIFFS' CLAIMS ALL FAIL AS A MATTER OF LAW.....................................11

        A.      The Amended Complaint Fails To Properly Plead the Elements of Breach
                of Express Warranty (Count II). ..............................................................11

                1.      None of the Plaintiffs Has Identified a Defect in "Material or
                        Workmanship" Covered by the Express Warranty at Issue.......................12

                2.      The Alleged Problems Experienced by Plaintiffs Boyd, Terrill and
                        Vogler Occurred After the Expiration of the Warranty Period.................13

                3.      All But One of the Plaintiffs Fail To Properly Allege Notice and an
                        Opportunity To Cure.................................................................14

        B.      Plaintiffs Fail To Plead the Elements of a Breach of Implied Warranty
                (Count III). ..............................................................................17

                1.      Plaintiffs Have Failed To Allege that the Washers at Issue Were
                        Unmerchantable at the Time of Sale.................................................18

                2.      As with Their Express Warranty Claims, All But One of the
                        Plaintiffs Fail To Properly Allege Notice of and Opportunity To
                        Cure the Alleged Breach of Implied Warranty. .................................20

                3.      Implied Warranty Claims Alleged by Plaintiffs Boyd, Terrill, and
                        Brown Also Fail for Lack of Privity.................................................20

        C.      Plaintiffs' Unjust Enrichment Claims (Count IV) Are Barred as a Matter
                of Law. ..............................................................................21

                1.      Plaintiffs Cannot Recover for Unjust Enrichment Because They
                        Never Conveyed a Benefit to Electrolux. .........................................22

                2.      Plaintiffs Terrill, Vogler, Boyd, and Pack Cannot Rely on a Quasi-
                        Contract Theory Because They Also Allege Contract-Based
                        Warranty Claims. ..............................................................23

i

D.      Plaintiffs' Magnuson-Moss Warranty Act Claims (Count V) Fail for the Same Reasons That Their Express and Implied Warranty Claims Are Barred...................................................................................................................25

E.      The Amended Complaint Fails To Sufficiently Plead Essential Elements of Various State Consumer Protection Statutes (Counts I, VI-VIII). ....................27

        1.      Plaintiff Boyd Cannot State a Claim Under the Georgia Uniform Deceptive Trade Practices Act (Count I). ....................................................28

                (a)     Plaintiff Boyd Has Not Alleged an Affirmative Misstatement Capable of Giving Rise to a GUDTPA Claim...................................................................................................28

                (b)     The GUDTPA Claim Also Fails for Lack of Reliance. ................31

                (c)     Plaintiff Boyd Is Not Likely To Be Harmed Absent Injunctive Relief...............................................................................31

        2.      Plaintiff Brown Fails To State a Claim Under California's Unfair Competition Law (Count VI)......................................................................32

                (a)     Without an Underlying Violation of Law, Electrolux's Conduct Cannot Be "Unlawful" Under the UCL. ........................33

                (b)     Electrolux's Conduct Is Not "Unfair" Under the UCL Because It Does Not Violate a Specific Legislative Policy..........33

                (c)     Plaintiff Does Not Adequately Allege That Electrolux's Conduct Violates the "Fraud" Prong of the UCL. ........................34

        3.      Plaintiff Vogler Cannot State a Claim Under the Texas Deceptive Trade Practices Act (Count VII). ................................................................35

                (a)     Plaintiff Vogler's Claims Under 17.46(b)(5) and (7) Fail Because He Has Not Alleged an Actionable, Affirmative Misrepresentation...................................................................36

                (b)     Plaintiff Vogler's TDTCPA Claim Also Fails for Lack of Reliance......................................................................................37

                (c)     Even If Plaintiff Vogler Had Stated a Valid TDTCPA Claim, the Claim Must Still Be Abated for 60 Days for Failure To Give Notice. ................................................................38

        4.      Plaintiff Terrill Does Not State a Valid Claim Under Wisconsin's Deceptive Trade Practices Act (Count VIII). ............................................39

        (a)      Plaintiff Terrill Has Not Identified an Affirmative
Misrepresentation Capable of Giving Rise to a WDTPA
Claim. ............................................................................................40

        (b)      The WDTPA Claim Also Fails for Lack of Reliance. ...................41

    5.      Even If Plaintiffs Had Properly Pled Each Element of Their
Consumer Fraud Claims, They Are Not Pled With the Requisite
Particularity. ..............................................................................................43

CONCLUSION ................................................................................................................44

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 **PAGE(S)**

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005) .....................7, 8

*American Federal Bank, F.S.B. v. White*, 370 S.E.2d 923 (S.C. Ct. App. 1988) .........................15

*American Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526 (Cal. Ct. App. 1995) ...................................................................................................................................18

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005).........................................21

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...............................................................................7, 8, 9

*Bagnell v. Ford Motor Co.*, 678 S.E.2d 489 (Ga. Ct. App.  2009)................................................10

*Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036 (N.D. Ga. 2004), *aff'd*, 168 F. App'x 893 (11th Cir. 2006) ......................................................................................25, 26

*Bailey v. Smith*, No. 13-05-085-CV, 2006 WL 1360846 (Tex. App. May 18, 2006)...................35

*Ball v. Sony Electronics Inc.*, No. 05-C-307-S, 2005 WL 2406145 (W.D. Wis. Sept. 28, 2005) ..............................................................................................................23, 24, 41

*Barrett v. Miller*, 321 S.E.2d 198 (S.C. Ct. App. 1984) ..............................................................24

*Beer Capitol Distributing, Inc. v. Guinness Bass Import Co.*, 290 F.3d 877 (7th Cir. 2002) ....................................................................................................................................23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................7, 8

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, *modified on other grounds on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003).......................................................9

*Bernardo v. Planned Parenthood Federation of America*, 9 Cal. Rptr. 3d 197 (Cal. Ct. App. 2004) ..................................................................................................................33, 34

*Berryman v. Merit Property Management*, 62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) ...............34

*Birdsong v. Toyota Motor Credit Corp.*, No. 2000-C1-06279, 2002 WL 32830975 (D. Tex. May 15, 2002)..................................................................................................36, 37

*Brenner v. Future Graphics, LLC*, No. 1:06-CV-0362-CAP, 2007 U.S. Dist. LEXIS 98493 (N.D. Ga. Sept. 10, 2007) .............................................................................11

*Brown Foundation Repair & Consulting, Inc. v. Henderson*, 719 S.W.2d 229 (Tex. App. 1986) ....................................................................................................................36

*Buller v. Sutter Health*, 74 Cal. Rptr. 3d 47 (Cal. Ct. App. 2008)...................................................34

*Carl v. Spickler Enterprises, Ltd.*, 478 N.W.2d 48 (Wis. Ct. App. 1991) ...............................16, 20

*Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101 (Ga. Ct. App. 2002)...................................31, 32

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527
    (Cal. 1999) .........................................................................................................................33

*Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493 (Tex. App. 2002)......................................36

*Checker Bag Co. v. Washington*, 27 S.W.3d 625 (Tex. App. 2000) .............................................36

*Daewoo Motor America, Inc. v. General Motors Corp.*, 459 F.3d 1249 (11th Cir. 2006)..............8

*Daugherty v. American Honda Motor Co.*, 51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006) ..........33, 34

*Davis v. Pacific Capital Bank*, 550 F.3d 915 (9th Cir. 2008)........................................................33

*Dema v. Tenet Physician Services-Hilton Head, Inc.*, 678 S.E.2d 430 (S.C. 2009).....................28

*Dering v. Service Experts Alliance LLC*, No. 1:06 CV-00357-RWS, 2007 WL 4299968
    (N.D. Ga. Dec. 6, 2007) ....................................................................................................31

*Dey v. Continental Central Credit*, 88 Cal. Rptr. 3d 241 (Cal. Ct. App. 2008) ....................32, 33

*Dieter v. Chrysler Corp.*, 610 N.W.2d 832 (Wis. 2000).................................................................12

*Dittman v. Nagel*, 168  N.W.2d 190 (Wis. 1969) ..........................................................................19

*Draffin v. Chrysler Motors Corp.*, 166 S.E.2d 305 (S.C. 1969).....................................................14

*Energy Four, Inc. v. Dornier Medical Systems, Inc.*, 765 F. Supp. 724 (N.D. Ga. 1991).......28, 29

*Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357 (Cal. Ct. App.
    1997) ..................................................................................................................................17

*Ford Motor Co. v. Tidwell*, 563 S.W.2d 831 (Tex. Civ. App. 1978)..............................................19

*Fort Oglethorpe Associates II, Ltd. v. Hails Construction Co. of Georgia*, 396 S.E.2d 585
    (Ga. Ct. App. 1990)............................................................................................................13

*Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000).........................................24

*Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500 (11th Cir. 1983) ............................11

*Friedlander v. HMS-PEP Products, Inc.*, 485 S.E.2d 240 (Ga. Ct. App. 1997) ..........................31

*In re General Motors Corp. Anti-Lock Brake Products Liability Litigation*, 966 F. Supp. 1525 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. General Motors Corp.*, 172 F.3d 623 (8th Cir. 1999)......................................................................................................8

*Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323 (N.D. Ga. 2004) .....................................10

*Gill v. Blue Bird Body Co.*, 147 F. App'x 807 (11th Cir. 2005) .....................................................26

*Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340 (N.D. Ga. 2009) ...........................24

*Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389 (Cal. Ct. App. 2002) .....................................33

*Hartless v. Clorox Co.*, No. 06CV2705 JAH(CAB), 2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ......................................................................................................................21

*Hayduk v. Lanna*, 775 F.2d 441 (1st Cir. 1985) ..............................................................................8

*Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675 (Tex. 2002) ...............................................36, 37

*Herring v. Home Depot, Inc.*, 565 S.E.2d 773 (S.C. Ct. App. 2002).............................................12

*Hicks v. Sumter Bank & Trust Co.*, 604 S.E.2d 594 (Ga. Ct. App. 2004) .....................................30

*Hill v. Jay Pontiac, Inc.*, 381 S.E.2d 417 (Ga. Ct. App. 1989).......................................................30

*Hines v. Hash*, 843 S.W.2d 464 (Tex.  1992) ...........................................................................38, 39

*Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222 (N.D. Ga. 2005)....................25, 26, 27

*Hitachi Electric Devices (USA),  Inc. v. Platinum Technologies, Inc.*, 621 S.E.2d 38 (S.C. 2005) ......................................................................................................................14

*Housing Authority v. MMT Enterprises, Inc.*, 475 S.E.2d 642 (Ga. 1996)....................................32

*International Business Machines Corp. v. Kemp*, 536 S.E.2d 303 (Ga. Ct. App. 2000)...............10

*J'Carpc, LLC v. Wilkins*, 545 F. Supp. 2d 1330 (N.D. Ga. 2008) ..................................................22

*Johnson v. Jaguar Cars, Inc.*, No. Civ.A.1:05CV3161-RLV, 2006 WL 1627125 (N.D. Ga. June 6, 2006) ........................................................................................................19

*Johnson v. Microsoft Corp.*, 802 N.E.2d 712 (Ohio Ct. App. 2003), *aff'd*, 834 N.E.2d 791 (Ohio 2005)........................................................................................................22, 23

*Johnson v. Mitsubishi Digital Electronics America, Inc.*, 578 F. Supp. 2d 1229 (C.D. Cal. 2008) ..........................................................................................................................22

*In re Johnston Industrial, Inc.*, 300 B.R. 821 (M.D. Ga. 2003) ....................................................31

*Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558 (Ga. 1996)..................................................21

*Key Corp. Capital, Inc. v. County of Beaufort*, 644 S.E.2d 675 (S.C. 2007) ................................24

*Knight v. American Suzuki Motor Corp.*, 612 S.E.2d 546 (Ga. Ct. App. 2005)......................14, 15

*Kunert v. Mission Financial Services Corp.*, 1 Cal. Rptr. 3d 589 (Cal. Ct. App. 2003) ..............34

*Lankford v. Rogers Ford Sales*, 478 S.W.2d 248 (Tex. Civ. App. 1972).......................................12

*Leban v. Sun Patio, Inc.*, 581 N.W.2d 594, 1998 WL 173068 (Wis. Ct. App. 1998) .............16, 43

*Lewis v. Mercedes-Benz USA, LLC*, No. Civ.A.1:03CV4000-JOF, 2004 WL 3756384
   (N.D. Ga. Sept. 13, 2004) ......................................................................................15, 20

*Loper v. Smith Corona, Inc.*, No. 07-99-0272-CV, 2000 WL 798799 (Tex. App. June 21,
   2000) ...........................................................................................................................13

*Luigino's International, Inc. v. Miller*, 311 F. App'x 289 (11th Cir. Ga. 2009) ..........................10

*McAllister Towing & Transportation Co. v. Thorn's Diesel Service, Inc.*, 131 F. Supp. 2d
   1296 (M.D. Ala. 2001).................................................................................................8

*McClung v. Wal-Mart*, 866 F. Supp. 306 (N.D. Tex. 1994) ........................................................35

*McCrimmon v. Tandy Corp.*, 414 S.E.2d 15 (Ga. Ct. App. 1991).................................................30

*McQueen v. Minolta Business Solutions, Inc.*, 620 S.E.2d 391 (Ga. Ct. App. 2005)....................12

*Monticello v. Winnebago Industries, Inc.*, 369 F. Supp. 2d 1350 (N.D. Ga. 2005)...........10, 19, 25

*Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137 (Ga. Ct. App. 2001) .................................32

*Motz v. Alropa Corp.*, 15 S.E.2d 237 (Ga. 1941) .......................................................................11

*Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 WL 1470855 (W.D. Wis. May 15, 2007).........24

*Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179 (Wis. 1991) ...........................................21

*Novell v. Migliaccio*, 749 N.W.2d 544 (Wis. 2008) ...................................................................42

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F.
   App'x 489 (9th Cir. 2009) ..........................................................................................29

*Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F. Supp. 1564 (N.D.
   Ga. 1987)....................................................................................................................29

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ...................................................................................1

*Owens v. GMC*, No. 06-4067-CV-C-NKL, 2007 WL 172355 (W.D. Mo. Jan. 18, 2007) ............23

*Pacific West, Inc. v. LandAm. Credit Services, Inc.*, No. 1:05-CV-0895-JEC, 2007 WL 1970870 (N.D. Ga. June 29, 2007) .......................................................23

*Parent v. Brunswick Family Boat Co.*, No. 1:05-cv-1477-GET, 2006 U.S. Dist. LEXIS 77835 (N.D. Ga. Oct. 25, 2006).........................................................21

*Paulson v. Olson Implement Co.*, 319 N.W.2d 855 (Wis. 1982)...................................15

*Peltier Enterprises, Inc. v. Hilton*, 51 S.W.3d 616 (Tex. App. 2001) ...........................38

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...................................11

*Plotkin v. Sajahtera, Inc.*, 131 Cal. Rptr. 2d 303 (Cal. Ct. App. 2003)........................34

*Pollard v. Saxe & Yolles Development Co.*, 525 P.2d 88 (Cal. 1974)...........................17

*Reynolds v. Murphy*, 188 S.W.3d 252 (Tex. App. 2006)..................................37

*Risdon Enterprises, Inc. v. Colemill Enterprises, Inc.*, 324 S.E.2d 738 (Ga. Ct. App. 1984) ...............................................................................10

*Robinson v. Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500 (Tex. 1982)................36

*Sauner v. Public Service Authority of South Carolina*, 581 S.E.2d 161 (S.C. 2003) ...................22

*Schaefer v. Weaver*, 60 N.W.2d 696 (Wis. 1953)......................................16

*Schroeder v. Drees*, 83 N.W.2d 707 (Wis. 1957) .......................................16

*Searle v. Wyndham International*, 126 Cal. Rptr. 2d 231 (Cal. Ct. App. 2002)...........................34

*Sidco Products Marketing, Inc. v. Gulf Oil Corp.*, 858 F.2d 1095 (5th Cir. 1988) ....................36

*Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 U.S. App. LEXIS 17764 (11th Cir. Aug. 11, 2009) ...............................................................................7, 8

*Smith & White Health Plan, Inc. v. Ruffino*, No. C14-94-00039-CV, 1994 WL 107286 (Tex. App. Mar. 31, 1994) ...........................................................38

*Soto v. CarMax Auto Superstores, Inc.*, 611 S.E.2d 108 (Ga. Ct. App. 2005) ............................18

*Spacesaver Corp. v. Marvel Group, Inc.*, 621 F. Supp. 2d 659 (W.D. Wis. 2009)................41, 42

*Spector v. Norwegian Cruise Line Ltd.*, No. 01-02-00017-CV, 2004 WL 637894 (Tex. App. Mar. 30, 2004)...........................................................38, 41

*St. Paul Fire & Marine Insurance Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893 (11th Cir. 2009) ........................................................................................9

*St. Paul Mercury Insurance Co. v. Viking Corp.*, No. 04-C-1124, 2007 WL 129063 (E.D. Wis. Jan 12, 2007), *aff'd*, 539 F.3d 623 (7th Cir. 2008)........................................42

*State v. American TV & Appliance of Madison, Inc.*, 430 N.W.2d 709 (Wis. 1988) ...................40

*State v. McGuire*, 735 N.W.2d 555 (Wis. Ct. App. 2007)............................................................41

*Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009)................................................................................................................12, 17

*Steptoe v. True*, 38 S.W.3d 213 (Tex. App. 2001).....................................................................36

*Stuart v. Weisflog's Showroom Gallery, Inc.*, 746 N.W.2d 762 (Wis. 2008)...............................40

*Sunstar, Inc. v. Alberto-Culver Co.*, Nos. 01 C 0736, 01 C 5825, 2004 WL 1899927 (N.D. Ill. Aug. 23, 2004)........................................................................................29

*Taterka v. Ford Motor Co.*, 271 N.W.2d 653 (Wis. 1978) ..........................................................19

*Tegen v. Chapin*, 187 N.W. 185 (Wis. 1922) ............................................................................16

*Texas Carpenters Health Benefit Fund, IBEW-NECA v. Philip Morris, Inc.*, 21 F. Supp. 2d 664 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000)....................................22

*Tidikis v. Network for Medical Communications & Research, LLC*, 619 S.E.2d 481 (Ga. Ct. App. 2005)................................................................................................23

*Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233 (Wis. 2004)..................................39, 40, 41

*TKO, Ltd. v. Wayner Manternach & Grayfield Development, LLC*, 587 N.W.2d 456 (Wis. Ct. App. 1998) (table decision), *text available at* 1998 WL 731165 ....................42, 43

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) ..................................................................34, 35

*In re Tri-State Crematory Litigation*, 215 F.R.D. 660 (N.D. Ga. 2003)........................................11

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194 (Tex. App. 2003)....................................16

*Valenti v. Hewlett-Packard Co.*, 685 N.W.2d 172 (Wis. Ct. App. 2004) (table decision), *text available at* 2004 WL 1277490........................................................................42

*Van Slyke v. Capital One Bank*, No. C, 07-00671 WHA 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ......................................................................................................33

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .......................................................8

*In re Vitamins Antitrust Litigation*, Nos. MISC 99-197, MDL 1285, 2001 WL 849928 (D.D.C. Apr. 11, 2001) ............................................................................................23

*Voelker v. Porsche Cars North American, Inc.*, 353 F.3d 516 (7th Cir. 2003) ............................26

*Watts v. Watts*, 405 N.W.2d 303 (Wis. 1987)............................................................................22

*Webb v. Unumprovident Corp.*, 507 F. Supp. 2d 668 (W.D. Tex. 2005) ....................................36

*White v. Borders*, 123 S.E.2d 170 (Ga. Ct. App. 1961)................................................................11

*Wilson v. Tuxen*, 754 N.W.2d 220 (Wis. Ct. App. 2008) ........................................................16, 20

*Wisconsin Power & Light Co. v. Westinghouse Electric Corp.*, 830 F.2d 1405 (7th Cir. 1987) ............................................................................................................................13

*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194 (11th Cir. 2001).................................9, 43

## STATUTES

15 U.S.C. §§ 1116 and 1117 ........................................................................................................31

15 U.S.C. § 2304(a)(4).................................................................................................................26

15 U.S.C. § 2310(d) .....................................................................................................................25

15 U.S.C. § 2310(d)(2) ................................................................................................................26

Cal. Bus. & Prof. Code § 17204 ..................................................................................................35

Cal. Com. Code § 2314(2)(a) & (c) (West 2002) ........................................................................18

Fed. R. Civ. P. 9(b) ........................................................................................................................8

Ga. Code Ann. §§ 10-1-371; 10-1-372 (West 2003) ...................................................................28

Ga. Code Ann. § 10-1-372(a)(5), (7) & (9) (West 2003) .............................................................28

Ga. Code Ann. § 10-1-373 (West 2003) ......................................................................................31

Ga. Code Ann. § 10-372(a)(5), (7) & (9) (West 2003)................................................................29

Ga. Code Ann. § 11-2-314(2)(a) & (c) (West 2003) ...................................................................18

Ga. Code Ann. § 11-2-607(3) (West 2003) .................................................................................14

Ga. Code Ann. § 11-2-607(3)(a) (West 2003).............................................................................20

S.C. Code § 36-2-314(2)(a) & (c) (2003) ....................................................................................18

S.C. Code Ann. § 39-5-140(a) (1985)...................................................................28

S.C. Com. Code Ann. § 36-2-607(3)(a)...............................................................20

Tex. Bus. & Com. Code § 2.314(b)(1) & (3) (Vernon 2009)..............................18

Tex. Bus. & Com. Code § 17.50(b)(5) and (7) (Vernon Supp. 2001) .................36

Tex. Bus. & Com. Code § 17.50(a)(1) (Vernon 2002)........................................36

Tex. Bus. & Com. Code Ann. § 17.46(b) (Vernon Supp. 2005) .........................35

Tex. Bus. & Com. Code Ann. § 17.46(b)(5) & (7) (Vernon Supp. 2008)............37

Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B) ..................................................37

Tex. Bus. & Com. Code Ann. § 17.50(b)(5) & (7) (Vernon Supp. 2008)............37

Tex. Bus. & Com. Code Ann. § 17.501(a) (Vernon Supp. 2008)........................39

Tex. Bus. & Com. Code Ann. § 17.501(b) (Vernon 2008)..................................39

Tex. Bus. & Com. Code Ann. § 17.505(a) (Vernon Supp. 1994)........................38

Tex. Bus. & Com. Code Ann. § 17.505(e) ..........................................................39

Wis. Stat. § 100.18(1) .........................................................................................40

Wis. Stat. Ann. § 402.314(2)(a)(c) (West 2003).................................................18

Wis. Stat. Ann. § 402.607(3) (West 2003) ..........................................................15

Wis. Stat. Ann. § 402.607(3)(a) (West 2003)......................................................20

Wis. Stat. Ann. § 402.607(4) (West 2003) ..........................................................16

**MISCELLANEOUS**

Energy Star Program, U.S. Dep't of Energy, *CLOTHES WASHERS: 2007 Partner Resource Guide* 2, *available at* www.energystar.gov/ia/partners/manuf_res/salestraining_res/ClothesWasher_PRG.pdf.........3

Soap & Detergent Ass'n, *High Efficiency Washers and Detergents: Working in Harmony to Save Energy and Water* 3 (2005), *available at* www.cleaning101.com/laundry/HE.pdf ..........................................................2, 3

## PRELIMINARY STATEMENT

The named plaintiffs in this case seek to establish a nationwide class under Federal Rule of Civil Procedure 23, based on allegations that their washing machines are prone to mold buildup.  (Am. Compl. ¶¶ 19-20.)  Failing that, plaintiffs seek to establish five single-state classes under the laws of each of the named plaintiffs' home states.  (*Id.* ¶ 20.)  At a later point, Electrolux will (if necessary) challenge certification of plaintiffs' proposed class.  But at this juncture, the Court is first obliged to explore a threshold question:  have the named plaintiffs, as a matter of law, pleaded valid causes of action against the defendant?  If the named plaintiffs have failed this initial hurdle, further proceedings on class certification and other issues will be unnecessary.  *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

As set forth below, plaintiffs have indeed failed to plead valid causes of action – under each of the five relevant states' laws – with respect to each and every one of their claims:

- Plaintiffs' breach of express warranty claims (Count II) fail because plaintiffs have not alleged an actual defect in "material or workmanship" but merely complain of a condition related to owner maintenance.  In addition, plaintiffs' complaints arose after the expiration of the warranty period.  Finally, plaintiffs do not allege that they provided notice of the alleged breach to Electrolux or allowed the company an opportunity to cure.

- Plaintiffs' implied warranty of merchantability claims (Count III) fare no better.  These claims fail because plaintiffs do not allege that they provided "notice" or an opportunity to cure to Electrolux.  Nor do any of the plaintiffs allege that their washing machines are actually unmerchantable.  In addition, most of the named plaintiffs' implied warranty claims fail due to the absence of "vertical privity."

- Plaintiffs' unjust enrichment claims (Count IV) are defective because plaintiffs assert contract-based warranty claims and therefore cannot also recover in quasi-contract for unjust enrichment.  In addition, because plaintiffs do not claim to have purchased their washing machines directly from Electrolux – as opposed to from a retailer – they have not alleged that they ever "enriched" the company.

- Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims (Count V) fail for the same reasons as their state law warranty claims.  In addition, to the extent plaintiffs seek to revoke their acceptance of the washing machines under the MMWA, their claims fail for the additional reason that they have not alleged that they are unable to use the washing machines, as required under the law.

- Plaintiffs' consumer fraud claims (Counts I, VI, VII and VIII) must be dismissed because each plaintiff has failed to allege one or more of the necessary elements of his or her consumer fraud claim and because this claim has not been pled with the requisite particularity under Federal Rule of Civil Procedure 9(b).

Because the named plaintiffs' claims all fail under the properly applicable law, the entire case must be dismissed and cannot proceed to class certification.

## FACTUAL BACKGROUND

### Front-Loading Washers

Plaintiffs' Amended Complaint involves front-loading washers.  These machines differ substantially from traditional top-loading washers.  Traditional top-loading washers operate by filling the tub with water during the wash and rinse cycles and using a center agitator to move the clothes, which are completely submerged in the water.

Front-loading washers are also known as "high efficiency" washers, and most are certified by the federal government's Energy Star program.  They do not fill the tub for the wash and rinse cycles; rather, the tub is only partially filled and the clothes are then repeatedly spun through the water level by a tumbler.  Because the water level in the front-loading washer reaches above the door, the door has a rubber seal (or "bellows") that helps maintain a watertight seal and minimize vibration.  Such seals are unnecessary for traditional top-loading washers because the water level does not reach the top of the machine.

Because of their design, front-loading washers can be remarkably energy efficient.  *See*, *e.g.*, Soap & Detergent Ass'n, *High Efficiency Washers and Detergents:  Working in Harmony to Save Energy and Water* 3 (2005), *available at* www.cleaning101.com/laundry/HE.pdf (high

2

efficiency washers use from 20% to 60% of the water used by traditional agitator washers, and as little as 20% to 50% of the energy used by traditional agitator washers); Energy Star Program, U.S. Dep't of Energy, *CLOTHES WASHERS:  2007 Partner Resource Guide* 2, *available at* www.energystar.gov/ia/partners/manuf_res/salestraining_res/ClothesWasher_PRG.pdf) ("An ENERGY STAR clothes washer can save over 7,000 gallons of water per year compared to a regular clothes washer.").

However, without the complete flush that traditional top-loading washers receive from repeatedly filling the tub with water, front-loading washers can require periodic owner maintenance to prevent soil buildup and unpleasant odors.  *See* Soap & Detergent Ass'n, *supra*, at 13-14 (recommending that owners periodically run a "maintenance cycle" using hot water and bleach).

**Plaintiff-Specific Allegations**

Unlike the original Complaint, the Amended Complaint names five separate plaintiffs, each of whom is a resident of a different state:  Georgia, Wisconsin, South Carolina, Texas, and California.  Mr. Terrill's front-loading washer came with the following warranty:

> **Full One-Year Warranty (From Date of Purchase)**
> Frigidaire will pay for:  Labor and replacement parts which prove to be defective in materials or workmanship. . . .
>
> **Limited 2nd - 25th Year Warranty (From Date of Purchase)**
> Frigidaire will pay for:  Replacement part for an inner wash basket that breaks due to a defect in materials or workmanship.  (Excludes Alaska)

(Frigidaire Tumble Action Washer Warranty (attached as Ex. A).)  Each of the other plaintiffs' washers came with a similar warranty:

> Your appliance is covered by a one year limited warranty.  For one year from your original date of purchase, Electrolux will pay all costs for repairing or replacing any parts of this appliance that

3

> prove to be defective in materials or workmanship when such
> appliance is installed, used and maintained in accordance with the
> provided instructions.

(Electrolux Major Appliance Warranty Information (attached as Ex. B).)

### Ms. Boyd – Georgia

Palecia Boyd lives in Milledgeville, Georgia.  (Am. Compl. ¶ 16.)  She alleges that she

bought a Frigidaire washing machine (model number GLTF29040ES2) from retailer Union

Furniture in Macon, Georgia on September 1, 2006.  (*Id.*)  The Amended Complaint does not

include an allegation that Ms. Boyd saw or heard representations made by Electrolux prior to

buying the washer; nor does it include allegations that Ms. Boyd relied on any such

representations.

Two years after her initial purchase – "[i]n or about July 2008" – Ms. Boyd alleges that

she "began experiencing mold and mildew problems with her machine."  (*Id.*)  Her allegations

end there.  She does not allege that she notified Electrolux of her problem or that she gave

Electrolux an opportunity to fix it.  Nor does she indicate whether she still uses the washer.

### Mr. Terrill – Wisconsin

Michael Terrill lives in Cedarburg, Wisconsin.  (*Id.* ¶ 13.)  He allegedly bought a

Frigidaire front-loading washer (model number GLTF2940ES0) from retailer Kennedy Hahn in

Milwaukee, Wisconsin in April 2005.  (*Id.*)  The Amended Complaint does not include an

allegation that Mr. Terrill saw or heard any representations made by Electrolux prior to buying

the washer, nor does it include an allegation that Mr. Terrill relied on any such representations.

Over a year after purchase – "[i]n mid-2006" – he alleges that he "began to notice odors

in his laundry area and eventually discovered black streaks on garments and towels."  (*Id.*)  Mr.

Terrill asserts that he "discovered mold and mildew deposits around the steel drum inside his

machine, along with a noxious odor."  (*Id.*)  After his attempts to clean the washer failed, he

allegedly contacted Frigidaire "[i]n or about January 2007," roughly six months after he first discovered the problem.  (*Id.*)  According to Mr. Terrill, he was advised "to wipe his machine after each use."  (*Id.*)  The Amended Complaint does not state whether he followed this advice, whether the advice worked, or whether he continues to use his washer.

### Ms. Pack – South Carolina

Denise Pack lives in Round O, South Carolina.  (*Id.* ¶ 17.)  She allegedly bought a Frigidaire washing machine (model number LTF2140ES3) from a Lowe's retailer in Summerville, South Carolina "[i]n or about July 2006."  (*Id.*)  The Amended Complaint does not include an allegation that Ms. Pack saw or heard any representations made by Electrolux prior to buying the washer; nor does it include an allegation that Ms. Pack relied on any such representations.

According to Ms. Pack, "[i]n or about August 2006," she "began experiencing mold and mildew problems with her machine."  (*Id.*)  Her allegations end there.  She does not allege that she notified Electrolux of her problem or that she gave Electrolux an opportunity to fix it.  Nor does she indicate whether she still uses the washer.

### Mr. Vogler – Texas

Michael Vogler lives in San Antonio, Texas.  (*Id.* ¶ 15.)  He alleges that he bought a Frigidaire washing machine (model number FTF2140ES3) from retailer Conn's in San Antonio "[i]n or about May 2007."  (*Id.*)  The Amended Complaint does not include an allegation that Mr. Vogler saw or heard any representations made by Electrolux prior to buying the washer; nor does it include an allegation that Mr. Vogler relied on any such representations.

Approximately eighteen months after his purchase – "[i]n or about November 2008" – Mr. Vogler allegedly "began experiencing severe allergies and noticed that his bellows had mold

and mildew stains." (*Id.*)  Mr. Vogler asserts that at that time, "he contacted Frigidaire to complain about the mold and mild [sic] problems." (*Id.*)  He alleges that because his warranty had expired, "Frigidaire would only agree to sell [him] a new boot." (*Id.*)  The Amended Complaint does not indicate whether Mr. Vogler bought the boot, or whether he still uses his washer.

### Mr. Brown – California

Robert Brown lives in San Diego, California.  (*Id.* ¶ 14.)  He alleges that he bought a Frigidaire front-loading washer (model number LTF2140ES3) from a Lowe's retailer in San Diego on May 8, 2006.  (*Id.*)  The Amended Complaint does not include an allegation that Mr. Brown saw or heard any representations made by Electrolux prior to buying the washer; nor does it include an allegation that Mr. Brown relied on any such representations.

"In or about July 2006," Mr. Brown alleges that he "began to notice odor in his laundry area and eventually discovered black streaks on garments and towels." (*Id.*)  Nearly three years after this alleged discovery, however, "[i]n or about May 2009," Mr. Brown finally contacted Electrolux "about the mold and mildew problems." (*Id.*)  He alleges that Electrolux advised him by return e-mail "that to avoid mold, [he] would need to wipe the inside of his machine after every wash cycle and keep the washer door open when not in use." (*Id.*)  Electrolux allegedly explained that if he could not "leave the door open, he should wipe the machine seal down with a wet wash cloth and then wipe it dry after every wash." (*Id.*)  According to Mr. Brown, Electrolux also "offered to pay for the part and labor for a replacement bellows or . . . for a rebate on the purchase of a comparable Frigidaire washer." (*Id.*)

The Amended Complaint does not state whether Mr. Brown followed Electrolux's advice or whether it worked to eliminate the alleged mold problem.  Nor does Mr. Brown disclose

whether he allowed Electrolux to service his machine, or whether he accepted the rebate offer on a comparable washer.  Indeed, the Amended Complaint does not indicate that Mr. Brown ever responded to Electrolux about his complaint at all.  And it does not state whether Mr. Brown still uses his washer.

## ARGUMENT

In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The "plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Id*.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In scrutinizing the complaint for plausibility, a court looks for factual allegations, not legal conclusions.  While "[w]ell-pleaded factual content is accepted as true for purposes of determining whether the complaint states a plausible claim for relief," the court should not accept "legal conclusions couched as factual allegations" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.*  Even as to factual allegations, a court makes "reasonable inferences in Plaintiff's favor, 'but we are not required to draw plaintiff's inference.'"  *Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 U.S. App. LEXIS 17764, at *12 (11th Cir. Aug. 11, 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)).  In particular, "'unwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of

plaintiff's allegations." *Id.* (quoting *Aldana*, 416 F.3d at 1248 and citing *Iqbal*, 129 S. Ct. at 1951).  Ultimately, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citation and footnote omitted).

In addition, to the extent plaintiffs allege fraud-based claims under state consumer protection statutes, plaintiffs must satisfy the heightened pleading standards set forth under Rule 9(b) of the Federal Rules of Civil Procedure.  *See Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1275 n.26 (11th Cir. 2006) (Tjoflat, J., specially concurring) ("'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'") (quoting Fed. R. Civ. P. 9(b)); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) ("The pleading requirements of Rule 9(b) apply to claims based on state consumer fraud statutes."), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999).[1]  Rule 9(b) is satisfied only if the complaint sets forth:

> "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled

---

[1]    Under *Erie* principles, "the procedure for pleading fraud in federal courts is governed by federal law and not state law." *McAllister Towing & Transp. Co. v. Thorn's Diesel Serv., Inc.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001) (citing *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1101-08 (9th Cir. 2003) (affirming dismissal of fraud-based claims because the fact that California's state unfair business practices laws did not require proof of fraud did not relieve plaintiff of obligation to plead underlying fraud-based **conduct** with specificity).

> the plaintiff, and (4) what the defendants obtained as a
> consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted); *see also*

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (each named plaintiff alleging

fraud-based claims must allege with specificity "'the who, what, when, where, and how'" of the

fraud that each allegedly experienced) (citation omitted), *modified on other grounds on denial of*

*reh'g*, 355 F.3d 356 (5th Cir. 2003).

Here, plaintiffs have failed to state a viable claim against Electrolux with regard to any of

their causes of action, which are governed by the law of each named plaintiff's home state.  As

set forth below, plaintiffs have not alleged essential elements of their express warranty, implied

warranty, Magnuson-Moss Act and unjust enrichment claims.  Thus, they cannot prevail on those

claims as a matter of law.  *See Iqbal*, 129 S. Ct. at 1949-50.  In addition, plaintiffs' statutory

consumer fraud claims must also fail because they have not pleaded the basic "who, what, when,

where and how" of Electrolux's alleged fraudulent conduct, as required under Rule 9(b).  *See*

*Ziemba*, 256 F.3d at 1202.

## I.     GEORGIA'S CHOICE-OF-LAW RULES MANDATE THAT THE LAW OF EACH PLAINTIFF'S HOME STATE APPLY TO HIS OR HER CLAIMS.

Plaintiffs purport to bring claims under Georgia law on behalf of a nationwide class of

"[a]ll persons and entities in the United States who purchased . . . any of the Washing Machines

during the previous four (4) years."  (Am. Compl. ¶ 19.)  However, each named plaintiff's claims

are governed by the laws of the state in which he or she lives and purchased his or her washing

machine – not the state where defendant has its offices.

It is axiomatic that "[a] federal court sitting in diversity, as in this case, must apply the

choice of law principles of the state in which it sits."  *St. Paul Fire & Marine Ins. Co. v. ERA*

*Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 894 n.1 (11th Cir. 2009).  Georgia has

embraced the rule of "*lex loci contractus*" – which applies the law of the place of contract – with regard to express and implied warranty claims.  *See Gilbert v. Monaco Coach Corp*., 352 F. Supp. 2d 1323, 1329 (N.D. Ga. 2004) (holding that Arizona law applied to plaintiffs' claims for breach of written warranty, breach of implied warranty, and revocation of acceptance under Georgia's *lex loci contractus* approach, because plaintiffs negotiated and executed the sales contract and warranty for vehicle in Arizona and took possession there).  In actions arising from the purchase of a product, this rule demands that the law of the place of sale governs plaintiffs' claims.  *See id.*; *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005) (applying the law of the place the purchaser bought his RV to breach of express and implied warranty claims under Georgia choice-of-law rules).

Similarly, under Georgia's *lex loci delicti* approach to choice of law in tort actions, the law applicable to plaintiffs' consumer fraud and unjust enrichment claims is the law of the state where each plaintiff purchased his or her washing machine and, as a result, claims he or she was injured.  *See Luigino's Int'l, Inc. v. Miller*, 311 F. App'x 289, 292 (11th Cir. Ga. 2009) (per curiam) ("Under Georgia's choice of law doctrine of *lex loci delictis*, the law of the state where the injury occurred governs [a] fraud action.") (citing *Int'l Bus. Machs. Corp. v. Kemp*, 536 S.E.2d 303, 306 (Ga. Ct. App. 2000)); *see also Risdon Enters., Inc. v. Colemill Enters., Inc.*, 324 S.E.2d 738, 740 (Ga. Ct. App. 1984) ("'The place of the wrong, the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place.'") (citation omitted).  Georgia courts have held that in product liability actions, the place where the wrong, or injury, occurred is the state where the product malfunctioned.  *See Bagnell v. Ford Motor Co.*, 678 S.E.2d 489, 491-92 (Ga. Ct. App.

2009) (holding that law of state in which allegedly defective car crashed and passengers died controlled the substance of plaintiffs' tort claims under the *lex loci delicti* approach).[2]

Here, the five named plaintiffs allege that they bought their washing machines within their respective states of residence.  (Am. Compl. ¶¶ 13-17.)  Each plaintiff also claims that his or her washing machine was used – and exhibited the alleged defect – in his or her home state. (*Id*.)  Accordingly, under Georgia choice-of-law principles, each plaintiff's claims, both those arising in contract and in tort, should be governed by his or her own state's laws.

## II.   PLAINTIFFS' CLAIMS ALL FAIL AS A MATTER OF LAW.

### A.   The Amended Complaint Fails To Properly Plead the Elements of Breach of Express Warranty (Count II).

Each named plaintiff's breach of warranty claim is deficient in a number of respects under the applicable state's law.  ***First***, none of the plaintiffs has pled a defect in "material or workmanship" – the only type of defect covered by the express warranty at issue.  ***Second***, Ms. Boyd, Mr. Terrill and Mr. Vogler cannot assert valid claims because the alleged defect in their washing machines did not manifest itself until after the express warranty period had expired. And ***third***, all of plaintiffs' claims fail because they have not properly alleged notice and opportunity to cure, as required under the applicable state's laws.

---

[2]     A few federal courts have held that Georgia's choice-of-law regime "has an unusual characteristic" in that "'the "application of another jurisdiction's laws is limited'" only to statutory tort claims – not common law claims such as unjust enrichment.  *In re Tri-State Crematory Litig*., 215 F.R.D. 660, 677 (N.D. Ga. 2003) (citations omitted); *Brenner v. Future Graphics, LLC*, No. 1:06-CV-0362-CAP, 2007 U.S. Dist. LEXIS 98493, at *21 (N.D. Ga. Sept. 10, 2007).  According to these courts – which cite Georgia precedent decided over half a century ago – "'[w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law.'"  *Tri-State Crematory*, 215 F.R.D. at 677 (quoting *Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) (citing *White v. Borders*, 123 S.E.2d 170 (Ga. Ct. App. 1961); *Motz v. Alropa Corp*., 15 S.E.2d 237 (Ga. 1941))).  However, even these courts concede that "'consistent with due process,'" the law of Georgia may only be applied to non-statutory claims "'if the particular transaction had some significant relation to Georgia.'"  *Tri-State Crematory*, 215 F.R.D. at 678 (citation omitted); *see also Brenner*, 2007 U.S. Dist. LEXIS 98493, at *22.  Here, plaintiffs' unjust enrichment claims have no real connection to Georgia.  Each plaintiff purchased and used his or her washing machine in his or her home state.  And other than plaintiff Boyd, who is a resident in Georgia, not one of the plaintiffs has alleged any contacts with the state.  As a result, blind application of Georgia law to these plaintiffs' claims would be "arbitrary or unfair" and would violate due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985).

##### 1. *None of the Plaintiffs Has Identified a Defect in "Material or Workmanship" Covered by the Express Warranty at Issue.*

While state laws vary with regard to the elements of a breach of express warranty claim, each of the state laws governing the named plaintiffs' claims here generally requires a plaintiff to prove that the defendant actually breached an express promise regarding its goods. *See, e.g.*, *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *4 (N.D. Cal. June 5, 2009) (under California law, express warranty plaintiff must establish, *inter alia*, that defendant "'made an affirmation of fact or promise or provided a description of its goods'" that was breached); *McQueen v. Minolta Bus. Solutions, Inc.*, 620 S.E.2d 391, 393 (Ga. Ct. App. 2005) ("'[A] warrantee can succeed on a breach of the warranty claim only if she has first satisfied the express conditions precedent for enforcement as prescribed by the warranty.'") (citation omitted); *Dieter v. Chrysler Corp.*, 610 N.W.2d 832, 836 (Wis. 2000) (breach of warranty claims must be based on defects or problems that are covered by the warranty as written); *Herring v. Home Depot, Inc.*, 565 S.E.2d 773, 776 (S.C. Ct. App. 2002) ("When goods do not conform to a promise or an affirmation of fact made by a seller . . . then a seller has breached an express warranty."); *Lankford v. Rogers Ford Sales*, 478 S.W.2d 248, 250 (Tex. Civ. App. 1972) ("Texas Courts have consistently held that where there is an express written warranty, the seller will not be bound beyond the terms of the warranty.").

Here, the express warranties made by Electrolux with regard to its washing machines included a one-year warranty for replacement of parts that are "defective in materials or workmanship."[3]  However, nowhere in the Amended Complaint do plaintiffs allege that any part of their machines – such as the basket, the tub, or the water seal – failed to work.  Rather,

---

[3]     Plaintiff Terrill's warranty also includes a 25-year warranty for an inner wash basket that breaks.  (*See* Ex. A.)  However, Mr. Terrill does not allege that the inner wash basket in his machine broke, and thus his claims arise solely from the one-year "material or workmanship" warranty.

plaintiffs complain that soil and odors can develop from use of their machines.  (*See* Am. Compl. ¶ 2.)  These problems do not arise from a defect in "material or workmanship" – they are tied to owner maintenance and can be prevented by wiping moisture out of the machine after use.  In short, plaintiffs can point to no warranty by Electrolux that its high efficiency washers do not and will not require owner care.  And plaintiffs have not identified a component of the machines that does not function because it is "defective in materials or workmanship."  As a result, plaintiffs have not alleged that Electrolux actually breached a term of its express warranty to purchasers.  For this reason alone, plaintiffs' breach of express warranty claims fail.

### 2. *The Alleged Problems Experienced by Plaintiffs Boyd, Terrill and Vogler Occurred After the Expiration of the Warranty Period.*

As set forth above, the express warranty for defects in "materials or workmanship" that accompanied Electrolux's high-efficiency washing machines expired one year after purchase.  Thus, to state a valid breach of warranty claim, plaintiffs must allege that they experienced problems with their washing machines within one year of buying them.  *See, e.g.*, *Fort Oglethorpe Assocs. II, Ltd. v. Hails Constr. Co. of Georgia*, 396 S.E.2d 585, 664 (Ga. Ct. App. 1990) (claim made outside of one-year warranty period failed); *Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.*, 830 F.2d 1405, 1412 (7th Cir. 1987) ("When Wisconsin Power accepted defendant's proposal at the quoted price, it accepted defendant's warranty and limitation of liability provisions and thereby an allocation of risk whereby defendant bore the risk of equipment failure during the period of the warranty . . . and plaintiffs bore the risk of failure thereafter."); *Loper v. Smith Corona, Inc.*, No. 07-99-0272-CV, 2000 WL 798799, at *2 (Tex. App. June 21, 2000) ("Because the only representation made by Smith Corona was the 90-day warranty and Loper admits the warranty period had expired, we find that Loper had no basis in law to file suit against Smith Corona.").  Plaintiffs Boyd, Terrill and Vogler have not alleged

13

that they experienced problems with their washing machines within one year of buying them, and therefore their claims must fail.

Ms. Boyd alleges that she bought her washer nearly two years before she experienced any problems with the machine.  (*See* Am. Compl. ¶ 16.)  Mr. Terrill alleges that he first experienced a problem with his machine over a year after purchase.  (*Id.* ¶ 13.)  And Mr. Vogler alleges that he first had an issue with his washer approximately eighteen months after purchase.  (*Id.* ¶ 15.)  Thus, the alleged problems experienced by each of these plaintiffs are not covered by the express warranty.  As a result, their express warranty claims should be dismissed for this reason as well.

### 3.   *All But One of the Plaintiffs Fail To Properly Allege Notice and an Opportunity To Cure.*

The claims of plaintiffs Boyd, Pack, Terrill and Brown fail because they do not allege that they provided Electrolux with proper notice of its alleged breach and opportunity to cure, as required under the varying state laws applicable to their claims.

*First*, neither Ms. Boyd (who lives in Georgia) nor Ms. Pack (who lives in South Carolina) can prevail on a theory of express warranty because neither alleges that she gave Electrolux notice of the alleged breach of warranty or opportunity to cure.  Under both Georgia and South Carolina law, breach of warranty claims require (1) that the plaintiff gave the warrantor reasonable notice of the problem, and (2) that the plaintiff gave the warrantor a reasonable opportunity to cure.  *Knight v. Am. Suzuki Motor Corp.*, 612 S.E.2d 546, 549 (Ga. Ct. App. 2005); *see also* Ga. Code Ann. § 11-2-607(3)(a) (West 2003); *Hitachi Elec. Devices (USA), Inc. v. Platinum Techs., Inc.*, 621 S.E.2d 38, 40-41 (S.C. 2005) ("a buyer who has failed to give seasonable notice of breach is 'barred from any remedy'" under a theory of breach of warranty); *Draffin v. Chrysler Motors Corp.*, 166 S.E.2d 305, 308 (S.C. 1969) ("We have held that no liability arises under a warranty such as this, until the warrantor has been given reasonable notice

14

and opportunity to remedy the alleged defects.").  This is because "'it is the ***refusal to remedy*** within a reasonable time, or a ***lack of success*** in the attempts to remedy [that] would constitute a breach of warranty'" – ***not*** the mere fact that the product encountered problems.  *Knight*, 612 S.E.2d at 549 (emphasis and alteration in original; citation omitted); *see also Am. Fed. Bank, F.S.B. v. White*, 370 S.E.2d 923, 926 (S.C. Ct. App. 1988).

Neither Ms. Boyd nor Ms. Pack asserts that she contacted Electrolux regarding the alleged problems with her washing machine before filing this lawsuit.  As a result, both plaintiffs fail to allege that they provided Electrolux with notice of – or the opportunity to cure – its alleged breach of warranty.  Thus, under both Georgia and South Carolina law, their claims should be dismissed.  *See, e.g.*, *Lewis v. Mercedes-Benz USA, LLC*, No. Civ.A.1:03CV4000-JOF, 2004 WL 3756384, at *4 (N.D. Ga. Sept. 13, 2004) (granting manufacturer's motion to dismiss federal and state warranty claims where plaintiffs failed to adequately plead notice of defect and reasonable opportunity to repair).

***Second***, both plaintiff Terrill (who lives in Wisconsin) and plaintiff Brown (who lives in California) are also barred from asserting breach of warranty claims because they delayed an unreasonable amount of time before providing notice to Electrolux of its alleged breach.

As set forth above, Mr. Terrill's warranty claims are governed by Wisconsin law, which provides that the buyer of a product "must within a reasonable time after the buyer discovers or should have discovered any breach [of warranty] notify the seller of breach or be barred from any remedy."  Wis. Stat. Ann. § 402.607(3)(a) (West 2003); *see also Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 860 (Wis. 1982).  This requirement is construed strictly by Wisconsin courts, which have held that purchasers who delay as little as two months in providing notice of an alleged breach of warranty are barred from recovery as a matter of law.  *See, e.g.*,

15

*Tegen v. Chapin*, 187 N.W. 185, 187-88 (Wis. 1922) (fifty-seven day delay in providing notice unreasonable as a matter of law); *Schaefer v. Weaver*, 60 N.W.2d 696, 699 (Wis. 1953) (deciding case on other grounds but suggesting five-month delay would not have been reasonable as a matter of law); *Leban v. Sun Patio, Inc.*, 581 N.W.2d 594, 1998 WL 173068, at *2 (Wis. Ct. App. 1998) (per curiam) (unpublished table decision) (seven months unreasonable as a matter of law); *Schroeder v. Drees*, 83 N.W.2d 707, 709 (Wis. 1957) (seven months unreasonable as a matter of law); *Wilson v. Tuxen*, 754 N.W.2d 220, 233 (Wis. Ct. App. 2008) (ten-month delay unreasonable as a matter of a law).  Here, Mr. Terrill alleges that he first experienced a problem with his washing machine over a year after purchase and then waited roughly six months to contact Electrolux regarding the issue.  (Am. Compl. ¶ 13.)  This is "not a reasonable time to delay giving notice as a matter of law."  *Wilson*, 754 N.W.2d at 233.[4]  As a result. Mr. Terrill's warranty claims are barred for failure to allege timely notice.  In addition, even if Mr. Terrill had given Electrolux timely notice of its alleged breach, his warranty claim would still fail because he has not pled any facts suggesting that he gave the company an opportunity to repair the problem and it failed to do so.  *See Carl v. Spickler Enters., Ltd.*, 478 N.W.2d 48, 52 (Wis. Ct. App. 1991) (a plaintiff cannot "claim a breach of express warranty regarding the [alleged] defects that [defendant] had no opportunity to repair").  The Amended Complaint states that, in response to Mr. Terrill's complaints regarding "mold and mildew problems," Electrolux explained that the problem could be remedied by "wip[ing] his machine after each use."  (Am. Compl. ¶ 13.)  However, the Amended Complaint does not state whether

---

[4]      To the extent that Mr. Terrill's allegations regarding when he allegedly became aware of the concerns with his washer are unclear, this does not make dismissal any less appropriate.  "The burden is on the buyer to establish any breach with respect to the goods accepted."  Wis. Stat. Ann. § 402.607(4) (West 2003).  This includes the "burden of alleging and proving notice."  *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 200 (Tex. App. 2003) (interpreting Tex. Bus. & Com. Code § 2.607(c)(1), which is identical to Wisconsin's notice provision, and noting that other jurisdictions consider the notice requirement "a condition precedent for a buyer's cause of action").

Mr. Terrill followed Electrolux's advice regarding the proper maintenance necessary to remedy the alleged mold issue, whether that advice worked, or whether Mr. Terrill communicated any dissatisfaction with the product to Electrolux after that time. As a result, plaintiff Terrill has not adequately alleged a warranty claim.

Plaintiff Brown's express warranty claim fails for similar reasons. Under California law, a buyer alleging breach of warranty claims "must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovering the breach." *Stearns*, 2009 WL 1635931, at *4. In addition, the buyer bears "the burden of showing that reasonable notice was provided." *Id.* Here, Mr. Brown alleges that he waited three years from the date of discovering a problem with his washing machine to contact Electrolux regarding the issues he was experiencing. (*See* Am. Compl. ¶ 14.) Under California law, such a delay is unreasonable as a matter of law and precludes a breach of warranty claim. *See Pollard v. Saxe & Yolles Dev. Co.*, 525 P.2d 88, 92 (Cal. 1974) (delay of four years in giving notice barred breach of express warranty action); *Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal. App. 4th 357, 370-71 (Cal. Ct. App. 1997) (three years unreasonable as a matter of law). Thus, plaintiff Brown's express warranty claim fails on this ground as well.

For all of these reasons, plaintiffs' express warranty claims should be dismissed.

### B.  Plaintiffs Fail To Plead the Elements of a Breach of Implied Warranty (Count III).

Plaintiffs' claims for breach of the implied warranty of merchantability (*see* Am. Compl. ¶¶ 54-61) also fail for a number of reasons. *First*, all of plaintiffs' implied warranty claims fail because they have not alleged that the goods at issue were not merchantable at the time of sale. *Second*, just as is the case with their express warranty claims, the implied warranty claims alleged by plaintiffs Boyd, Pack, Terrill and Brown fail as a result of their failure to properly

plead reasonable notice and opportunity to cure.  **Third**, plaintiffs Terrill, Brown and Boyd are unable to assert implied warranty claims because they do not allege privity with Electrolux, as required under the state laws applicable to their claims.

### 1.    *Plaintiffs Have Failed To Allege that the Washers at Issue Were Unmerchantable at the Time of Sale.*

While different states analyze implied warranty claims differently, all of the relevant states require – as a bare minimum – that plaintiffs asserting claims for breach of the implied warranty of merchantability establish that the product at issue was actually unmerchantable.  *See, e.g.*, Cal. Com. Code § 2314(2)(a) & (c) (West 2002); Ga. Code Ann. § 11-2-314(2)(a) & (c) (West 2003); S.C. Code § 36-2-314(2)(a) & (c) (2003); Tex. Bus. & Com. Code § 2.314(b)(1) & (3) (Vernon 2009); Wis. Stat. Ann. 402.314(2)(a) & (c) (West 2003).  As one court has noted,

> Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law.  It does not "impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality."

*Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1995) (citations omitted).

Here, plaintiffs' implied warranty claims are based on the allegation that Electrolux's high efficiency washing machines are susceptible to "mold and mildew problems."  (Am. Compl. ¶ 59.)  But a water- and energy-saving front-loading washer is not unmerchantable simply because consumers must perform routine maintenance on it that is not required on less efficient top-loading washers.  None of the plaintiffs has alleged that the washers they purchased did not work or in any way failed to perform their essential function of washing clothes.  Thus, they have failed to properly allege unmerchantability under the relevant states' laws.  *See, e.g.*, *Soto v. CarMax Auto Superstores, Inc.*, 611 S.E.2d 108, 110 (Ga. Ct. App. 2005) (problems that do not

render product unusable do not amount to a defect making the product unmerchantable); *Taterka v. Ford Motor Co.*, 271 N.W.2d 653, 655 (Wis. 1978) (undisputed facts demonstrated that automobile with a rust-causing latent defect was "merchantable," as it was still fit for the purpose of driving).

In addition, even if plaintiffs had alleged that their washing machines were unusable – which they have not – plaintiffs Boyd, Terrill, and Vogler would still be unable to state implied warranty claims because the Amended Complaint does not allege that such defect was present ***at the time of sale***. As set forth above, Boyd, Terrill, and Vogler allege that they used their washers for the entire one-year warranty period without experiencing any incident. (*See* Am. Compl. ¶¶ 13, 15, 16.) As such, they can hardly allege – as they must under the laws applicable to their claims – that their washers were unmerchantable at the time Electrolux sold them. *See, e.g.*, *Johnson v. Jaguar Cars, Inc.*, No. Civ.A.1:05CV3161-RLV, 2006 WL 1627125, at *4 (N.D. Ga. June 6, 2006) ("[T]o survive a motion to dismiss, [plaintiff] must at the very least allege that the product was defective when it was sold."); *Monticello*, 369 F. Supp. 2d at 1361 (plaintiff's complaints of product defect made five months after RV purchase could not establish that RV was not merchantable at the time of sale); *Ford Motor Co. v. Tidwell*, 563 S.W.2d 831, 835 (Tex. Civ. App. 1978) (in implied warranty action, plaintiff has "the burden of proving that the article was defective at the time it left the hands of the manufacturer or seller"); *Dittman v. Nagel*, 168 N.W.2d 190, 194 (Wis. 1969) ("[T]he fact that the buyers have a reasonable time to discover the defect does not relieve them of the burden of showing that the warranty was breached as of the time of the sale."). For this reason as well, plaintiffs' breach of implied warranty claims fail.

2.    ***As with Their Express Warranty Claims, All But One of the Plaintiffs Fail To Properly Allege Notice of and Opportunity To Cure the Alleged Breach of Implied Warranty.***

Plaintiffs Terrill, Brown, Boyd and Pack are also precluded from asserting breach of implied warranty claims because they have not alleged notice or opportunity to cure.  Under the state laws applicable to each of these plaintiffs' claims, implied warranty actions are subject to the same notice and opportunity to cure requirements necessary to state claims for breach of express warranty.  *See* Section II.A.3, *supra*; *see also* Ga. Code Ann. § 11-2-607(3)(a) (West 2003); *Lewis*, 2004 WL 3756384, at *4 ("'[A] seller must be afforded a reasonable opportunity to cure, even though there may have been a breach of an implied warranty.'") (citation omitted); *accord* Wis. Stat. Ann. § 402.607(3)(a) (West 2003); *Wilson*, 754 N.W.2d at 234; *Carl*, 478 N.W.2d at 53; S.C. Com. Code Ann. § 36-2-607(3)(a).  And as explained above, these plaintiffs have not adequately alleged that they gave Electrolux reasonable notice of their complaints regarding their washing machines – or that they provided the company with a reasonable opportunity to cure the alleged defects – as required under applicable law.  *See* Section II.A.3, *supra*.  For this reason too, plaintiffs Terrill, Brown, Boyd and Pack cannot state implied warranty claims.

3.    ***Implied Warranty Claims Alleged by Plaintiffs Boyd, Terrill, and Brown Also Fail for Lack of Privity.***

In addition to the other deficiencies in their implied warranty claims, plaintiffs Boyd, Terrill and Brown face an additional problem:  they have not alleged privity.

Plaintiffs Boyd, Terrill and Brown all allege that they purchased their washing machines from third-party retailers, not Electrolux.  (*See* Am. Compl. ¶¶ 13, 14, 16.)  However, the laws of Georgia, Wisconsin and California – which govern the claims of plaintiffs Boyd, Terrill and Brown, respectively – all require an allegation of privity (*i.e.*, a direct relationship between the

buyer and seller) in order to state an implied warranty claim.  *See Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 560-61 (Ga. 1996) ("Georgia law establishes that in order to recover under a theory of breach of implied warranty of merchantability, a plaintiff must have privity with the seller."); *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 187 n.15 (Wis. 1991) ("Privity is a requirement for a cause of action based on implied warranty."); *Hartless v. Clorox Co.*, No. 06CV2705 JAH(CAB), 2007 WL 3245260, at *2 (S.D. Cal. Nov. 2, 2007) (dismissing implied warranty claim for failure to allege privity).  There is no privity between a product manufacturer and consumers who buy that manufacturer's products at retail outlets.  *See, e.g.*, *Parent v. Brunswick Family Boat Co.*, No. 1:05-cv-1477-GET, 2006 U.S. Dist. LEXIS 77835, at *13-14 (N.D. Ga. Oct. 25, 2006) (implied warranty claims failed for lack of privity between boat manufacturer and plaintiffs, who bought boat from authorized dealer);  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (plaintiff who bought product at retailer Best Buy could not bring implied warranty claim against manufacturer).  Thus, the implied warranty claims alleged by plaintiffs Boyd, Terrill and Brown must be dismissed for this reason as well.

### C.    Plaintiffs' Unjust Enrichment Claims (Count IV) Are Barred as a Matter of Law.

Plaintiffs also assert unjust enrichment claims, alleging that "[p]rinciples of equity and good conscience make it unjust for [Electrolux] to retain the benefit conferred on it by consumers."  (Am. Compl. ¶ 67.)  But most of the named plaintiffs cannot rely on the quasi-contractual theory of unjust enrichment where they have asserted a contract-based theory like breach of warranty.  And even if they could, plaintiffs have failed to allege that – in buying washers from retailers – they actually conferred any benefit on Electrolux.  For both of these reasons, plaintiffs' unjust enrichment claims should be dismissed.

1.    ***Plaintiffs Cannot Recover for Unjust Enrichment Because They Never Conveyed a Benefit to Electrolux.***

While each state applies its own standard to unjust enrichment claims, recovery for unjust enrichment under each of the applicable states' laws requires, at a bare minimum, that the plaintiff prove he or she "conferred a benefit" on the defendant that was unjustly retained. *See, e.g.*, *Watts v. Watts*, 405 N.W.2d 303, 313 (Wis. 1987) ("In Wisconsin, an action for unjust enrichment, or quasi contract, is based upon proof of [*inter alia*] a benefit conferred on the defendant by the plaintiff."); *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 167 (S.C. 2003) ("To recover on a theory of restitution, the plaintiff must show . . . that he conferred a non-gratuitous benefit on the defendant. . . ."); *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1241 (C.D. Cal. 2008) (unjust enrichment "not only requires that a benefit be conferred, but that it is unjust for the defendant to retain that benefit"); *J'Carpc, LLC v. Wilkins*, 545 F. Supp. 2d 1330, 1341 (N.D. Ga. 2008) ("Plaintiff cannot claim unjust enrichment unless it can show that it conferred a benefit upon the defendant."); *Texas Carpenters Health Benefit Fund, IBEW-NECA v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998) (unjust enrichment claims must be dismissed where "no benefit was conferred upon" defendant by plaintiffs), *aff'd*, 199 F.3d 788 (5th Cir. 2000).

Plaintiffs here cannot satisfy even this most basic requirement.  Plaintiffs do not allege – nor could they – that they conferred a benefit directly on Electrolux.  Instead, plaintiffs' allegations make clear that they paid retailers for washing machines that the retailers sold at a profit after having paid Electrolux.  Thus, the only parties to whom plaintiffs "conferred a benefit" in this case are the third-party retailers from which they purchased their washing machines.  Courts have held, in similar circumstances, that without an allegation that plaintiffs gave a benefit to defendant directly, plaintiffs' claims fail as a matter of law.  *See, e.g.*, *Johnson*

*v. Microsoft Corp.*, 802 N.E.2d 712, 719 (Ohio Ct. App. 2003) (affirming dismissal of unjust enrichment claim against software supplier where "the only direct benefit [plaintiff] or members of the putative class conferred was the money that they paid to the retailers"), *aff'd*, 834 N.E.2d 791 (Ohio 2005); *In re Vitamins Antitrust Litig.*, Nos. MISC 99-197, MDL 1285, 2001 WL 849928, at *9 (D.D.C. Apr. 11, 2001) (dismissing unjust enrichment claim where plaintiff was an indirect purchaser). The same rule should apply here, and plaintiffs' claims should be dismissed for failure to state a claim.[5]

> **2.      *Plaintiffs Terrill, Vogler, Boyd, and Pack Cannot Rely on a Quasi-Contract Theory Because They Also Allege Contract-Based Warranty Claims.***

Under the laws of Georgia, Wisconsin, South Carolina and Texas – which govern the claims of plaintiff Boyd, Terrill, Pack and Vogler, respectively – unjust enrichment is an equitable doctrine – often referred to as quasi-contract – that does not apply where plaintiffs allege a contract-based claim, such as breach of express warranty. *See, e.g.*, *Pac. W., Inc. v. LandAm. Credit Servs., Inc.*, No. 1:05-CV-0895-JEC, 2007 WL 1970870, at *3 (N.D. Ga. June 29, 2007) ("The theory of unjust enrichment *only* applies 'when there is *no* legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated.'") (first emphasis added) (quoting *Tidikis v. Network for Med. Commc'ns & Research, LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005)); *Beer Capitol Distrib. v. Guinness Bass Import Co.*, 290 F.3d 877, 881 (7th Cir. 2002) (Wisconsin law) ("[U]njust enrichment is an

---

[5]      The unjust enrichment claim also fails because it is not factually premised on wrongful or inequitable conduct. "[A] written warranty . . . is an express acknowledgment that the product may be defective and a promise by defendant to remedy such a defect in the manner and within the time period prescribed." *Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *3 (W.D. Wis. Sept. 28, 2005). An "express promise to remedy defects in a product is not a representation that there are none, but an acknowledgment that there might be" defects, as well as an allocation of the associated risks. *Id.* Moreover, circumstances where customers encounter problems after their warranties have expired do not offer a basis to employ the doctrine of unjust enrichment to rewrite their warranty protection. *See, e.g.*, *Owens v. GMC*, No. 06-4067-CV-C-NKL, 2007 WL 172355, at *5 (W.D. Mo. Jan. 18, 2007).

obligation enforced in the absence of any agreement."); *Key Corp. Capital, Inc. v. County of Beaufort*, 644 S.E.2d 675, 678 (S.C. 2007) ("[E]quitable relief is generally available where there is no adequate remedy at law. . . ."); *Barrett v. Miller*, 321 S.E.2d 198, 199 (S.C. Ct. App. 1984) ("Where a plaintiff has an adequate remedy at law, equitable relief is not normally in order."); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("[W]hen a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory.") (citation omitted).  Although a plaintiff generally "may plead equitable claims in the alternative, [she] may only do so if one or more of the parties contests the existence of an express contract governing the subject of the dispute." *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009).  Thus, where – as here – the plaintiff alleges express warranty claims and the defendant admits that the express warranty exists, plaintiff may not also allege unjust enrichment claims simply because the defendant argues that the complaint falls outside the warranty.  *See Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *6 (W.D. Wis. Sept. 28, 2005) ("Unjust enrichment is not a mechanism for supplementing that which a purchaser perceives as inadequate contractual remedies [arising from express warranty].");*see also Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 WL 1470855, at *9 (W.D. Wis. May 15, 2007) ("in the face of" defendant furnace manufacturer's express warranty regarding its product, "no unjust enrichment claim [was] available" to plaintiff furnace owners who alleged the furnaces were defective).

Here, plaintiffs allege that their washing machines were initially subject to an express warranty for "material and workmanship," and Electrolux does not contest that fact.  Thus, plaintiffs are not entitled to also claim that recovery in quasi-contract is appropriate because no

contract exists.  For this reason too, plaintiffs Terrill, Vogler, Boyd and Pack cannot assert unjust enrichment claims.

>    **D.    Plaintiffs' Magnuson-Moss Warranty Act Claims (Count V) Fail for the Same Reasons That Their Express and Implied Warranty Claims Are Barred.**

In Count V, plaintiffs allege that – in addition to their breach of express and implied warranties under the applicable states' laws – Electrolux also violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312.  (*See* Am. Compl. ¶¶ 68-76.)  However, this claim is only valid to the extent that plaintiffs' state law warranty claims are proper.  In addition, even if plaintiffs were able to prevail under the MMWA, they would not be entitled to "revoke their acceptance of the Washing Machines" under the statute.  (*See id.* ¶ 76.)

The "[MMWA] creates minimum disclosure and content requirements for certain consumer product warranties.  Under the Act, consumers have a federal right of action against warrantors who fail 'to comply with any obligation under . . . a written warranty, implied warranty, or service contract.'"  *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1040 (N.D. Ga. 2004) (ellipsis in original) (quoting 15 U.S.C. § 2310(d)), *aff'd*, 168 F. App'x 893 (11th Cir. 2006).  "The Act was intended *to supplement, not supplant*, state law."  *Id.* (emphasis added).  Thus, "'[e]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law.'"  *Monticello*, 369 F. Supp. 2d at 1356 (citation omitted); *see also Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1234 (N.D. Ga. 2005) ("[The MMWA] 'relates to damages, not liability, and provides for consumers' recovery of costs and attorney's fees in successful actions for breaches of warranty *under state law*.'") (citation omitted).  Accordingly, to recover under the Act, plaintiffs "must show that Defendant breached

written and implie[d] warranties arising under [state] law." *Hines*, 358 F. Supp. 2d at 1235 (citing 15 U.S.C. § 2310(d)(2)).

As set forth in Sections II.A and II.B, above, not one of the plaintiffs is able to state a valid claim for either breach of express or implied warranty under the applicable state's law. Thus, plaintiffs' MMWA claims must also fail. *See, e.g.*, *Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810 (11th Cir. 2005) (per curiam). For example, "courts have uniformly held that Magnuson-Moss does nothing to alter or modify state law privity requirements. The question of whether privity is required thus hinges entirely on applicable state law." *Id.* (citing *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003)). In addition, just like warranty claims under California, Georgia, South Carolina, Texas, and Wisconsin law, claims under the MMWA also "require[] that a warrantor be given a reasonable number of attempts to remedy a defect." *Bailey*, 350 F. Supp. 2d at 1043 (citing 15 U.S.C. § 2304(a)(4)). Therefore, "a plaintiff must prove that: (1) a covered defect existed in the product at the time of sale; (2) notice of the defect was given to the warrantor within a reasonable time after the defect was or should have been discovered; and (3) the warrantor was unable to repair the defect after a reasonable number of attempts." *Id.* Thus, to the extent that the plaintiffs' claims fail for lack of proper notice or privity under the applicable state law, they also fail under the MMWA.

Moreover, even if plaintiffs were able to recover under the MMWA, they are not entitled – as a matter of law – to all of the remedies they seek. In addition to requesting damages, equitable relief, fees and costs under the MMWA, plaintiffs also allege that they "are entitled to revoke their acceptance of the Washing Machines." (Am. Compl. ¶ 76.) However, "the majority of courts who have addressed the question of whether revocation is available against a manufacturer with whom the buyer has not dealt directly have held that the buyer has no such

26

entitlement." *Hines*, 358 F. Supp. 2d at 1233-34 (collecting cases). "Indeed, revocation is inextricably connected to the contractual relationship between a buyer and a seller. If revocation of acceptance is the remedy Plaintiff[s] ultimately desired, then Plaintiff[s] needed to file suit against the seller[s]." *Id.* at 1234. Here, none of the plaintiffs alleges that he or she purchased a washing machine directly from Electrolux. As a result, they are not entitled to revocation under the MMWA as a matter of law.

In addition, revocation is also unavailable because plaintiffs do not allege that they stopped using their washing machines after learning of the alleged problem. A "'buyer who purports to revoke his acceptance of goods may be found to have re-accepted them if, after such revocation, he performs acts which are inconsistent with the seller's ownership of the goods.'" *Id.* (citation omitted). Here, even if the plaintiffs had alleged that they ever notified Electrolux of their intention to revoke acceptance of the goods (which they do not), plaintiffs never allege that they no longer use the supposedly defective washers. Thus, "Plaintiffs' . . . acts constitute[] exercises in ownership . . . and acts inconsistent with the seller's ownership." *Id.* (citing Ga. Code Ann. § 11-2-606(1)(c) and holding that continued use of vehicle after alleged revocation "constituted, as a matter of law, the re-acceptance of the goods").

For all of these reasons, plaintiffs' MMWA claims, or at the very least, their demands for revocation under the Act, should be dismissed.

### E.     The Amended Complaint Fails To Sufficiently Plead Essential Elements of Various State Consumer Protection Statutes (Counts I, VI-VIII).

Finally, plaintiffs have asserted causes of action under the consumer protection statutes of four of the five states in which the named plaintiffs live – Georgia, Texas, California, and

Wisconsin.[6]  All of these claims should be dismissed because plaintiffs have failed to plead one or more of the essential elements required under each state's consumer fraud statute.  In addition, plaintiffs' consumer fraud claims fall short of the heightened pleading standard applicable to fraud-based claims under Rule 9(b).

> ### 1.   *Plaintiff Boyd Cannot State a Claim Under the Georgia Uniform Deceptive Trade Practices Act (Count I).*

Plaintiff Boyd alleges claims under the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), *see* Ga. Code Ann. §§ 10-1-371; 10-1-372 (West 2003), based on the bare-bones allegation that Electrolux:

> (a) represented that its Machines have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have; (b) represented that its Machines are of a particular standard, quality or grade when they are of another; and (c) advertised its Machines with the intent not to sell them as advertised.

(Am. Compl. ¶ 48.)  *See also* Ga. Code Ann. §§ 10-1-372(a)(5), (7) & (9) (West 2003).  As set forth below, plaintiff Boyd has not adequately alleged several necessary elements of a claim under the GUDTPA, including an affirmative misrepresentation, reliance, and likelihood of harm absent injunctive relief.  As a result, her claim should be dismissed.

> (a)   Plaintiff Boyd Has Not Alleged an Affirmative Misstatement Capable of Giving Rise to a GUDTPA Claim.

The GUDTPA is the state analogue to the federal Lanham Act, 15 U.S.C. § 1125(a), and it "involves the same dispositive questions as the Federal Lanham Act," *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991).  To prevail on a Lanham Act

---

6        Presumably, plaintiffs have not alleged consumer protection claims under South Carolina law because South Carolina's consumer protection statute explicitly states that it does not allow class claims.  *See* S.C. Code Ann. § 39-5-140(a) (1985) (providing that any person who suffers a loss as a result of an unfair act or practice may "bring an action individually, but not in a representative capacity"); *see also Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009) ("[B]ecause SCUTPA claims may not be maintained in a class action law suit, the trial court properly dismissed Appellants' claims.").

claim, the plaintiff must identify an ***affirmative representation*** that is demonstrably "false, or misleading and actually or likely deceptive." *Id.* at 730; *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F. Supp. 1564, 1578 (N.D. Ga. 1987) (holding that a failure to set forth the predicate falsity under the Lanham Act forecloses claims for violation of the GUDTPA). Thus, the alleged "concealment" or "non-disclosure" of information, standing alone, does not give rise to a cause of action under the GUDTPA. *Energy Four*, 765 F. Supp. at 731; *see also* Ga. Code Ann. § 10-372(a)(5), (7) & (9) (West 2003) (requiring an affirmative representation concerning the goods or services in question).

Here, plaintiff Boyd's GUDTPA claim fails because she has not alleged that Electrolux made any affirmative misrepresentation capable of giving rise to a consumer fraud claim. Indeed, the Amended Complaint says next to nothing about statements made by Electrolux about its high-efficiency washing machines.[7] And the statements by Electrolux that plaintiffs do identify in their Complaint have nothing to do with whether its washing machines are susceptible to odor without maintenance:

- "From our traditional top load washers . . . to the stylishly efficient front load laundry . . . you can count on Fridigaire for innovation, performance and style"

- "you expect contemporary styling that's beautifully designed to fit your lifestyle"

- "the iCare Intelligent Fabric Care System™ gently washes and completely dries to keep your clothes looking their best"

---

[7]     Plaintiffs' self-titled "factual allegations" also contain over three single-spaced pages of "Internet postings" – purportedly from other owners of Frigidaire front-loading washers – that plaintiffs claim "reveal that [their] experiences are common and widespread." (Am. Compl. ¶ 36.) But such recitations from unknown sources made at unknown times are not ***factual*** allegations at all. Indeed, in dismissing a UCL claim predicated on the alleged fraudulent concealment of a computer design defect, one court observed that "[r]andom anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009). Plaintiffs' unsubstantiated "[r]andom anecdotal examples" should likewise be ignored. *See also Sunstar, Inc. v. Alberto-Culver Co.*, Nos. 01 C 0736, 01 C 5825, 2004 WL 1899927, at *27 (N.D. Ill. Aug. 23, 2004) ("[T]he Web Page is not relevant because it says nothing about the particular transaction at issue in this case.").

- "With no agitator, you count on tumble action to wash so gently and rinse so completely that your clothes feel fresher and last longer."

(Am. Compl. ¶ 30.)  Even if these statements were even remotely relevant to the alleged product defect at issue, they still would not give rise to an actionable claim for consumer fraud because they are mere "puffery."

Georgia law distinguishes between statements of opinion about a product's benefits (*i.e.*, sales "puffing") and actionable misstatements about material facts capable of giving rise to fraud claims.  *See McCrimmon v. Tandy Corp.*, 414 S.E.2d 15, 17 (Ga. Ct. App. 1991) ("[S]tatements of opinion, general commendations and sales puffing cannot constitute the basis for a claim of fraud.").  For this reason, Georgia courts have rejected fraud-based claims based solely on opinion statements regarding the general quality of a product.  *See, e.g.*, *Hill v. Jay Pontiac, Inc.*, 381 S.E.2d 417, 418-19 (Ga. Ct. App. 1989) (Georgia Fair Business Practices Act consumer claims, Ga. Code Ann. § 10-1-390 *et seq*., could not be predicated on alleged representations that car was "new," "in excellent condition," and "free from defects"; such statements were mere "dealer's talk" or "puffing"); *Hicks v. Sumter Bank & Trust Co.*, 604 S.E.2d 594, 597 (Ga. Ct. App. 2004) (bank vice president's representations "that the property was ready for development and could support a residential project were 'expressions of opinion, general commendations, and sales puffing,'" which cannot support a claim for fraud or misrepresentation) (citation omitted).

The same is true here.  Electrolux's statements about the quality of its washing machines – even if they were relevant to the alleged defect of which plaintiffs complain – are not statements of fact about the physical attributes of its product that can be affirmatively tested.  Instead, they are statements of opinion typically used in advertising – or puffery – and therefore cannot form the basis of a consumer fraud claim.

(b)    The GUDTPA Claim Also Fails for Lack of Reliance.

To state a GUDTPA claim, plaintiff Boyd must also "'show some causal connection between something [the defendant] has done and his own nonspeculative damages in order to receive relief.'"  *In re Johnston Indus., Inc.*, 300 B.R. 821, 824 (M.D. Ga. 2003) (alteration in original) (quoting *Friedlander v. HMS-PEP Prods., Inc.*, 485 S.E.2d 240, 242 (Ga. Ct. App. 1997)).  The Amended Complaint quotes statements from "Frigidaire's website" such as Electrolux washers will "gently wash[] and completely dr[y] to keep your clothes looking their best," and will make "your clothes feel fresher and last longer."  (Am. Compl. ¶ 30.)  However, neither plaintiff Boyd nor any other named plaintiff alleges that he or she actually viewed and/or relied upon any such representations before purchasing his or her washing machine.  Accordingly, plaintiff Boyd's GUDTPA claim fails for this reason as well.

(c)    Plaintiff Boyd Is Not Likely To Be Harmed Absent Injunctive Relief.

The GUDTPA permits only injunctive relief, ***not*** money damages or disgorgement of profits.[8]  *See* Ga. Code Ann. § 10-1-373 (West 2003); *see also Dering v. Serv. Experts Alliance LLC*, No. 1:06 CV-00357-RWS, 2007 WL 4299968, at *10 (N.D. Ga. Dec. 6, 2007) ("Georgia courts have consistently held that monetary damages are not awarded under the GUDTPA.")  Moreover, a plaintiff must seek relief from ***future*** harm.  *See Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002) ("By definition an injunction provides relief from ***future*** wrongful conduct: '[t]he remedy by injunction is to prevent, prohibit or protect from

---

[8]    In the Prayer for Relief, plaintiffs request "injunctive and/or declaratory relief" that "includ[es]" an order requiring Electrolux "to disgorge ***all*** profits made as a result of its sales of the Washing Machine Products."  (Am. Compl. Prayer for Relief ¶ D(iv) (emphasis added).)  That request is plainly an attempt to make an end-run around the GUDTPA's provision that damages are not appropriate under the statute and should be rejected out of hand.  As noted above, the GUDTPA targets violations similar to those under the federal Lanham Act.  However, the statutes are vastly different with respect to available damages in two critical respects:  1) the Lanham Act expressly allows for disgorgement of profits, but the GUDTPA does not; and 2) disgorgement damages are a matter completely separate and apart from injunctive relief, as they are separately provided for under the Lanham Act.  *Compare* 15 U.S.C. §§ 1116 and 1117, *with* Ga. Code Ann. § 10-1-373 (West 2003).  Thus, disgorgement simply is unavailable to plaintiffs under the GUDTPA.

future wrongs and does not afford a remedy for what is past.'") (emphasis and alteration in original) (citation omitted).  Thus, GUDTPA claims fail as a matter of law absent allegation of facts demonstrating a likelihood of future harm.  *See id.*; *see also Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137, 140 (Ga. Ct. App. 2001).

    In *Catrett*, for example, the plaintiff bought a truck from the defendant after being told the truck was a "demonstrator" and had not been owned by anyone else, when in reality it had been owned and involved in two serious accidents.  560 S.E.2d at 103.  The court held that "[d]amage allegedly caused by the [prior advertising] misrepresentation[s]" does not "raise a factual question about the likelihood of some future wrong" and "cannot be remedied through a [GUDTPA] injunction."  *Id.* at 106.

    The same is true here.  Plaintiff Boyd does not allege any facts capable of establishing that she is at risk for future harm absent injunctive relief.  Moreover, the fact that plaintiff Boyd is also alleging warranty and unjust enrichment claims demonstrates that she believes she has an adequate remedy at law and therefore is not entitled to an injunction.  *See Hous. Auth. v. MMT Enters., Inc.*, 475 S.E.2d 642, 642 (Ga. 1996) ("A trial court may not grant equitable relief if a party has an adequate remedy at law.").  As such, she is foreclosed from asserting a GUDTPA claim as a matter of law.

## 2.    *Plaintiff Brown Fails To State a Claim Under California's Unfair Competition Law (Count VI).*

    The Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), "does not proscribe specific acts, but broadly prohibits 'unfair competition,' meaning 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising,'" *Dey v. Cont'l Cent. Credit*, 88 Cal. Rptr. 3d 241, 245 (Cal. Ct. App. 2008) (citation omitted).  "Because . . . [the UCL] is written in the disjunctive, it establishes three varieties of unfair

competition – acts or practices which are unlawful, or unfair, or fraudulent.  In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Id.* (quotation marks and citation omitted).  Here, plaintiff Brown attempts to state claims under all three prongs of the UCL, but fails to do so under each and every one of them.

>(a)  Without an Underlying Violation of Law, Electrolux's Conduct Cannot Be "Unlawful" Under the UCL.

The Amended Complaint asserts that Electrolux has violated a variety of statutes.  As demonstrated above, however, the Amended Complaint fails to establish any of these causes of action.  Accordingly, those alleged violations cannot establish "unlawfulness" under the UCL. *See Davis v. Pac. Capital Bank*, 550 F.3d 915, 918 (9th Cir. 2008) (plaintiff failed to state a claim under the UCL's "unlawful" prong in the absence of showing a violation of an underlying predicate statute); *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 128 (Cal. Ct. App. 2006) (plaintiff who had not proved CLRA elements could not use the CLRA as a basis for alleging violation of the UCL).

>(b)  Electrolux's Conduct Is Not "Unfair" Under the UCL Because It Does Not Violate a Specific Legislative Policy.

Under well established California law, *see Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 543 (Cal. 1999), a claim asserted under the "unfairness" prong of the UCL "must be 'tethered' to specific constitutional, statutory, or regulatory provisions," *Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389, 394-95 (Cal. Ct. App. 2002); *see also Van Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007) ("[T]he rationale of *Cel-Tech* . . . compels the conclusion, at least in this Court's judgment, that the unfairness prong must . . . be tethered to some legislative policy; otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike."); *accord Bernardo v. Planned Parenthood*

33

*Fed'n of Am.*, 9 Cal. Rptr. 3d 197, 223-25 (Cal. Ct. App. 2004).  Here, plaintiff Brown has not made any allegations that Electrolux's conduct violates legislatively declared policy.  As a result, the "unfair" prong of the UCL is not met.

> (c)   Plaintiff Does Not Adequately Allege That Electrolux's Conduct
>        Violates the "Fraud" Prong of the UCL.

To state a claim under the "fraud" prong of the UCL, a plaintiff must allege that members of the public are likely to be deceived by the defendant's fraudulent business practice.  *See Buller v. Sutter Health*, 74 Cal. Rptr. 3d 47, 51 (Cal. Ct. App. 2008).  Where – as here – a complaint focuses on a respondent's alleged failure to disclose, the complaint must allege an affirmative duty to disclose the information at issue.  *Id.* at 52; *see also Berryman v. Merit Prop. Mgmt.*, 62 Cal. Rptr. 3d 177, 188 (Cal. Ct. App. 2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL"); *Daugherty*, 51 Cal. Rptr. 3d at 128-29 (failure to disclose a fact one has no affirmative duty to disclose does not satisfy the "likely to deceive" requirement of the UCL).  Here, plaintiff Brown has not pled facts indicating that Electrolux had a duty to disclose information to consumers under the UCL.  Accordingly, he has failed to state a claim under the "fraud" prong of the statute.  *See Plotkin v. Sajahtera, Inc.*, 131 Cal. Rptr. 2d 303, 311-12 (Cal. Ct. App. 2003); *Berryman*, 62 Cal. Rptr. 3d at 187-88; *Searle v. Wyndham Int'l*, 126 Cal. Rptr. 2d 231, 236-37 (Cal. Ct. App. 2002); *Kunert v. Mission Fin. Servs. Corp.*, 1 Cal. Rptr. 3d 589, 606 (Cal. Ct. App. 2003).

Moreover, even if plaintiff Brown had properly alleged that Electrolux engaged in fraudulent conduct under the UCL, his claims would still fail because he has not alleged that he relied on that conduct to his detriment.  As the California Supreme Court recently confirmed in *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009), a named plaintiff alleging UCL claims on behalf of a proposed class must meet the standing requirements of the UCL.  *Id.* at 31-32.

34

Specifically, the plaintiff must allege that he "'has suffered injury in fact and has lost money or property as a result of the unfair competition.'"  *Id*. at 31 (quoting Cal. Bus. & Prof. Code § 17204).  This "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."  *Id.* at 39.

Here, Mr. Brown has not identified any representation by Electrolux that he relied upon in purchasing his washing machine; nor has he identified any money or property that he allegedly lost as a result of such reliance.  For this reason too, his UCL claim fails.

### 3. *Plaintiff Vogler Cannot State a Claim Under the Texas Deceptive Trade Practices Act (Count VII).*

The Texas Deceptive Trade Practices-Consumer Protection Act ("TDTCPA") "contains a list, commonly referred to as the 'laundry list,' of actions declared to constitute false, misleading, or deceptive acts." *Bailey v. Smith*, No. 13-05-085-CV, 2006 WL 1360846, at *10 (Tex. App. May 18, 2006) (citing Tex. Bus. & Com. Code Ann. § 17.46(b) (Vernon Supp. 2005)).  Although plaintiff Vogler fails to cite which of the TDTCPA's twenty-seven subdivisions Electrolux allegedly violated, he appears to rely upon Sections 17.46(b)(5), (7) and (24).  (*See* Am. Compl. ¶ 88.)  *See also McClung v. Wal-Mart*, 866 F. Supp. 306, 310 (N.D. Tex. 1994) (surmising the particular TDTCPA violations alleged where "[p]laintiff never clearly states or defines what elements of § 17.46 he claims [were] violated").  Section 17.46(b)(5) declares unlawful "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ."  Section 17.46(b)(7) declares unlawful "representing that goods or services are of a particular standard, quality, or grade . . . if they are of another."  And Section 17.46(b)(24) declares unlawful "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to

disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

In order "to succeed in a DTPA laundry-list suit, a plaintiff must show that '(1) he is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts [laundry list], (3) on which the plaintiff relied, and (4) these acts constituted a producing cause of the consumer's damages.'" *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 705 (Tex. 2002) (quoting *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App. 2000) (citing Tex. Bus. & Com. Code § 17.50(a)(1) (Vernon 2002)).[9]  Plaintiff Vogler's TDTCPA claims fail to satisfy these requirements for several reasons.

> (a)   Plaintiff Vogler's Claims Under 17.46(b)(5) and (7) Fail Because He Has Not Alleged an Actionable, Affirmative Misrepresentation.

Subsections "(5) [and] (7) . . . of the [TDTCPA] require an affirmative representation regarding the . . . consumer transaction which was wrong." *Birdsong v. Toyota Motor Credit Corp.*, No. 2000-C1-06279, 2002 WL 32830975, at *3 (D. Tex. May 15, 2002) (citing Tex. Bus. & Com. Code § 17.50(b)(5) and (7) (Vernon Supp. 2001); *Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1099 (5th Cir. 1988)); *see also Steptoe v. True*, 38 S.W.3d 213, 217 (Tex. App. 2001) ("A DTPA misrepresentation usually requires an affirmative representation . . . ."). Mr. Vogler has not alleged any language, advertisement or other communication in which Electrolux represented that his washer had "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities" that it did not have, or was "of a particular standard, quality, or

---

[9]     "Additional elements are required by the various subdivisions of Section 17.46(b)." *Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493, 501 (Tex. App. 2002).  Thus, for example, to state a Section 17.46(b)(24) non-disclosure claim, a plaintiff must allege "(1) failure to disclose information concerning goods or services, (2) which was known at the time of the transaction, (3) . . . such failure was intended to induce the consumer into a transaction, (4) which the consumer would not have entered had the information been disclosed." *Webb v. Unumprovident Corp.*, 507 F. Supp. 2d 668, 680 (W.D. Tex. 2005) (citation omitted); *see also Brown Found. Repair & Consulting, Inc. v. Henderson*, 719 S.W.2d 229, 230 (Tex. App. 1986) ("The supreme court has emphasized that liability under this section requires that the defendant *know* at the time of the transaction the fact he fails to disclose.") (citing *Robinson v. Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex. 1982)).

grade" that it was not.  (*See* Am. Compl. ¶ 15.)  *See also* Tex. Bus. & Com. Code Ann. §

17.50(b)(5) & (7) (Vernon Supp. 2008).  Indeed, as set forth in Section II.E.1.a, *supra*, the only

affirmative representations by Electrolux identified in plaintiffs' Amended Complaint are

entirely irrelevant to the alleged defect and, in any event, are nothing more than mere "puffery,"

which cannot give rise to a consumer fraud claim.  *See Reynolds v. Murphy*, 188 S.W.3d 252,

268 (Tex. App. 2006) (so-called promises in investment newsletter about the quality and benefits

of defendants' investment advice constitute non-actionable puffery and cannot support a

TDTCPA claim).

  Moreover, to the extent plaintiff Vogler seeks to premise his TDTCPA claim on the

allegation that Electrolux "omitted and concealed material facts" about its products, the claim

would fail.  This is because "concealment" or "non-disclosure" of information, standing alone,

does not give rise to a cause of action under Sections 17.46(b)(5) and (7) of the statute.

*Birdsong*, 2002 WL 32830975, at *3; *see also* Tex. Bus. & Com. Code Ann. § 17.46(b)(5) & (7)

(Vernon Supp. 2008) (plain language of the statute requires an affirmative representation

concerning the goods or services in question).

  In short, because plaintiff Vogler has not identified an alleged misrepresentation by

Electrolux regarding the alleged defect of which he complains, his consumer fraud claim fails as

a matter of law.

    (b) <u>Plaintiff Vogler's TDTCPA Claim Also Fails for Lack of Reliance</u>.

  Detrimental reliance is an essential element of each of Mr. Vogler's TDTCPA claims.

*See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B) (expressly requiring detrimental reliance);

*see also Henry Schein*, 102 S.W.3d at 686-87 (reversing class certification in part because

"[r]eliance is . . . an element of proof of[] plaintiffs' . . . DTPA 'laundry-list' violations" but the

lower "court did not explain how the issue of whether misrepresentations were communicated to

37

individual plaintiffs could be tried manageably in a class action"); *see also Spector v. Norwegian Cruise Line Ltd.*, No. 01-02-00017-CV, 2004 WL 637894, at *7 (Tex. App. Mar. 30, 2004) (similar); *Peltier Enter., Inc. v. Hilton*, 51 S.W.3d 616, 624 (Tex. App. 2001) (similar). Although the Amended Complaint quotes puffery from "Frigidaire's website" regarding the washing machines at issue (*see* Am. Compl. ¶ 30), the simple fact remains that Mr. Vogler never alleges that *he* viewed any such representations in connection with *his* purchase, or that *he* relied upon them in buying the washer, as the TDTCPA requires.  As such, his Amended Complaint is deficient as a matter of law and should be dismissed.

        (c)        <u>Even If Plaintiff Vogler Had Stated a Valid TDTCPA Claim, the Claim Must Still Be Abated for 60 Days for Failure To Give Notice</u>.

       Even if plaintiff Vogler's TDTCPA claims were viable, they would still be subject to abatement in light of Mr. Vogler's failure to comply with the statute's notice provisions.  As a mandatory prerequisite to filing a TDTCPA claim, "at least sixty days prior to bringing suit" a "consumer must (1) give written notice advising the defendant, in reasonable detail, of the consumer's specific complaint, [and] (2) the amount of actual damages and expenses, including attorney's fees, reasonably incurred by the consumer in asserting the claim."  *Smith & White Health Plan, Inc. v. Ruffino*, No. C14-94-00039-CV, 1994 WL 107286, at *2 (Tex. App. Mar. 31, 1994) (citing Tex. Bus. & Com. Code Ann. § 17.505(a) (Vernon Supp. 1994)).  "During the 60-day period a written request to inspect, in a reasonable manner and at a reasonable time and place, the goods that are the subject of the consumer's action or claim may be presented to the consumer."  Tex. Bus. & Com. Code Ann. § 17.505(a).  In the face of a plaintiff's failure to comply with this notice provision, the court "must abate the proceedings for sixty days."  *Smith & White Health Plan*, 1994 WL 107286, at *2. (citing *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex.

1992)).[10]  The Amended Complaint does not allege that Mr. Vogler ever provided notice to Electrolux as required by the statute.  Accordingly, his TDTCPA claims must be abated.

In addition, a plaintiff filing a putative class action under the TDTCPA must send:

> to the consumer protection division:  (1) a copy of the notice required by Section 17.505(a), by registered or certified mail, at the same time the notice is given to the person complained against; and (2) a copy of the petition in the action not later than the earlier of:  (A) the 30th day after the date the petition is filed; or (B) the 10th day before the date of any hearing on class certification or a proposed settlement.

Tex. Bus. & Com. Code Ann. § 17.501(a) (Vernon Supp. 2008).  Mr. Vogler purports to act in a representative capacity by asserting TDTCPA claims on behalf of "[a]ll persons . . . in the State of Texas . . . who purchased . . . any of the Washing Machines, during the previous four (4) years."  (Am. Compl. ¶¶ 20, 85-92.)  Yet nowhere in the Amended Complaint does he allege compliance with Section  17.501(a)'s notice requirements.  For this additional, independent reason, Mr. Vogler's TDTCPA claims must be abated for sixty days.  Tex. Bus. & Com. Code Ann. § 17.501(b) (Vernon 2008).

**4.      *Plaintiff Terrill Does Not State a Valid Claim Under Wisconsin's Deceptive Trade Practices Act (Count VIII).***

The Wisconsin Deceptive Trade Practices Act ("WDTPA") "generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements."  *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 244 (Wis. 2004).  Plaintiff Terrill's WDTPA claim fails because he does not allege any actionable affirmative misrepresentation by Electrolux; nor does he allege that he relied on the Electrolux "advertisements" at issue, or that those advertisements caused him any loss.

---

[10]        The sixty-day abatement period runs from the date that written notice is properly served.  Tex. Bus. & Com. Code Ann. § 17.505(e).

(a)     Plaintiff Terrill Has Not Identified an Affirmative Misrepresentation Capable of Giving Rise to a WDTPA Claim.

To assert a statutory consumer fraud claim under Wisconsin law, the plaintiff must allege, *inter alia*, that "the defendant has made . . . an  . . . 'assertion, representation or statement of fact' that is 'untrue, deceptive or misleading.'" *Id.* (quoting Wis. Stat. § 100.18(1)).  Plaintiff Terrill has not made such an allegation in this case and, as a result, his consumer fraud claim fails.

As set forth in section II.E.1.a, *supra*, the only affirmative statements by Electrolux identified in the Amended Complaint (*see* Am. Compl. ¶ 30) are entirely irrelevant to plaintiffs' claims against the company and, in any event, are merely statements of opinion about the quality of the product, or "puffery."  Wisconsin courts have made clear on several occasions that such "puffery" cannot give rise to a consumer fraud claim.  *See Stuart v. Weisflog's Showroom Gallery, Inc.*, 746 N.W.2d 762, 780 (Wis. 2008) ("[E]xaggerations or statements of opinion that a seller makes claiming that his product is the best or that the quality of his work is the finest are mere 'puffery'; and therefore, they are legally insufficient to support a claim for misrepresentation.").  Indeed, in very similar circumstances, the Wisconsin Supreme Court rejected WDTPA claims alleged by the state attorney general against a seller of washing machines that its products were the "best" and "finest."  *State v. Am. TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 712 (Wis. 1988).  As the court explained there, the defendant's "assertion is not a statement of fact that can be proven false.  Rather, it is an example of puffery, long considered an acceptable advertising technique."  *Id.*  As a result, the court held that the state failed to properly plead a WDTPA claim.  *Id.  See also Tietsworth*, 677 N.W.2d at 246 (concluding that Harley-Davidson's advertising its TC-88 motorcycle as a "masterpiece" and of "premium quality" could not support a consumer fraud claim).  The same rule applies here.

Electrolux's opinion statements that its washing machines are "stylish, cutting-edge, and easy-to-use" (Am. Compl. ¶ 30) do not constitute affirmative misstatements capable of giving rise to a consumer fraud claim.

In addition, to the extent plaintiff Terrill's WDTPA action is premised on the allegation that Electrolux failed to disclose an alleged defect in its washing machines, it still fails.  (*See, e.g.*, Am. Compl. ¶¶ 1, 2, 4, 5, 8, 12, 23, 37, 97.)  The Wisconsin Supreme Court has made it clear that "nondisclosure is not an 'assertion, representation or statement of fact,'" as required by the statute.  *Tietsworth*, 677 N.W.2d at 246 (citing Wis. Stat. § 100.18(1)) (collecting cases).  According to the court:

> Silence – an omission to speak – is insufficient to support a claim under Wis. Stat. § 100.18(1).  The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading.  To permit a nondisclosure to qualify as an actionable "assertion, representation or statement of fact" under Wis. Stat. § 100.18(1) would expand the statute far beyond its terms.

*Id*. at 245; *see also id*. n.4 (collecting cases and stating "we have discovered no case upholding a DTPA claim premised on a nondisclosure"); *see also State v. McGuire*, 735 N.W.2d 555, 564 (Wis. Ct. App. 2007) ("§ 100.18 prohibits only affirmative assertions, not a failure to disclose . . . . [I]t provides no remedy for omissions of material facts.") (citing *Tietsworth*, 677 N.W.2d at 244-45); *see also Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *3-4 (W.D. Wis. Sept. 28, 2005) (dismissing WDTPA claim for failing to adequately allege affirmative misrepresentation and reliance).  For this reason too, Count VIII should be dismissed.

        (b)      The WDTPA Claim Also Fails for Lack of Reliance.

"Reliance is an aspect of the third element [of a claim under § 100.18], whether a representation caused the plaintiff's pecuniary loss.'"  *Spacesaver Corp. v. Marvel Group, Inc.*,

621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) (alteration in original) (quoting *Novell v. Migliaccio*,

749 N.W.2d 544, 553 (Wis. 2008)).

> In other words, to satisfy the element of causation for a claim
> under [the WDTPA], it is not enough for the plaintiff to show that
> it sustained a loss that is somehow connected to a
> misrepresentation made to "the public."  Rather, the question is
> whether "the representation . . . materially ***induce[d] the plaintiff's
> decision to act*** and [whether] plaintiff would have acted in the
> absence of the representation."

*Id.* (emphasis and alterations in original) (quoting *Novell*, 749 N.W.2d at 554); *see also St. Paul*

*Mercury Ins. Co. v. Viking Corp.*, No. 04-C-1124, 2007 WL 129063, at *26 (E.D. Wis. Jan 12,

2007) ("A plaintiff must . . . show actual reliance on the representation" in order to state a

WDTPA claim.) (citation omitted), *aff'd*, 539 F.3d 623 (7th Cir. 2008).

Plaintiffs cite several statements from the Frigidaire website regarding washing machines

generally.  (*See* Am. Compl. ¶ 30.)  But plaintiff Terrill never alleges that ***he*** viewed and relied

upon any such representations in connection with ***his*** purchase of the washing machine at issue,

as required under the WDTPA.  Thus, "even assuming that the [alleged] statements" from

Frigidaire's website "could be deemed misleading, the statements could not have ***caused*** [Mr.

Terrill] any losses if [he] did not see them."  *Valenti v. Hewlett-Packard Co.*, 685 N.W.2d 172

(Wis. Ct. App. 2004) (table decision), *text available at* 2004 WL 1277490, at *1 (emphasis

added).  For this reason too, plaintiff Terrill's WDTPA claim is fatally deficient and should be

dismissed.  *See id.* ("We agree with the trial court that the consumers' failure to see or rely on

any particular statements regarding the cartridges prior to making their purchase was fatal to

their claim under Wis. Stat. § 100.18."); *see also Spacesaver Corp.*, 621 F. Supp. 2d at 663

(dismissing WDTPA claim for failure to allege that "defendant made any misrepresentations to

***plaintiff***"); *TKO, Ltd. v. Wayner Manternach & Grayfield Dev., LLC*, 587 N.W.2d 456 (Wis. Ct.

App. 1998) (table decision), *text available at* 1998 WL 731165, at *2 (affirming dismissal of WDTPA claim "by virtue of [plaintiff's] admission that it did not rely upon any written or oral statements by [defendant]").

>     **5.**      ***Even If Plaintiffs Had Properly Pled Each Element of Their Consumer Fraud Claims, They Are Not Pled With the Requisite Particularity.***

Finally, Counts I and VI-VIII also fail because even if plaintiffs had alleged all the requisite elements of their claims, they are not pled with sufficient particularity.  While the specific allegations made by plaintiffs with regard to each consumer fraud action vary based on the requirements of each of the relevant state's laws, one thing is consistent throughout plaintiffs' consumer fraud claims:  plaintiffs never identify what deceptive conduct Electrolux allegedly engaged in or what misleading statements the company made, when the statements and/or conduct occurred, whether plaintiffs were exposed to the statements and/or conduct, or how the statements and/or conduct affected plaintiffs' washing machine purchases.  Plaintiffs' conclusory assertion that Electrolux acted fraudulently – without any identification of the "who, what, when, where and how" of the alleged fraud – fails to state a claim under Rule 9(b).  *See Ziemba*, 256 F.3d at 1202 (Rule 9(b) is satisfied only if the complaint sets forth "'(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'") (citation omitted)).  Thus, all of plaintiffs' consumer fraud claims should be dismissed on this ground as well.

## CONCLUSION

For the foregoing reasons, Electrolux respectfully requests that the Court enter an order dismissing all counts of plaintiffs' First Amended Complaint.

S/BENJAMIN H. BREWTON
STATE BAR NO. 002530
TUCKER, EVERITT, LONG,
BREWTON & LANIER
P. O. BOX 2426
AUGUSTA, GEORGIA 30903
Telephone: (706) 722-0771
Facsimile: (706) 722-7028
E-mail:   bbrewton@thefirm453.com

and

SKADDEN, ARPS, SLATE MEAGHER
    & FLOM LLP
John H. Beisner (*pro hac vice*)
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
Email:  john.beisner@skadden.com

J. Russell Jackson (*pro hac vice*)
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
Email:  russell.jackson@skadden.com

Attorneys for Defendant
Electrolux Home Products, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 1st day of September, 2009, I have served a copy of the foregoing upon all interested parties in accordance with ECF rules by electronically filing the foregoing with the Clerk of Court using the CM/ECF system.

<u>S/BENJAMIN H. BREWTON</u>
STATE BAR NO. 002530
TUCKER, EVERITT, LONG,
BREWTON & LANIER
P. O. BOX 2426
AUGUSTA, GEORGIA 30903
Telephone: (706) 722-0771
Facsimile: (706) 722-7028
E-mail:   bbrewton@thefirm453.com