**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| **MICHAEL TERRILL, ROBERT BROWN, MICHAEL VOGLER, PALECIA BOYD, and DENISE PACK, On behalf of themselves and all others Similarly situated,** | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **CASE NO:  CV-108-030** |
| **v.** | ) ) | |
| **ELECTROLUX HOME PRODUCTS, INC., d/b/a FRIGIDAIRE,** | ) ) ) ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………………………..1

II.     BACKGROUND……………………………………………………………………..3

III.    STANDARD OF REVIEW…………………………………………………………..5

IV.     ARGUMENT………………………………………………………………………...6

        A.      GEORGIA'S CHOICE OF LAW RULES REQUIRE THAT GEORGIA LAW IS
                APPLIED……………………………………………………………………..6

                1.      Choice of Law Analysis is Premature……………………………………..6

                2.      Georgia Law Applies to Plaintiffs' Common Law Claims…………………7

                3.      Due Process Requires the Application of Georgia Law……………………8

        B.      PLAINTIFFS HAVE ADEQUATELY PLED EACH OF THEIR CLAIMS……9

                1.      The FAC Adequately Asserts Elements of Breach of Express Warranty…9

                        i.      Plaintiffs Allege Defects Covered by Defendant's Warranty………10

                        ii.     Plaintiffs Experienced Problems with the Washing Machines During
                                the Warranty Period…………………………………………………12

                        iii.    Plaintiffs Have Provided Adequate Notice and Opportunity to
                                Cure…………………………………………………………………13

                                a.      Plaintiffs Provided Reasonable Notice by Initiating this
                                        Action………………………………………………………..13

                                b.      Plaintiffs Provided Reasonable Notice Because Defendant
                                        had Pre-Existing Knowledge and Defendant has Misconstrued
                                        the Nature of the Beach……………………………………15

                2.      Plaintiffs Have Adequately Pled the elements of Breach of Implied Warranty
                        ……………………………………………………………………………18

                        i.      Defendant's Washing Machines Are Unmerchantable and Were
                                Defective at the Time of Sale………………………………………18

ii.　　As with Their Express Warranty Claims, Plaintiffs Have Properly Alleged Notice and Opportunity to Cure Breach of Implied Warranty …………………………………………………………………………18

iii.　　Plaintiffs' Implied Warranty Claims Do Not Suffer From Lack of Privity…………………………………………………………….....21

3.　　Plaintiffs Have Adequately Alleged a Claim for Unjust Enrichment………22

i.　　Plaintiffs have Conveyed a Benefit to Electrolux…………………22

ii.　　Plaintiffs May Assert Unjust Enrichment Claims in the Alternative ………...………………………………………………………..25

4.　　Plaintiffs Have Satisfied Requirements of the Magnuson-Moss Act for the Same Reasons They Have Adequately Pled Express and Implied Warranty Claims…………………………………………………………………..28

C.　　PLAINTIFFS HAVE PLED FACTS SUFFICIENT TO STATE CLAIMS PURSUANT TO STATE CONSUMER PROTECTION STATUTES……………30

1.　　Plaintiffs Have Pled a Valid Claim Pursuant to Georgia's Unfair and Deceptive Trade Practices Act……………………………………………30

i.　　Plaintiffs have alleged actionable misconduct under the GUDTPA ……………………………………………………………………30

ii.　　Plaintiffs' GUDTPA claim does not fail for "lack of reliance." ……………………………………………………………………33

iii.　　Plaintiffs have Pled facts sufficient to seek injunctive relief under the GUDTPA……………………………………………………...34

2.　　Plaintiff Brown Has Pled a Valid Claim Under California's Unfair Competition Law……………………………………………………………36

i.　　Plaintiff Brown has properly alleged unlawful conduct under the UCL ……………………………………………………………………36

ii.　　Plaintiff Brown has alleged unfair conduct under the UCL………37

iii.　　Plaintiff Brown has alleged fraudulent business practices under the UCL……………………………………………………………..38

3.　　Plaintiff Vogler Has Pled a Valid Claim Under the Texas Deceptive Trade Practices Act………………………………………………………………39

i.      Plaintiff Vogler alleges actionable misconduct by Defendant under the TDTP-CPA…………………………………………………..40

ii.     Plaintiff Vogler's TDTP-CPA claim does not fail for "lack of reliance." ……………………………………………………41

iii.    Plaintiff Vogler provided adequate notice under the TDTP-CPA…42

4.      Plaintiff Terrill has Pled a Valid Claim Pursuant to Wisconsin's Deceptive Trade Practices Act…………………………………………………42

i.      Plaintiff Terrill alleges misrepresentations which gives rise to his WDTPA claim…………………………………………………43

ii.     Plaintiff Terrill has alleged that the false representations induced a loss……………………………………………………………..44

5.      Plaintiffs' Have Pled Their Deceptive Trade Practices Claims with Sufficient Particularity Under Fed.R.Civ.P. 9(b) ………………………..44

V.      CONCLUSION……………………………………………………………..45

## TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Hague*, 449 U.S. 302, 320 (1981)....................................................................... 7

*Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1176 (11th Cir. 2009) ............................................. 3

*Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710 (7th Cir. 1992)............................................................. 14

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................................... 4

*Auburn Maranatha Inst. v. Georgia Korean Church*, 501 S.E.2d 846, 848 (Ga. Ct. App. 1998)...... 22

*Avnet, Inc. v. Wyle Labs., Inc.*, 437 S.E.2d 302, 306 (Ga. 1993).................................................... 6

*Ball v. Johanns*, No. CIV. S-07-1190 LKK/DAD, 2008 U.S. Dist. LEXIS 9609, at * (E.D. Cal. Jan. 29, 2008)........................................................................................................................... 26

*Ball v. Sony Elecs., Inc.*, No. 05-C-307-S, 2005 U.S. Dist. LEXIS 22004, at *18 (W.D. Wis. Sept. 28, 2005)......................................................................................................................... 26

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) .................................................................................... 3

*Brenner v. Future Graphics LLC*, No. 1:06-CV-0362-CAP, 2007 U.S. Dist. LEXIS 98493, at *21-*22 (N.D. Ga. Sept. 10, 2007)............................................................................................ 6

*Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2007 U.S. Dist. LEXIS 13155, at *28-*29 (N.D. Cal. Feb. 12, 2007)........................................................................................ 27

*Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639 (2002) ....................................................... 34

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527 (Cal. 1999)....................................................................................................................................... 36

*Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App. 2000) ...................................... 40

*Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974)..................... 20

*Church of Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 9-15 (Minn. 1992)................... 14

*Cipollone v. Liggett Group*, 505 U.S. 504, 525 (1992) ................................................................. 9

*Conagra*, 2008 U.S. Dist. LEXIS 40753, at *36 ....................................................................... 22

*Conley* v. *Gibson*, 355 U.S. 41, 47 (1957) ................................................................................... 3

*Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).............................................................. 4

*Davidson v. Wee*, 379 P.2d 744, (Ariz. 1963).......................................................................... 12, 13

*Davita, Inc. v. Nephrology Associates*, 253 F. Supp. 2d 1370 (S. D. Ga. 2003) ......................... 35

*Energy Court, Inc. v. Dornier Medical Systems, Inc.*, 765 F. Supp. 724; 730 (N.D. Ga. 1991) .. 30

*Frank Biscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983)..................... 6

*Franklin v. Augusta Dodge, Inc.*, 652 S.E.2d 862, 865 (Ga. Ct. App. 2007) .............................. 28

*Gochey v. Bombardier, Inc.*, 572 A.2d 921, 923-24 (Vt. 1990) ................................................. 28

*Godfry v. State Farm Mut. Ins. Co.*, No. 08-4813, 2009 U.S. Dist. LEXIS 19123, at *7 n.4 (E.D. Pa. Mar. 4, 2009)............................................................................................................... 5

*Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009)................ 25

*Goldstein v. Searle,* 378 N.E.2d 1083, 1088  (Ill. Ct. App. 1978)............................................... 13

*Graham v. Wyeth Labs.*, 666 F. Supp. 1493, 1499-1500 (D. Kan. 1987)................................... 12

*Henry Schein v. Stromboe*, 102 S.W.3d 675, 705 (Tex. 2002).............................................. 40, 41

*Hill v. Jay Pontiac, Inc.*, 381 S.E. 2d 417 (Ga. App. 1989)........................................................ 31

*Hines v. Hash*, 843 S.W. 2d 464, 468 (Tex. 1992) ................................................................. 41, 42

*Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 722 (2003)................................................... 23

*Hodgson v. Man Fin. Inc.*, No. 06-1944, 2006 U.S. Dist. LEXIS 94307, at * 1 (E.D. Pa. Dec. 29, 2006) ................................................................................................................................... 5

*Hudson v. Gaines*, 403 S.E.2d 852 (Ga. Ct. App. 1991) ....................................................... 12, 13

iv

*In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 670-71 (E.D. Mich. 2001) ................ 23

*In re Conagra Peanut Butter Prods. Liab. Litig.*, No. 1:07-MD-1845-TWT, 2008 U.S. Dist. LEXIS 40753, at *3 (N.D. Ga. May 21, 2008) ............................................................. 5, 22

*In re Johnston Indus., Inc.*, 300 B.R. 821, (M.D. Ga. 2003) ...................................................... 32

*In Re Tobacco II Cases*, 207 P.3d 20, __ (Cal. 2009) ........................................................... 37, 38

*In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 678 n.6 (N.D. Ga. 2003) ............................. 6, 7

*In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 9585, at *40 (D.D.C. Apr. 11, 2001) .................................................................... 24

*Internat'l Brominated Solvents Ass'n v. ACGIH, Inc.*, 393 F. Supp. 2d 1362 (M.D. Ga. 2005) .. 35

*Iqbal*, 129 S. Ct. at 1950 ............................................................................................................ 4

*Jaguar Cars*, 2006 U.S. Dist. LEXIS 41166, at *10-*11, *12 n.3 ............................................ 19

*Jeep Eagle Sales Corp. v. Mack Massey Motors, Inc.*, 814 S.W.2d 167, 175-76 (Tex. App. 1991) ....................................................................................................................................... 41

*Johnson v. Jaguar Cars, Inc.*, No. 1:05-CV-3161-RLV, 2006 U.S. Dist. LEXIS 41166, at *12 n.3 (N.D. Ga. June 6, 2006) ....................................................................................................... 17

*Johnson v. Microsoft Corp.*, 802 N.E.2d 712 (Ohio Ct. App. 2003) ........................................ 24

*Jones v. Cranman's Sporting Goods*, 237 S.E.2d 402 (Ga. Ct. App. 1977) ............................... 20

*Kasten v. St.-Gobain Performance Plastics Corp.*, No. 07-cv-449, 2007 U.S. Dist. LEXIS 90510 at *5 (W.D. Wis. Dec. 7, 2007) .......................................................................................... 25

*Koulajian v. Trek Bicycle Corp.*, No. 90-CIV-3156 (LJF), 1992 U.S. Dist. LEXIS 1490, at *1 (S.D.N.Y. Feb. 11, 1992) .................................................................................................... 10

*Magliaro v. Lewis*, 203 Ga. App. 632 (1992) ........................................................................... 35

*Manhattan Constr. Co. v. McArthur Elec., Inc.*, No. 1:06-cv-1512, 2007 U.S. Dist. LEXIS 6395 at *22-23 (N.D. Ga. Jan. 30, 2007) ..................................................................................... 25

*Marrale v. Gwinnett Place Ford*, 271 Ga. App. 303 (2005) ..................................................... 33

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 620 (C.D. Cal. 2008) ..................................... 7

*McBride v. Life Ins. Co. of Va.*, 190 F. Supp. 2d 1366, 1378 (M.D. Ga. 2002) ....................... 25

*McFadden v. Dryvit Sys.*, No. 04-103, 2004 U.S. Dist. LEXIS 20604, at *47 (D. Or. Oct. 8, 2004) .................................................................................................................................... 27

*Mendelson v. Gen. Motors Corp.*, 432 N.Y.S.2d 132, 136 (Sup. Ct. 1980) .............................. 27

*Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) ...................................................... 14

*Moore-Davis Motors, Inc. v. Joyner*, 556 S.E. 2d 137 (Ga. Ct. App. 2001) ............................. 35

*Morgan v. AT&T Wireless Services, Inc.*, 2009 WL 3019780 at *11 (Cal. App.2 Dist. Sept. 23, 2009) ......................................................................................................................... 35, 37, 38

*Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 855 (N.D. Ill. 1985) .............................................. 10

*Neal Pope, Inc. v. Garlington*, 245 Ga. App. 49 (2000) ........................................................... 33

*Nessle v. Whirlpool Corp.*, No. 1:07CV3009, 2008 U.S. Dist. LEXIS 56940, at *12-*13 (N.D. Ohio July 25, 2008) ............................................................................................................. 17

*Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 U.S. Dist. LEXIS 36026, at *26 (W.D. Wis. May 15, 2007) ............................................................................................................... 26, 27

*Novell v. Migliaccio*, 749 N.W. 2d 544 (Wis. 2008) .......................................................... 42, 43

*Oden & Sims Used Cars v. Thurman*, 301 S.E.2d 673, 675 (Ga. Ct. App. 1983) ...................... 13

*Paces Ferry Dodge, Inc. v. Thomas*, 174 Ga. App. 642 (1985) ................................................ 33

*Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 6 Cal. Rptr. 3d 148 (2003) ................... 37

*Pastoria v. Nationwide Ins., supra*, 112 Cal. App. 4th 1490, 6 Cal. Rptr. 3d 148 ................... 37

*Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 858-59 (Wis. 1982) .................................. 20

*Peltier Eneter., Inc., v. Hilton*, 51 S.W.3d 616 (Tex. App. 2001) ................................................. 41

*People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530, 206 Cal. Rptr. 164 (1984) .................................................................................................................................... 37

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985) ......................................................... 7

*Powers v. Lycoming Engines*, 245 F.R.D. 226, 233 (E.D. Pa. 2007) ........................................... 22

*Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) ...................... 27

*Regency Nissan, Inc. v. Taylor*, 194 Ga. App. 645 (1990) ........................................................... 33

*Reynolds v. Murphy*, 188 S.W. 3d 252 (Tex. App. 2006) .............................................................. 40

*Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) ............................................ 27

*Seaside Resorts v. Club Car, Inc.*, 416 S.E.2d 655, 664 (S.C. Ct. App. 1992)............................ 14

*Shorewood Packaging Corp. v. Commercial Union Ins. Co.*, 865 F. Supp. 1577, 1581 (N.D. Ga. 1994) .............................................................................................................................. 6, 8

*Shutts*, 472 U.S. at 822.................................................................................................................. 8

*Singer v. AT&T Corp.*, 185 F.R.D. 681, 691 (S.D. Fla. 1998) ...................................................... 5

*Smith v. McClung*, 452 S.E.2d 229, 232 (Ga. Ct. App. 1994) ...................................................... 22

*Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718, 113 Cal. Rptr. 2d 399 (2001)............................................................................................................................ 37

*Soto v. CarMax Auto Superstores, Inc.*, 611 S.E.2d 108 (Ga. Ct. App. 2005) ............................ 18

*Spector v. Norwegian Cruise Line, Ltd.*, No. 01-02-00017-CV, 2004 WL 637894 (Tex. App. Mar. 30, 2004)........................................................................................................................ 41

*Square Intern., Ltd. V. BBDO Atlanta, Inc.*, 455 F. Supp. 2d 1347 (N.D. Ga. 2006).................. 35

*Steptoe v. True*, 38 S.W.3d 213 (Tex. App. 2001)........................................................................ 39

*SunTrust Bank v. Hightower*, 660 S.E.2d 745 (Ga. Ct. App. 2008) (analyzing O.C.G.A. § 11-2- 607(a)(3) ................................................................................................................................. 12

*Taterka v. Ford Motor Co.*, 271 N.W.2d 653 (Wis. 1978)............................................................ 18

*Twombly*, 550 U.S. at 569 n.14...................................................................................................... 4

*U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ....... 44

*U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431, 1441 (1991) ...................... 20

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ......... 44

*WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1363 (N.D. Ga. 2007).................... 25

*Wilkes v. The Cont'l Ins. Co.*, No. 1:96-CV-1392-JEC, 1997 U.S. Dist. LEXIS 14279, at *25 n.6 (N.D. Ga. Aug. 13, 1997).......................................................................................................... 6

*Wolf v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 4th 554, 560, 53 Cal. Rptr. 2d 878 (1996) .................................................................................................................................... 37

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) .......................................... 44

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................................... 36

Cal. U. Com. Code § 2607 ........................................................................................................... 16

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et. seq. ......................... 35

Fair Business Act of 1975, O.C.G.A. §§ 10-1-390, et seq............................................................ 32

FED. R. CIV. P. 8(a)(3)............................................................................................................ 24, 35

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 3

Federal Rules of Civil Procedure 9(b) ......................................................................................... 43

Ga. Code Ann. § 11-2-607(3)(a).................................................................................................... 14

Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-371, *et seq.*............................ 8

Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C.S. § 2301, *et seq.*...................................... 27

O.C.G.A. § 10-1-372(a)(2), & (3)................................................................................................ 32

O.C.G.A. § 10-1-373....................................................................................................................... 33

O.C.G.A. § 10-1-393(b)(2), (3)...................................................................................................... 33

O.C.G.A. § 11-2-607........................................................................................................................ 12

O.C.G.A. § 11-2-607(3)(a) ............................................................................................................. 12

O.C.G.A. § 11-2-714(1) .................................................................................................................. 13

S.C. Code Ann. § 36-2-607(3)(a)............................................................................................. 12, 14

Tex. Bus. & Com. Code § 17.46(b) ......................................................................................... 39, 40

UCC § 2-607(3)(a).......................................................................................................................... 14

Uniform Deceptive Trade Practices Act of 1968, O.C.G.A. §§ 10-1-370, et seq. ...................... 32

Wis. Stat. Ann. § 402.607(3)(a) ..................................................................................................... 16

**Other**

Jane Massey Draper, Annotation, *Sufficiency and Timeliness of Buyer's Notice Under UCC § 2-607(3)(a) of Seller's Breach of Warranty*, 89 A.L.R.5th 319 (2009) ....................................... 13

# I. **INTRODUCTION**

This case involves a major design defect with Defendant Electrolux Home Products, Inc. d/b/a Frigidaire's ("Defendant" or "Electrolux") front-load Washing Machines which result in a host of problems relating to mold and mildew accumulation, including damaged clothing, obnoxious odors, allergies, and internal mold/mildew build-up which renders the product unfit for its intended purpose. Despite Defendant's characterization to the contrary, this case is not about a minor mildew issue. It is about an inherent defect common to each machine sold and which Defendant *was fully aware* of both prior to and after selling its machines. To be certain, in April 2007, Defendant issued an internal Service Flash entitled "WATER COLLECTING IN BOOT ON SELECT FRIGIDAIRE FRONT-LOAD WASHERS" which specifically identifies the common problem that causes what Defendant characterizes as a "perceived concern" of "biofilm" (*i.e.*, mold) formation. (First Amended Complaint ("FAC"), Exhibit A.) Defendant's internal Service Flash further identifies that there is a recognized solution to the common problem: "a new boot style that does not have convolutions is now available for such concerns." (*Id.*)

Despite being fully aware of its machine's common defect, Defendant has failed and refused to inform consumers about the known defect, about its internal Service Flash, or about the availability of a potential solution for the common problems that Defendant has identified. Defendant has persistently concealed the known defect from its customers and, in fact, denies that a problem exists. Rather than taking responsibility for the problem and honoring its commitment to provide a safe and useable product, Defendant simply tells its consumers, like it did the Plaintiffs in this case, to leave the washer door open (contrary to the Owner's Guide) and wipe the basket out after each use.

Given Defendant's refusal to provide any remedial relief to affected consumers, Plaintiffs filed this class action on behalf of themselves and consumers similarly situated for breach of expressed and implied warranties, unjust enrichment, violations of the Magnuson-Moss Act, and violations of state Deceptive Trade Practices Acts. The claims that are asserted by Plaintiffs are

sufficiently pled and outlined in Plaintiffs' twenty-six (26) page FAC.  Just as it shrugged off the outcry of consumer complaints over the appliance Defendant mislabeled as being capable of washing and cleaning clothes, Defendant evades and ignores the substantive allegations of the FAC that it seeks to dismiss.

Defendant is waging a multi-faceted attack on Plaintiffs' well-pled FAC, the allegations of which this court must accept as true and construe in a light most favorable to the Plaintiffs. Defendant argues that Plaintiffs' express warranty claims should be dismissed because its warranty does not apply to the alleged defects and the defects arose outside of the warranty period.  Defendant attempts to dismiss Plaintiffs' implied warranty claim by arguing that Plaintiffs never alleged that the Washing Machines were unmerchantable, that defects existed at the time of sale, and for lack of privity.  Defendant also asserts that Plaintiffs' failed to provide the requisite notice and opportunity to cure.  In addition, Defendant seeks to dismiss Plaintiffs' unjust enrichment claim by arguing that Plaintiffs never conferred a direct benefit on Defendant and because Plaintiffs are asserting an express warranty claim.  Furthermore, Defendant argues that Plaintiffs' claim under the Magnuson-Moss Act fails for the same purported deficiencies in Plaintiffs' warranty claims.

Each of these arguments fail and are readily addressed within the corners of Plaintiffs' FAC. The FAC is replete with references to the Washing Machine design defects that are covered under Defendant's "Full One-Year" and "Limited 2nd-25th Year" warranties.  Plaintiffs have properly asserted an implied warranty claim by alleging that Defendant's Washing Machines are unfit for the ordinary purpose of cleaning clothes and that Washing Machine defects were present at the time of sale, as demonstrated by Defendant's Service Flash and numerous consumer complaints regarding mold and mildew problems.  Privity exists between Plaintiffs and Defendant as a result of the express warranty provided as part of Plaintiffs' Washing Machine purchase.  Plaintiffs also provided reasonable notice and opportunity to cure by directly contacting Defendant and by initiating this action.  Despite such notice, Defendant still has not provided an adequate remedy.  Moreover, Plaintiffs' have adequately pled unjust enrichment because Plaintiffs need only confer a "sufficiently direct" benefit to Defendant and may plead unjust enrichment in the alternative despite having also

2

pled a claim for breach of express warranty.  Furthermore, because Plaintiffs have adequately pled claims for breach of express and implied warranty, Plaintiffs may also maintain a claim under the Magnuson-Moss Act.

Given the deceptive nature of Defendant's conduct, Plaintiffs also assert claims pursuant to the Deceptive Trade Practices Acts of each of their home states.  With slight variations, Defendant's basis for dismissal is essentially the same for each Plaintiff's Deceptive Trade Practices Acts claim: that the Plaintiff has not alleged actionable misrepresentation or reliance sufficient to state a valid claim and that, even if Plaintiff had, their claims are not pled with sufficient particularity for Rule 9(b) purposes.

However, as shown herein, several of Defendant's affirmative representations made to the buying public when marketing and selling their machines are rendered completely untrue, misleading, or deceptive by virtue of the known defect concealed by Defendant.  Indeed, these facts are tailor made for a consumer protection/Deceptive Trade Practices Act claim.  Further, to the extent required by any of the applicable Deceptive Trade Practices statutes, Plaintiffs' FAC repeatedly alleges that, absent Defendant's deceptive conduct, no Plaintiff would have paid money for a problematic Washing Machine known by Defendant to have a common design defect.  These facts are not only sufficiently pled, but they are pled with enough specificity to satisfy Rule 9(b) even if one assumed, *arguendo*, that a heightened pleading requirement was necessary for the Deceptive Trade Practices Acts claims asserted by Plaintiffs.

As shown herein, Plaintiffs have stated valid claims, on behalf of themselves and others, upon which relief can and should be granted.

## II. <u>BACKGROUND</u>

Electrolux manufactures, markets and sells home appliances, including front-load washing machines, in Georgia and throughout the United States.  (FAC, ¶18.)  Defendant maintains its principle offices in Augusta, Georgia.  (*Id*.).

As set forth in Plaintiffs' FAC, this action surrounds the misrepresentation and concealment of material information by Defendant in marketing, warranting, selling, and servicing certain models

of its front-load washing machines.  (*Id*., ¶¶1, 2, 4, 8, 30, 34.)  Specifically, Defendant misrepresents or fails to disclose a major design defect with the steel drum and gasket of the units that causes them to accumulate substantial composites of mold inside the machine.  (*Id*., ¶2.)  The inherent mold/mildew problems with the washing machines produce odors, damage and stain clothes, pose health risks for consumers, and cause the machines to be unsuitable for the ordinary purpose for which they are sold and advertised.  (*Id*.).

Prior to and after marketing and selling its washing machines, Defendant was fully aware of the design defect with its front-load washers, which was common to other competing front-load washers in the industry, and knew about the resulting mold/mildew problems consumers would encounter.  (*Id*., ¶¶4, 35, 37, 42.)  Defendant knew that, because of the inherent defect and its problems, its washing machines were unfit for their ordinary purpose (*i.e*., cleaning clothes).  (*Id*.).  Despite Defendant's knowledge in this regard, it misrepresented this material information to consumers and knowingly chose to sell its defective product.  (*Id*., ¶¶2, 8, 27, 30, 33, 37, 58, 64, 75.)

Further, Defendant has refused to warn customers of the serious common defect inherent in its Washing Machines or of the common problems they will likely encounter when the Machines begin to accumulate mold as a result of the defect.  (*Id.*, ¶4.)  Even though it has persistently concealed the defect from its customers, and denies that a defect even exists, in April 2007 Defendant issued an internal Service Flash that describes the common defect and a common fix.  (*Id.* at 37-39.)   To date, Defendant has refused to inform consumers about its internal Service Flash addressing the common defect.  (*Id.*)

As was the case with Plaintiffs, these mold and mildew problems cause noxious odors that permeate the home, stain and sometimes ruin clothes to the extent they must be discarded, pose health risks or aggravate allergies, and result in unnecessary hassle and expense for the consumer. (*Id.*, ¶¶2, 13-17.)  Class members have complained extensively about this problem to Defendant. (*Id*., ¶¶35, 36.)  Yet, Defendant refuses to provide a remedy or take any corrective measures, such as a recall or a repair/replace program.  (*Id.*, ¶5.)  Consumers who do contact Defendant are told, as were Plaintiffs, that they will have a mold/mildew problem with the washing machine if they do not

4

wipe down the steel basket inside the machine after each use and leave its door open when not in use. (*Id.*, ¶¶5, 43.)  This instruction is particularly alarming given Defendant's safety precaution in its Owner's Guide <u>not</u> to leave the washer door open since it could pose a risk to small children, which Plaintiff has.  (*Id.*, ¶44.)

Defendant has profited and continues to profit from the marketing and sale of a product known by it to be defective and unfit for its ordinary use.  (*Id.*, ¶8.)  Plaintiffs and class members would not have purchased these machines if Defendant had not misrepresented and concealed the true nature of the product and its associated problems.  (*Id.*, ¶¶5, 6.)

## III.  <u>STANDARD OF REVIEW</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. v. Twombly*, 550 U.S. 544 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the court will "'accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff.'"  *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1176 (11th Cir. 2009) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)).  The Supreme Court in *Twombly* cautioned that it had not applied a "'heightened' pleading standard under Rule 8, nor did [the Court] seek to broaden the scope of [Rule 9] . . . ."  *Twombly*, 550 U.S. at 569 n.14 (quotation omitted).  Plaintiffs need not assert detailed factual allegations, *see*, *e.g.*, *id.* at 555, but must allege sufficient facts "'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 570).

As set forth below, Plaintiffs have asserted detailed factual allegations that "permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 129 S. Ct. at 1950, and that provided fair notice to Defendant of the grounds for Plaintiffs' legal claims.  Plaintiffs' well-pleaded FAC, which sets forth significant additional factual allegations not contained in their initial Complaint, readily meets the pleading requirements outlined under Rule 8 and in *Twombly*

and *Iqbal*.  Consequently, this Court should deny Defendant's motion to dismiss.

## IV.  ARGUMENT

### A.   GEORGIA'S CHOICE OF LAW RULES REQUIRE THAT GEORGIA LAW IS APPLIED

#### 1.   Choice of Law Analysis is Premature

In the first place, it is both unnecessary and inappropriate for the Court to decide choice of law matters at this early stage of the litigation.  As at least one court in Georgia and numerous other courts have held, "[c]ourts are hesitant to consider the merits of a choice of law issue at the motion to dismiss stage."  *Godfry v. State Farm Mut. Ins. Co.*, No. 08-4813, 2009 U.S. Dist. LEXIS 19123, at *7 n.4 (E.D. Pa. Mar. 4, 2009) (citation omitted); *see also Hodgson v. Man Fin. Inc.*, No. 06-1944, 2006 U.S. Dist. LEXIS 94307, at * 1 (E.D. Pa. Dec. 29, 2006) (withholding choice of law determination until conclusion of discovery)); *In re Conagra Peanut Butter Prods. Liab. Litig.*, No. 1:07-MD-1845-TWT, 2008 U.S. Dist. LEXIS 40753, at *3 (N.D. Ga. May 21, 2008) ("I agree that it is premature to conduct a rigorous choice of law analysis at this stage. Such an analysis is more appropriate at the class certification stage.").  The Eleventh Circuit has held that choice of law analysis even at the class certification stage is "generally premature . . . Often purported choice of law difficulties are found to be too distant and speculative."  *Singer v. AT&T Corp.*, 185 F.R.D. 681, 691 (S.D. Fla. 1998) (citations omitted).

Parties have not yet completed discovery in this litigation and what discovery has been propounded is still in the process of being reviewed, responded to and contested.  The record at this nascent stage of the litigation is not yet robust enough to make an informed determination on choice of law matters.  Electrolux has not addressed the well-established body of law referenced above nor demonstrated why a choice of law analysis is necessary at this time.  However, should the Court decide to review choice of law issues, Georgia's choice of law rules and due process require that Georgia law apply to all of Plaintiffs' claims.

### 2.      Georgia Law Applies to Plaintiffs' Common Law Claims

Georgia choice of law rules require that "the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes . . . [w]hen no [foreign state] statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Frank Biscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) (citation omitted).   Courts have held that this feature of Georgia choice of law rules is an express limitation on the *lex loci contractus* and *lex loci delicti* doctrines upon which Defendant relies. *See*, *e.g.*, *Wilkes v. The Cont'l Ins. Co.*, No. 1:96-CV-1392-JEC, 1997 U.S. Dist. LEXIS 14279, at *25 n.6 (N.D. Ga. Aug. 13, 1997) ("The *lex loci* rule, however, is limited in Georgia by the presumption that the common law is the same in both states" and applying Georgia law where there were no relevant foreign state statutes in the case) (citation omitted).

Although Defendant relegates this feature of Georgia choice of law rules to a footnote (Mot. to Dismiss at 11 n.2), numerous courts, including the Eleventh Circuit, enforce this *lex loci* limitation.  *See*, *e.g.*, *Brenner v. Future Graphics LLC*, No. 1:06-CV-0362-CAP, 2007 U.S. Dist. LEXIS 98493, at *21-*22 (N.D. Ga. Sept. 10, 2007) (holding that Georgia choice of law rules required application of Georgia law where neither party referenced controlling statutes of foreign jurisdictions); *see also Shorewood Packaging Corp. v. Commercial Union Ins. Co.*, 865 F. Supp. 1577, 1581 (N.D. Ga. 1994) ("[T]he Eleventh Circuit and the district courts repeatedly have approved the Georgia rule limiting the application of non-forum substantive law to statutes and caselaw interpreting those statutes.").

Courts have held that a foreign state's statutes and case law are "involved" where "'no statute of the foreign state is *pleaded*.'" *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 678 n.6 (N.D. Ga. 2003) (emphasis in the original) (quoting *Avnet, Inc. v. Wyle Labs., Inc.*, 437 S.E.2d 302, 306 (Ga. 1993).  Here, Plaintiffs have pleaded common law express warranty, implied warranty and unjust enrichment claims.  (FAC, ¶¶50-53, 54-67.)  Consequently, Georgia law presumptively applies.

### 3.    Due Process Requires the Application of Georgia Law

"The application of a forum state's laws is presumed where the defendant has a 'significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class . . . .'" *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 620 (C.D. Cal. 2008) (quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821 (1985)).   Such contacts establish the "'state interests'" necessary to ensure that Georgia law would not be applied arbitrarily or unfairly.  *In re Tri-State Crematory Litig.*, 215 F.R.D. at 678 (quoting *Shutts*, 472 U.S. at 821).

The Supreme Court has held that a company's presence and business in a state, *inter alia*, "creat[es] state interests, such that application of its law [is] neither arbitrary nor fundamentally unfair."  *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 320 (1981) (applying Minnesota rather than Wisconsin law in part because defendant company was located and conducted business in Minnesota, despite that injury occurred in Wisconsin).   Electrolux's decisions regarding the Washing Machines at issue, including the Washing Machines' design and warranties, originated in and emanated from Electrolux Home Products, Inc.'s principal executive offices in Augusta, Georgia (FAC, ¶18), as well as Electrolux Major Appliances, North America's offices in Augusta, Georgia.  (Mot. to Dismiss, Ex. B).   Furthermore, by virtue of their presence and business in the state, Electrolux was familiar with Georgia law and "can hardly claim . . . surprise" that this court would apply forum law to this litigation.  *Allstate Ins. Co.*, 449 U.S. at 314, 317-18.

That warranty decisions were made in Georgia and issued from Georgia is evident from Electrolux's written warranties.  Electrolux's Major Appliance Warranty Information indicates that its major appliances are warranted by Electrolux Major Appliances, North America, located in Augusta, Georgia.  (Mot. to Dismiss, Ex. B.)  This warranty also references Electrolux's Augusta, Georgia address and indicates that "[s]ervice under this warranty must be obtained by contacting Electrolux at [Electrolux's] addresses or phone numbers below."  (*Id.*)  Furthermore, at least a portion of Electrolux's warranties were to be performed in Georgia in that Electrolux

conducts business in Georgia and sells "a substantial portion of [its Washing Machines] . . . in Georgia," (FAC, ¶32) including to the named Plaintiff residing in Georgia, Palecia Boyd.  (*Id.* at ¶16.)  *See*, *e.g.*, *In re Tri-State Crematory Litig.*, 215 F.R.D. at 678 (holding that the application of Georgia law did not violate due process in part because "at least a portion of the contract was to be performed in Georgia"); *see also Shorewood Packaging Corp. v. Commercial Union Ins. Co.*, 865 F. Supp. 1577, 1583 (N.D. Ga. 1994) (holding that application of Georgia law did not violate due process where, in part, plaintiff was a citizen of Georgia and the insurance contracts at issue were "issued by companies doing business in Georgia."  Coverage in more than one state did "not make the application of Georgia law unconstitutional.").

"When considering fairness in this context, an important element is the expectation of the parties."  *Shutts*, 472 U.S. at 822.  To be sure, a named Plaintiff residing in Georgia who brings an action in Georgia against a company residing in Georgia regarding Washing Machines and warranties that are sold and issued in Georgia would expect Georgia law to apply.  Given these aggregate contacts with Georgia, each of the other named Plaintiffs would have the same expectations, despite that some of the mold and mildew problems occurred in states other than Georgia.  Furthermore, all of the named Plaintiffs would expect Georgia law to apply on a nationwide basis in that the only state statutory claim asserted on a nationwide basis arises under Georgia law, the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-371, *et seq*.  Indeed, Electrolux's expectations should be no different.

As a result, it would be arbitrary and unfair for any law other than Georgia's to apply.  None of the other suggested states remotely approach the extensive aggregate contacts or significant interests that Georgia has in this case.  For the reasons mentioned above, should the Court find it necessary to decide choice of law matters at this early stage, Georgia law applies to all of the common law and statutory claims that Plaintiffs have asserted on a nationwide basis.

## B.   PLAINTIFFS HAVE ADEQUATELY PLED EACH OF THEIR CLAIMS

### 1.   The FAC Adequately Asserts Elements of Breach of Express Warranty

Defendant argues that Plaintiffs' breach of express warranty claim fails because the

warranty does not cover the alleged defect and because the defect did not occur until after the warranty period. (Mot. to Dismiss at 12.) Defendant also asserts that Plaintiffs failed to properly allege notice and provide an opportunity to cure under state law. (*Id.*)

However, the defective wash basket and gasket are governed by the express warranty and the applicable warranty period is up to twenty (25) years after purchase. Furthermore, Plaintiffs have not only contacted Frigidaire directly to inform it of the breach and provide an opportunity to cure, but they have provided notice by initiating this action.

### i.   Plaintiffs Allege Defects Covered By Defendant's Warranty

"A manufacturer's liability for breach of an express warranty derives from and is measured by, the terms of that warranty." *Cipollone v. Liggett Group*, 505 U.S. 504, 525 (1992). The terms of Defendant's warranty state that "Frigidaire will pay for . . . [a] [r]eplacement part for an inner wash basket that breaks due to a defect in materials or workmanship." (Mot. to Dismiss, Ex. A.) Plaintiffs' FAC argues that "Defendant expressly warranted that its Washing Machines, and specifically its stainless steel wash basket, would be eligible for repair in the event of defects in materials or workmanship, and a replacement 'part' would be provided up to the 25th year of ownership." (FAC, ¶51.) Furthermore, Plaintiffs explicitly state that Defendant breached the express warranty because it "did not . . . provide any parts or service that correct the mold and mildew problem, as required by Defendant's warranty." (*Id.* at ¶52.)

Defendant also argues that Plaintiffs' allegations relate to the manner in which the Washing Machines are used and that Plaintiffs have failed to allege that the mold and mildew problems are the result of a defective Washing Machine part. (Mot. to Dismiss at 13.) However, Plaintiffs make numerous references to such defects throughout their FAC:

- "Frigidaire has knowingly concealed material facts regarding the Washing Machines, including a serious design defect with the stainless steel drum and gasket . . . ." (FAC, ¶2.)

- "Defendant expressly warranted that the stainless steel inner wash basket is free from a defect in materials or workmanship, or it would be replaced." (*Id.* at ¶33.)

- "[T]he Service Flash represents Defendant's internal admission (in early 2007) of a common, class-wide defect . . . as well as the class-wide solution – a new bellows." (*Id.* at ¶39.)

- "The Washing Machines purchased by Plaintiffs and the Class *have failed to work properly due to a defect in design, and not resulting from the ordinary course of usage by Plaintiffs or Class Members.*" (*Id.* at ¶41) (emphasis added).

Plaintiffs plainly allege that the Washing Machine problems relate to defective parts – namely, the basket and bellows or boot – and not to consumers' sheer "use of their machines." (Mot. to Dismiss at 13.)

Furthermore, while Defendant attempts to limit the applicability of its warranty to "materials or workmanship," its defective Washing Machine bellows are not definitively exempt from the express warranty. For example, in *Koulajian v. Trek Bicycle Corp.*, No. 90-CIV-3156 (LJF), 1992 U.S. Dist. LEXIS 1490, at *1 (S.D.N.Y. Feb. 11, 1992), Plaintiff purchased a Trek brand bicycle with a release mechanism on its front tire that "enable[d] the rider to remove the front tire more easily." (*Id.*) Approximately a year after purchasing the bicycle, Plaintiff was riding the bicycle when the front wheel came off, causing the Plaintiff to fall off the bicycle and suffer injury. (*Id.* at *2.) Plaintiff contended that Trek breached its express warranty, which stated that the bicycle was warranted "against *defective materials and/or workmanship* . . . ." (*Id.* at *3) (emphasis added). Trek argued that the warranty applied "only to manufacturing defects . . . not design defects." (*Id.* at *5.)

The Court held that "the warranty's reference to *'workmanship' could refer to bicycle designs as well as to implementation of those designs in she [sic] manufacturing process*." (*Id.*) (emphasis added). The Court denied Trek's summary judgment motion and refused to find "as a matter of law that [Trek's "workmanship warranty" could not] apply to design defects." (*Id.* at *6); *see also Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 855 (N.D. Ill. 1985) (indicating that the "parameters of design, materials and workmanship. . . . may overlap . . . .").

Similarly, the "defective materials" and/or "defective workmanship" provision in Frigidaire's warranty could apply to the defective bellows design, the implementation of such a

11

design in the Washing Machine and the bellows manufacturing process.  Moreover, Plaintiffs

have alleged that the defectively designed gasket relates to, or is "for,"[1] the inner wash basket of

the Washing Machines (*see*, *e.g.*, FAC, ¶¶2, 13, 33, 51) and is thus covered under Defendant's

"Limited 2nd-25th Year Warranty" provision.  (Mot. to Dismiss, Ex. A.)  Plaintiffs allege that the

defective bellows is "for" the inner wash basket in that the "bellows component . . . keeps

clothing, water, and detergent inside *the basket* during the tumbling wash and rinse cycles."

[Dkt. No. 43, Electrolux's Mem. of Law In Support of Mot. to Strike Class Allegations, Ex. B.

(Declaration of David Fuller) ("Fuller Decl.") ¶7)].  Plaintiffs also allege that a part for the inner

wash basket or the inner wash basket itself is "broken," and covered by the express warranty, in

that neither prevent mold or mildew from forming in the wash basket.

### ii.   Plaintiffs Experienced Problems with the Washing Machines During the Warranty Period

Defendant argues that of the five named Plaintiffs, Boyd, Terrill and Vogler failed to

allege that they experienced problems with their Washing Machines within the warranty period.

(Mot. to Dismiss at 14.)  However, Defendant is applying an incorrect warranty period.  As

described above, the applicable warranty period within which Plaintiffs must have alleged

problems with their Washing Machines is between two (2) and twenty-five (25) years after the

date of purchase.  (FAC, ¶51.)  Plaintiffs assert that Defendant "expressly warranted that its

Washing Machines, and specifically its stainless steel wash basket, would be eligible for repair . .

. and a replacement 'part' would be provided up to the 25th year of ownership."  (*Id.*)

Consequently, Plaintiffs Boyd, Terrill and Vogler – together with Plaintiffs Brown and

Pack – have sufficiently alleged that they experienced mold and mildew problems within the

applicable warranty period.  In addition, any defects related to the inner wash basket within the

first year after purchase are covered under Frigidaire's "Full One-Year Warranty."

---

[1] Frigidaire's Tumble Action Washer Warranty states that from the 2nd to 25th year from the date of purchase, Frigidaire will pay for a replacement part "*for* an inner wash basket that breaks due to a defect in materials or workmanship."  (Mot. to Dismiss, Ex. A) (emphasis added).

### iii.    Plaintiffs Have Provided Adequate Notice and Opportunity to Cure

Defendant also argues that Plaintiffs failed to assert a claim for breach of express warranty because Plaintiffs never notified Defendant of the breach or provided a reasonable opportunity to cure the breach.  (Mot. to Dismiss at 15.)  However, Plaintiffs provided notice of the breach of express warranty by commencing this action and because Defendant was aware of the alleged defect and breach.  Furthermore, all of the Plaintiffs have provided, and continue to provide, Defendant with an opportunity to cure.

### a.    Plaintiffs Provided Reasonable Notice by Initiating this Action

In *Hudson v. Gaines*, 403 S.E.2d 852 (Ga. Ct. App. 1991), Appellant automobile seller appealed the lower court's decision that the buyer had provided reasonable notice of breach of express warranty, as required by O.C.G.A. § 11-2-607.  (*Id.* at 853.)  Appellant contended that Appellee's "failure to give notice to [Appellant] of his breach-of-warranty claims prior to filing the original suit" mandated dismissal of the actions.  (*Id.* at 854.)  The Court found that Appellant failed to show that the lower court erred and that "adequate notice of the breach of warranty as contemplated by the statute" had been given through commencement of the suit.  (*Id.*); *see also SunTrust Bank v. Hightower*, 660 S.E.2d 745 (Ga. Ct. App. 2008) (analyzing O.C.G.A. § 11-2-607(a)(3) as part of a class action lawsuit and holding that "service of the lawsuit was adequate notice" of a breach of warranty claim).

Other courts have similarly held that notice of breach of warranty may be provided by the warrantee initiating an action against the warrantor.  *See*, *e.g.*, *Graham v. Wyeth Labs.*, 666 F. Supp. 1493, 1499-1500 (D. Kan. 1987) ("[B]y filing this lawsuit the defendant was given sufficient notice, under K.S.A. 84-2-607, of the alleged breach of warranty."); *see also Davidson v. Wee*, 379 P.2d 744, (Ariz. 1963) ("[I]f the complaint itself meets these [notice] requirements there is no need to give an additional parallel notice.  Notice of the claim of breach need take no special form. Where no particular mode of notice is required by the statute what constitutes giving of notice is liberally construed.") (citations omitted).

While Defendant contends that Georgia and South Carolina law require notice of the alleged breach of warranty (Mot. to Dismiss at 15), as encompassed under O.C.G.A. § 11-2-607(3)(a) and S.C. Code Ann. § 36-2-607(3)(a), neither states' laws require any particular *form* of notice.  Both O.C.G.A. § 11-2-607(3)(a) and S.C. Code Ann. § 36-2-607(3)(a) merely state that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; . . ."  O.C.G.A. § 11-2-607(3)(a); S.C. Code Ann. § 36-2-607(3)(a); *see also* Jane Massey Draper, Annotation, *Sufficiency and Timeliness of Buyer's Notice Under UCC § 2-607(3)(a) of Seller's Breach of Warranty*, 89 A.L.R.5th 319 (2009) ("The [Uniform Commercial] Code does not specify any particular form with which the notice must comply, and even that part of the official comment under § 2-607 addressed to content does not set forth a particularized form or content.").  In addition, Frigidaire's Tumble Action Washer Warranty makes no reference to form of notice and, in fact, includes no provision requiring consumers to provide a notice of breach.  (Mot. to Dismiss, Ex. A.)

The two distinct purposes for providing notice of the breach are that "first, it opens the way for settlement negotiations between the parties; second, it minimizes the possibility of prejudice by giving the seller ample opportunity to cure the defect, investigate the claim, or reduce damages at an early stage."  *Hudson*, 403 S.E.2d at 854 (describing the policies behind notice and approving notice by initiation of a lawsuit) (citing *Oden & Sims Used Cars v. Thurman*, 301 S.E.2d 673, 675 (Ga. Ct. App. 1983)); *see also* O.C.G.A. § 11-2-714(1).

As demonstrated by the cases above, the policies behind notice are not upset simply because a warrantor was given notice by a lawsuit as opposed to before one.  In fact, such a form of notice may significantly further the purpose of notice.  *See*, *e.g.*, *Goldstein v. Searle,* 378 N.E.2d 1083, 1088  (Ill. Ct. App. 1978) (disagreeing with defendant that the purpose of notice to open the way for settlement negotiations "necessarily connotes prelitigation negotiation and settlement which would preclude the filing of a complaint as the acceptable means of giving reasonable notice. . . . such should not be the necessary implication, particularly in light of . . .

14

the rule that notice need not be in any particular form.") (citations omitted); *see also Davidson*, 379 P.2d at 749 (holding that defendants who received notice by plaintiff's complaint were not necessarily prejudiced and were still able to inspect and analyze the product at issue).

Plaintiffs Boyd and Pack, like all of the named Plaintiffs, filed an FAC that alleged claims against Frigidaire for breach of express warranty. As a result, all of the Plaintiffs have provided Frigidaire with notice. In addition, because notice need not occur prior to litigation, Plaintiffs did not prevent, and are not preventing, Defendant from curing its breach by bringing this lawsuit.

> ### b. Plaintiffs Provided Reasonable Notice Because Defendant Had Pre-Existing Knowledge and Defendant Has Misconstrued the Nature of the Breach

Defendant also contends that Plaintiffs Terrill and Brown failed to provide notice of Defendant's breach of warranty within a reasonable amount of time after discovering the breach. (Mot. to Dismiss at 16.) However, all Plaintiffs have provided notice, and within a reasonable amount of time, because Defendant had actual knowledge of the defect and breach.

Numerous courts interpreting statutes that incorporate or are modeled after UCC § 2-607(3)(a)[2] have held that the notice requirement is met where a manufacturer had *pre-existing notice* of similar complaints or knowledge that its products were defective. *See, e.g.*, *Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710 (7th Cir. 1992) ("the buyer is deemed to have met the notice requirement when the seller had actual knowledge of the product's failure based on the seller's own observations.") (citation omitted); *see also Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) (holding that "statutory demand for notice might be satisfied by proof of complaints from some but not all the buyers of the product" particularly where breach was known or reasonably discoverable at the time of sale); *Seaside Resorts v. Club Car, Inc.*, 416 S.E.2d 655, 664 (S.C. Ct. App. 1992) (stating that defendant had received several invoices for warranty repairs and field complaints about its defective product and that "[t]his [was] simply a specific

---

[2] The notice requirements under Wis. Stat. Ann. § 402.607(3)(a) and Ga. Code Ann. § 11-2-607(3)(a), to which Defendant cites, and Cal. U. Com. Code § 2607(3)(A) and S.C. Code Ann. § 36-2-607(3)(a) are modeled after or incorporate UCC § 2-607(3)(a).

instance of the general principle that notice is not required to a party who already has knowledge of a fact giving rise to a claim.") (citation omitted); *Church of Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 9-15 (Minn. 1992), *overruled on other grounds* (finding that notice was provided within a reasonable amount of time, in part, where manufacturer had prior knowledge of similar complaints and, "in response to the developing problems, . . . altered the chemical formula" of the defective product).

Here, Plaintiffs allege that Electrolux both knew that its Washing Machine bellows and drums were defective and that it breached its express warranty by failing to pay for or perform repairs to its Washing Machines. Plaintiffs' FAC references numerous consumer complaints about mold and mildew problems and defective gaskets from several years prior to the filing of the initial and FAC. (FAC, ¶¶35-36.)

Furthermore, Terrill first contacted Frigidaire to complain about mold and mildew problems in or about January 2007 (*Id.* at ¶ 13.) However, Defendant knew of such problems and remedies even prior to Terrill contacting Defendant. Defendant demonstrated that it was aware of the defect and remedy through its Service Flash, issued in April 2007. The Service Flash indicated that such mold and mildew problems could be addressed by providing a new style boot. If this Service Flash was issued in April 2007, Frigidaire was likely aware of its Washing Machines' mold and mildew problems well in advance of issuing the Service Flash. Frigidaire must have dedicated a substantial amount of time towards analyzing the design defects of the old gasket and developing the new style boot before announcing its "solution" (*id.*) to mold and mildew problems. To be sure, one of Electrolux's Plant Quality Leaders indicated that Electrolux washers were "designed, developed, tested, and retested . . . over a period of several years . . . .Electrolux has conducted numerous tests, including fungal resistance testing and mold growth evaluation, during the design and development process . . . Electrolux worked with the North American Science Associates, Inc. (NAMSA) laboratory to evaluate bellows materials and response to biofilms." [Dkt. No. 43, Fuller Decl. at ¶¶13-14].

Frigidaire not only knew that its Washing Machines were defective in or before 2007, but

refused to address such defects, in violation of its express warranty. "The Service Flash was never distributed to retail purchasers of its washing machines and, to date, Frigidaire has taken no action beyond internally issuing the aforementioned Service Flash." (FAC, ¶39.) Despite knowledge of the defect, Frigidaire "refused, and continues to refuse, to provide a remedy to consumers. . . . All the while, Frigidaire has known of a common fix – bellows replacement as described in the [Service Flash] – but it will not issue a recall or otherwise properly notify all affected consumers of the availability of the fix." (*Id.* at ¶¶5, 8.) Consequently, Frigidaire knew of both the defect and that it had refused to provide a remedy in breach of its express warranty.

Defendant also misconstrues the very nature of the breach. Defendant argues that notice was unreasonable by repeatedly referencing the period of time after Terrill and Brown discovered Washing Machine *defects* before notifying Frigidaire that it had breached an express warranty. However, Wis. Stat. Ann. § 402.607(3)(a), to which Defendant cites, indicates that "the buyer must within a reasonable time after the buyer discovers or should have discovered any *breach* notify the seller of *breach* or be barred from any remedy." Wis. Stat. Ann. § 402.607(3)(a); *see also* Cal. U. Com. Code § 2607 (same).

Here, Defendant breached the express warranty by its failure to "provide any parts or service that correct the mold and mildew problem, as required by Defendant's warranty." (FAC, ¶52.) As a result, Defendant knew that it breached the warranty after Terrill complained to Frigidaire about mold and mildew problems *in 2007* and Frigidaire failed to replace the gasket on his washer. (*Id.*) ("Frigidaire representatives merely advised Plaintiff to wipe his machine after use."). In addition, Defendant knew that it breached the express warranty as to Brown "[i]n or about May *2009*, [when] Plaintiff contacted Defendant directly about the mold and mildew problems. . . . Defendant [informed him] that to avoid mold, Plaintiff would need to wipe the inside of his machine after every wash cycle and keep the washer door open when not in use." (*Id.* at ¶14) (emphasis added).

Furthermore, contrary to Defendant's assertion that Terrill did not provide an opportunity to cure (Mot. to Dismiss at 17-18), Defendant had ample opportunities to provide payment for a

replacement part or to repair Terrill's Washing Machine after he contacted them. However, Defendant only instructed Terrill to wipe down his Washing Machine after every use. Such instruction does not constitute payment for a "replacement part," pursuant to the express warranty. As a result, it is irrelevant whether Terrill followed such instructions or whether wiping down his washer corrected the problem. (*Id.*)

> **2.    Plaintiffs Have Adequately Pled the Elements of Breach of Implied Warranty**

> **i.    Defendant's Washing Machines Are Unmerchantable and Were Defective At the Time of Sale**

"According to Georgia law, undisclosed latent defects are the very evil that the implied warranty of merchantability was designed to remedy." *Johnson v. Jaguar Cars, Inc.*, No. 1:05-CV-3161-RLV, 2006 U.S. Dist. LEXIS 41166, at *12 n.3 (N.D. Ga. June 6, 2006) (citation omitted). Plaintiffs allege that Defendant's Washing Machines are defective in that they "accumulate[] mold and mildew" and produce mold and mildew odors that can permeate a consumer's home and ruin consumers' clothing. (FAC, ¶2.) Accordingly, Defendant's Washing Machines are not fit for their ordinary purpose – cleaning clothes. (*Id.* at ¶¶58-59.)

Defendant argues that it did not breach the implied warranty of merchantability because consumers could have performed routine maintenance to prevent such mold and mildew problems. The routine maintenance to which Defendant refers requires consumers to wipe down the inside of the Washing Machine drum after every wash cycle and/or to leave the Washing Machine door ajar after each use. (*Id.* at ¶43.) However, directing consumers to cure the defect for which Frigidaire is responsible does not relieve it of liability nor support dismissal of this claim. *See*, *e.g.*, *Nessle v. Whirlpool Corp.*, No. 1:07CV3009, 2008 U.S. Dist. LEXIS 56940, at *12-*13 (N.D. Ohio July 25, 2008) (refusing to dismiss breach of implied warranty of merchantability claim despite defendant's "contentions that Plaintiff is able to fix any problem with the ice maker herself by taking routine steps to maintain the ice dispenser").

Moreover, one of Defendant's maintenance suggestions – leaving the door ajar after use – is expressly rejected in its Owner's Guide, which emphasizes "***DO NOT* leave the washer door**

**open.**" (FAC, ¶44) (citing Owner's Guide) (emphasis in the original).  The Owner's Guide, obtained by consumers after purchase, warns that an open washer door is particularly dangerous to children and could entice children to climb into the washer.  (*Id.*)  Defendant has acknowledged this defect through the issuance of its Service Flash, which references the development of biofilm or mold in its Washing Machines.  The "solution" described in its Service Flash is to replace the Washing Machine bellows altogether, not for consumers to wipe down their machines after each use or leave the washer door open.  (*Id.* at ¶4.)

Defendant relies on case law that is readily distinguishable from this case.  *Soto v. CarMax Auto Superstores, Inc.*, 611 S.E.2d 108 (Ga. Ct. App. 2005) involved the purchase of a used car with minor defects, such as broken windshield wipers and sun visors, and such defects were resolved under the defendant's warranty.  (*Id.* at 109-110.)  In addition, in *Taterka v. Ford Motor Co.*, 271 N.W.2d 653 (Wis. 1978), plaintiff alleged that defendant breached its implied warranty of merchantability by selling him a car that developed rust around the car's taillight. (*Id.* at 653.)  The court affirmed summary judgment in favor of the defendant after finding, *inter alia*, that the defect did not render the car unfit for the purpose of driving.  (*Id.* at 655.)  Here, the mold and mildew problems of Plaintiffs' Washing Machines are not peripheral defects that have little or no impact on the Washing Machines' purpose, *i.e.* washing clothes.  The standing water in the bellows and accumulation of mold and mildew in the inner basket directly interfere with Plaintiffs' ability to wash clothes.  As a result, Plaintiffs have adequately alleged that the Washing Machines are unmerchantable.

Defendant also argues that the Plaintiffs failed to allege that defects existed at the time of sale, in part because certain Plaintiffs were able to use their washers for a period of time before mold and mildew problems manifested.  (Mot. to Dismiss at 20).  However, as described earlier, Plaintiffs allege that latent defects were present at the time of sale. "[T]he Machines were *inherently* defective in that they were substantially likely to cease working in the manner that they were intended to perform . . . ."  (FAC, ¶4) (emphasis added).  Plaintiffs also allege that "[a]ll of the Washing Machines were . . . not of merchantable quality *at the time they were*

*distributed into the stream of commerce by Defendant*." (*Id.* at ¶60) (emphasis added).  In addition, Plaintiffs argue that Frigidaire knowingly concealed a "serious *design* defect with the stainless steel drum and gasket . . . ." (*Id.* at ¶2) (emphasis added).  Such defects are actionable even though they did not immediately appear.  *See, e.g.*, in *Jaguar Cars*, 2006 U.S. Dist. LEXIS 41166, at *10-*11, *12 n.3 (denying dismissal of implied warranty claim where plaintiff alleged that the car's latent brake defect did not occur until four months after its purchase).

> ### ii.   As with Their Express Warranty Claims, Plaintiffs Have Properly Alleged Notice and Opportunity to Cure Breach of Implied Warranty

Although Plaintiff argues that Georgia law is applicable to this action, Defendant indicates that "[u]nder the state laws applicable to each of these plaintiffs' claims, implied warranty actions are subject to the same notice and opportunity to cure requirements necessary to state claims for breach of express warranty." (Mot. to Dismiss at 21.)  Accordingly, as described above, Plaintiffs also meet the notice and opportunity to cure requirements under their breach of implied warranty claims.

Plaintiffs and class members provided Frigidaire with notice and an opportunity to cure through the filing of this action, if not by directly contacting Frigidaire.  As a result, because notice need not be provided prior to initiating a lawsuit, the opportunity to cure requirement may also be satisfied after a lawsuit commences.  Plaintiffs and class members have provided, and are continuing to provide, Frigidaire with an opportunity to cure its breach of warranty.

Furthermore, Plaintiffs allege that Frigidaire had notice that its Washing Machines were defective at least *two years* prior to the filing of the FAC.  "[I]n or about April 2007, Frigidaire issued a Service Flash that describes the common defect and common fix: . . . ." (FAC, ¶37.) Plaintiffs have also alleged that Frigidaire had notice of its Washing Machines' defects and that it had breached its implied and express warranties through numerous consumer complaints about defective gaskets and mold and mildew problems.  (*Id.* at ¶¶35-36.)  As a result, Plaintiffs have adequately pleaded the notice and opportunity to cure requirements necessary for asserting a breach of implied warranty of merchantability.

###### iii.    Plaintiffs' Implied Warranty Claims Do Not Suffer From Lack of Privity

Defendant asserts that Plaintiffs Boyd, Terrill and Brown have not alleged privity, as required for asserting implied warranty claims under Georgia, Wisconsin and California law. (Mot. to Dismiss at 21.)  However, while Plaintiffs argue that only Georgia law is applicable to this case, Georgia, Wisconsin and California law indicate that privity exists between a purchaser and manufacturer where a manufacturer issues a warranty to the purchaser as part of a sale through an authorized retailer.

For example, in *Jones v. Cranman's Sporting Goods*, 237 S.E.2d 402 (Ga. Ct. App. 1977), plaintiff asserted a claim for implied warranty of merchantability after purchasing a defective rifle from a sporting goods store. *Id.* at 403.  The rifle at issue was accompanied by a warranty card indicating that the rifle was "fully guaranteed." *Id*. at 405.  The Court held that the plaintiff could bring a claim for implied warranty of merchantability against the warrantor despite lack of privity based on the principle articulated in *Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974), which held that privity existed where an automobile manufacturer issues a warranty as part of the sale to a purchaser through an authorized dealer. *Jones*, 237 S.E.2d at 405-06 (citation omitted).

The same principle has been upheld in California and Wisconsin. *See*, *e.g.*, *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431, 1441 (1991) (holding that privity existed where the manufacturer had made at least one express warranty regarding the equipment leased to the lessee through the lessor and where repairs to the equipment were to be paid for by the manufacturer); *see also Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 858-59 (Wis. 1982) (finding that privity existed where the manufacturer made express representations regarding the product's abilities to the purchaser for purposes of inducing sale).

Here, Defendant offered express warranties directly to the Plaintiffs and class members. Defendant's Major Appliance Warranty Information specifically states that "your appliance is warranted by Electrolux Major Appliances North America, . . . Obligations for service and parts

under this warranty must be performed by Electrolux" or a service company authorized by Electrolux. (Mot. to Dismiss, Ex. B.)  At no point in its Tumble Action Washer Warranty or its Major Appliance Warranty Information does Frigidaire direct the purchaser to contact a retailer for service information.  The terms of the warranty agreement dictate that the purchaser deal directly with Frigidaire to address claims relating to product defects and replacement parts.  As a result, privity exists between Frigidaire and Plaintiffs.

Furthermore, Defendant made direct representations to consumers regarding the quality and ability of its Washers through advertisements and other representations.  For example, Plaintiffs allege that Frigidaire advertises its Washing Machines as

> cutting-edge, and easy-to-use home appliances, . . . Frigidaire advertises that . . . 'you can count on Frigidaire for innovation, performance and style . . . . [y]our clothes never looked so good . . . you count on tumble action to wash so gently and rinse so completely that your clothes feel fresher and last longer.'

(FAC, ¶30) (quotations omitted).

Defendant issues a written warranty to consumers as a part of the sales transactions for its Washing Machines.  Defendant requires consumers to deal directly with it when submitting warranty claims regarding product defects, repairs and replacement parts.  Furthermore, Defendant has made additional representations and warranties concerning its Washing Machines' ability to clean clothes.  As a result, Plaintiffs have adequately alleged that privity exists and have properly pleaded a claim for breach of implied warranty of merchantability.

### 3.  Plaintiffs Have Adequately Alleged A Claim for Unjust Enrichment

Defendant argues that Plaintiffs have failed to assert unjust enrichment claims because Plaintiffs have not conferred any benefit on Electrolux and Plaintiffs have asserted a claim for breach of express warranty.  (Mot. to Dismiss at 22).  However, Plaintiffs have alleged that they conferred a benefit upon Electrolux and can assert claims against Defendant for both breach of express warranty and unjust enrichment.

### i.  Plaintiffs Have Conveyed A Benefit to Electrolux

To maintain a claim for unjust enrichment, Plaintiffs must allege that Plaintiff conferred a

benefit on Defendant which Defendant "equitably ought to return or compensate for." *Auburn Maranatha Inst. v. Georgia Korean Church*, 501 S.E.2d 846, 848 (Ga. Ct. App. 1998) (quoting *Smith v. McClung*, 452 S.E.2d 229, 232 (Ga. Ct. App. 1994)).

Plaintiffs have clearly alleged that they have conferred a benefit on Defendant. For example, Plaintiffs' FAC argues that "Plaintiffs and the Class members paid a premium price for the Washing Machines that Defendant represented as being suitable for ordinary use, and merchantable, *thereby conferring a tangible economic benefit upon the Defendant*." (FAC, ¶64) (emphasis added). Plaintiffs also allege that "*Defendant further benefited*, directly or indirectly, by avoiding the costs associated with correcting the mold and mildew problems, making repairs, and recalling the defective Washing Machines." (*Id.* at ¶65.) Plaintiffs also claim that "*Defendant has and continues to retain that economic benefit* at the expense of Plaintiffs and the Class members." (*Id.* at ¶66) (emphasis added).

Few states require that plaintiffs allege that they conferred a "direct" benefit on the Defendant. Furthermore, Georgia, and the other states' laws that Defendant contend apply in this case, are not among those states. For example, in *Conagra*, 2008 U.S. Dist. LEXIS 40753, at *36, the defendant moved to dismiss plaintiffs' unjust enrichment claim "because the Plaintiffs conferred no direct benefit to the Defendant." (*Id.* at *36.) Plaintiffs cited cases indicating that few states require a direct benefit, including *Powers v. Lycoming Engines*, 245 F.R.D. 226, 233 (E.D. Pa. 2007), which held that only Florida, Idaho and Ohio prohibit indirect purchasers from bringing unjust enrichment claims unless they have conferred a direct benefit on the defendant. *Conagra*, 2008 U.S. Dist. LEXIS 40753, at *36-*37.

The court held that, while the defendant asserted that there were at least seventeen (17) jurisdictions that recognized this requirement,[3] many of the cases cited by Defendant did "not preclude an unjust enrichment action by a purchaser against the manufacturer. The Defendant

---

[3] Although the defendant in *Conagra* performed a comprehensive analysis of which jurisdictions required a showing of "direct benefit" to maintain an unjust enrichment claim, none of the jurisdictions included Wisconsin, South Carolina, California or Texas. [*In re Conagra Peanut Butter Prods. Liab. Litig.* Dkt. No. 117, Defendant Conagra Foods, Inc.'s Mem. of Law In Support Of Mtn. to Dismiss First Am. Master Compl. at 14 n.11, 15].

has not convinced the Court that a sufficient number of jurisdictions require a direct transaction between the consumer and the manufacturer to warrant dismissal at this stage." (*Id.* at \*37.) Furthermore, the court found that the conferral of benefits between the consumer and manufacturer were "sufficiently direct," in part, because "the Defendant markets its product directly to consumers; though it sells its product through retailers, it directly profits from the individual demand of consumers." (*Id.* at \*38); *see also In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 670-71 (E.D. Mich. 2001) (analyzing plaintiffs' unjust enrichment claims under, in part, California and Wisconsin law and rejecting defendant's argument that "privity or a directly conferred benefit is an essential element of an unjust enrichment claim under the state common laws at issue here."); *see also Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 722 (2003) ("To confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution.").

Similarly, in this case, Plaintiffs need not allege that a benefit was directly conferred on Defendant to have adequately pleaded unjust enrichment. Moreover, despite that a direct conferral is not required, the conferral at issue here is "sufficiently direct" in that Frigidaire markets its Washing Machines to Plaintiffs and class members (FAC, ¶30) and Defendant directly profits from their demand for its Washing Machines.

Also, the benefit conferred upon Defendant is directly related to Plaintiffs' detriment and relates to Defendant's unlawful conduct.[4] *See*, *e.g.*, *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d at 671 ("Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct."). Plaintiffs conferred a benefit upon Defendant by purchasing Defendant's Washing Machines and by Defendant avoiding repair and recall

---

[4] Defendant argues that Plaintiffs' unjust enrichment claim fails because Plaintiffs have failed to allege wrongful or inequitable conduct. Defendant states that Plaintiffs have not alleged wrongful conduct because its written express warranty is not a representation that defects are not present. (Mot. to Dismiss at 24 n.5). However, even were Defendant's arguments concerning express warranties correct, Plaintiffs' unjust enrichment claim is based on several claims related to Defendant's unlawful conduct, which are detailed in Plaintiffs' FAC and described throughout this memorandum.

costs.  Plaintiffs' purchases were induced by Frigidaire's representations regarding the quality and ability of its Washing Machines.  Furthermore, Plaintiffs have alleged that they have suffered harm as a result of the Washing Machines' mold and mildew problems, which were not revealed in Defendant's representations, and which Defendant refuses to remedy.  As a result, for the reasons mentioned above, Plaintiffs have conferred a sufficiently direct benefit upon Defendant despite purchasing its Washing Machines through an intermediate retailer.[5]

### ii.  Plaintiffs May Assert Unjust Enrichment Claims In The Alternative

Defendant also argues that Plaintiffs cannot assert a claim for both unjust enrichment and breach of express warranty.  (Mot. to Dismiss at 24.)  Furthermore, Defendant asserts that Plaintiffs cannot even plead unjust enrichment in the alternative due to the mere existence of the express warranty between Plaintiffs and Defendant.  (*Id.* at 25.)  However, while Plaintiff may not *recover* under both unjust enrichment and express warranties, Plaintiffs may properly *plead* both claims, pursuant to FED. R. CIV. P. 8(a)(3) ("Rule 8").

Rule 8 expressly states that a plaintiff's claims for relief "may include relief in the alternative or different types of relief."  FED. R. CIV. P. 8(a)(3).  Courts have held that Rule 8

---

[5] The Ohio and District of Columbia cases on which Defendant relies are inapposite.  In *Johnson v. Microsoft Corp.*, 802 N.E.2d 712 (Ohio Ct. App. 2003), plaintiff brought an antitrust action against Microsoft.  *Id.* at 714.  Plaintiff also asserted an unjust enrichment claim to recover overcharges for Microsoft software.  *Id.* at 719.  The court found that money paid to retailers and plaintiff's screen click to receive a Microsoft software licensing agreement was insufficient to support a claim for restitution under Ohio law.  *Id.*  The court characterized plaintiff's restitution claim as "essentially the putative class's antitrust claim in a different guise, . . . ."  *Id.*  Unlike this case, the plaintiff in *Johnson* never indicates whether the benefit conferred upon Microsoft in any way related to representations by Microsoft.  Furthermore, while *Johnson* did not hold that payment to retailers was a sufficient direct benefit, the court also analyzed *Johnson* with an eye towards whether the plaintiff was attempting to circumvent antitrust laws.  Also, the relationship between Plaintiffs' detriment and the benefit to Defendant is stronger here where, not only do Plaintiffs confer a benefit to Defendant by paying for its defective Washing Machines, but Defendant has also directly benefited by its refusal to pay for repairs and replacement parts.  As a result, *Johnson*, which is based on Ohio law, is not controlling in this case.

Similarly, *In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 9585, at *40 (D.D.C. Apr. 11, 2001), indirect purchaser asserted a claim for unjust enrichment based on defendants' illegal restraint of trade."  *Id.*  The court held that plaintiff's unjust enrichment claim could not succeed under Tennessee law because plaintiff had no direct dealings with the defendants and, as a result, did not confer a direct benefit upon defendants.  *Id.* at *44-*45.  In this case, Plaintiffs and members of the class have plainly alleged direct dealings with Defendant, particularly through direct contacts with Frigidaire regarding its Tumble Action Washer Warranty and inquiries to Frigidaire concerning mold and mildew problems.  As a result, *In re Vitamins Antitrust Litig.*, which is based on Tennessee law, is also not controlling in this case.

permits a plaintiff to plead a claim for unjust enrichment in the alternative to an unjust enrichment claim despite the inconsistency in recovering at equity and law.  *See*, *e.g.*, *Manhattan Constr. Co. v. McArthur Elec., Inc.,* No. 1:06-cv-1512, 2007 U.S. Dist. LEXIS 6395 at *22-23 (N.D. Ga. Jan. 30, 2007) ("Under the Federal Rules, a party is permitted to plead in the alternative and set forth alternative theories of recovery, regardless of consistency."); *Kasten v. St.-Gobain Performance Plastics Corp*., No. 07-cv-449, 2007 U.S. Dist. LEXIS 90510 at *5 (W.D. Wis. Dec. 7, 2007) (same) (citation omitted).

To be sure, courts have held that it is inappropriate to dismiss equitable claims even at the summary judgment stage "merely because Plaintiff is prohibited under Georgia law from *recovering* under a breach of contract theory and an unjust enrichment theory. . . . '[Plaintiff] cannot recover under both [legal] and [equitable claims] but will be required at trial to elect under which of these remedies it wishes to proceed.'"  *McBride v. Life Ins. Co. of Va.*, 190 F. Supp. 2d 1366, 1378 (M.D. Ga. 2002) (emphasis in the original) (quotation omitted); *see also WESI, LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1363 (N.D. Ga. 2007) (acknowledging claimant's argument that a claim for unjust enrichment fails "'when there is an express contract'" and holding that the counterclaimant was "entitled to assert an unjust enrichment claim alternative to their breach of contract claim under the Agreement, though they cannot recover under both theories.") (quotation omitted).

Although Defendant agrees that Plaintiffs may plead unjust enrichment claims in the alternative, Defendant suggests that such alternative pleading is available only if "'one or more of the parties contests the existence of an express contract governing the subject of the dispute.'" (Mot. to Dismiss at 25) (quoting *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009)).  Defendant argues that because they admit the express warranty exists, Plaintiffs may not assert an unjust enrichment claim.  (Mot. to Dismiss at 25.)

However, while Defendant acknowledges the existence of an express warranty, Defendant has not yet conceded that the express warranty *governs the subject of the dispute*, as prescribed in *Goldstein*.  Defendant only, and carefully, admits that an express warranty "exists."

26

(Mot. to Dismiss at 25.)  Defendant also uses precise language to state that it does not contest that its Washing Machines were "initially subject to an express warranty for 'material and workmanship,' . . . ." (*Id.*)  Indeed, what Defendant does not admit is that the express warranty *governs the "serious design defect with [the Washing Machines'] stainless steel drum and gasket."*  (FAC, ¶2.)  Plaintiffs argue that the express warranty governs these defects, but Defendant has repeatedly argued throughout its brief that the express warranty could not be breached because the warranty does not apply.  Defendant indicates that Plaintiffs' claims are "*outside the warranty.*"  (Mot. to Dismiss at 25) (emphasis added).  "***First***, none of the plaintiffs has [*sic*] pled a defect in "material or workmanship" – the only type of defect covered by the express warranty at issue."  (*Id.* at 12) (emphasis in the original).  Defendant argues that the warranty is inapplicable because

> [N]owhere in the FAC do plaintiffs allege that any part of their machines – such as the basket, the tub, or the water seal – failed to work.  Rather plaintiffs complain that the soil and odors can develop from the *use* of their machines. [citation].  These problems *do not arise from a defect in 'material or workmanship' – they are tied to owner maintenance* . . . In short, plaintiffs *can point to no warranty* by Electrolux that its high efficiency washers do not and will not require owner care.  And plaintiffs have *not identified a component* of the machines that does not function because it is 'defective in materials or workmanship.'

(*Id.* at 13-14) (emphasis added).  Consequently, Defendant is willing to admit that an express warranty exists, but contests the existence of an express warranty that governs the defects that are alleged by Plaintiffs and that form the basis of this lawsuit.  *See*, *e.g.*, *Ball v. Johanns*, No. CIV. S-07-1190 LKK/DAD, 2008 U.S. Dist. LEXIS 9609, at * (E.D. Cal. Jan. 29, 2008) (Despite the existence of the contract, the court held that "if the factfinder determines that the terms of the [contract] did not govern the conduct in dispute in the cross-claim, then the unjust enrichment claim is proper.") (citation omitted).  For the aforementioned reasons, Plaintiffs may plead claims for express warranty and unjust enrichment in the alternative.[6]

_____

[6] Defendant cites *Ball v. Sony Elecs., Inc.*, No. 05-C-307-S, 2005 U.S. Dist. LEXIS 22004, at *18 (W.D. Wis. Sept. 28, 2005) and *Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 U.S. Dist. LEXIS 36026, at *26 (W.D. Wis. May 15, 2007) to argue that Plaintiffs are pleading unjust enrichment in the alternative because the "complaint

   **4.   Plaintiffs Have Satisfied Requirements of the Magnuson-Moss Act For The Same Reasons They Have Adequately Pled Express and Implied Warranty Claims**

Courts typically apply state warranty laws in analyzing warranty actions brought under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C.S. § 2301, *et seq.*   *See*, *e.g.*, *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (consumers may enforce written and implied warranties under the MMWA in federal court, "borrowing state law causes of action.") (citation omitted); *see also Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2007 U.S. Dist. LEXIS 13155, at *28-*29 (N.D. Cal. Feb. 12, 2007) (applying state warranty law under the MMWA) (citation omitted).

Defendant argues that because Plaintiffs were unable to assert valid warranty claims under, what Defendant contends are, applicable state laws, Plaintiff has also failed to allege a claim under the MMWA.   (Mot. to Dismiss at 26).   However, as described in detail above, Plaintiffs have readily satisfied the requirements for pleading claims for express warranty and implied warranty of merchantability.

Moreover, at least one court has held that unless a warranty provision explicitly requires notice "notice *prior to the commencement of a class action* under the [MMWA] is not required, . . . ."   *Mendelson v. Gen. Motors Corp.*, 432 N.Y.S.2d 132, 136 (Sup. Ct. 1980).   In addition, several courts have held that the opportunity to cure requirement may be met under the MMWA where "the manufacturer knew of the defects at the time of sale."   *McFadden v. Dryvit Sys.*, No. 04-103, 2004 U.S. Dist. LEXIS 20604, at *47 (D. Or. Oct. 8, 2004); *see also Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (holding that since defendant knew of car's defects at the time of sale plaintiff met pleading requirement of alleging that defendant

---

falls outside the warranty."   However, both cases are readily distinguishable and do not reflect Plaintiffs purpose for asserting an unjust enrichment claim.   Plaintiffs are not pleading unjust enrichment "as a mechanism for supplementing that which a purchaser perceives as inadequate contract remedies."   *Ball*, 2005 U.S. Dist. LEXIS 22004, at *18.   Furthermore, unlike *Ball*, Plaintiffs in this case have asserted a claim for breach of express warranty, alleged that they relied on Defendant's representations in purchasing the products at issue and a dispute exists as to whether the warranty even governs the core allegations in the case.   Similarly, *Neuser* is inapposite because the plaintiff did not even pursue a claim for breach of express contract and there was no dispute as to whether the warranties governed the alleged defect.   *Neuser*, 2007 U.S. Dist. LEXIS 36026, at *6-*7, *26.

had an opportunity to cure under the MMWA).  As mentioned above, Plaintiffs have alleged that Defendant knew of the Washing Machines defects at the time of sale.  (FAC, ¶¶2, 4, 13, 75.) Consequently, Plaintiffs have adequately pleaded a claim under the MMWA.

Defendant also argues that Plaintiffs are not eligible to revoke their acceptance of the Washing Machines under the MMWA.  (Mot. to Dismiss at 27.)  However, Defendant suggests that revocation is unavailable because of the lack of privity between Defendant and Plaintiffs.  In addition, Defendant asserts Plaintiffs are not entitled to revocation because Plaintiffs may still be using their defective Washing Machines.  (*Id.* at 27-28.)

However, as indicated above, privity exists between Defendant and Plaintiffs under Georgia, California and Wisconsin state law based on the express warranties and representations that Defendant issued and made to Plaintiffs.  As a result, because the MMWA applies state warranty law, revocation is available under the MMWA.  *See*, *e.g.*, *Gochey v. Bombardier, Inc.,* 572 A.2d 921, 923-24 (Vt. 1990) (indicating that revocation was not precluded under the MMWA where state law recognized privity between a manufacturer and consumer when a manufacturer expressly warrants its goods to the consumer).

Defendant's argument that Plaintiffs may be found to re-accept the defective Washing Machines if they continue to use them is of no moment.  As Defendant acknowledges, "plaintiffs never allege" that they are continuing to use the Washing Machines.  (Mot. to Dismiss at 28.) However, even were Plaintiffs continuing to use the defective Washing Machines, such use may nevertheless be reasonable.  Such matters are typically left "for determination by the trior of fact, even where the buyer the buyer has continued to use nonconforming goods after an alleged revocation of acceptance."  *Franklin v. Augusta Dodge, Inc.*, 652 S.E.2d 862, 865 (Ga. Ct. App. 2007) (reversing directed verdict on revocation where plaintiff continued to use their defective truck because it was their only source of transportation and holding that "'[a]voidance of an absolute rule against continued use is counseled by the overriding requirement of reasonableness which permeates the [UCC].'") (quotation omitted).  As a result, even continued use of the defective Washing Machines may not preclude Plaintiffs' revocation claim under the MMWA.

For the reasons mentioned above, Plaintiffs have adequately alleged a claim under the MMWA and are entitled to revoke their acceptance of the defective Washing Machines.

**C.    PLAINTIFFS HAVE PLED FACTS SUFFICIENT TO STATE CLAIMS PURSUANT TO STATE CONSUMER PROTECTION STATUTES.**

Plaintiffs' FAC asserts valid and meritorious claims pursuant to the Deceptive Trade Practices Act statutes as adopted in the states of Georgia, Texas, California, and Wisconsin.  As set forth below, Plaintiffs' FAC sufficiently pleads the necessary elements of these claims asserted by the Plaintiffs from those states and the putative statewide subclass they each represent.

**1.    Plaintiffs Have Pled a Valid Claim Pursuant to Georgia's Unfair and Deceptive Trade Practices Act.**

As if it were the only allegation pertaining to Defendant's deceptive conduct, Defendant first looks strictly to paragraph 48 of Plaintiffs' FAC and suggests to the Court that Plaintiffs' reference to the elements of a GUDTPA claim in that paragraph somehow warrants dismissal. (Mot. to Dismiss at 28.)  Defendant conveniently ignores the fact that Plaintiffs' citation to the GUDTPA's elements comes only after nearly forty (40) paragraphs of facts pled substantiating and demonstrating the improper conduct at the heart of Plaintiffs' GUDTPA claim, all of which are incorporated into Count I.

As shown below, these factual allegations are sufficiently pled for Rule 12(b)(6) purposes and form the basis for Plaintiffs' GUDTPA claim.  Plaintiffs have pled and will prove that Defendant was fully aware of the design defect and resulting problems, yet had no intent to sell its products as it had falsely advertised to the public, all in violation of GUDTPA.

**i.    Plaintiffs have alleged actionable misconduct under the GUDTPA.**

The conduct forming the basis of Plaintiffs' GUDTPA claim is actionable under the statute.[7]  Even accepting, simply for the sake of argument, Defendant's analogy of the GUDTPA

_____

[7] O.C.G.A. § 10-1-372 provides that "(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he … (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship,

to the federal Lanham Act, the Lanham Act requires "representations in commercial advertising or promotion which are false, misleading, or actually or likely deceptive." *Energy Court, Inc. v. Dornier Medical Systems, Inc.*, 765 F. Supp. 724, 730 (N.D. Ga. 1991). Under the Lanham Act, representations are actionable if they are **"affirmatively misleading, partially incorrect, or untrue as a result of a failure to disclose a material fact."** (*Id*. at 731.) In this case, Plaintiffs' FAC is replete with facts pertaining to certain deceptive and misleading representations made by Defendant in promoting, marketing, and selling its defective product. (FAC, ¶¶2, 8, 30, 33, 37, & 39.) Likewise, Plaintiffs' FAC contains sufficient factual allegations demonstrating that Defendant, with full knowledge of its design defect, sat silent and failed to disclose the known defect and associated problems to consumers. (*Id*., ¶¶1, 2, 4, 5, 6, 9, 35, 37, 39, & 42.)[8] Defendant's conduct in this regard makes many of its representations to the general public about its product misleading or simply untrue.

For example, with each sale, Defendant marketed, advertised, and represented to Plaintiffs that its Washing Machines were free from defects and fit for their ordinary use, which obviously is to wash and clean the buyer's clothes and garments. (FAC, ¶¶8, 33, & 48.) If, rather than cleaning the buyer's clothes, a Washing Machine instead stains, odorizes, or damages clothes to an extent that they must be discarded, it is certainly misleading to represent and promote the Washing Machine as fit for its ordinary use. That is simply not selling the product as advertised, nor as having the uses, benefits, standards, and qualities that Defendant represented. (*Id*.).

---

approval, status, affiliation, or connection that he does not have … (7) represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; (9) advertises goods or services with intent not to sell them as advertised … (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

[8] As Plaintiffs allege, Defendant had specific knowledge concerning the defect common to its machines, as evidenced by the April 2007 Service Flash issued by Defendant. (FAC, ¶4, 37, Exhibit A.) Plaintiffs' reliance on Defendant's own documents*, inter alia,* establishes Defendant's knowledge of the common defect, unlike the cases cited by Defendant (Mot. to Dismiss at 29, n. 7) wherein the plaintiffs relied solely on random anecdotal evidence of a few consumers with complaints. Here, Defendant's own documents, as well as other evidence, will establish that Defendant had knowledge of the design defect which was concealed from consumers. At this stage of the litigation, the fact that Plaintiffs have pled knowledge which was concealed from Plaintiffs is sufficient to state a claim.

Likewise, Plaintiffs' FAC contains additional factual allegations demonstrating other misleading representations made by Defendant with respect to the suitability of its washer's ordinary use.  (FAC, ¶30.)  For example, in its marketing materials and website, Defendant repeatedly states to consumers that "your laundry never looked so good" and that its product will "keep your clothes looking their best."  (*Id.*).  This is obviously not true if the product stains and, at times, ruins the consumer's clothes as a result of the undisclosed mold problem.

Similarly, Defendant's statements that "your clothes feel fresher and last longer" – routinely expected when a Washing Machine is used for its ordinary purpose – are simply false if clothes become odorized, stained and possibly ruined when the product is used.  (*Id.*)  While the **degree** of cleanliness or freshness may be considered hyperbole or puffing, representing that its Washing Machines will clean your clothes – the product's ordinary purpose – when, in truth, it will stain or perhaps ruin them, is a misstatement of **material fact**.[9]  Plaintiffs' claim is not a challenge to the degree of quality (*i.e.,* "clean<u>er</u>," "fres<u>her</u>"), but rather that the known mold/mildew problem prevents clothes from being clean or fresh at all, regardless of degree.[10]

The conduct pled in Plaintiffs' FAC constitutes an unfair and deceptive practice.  Here, Defendant designed and manufactured a defective product to be marketed and sold to the buying public.  (FAC, ¶¶2, 4, & 42.)  Prior to and after the sale of its product to the public, Defendant had knowledge about the defect and resulting problems buyers would encounter during normal use.  (*Id.*, ¶¶4, 35, 36, 37.)  Despite this knowledge, Defendant made deceptive representations to

---

[9]  Defendant's repeated arguments that its statements constitute mere "puffery" are without merit, as the actionable representations are statements of material fact, not of opinion.  Statements of opinion, which are not objectively capable of determination, have been deemed "puffery" by the courts of Georgia.  *See Hill v. Jay Pontiac, Inc.*, 381 S.E. 2d 417 (Ga. App. 1989) (holding a used car salesman's opinion that a vehicle was in "good condition" is "puffery" as not objectively capable of determination).  In contrast, Defendant's representations concerning the usefulness and abilities of its Washing Machines constitute actionable misconduct under the GUDTPA and not mere "puffery."

[10]  Defendant half-heartedly contends that these additional deceptive statements from Defendant do not relate to the specific defect at issue.  (Mot. To Dismiss at 29.)  According to Defendant, since these statements do not refer specifically to the machine's defect, they should be disregarded by the Court.  Clearly, **all** of these additional deceptive statements pertain to the uses, qualities, and ordinary purpose of the *washing machine itself*.  As described above, the mold/mildew problem at the heart of Plaintiff's claim inflicts the overall ordinary use of the washing machine itself.

buyers in its advertisements, manuals, and other communications in order to obtain sales.  (*Id.*, ¶¶1, 2, 4, 8, 30, 33.)  After buyers contact Defendant about the mold problems, Defendant fails to provide any effective remedy, other than informing buyers that they will have a mold problem unless they wipe down the inside of the washing machines after each use and leave its door open. (*Id.* at ¶¶5, 43.)  Moreover, Defendant made affirmative disclosures of directions, uses, and beneficial claims for its washing machines, without including "the bad news" associated with the common defect.  (*Id.*, ¶¶2, 4, 5, 8, 30, 33, 37, 39.)  Imagine how ordinary consumers would react if they were adequately advised that mold issues with the machines may damage clothing.  It is easy to understand why Defendant chooses not to disclose the defects, but Georgia law compels telling the whole truth – the rest of the story – if half the truth deceives.  This deception constitutes an unfair trade practice under Georgia law.

> **ii.    Plaintiffs' GUDTPA claim does not fail for "lack of reliance."**

Defendant erroneously contends that, based upon the holding in *In re Johnston Indus., Inc.*, 300 B.R. 821, (M.D. Ga. 2003), an element of reliance is required to properly sustain a GUDTPA claim.  (Mot. to Dismiss at 31.)  However, the *Johnson* decision was limited to a determination of standing – that a corporation qualifies as a person under the GUDTPA. Respectfully, Defendant's assertions regarding a purported "lack of reliance" miss the mark.

The Georgia Legislature, in its wisdom, enacted two separate but similar deceptive trade practice statutes:  the Uniform Deceptive Trade Practices Act of 1968, O.C.G.A. §§ 10-1-370, et seq., and the Fair Business Act of 1975, O.C.G.A. §§ 10-1-390, et seq.    While both statutes condemn the same conduct, the requirements of proof and the relief afforded by each statute differs.  The GUDTPA covers and provides relief for deceptive trade practices wherein one causes ***likelihood of confusion or misunderstanding***.  O.C.G.A. § 10-1-372(a)(2), & (3).  In contrast, the Fair Business Practices Act covers and provides relief for deceptive trade practices wherein one causes ***actual* confusion or *actual* misunderstanding.**  O.C.G.A. § 10-1-393(b)(2), (3).  Based upon a clear reading and comparison of these statutes, courts should give meaning to

both statutes by noting their differences and justifying a broader application of the GUDTPA, where proof of <u>actual</u> confusion, misunderstanding, or reliance is <u>not</u> required.  Either way, Plaintiffs have has sufficiently pled that, absent Defendant's deceptive conduct, they would not have purchased a problematic Washing Machine containing a known defect.  (FAC, ¶5, 6, 9, 49.)

"Except in plain and indisputable cases, the question of whether a particular act or omission, or a series thereof, constitutes unfair or deceptive acts or practices … generally is for jury resolution."  *Regency Nissan, Inc. v. Taylor*, 194 Ga. App. 645, 648 (1990).[11]   The deception alleged in Plaintiffs' FAC constitutes an unfair or deceptive trade practice under Georgia law.  To the extent Defendant disagrees, that is simply a question of fact that is improper at the 12(b)(6) stage.

### iii.    Plaintiffs have pled facts sufficient to seek injunctive relief under the GUDTPA.

Defendant's contention that Plaintiffs are not persons entitled to seek equitable or injunctive relief under the GUDTPA is without merit.  (Mot. to Dismiss at 31.)  Under the GUDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under principles of equity and on terms that the court considers reasonable."  See O.C.G.A. § 10-1-373.

Prospective relief is due here, as the practices at issue are still ongoing and will continue into the future.  The defective washing machines are mass-produced and are still sent into the stream of commerce with a defect known to Defendant.  The misleading marketing and promotion of the washing machines is still ongoing.  Defendant's substantial gains from the sale of its defective products, as well as its gains from necessary service calls, are still ongoing.

---

[11] Similar conduct involving misrepresentations and non-disclosure by a corporation to the buying public have been found to constitute unfair and deceptive practices under the identical language of the Georgia Fair Business Practices Act.  See *Marrale v. Gwinnett Place Ford*, 271 Ga. App. 303 (2005) (unfair or deceptive practice to represent a vehicle as accident-free and in failing to disclose prior damage when, in truth, vehicle had been damaged.).  *See also Regency Nissan, Inc. v. Taylor*, 194 Ga. App. 645 (1990) (unfair business practice if, before product was sold, seller is placed on reasonable notice of adverse defect and does nothing before initiating the sale); *Paces Ferry Dodge, Inc. v. Thomas*, 174 Ga. App. 642 (1985) (unfair and deceptive practice by defendant in failing to take measures to uncover an adverse defect, causing product not to have the qualities represented to buying public); *Neal Pope, Inc. v. Garlington*, 245 Ga. App. 49 (2000) (unfair and deceptive practice in failing to disclose the vehicle's prior damage).

Defendant's failure or refusal to take any corrective measures or provide any remedy to consumers is still ongoing.  Defendant simply tells its consumers to continue wiping down the inside of its machines when not in use (despite safety warnings contained in Defendant's User's Manual to keep the machine's door closed at all times).  This is no more a remedy for an inherent design defect than telling customers to simply not use water when they wash clothes.  Defendant will continue this approach in the future if its unfair business practices cannot be remedied on a prospective basis.  The equitable relief afforded by the GUDTPA is well-suited for these circumstances.

The issues stemming from the deceptive conduct will persist in the future for the buying public, as well as for those already owning a defective machine like Plaintiffs.  Without relief, Plaintiffs' problems will continue well into the future.  They will continue to spend time, money, and effort associated with problems with their washing machines that they can do little about.  They will continue to have to settle for no direction or relief from Defendant, except for the directive to wipe the inside of their machines down after every cycle and leave its door open.  They will continue to have no relief or other viable option from Defendant to look into the future.

Unlike *Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639 (2002) cited by Defendant, where the defendant represented that one particular car was new when it was not, the present case involves the ongoing and widespread marketing and distribution of a product with a design defect common to each unit sold.  (FAC, ¶39, 45, 60.)  This case does not involve a one-time, isolated event or occurrence.  (*Id.*, ¶36.).[12]  Moreover, unlike *Catrett*, this case involves ongoing conduct where actions or relief <u>can</u> be taken on a prospective basis, such as a recall or repair program, to cure or do something about the common defect.[13]

---

[12] In *Catrett*, there was no relief that could be provided on a prospective basis, because nothing could be done to change the fact that Mr. Catrett's car simply was not new when sold.  Here, there are equitable options available to remedy the defect and other conduct on a prospective basis that would provide relief for buyers.

[13] *Moore-Davis Motors, Inc. v. Joyner*, 556 S.E. 2d 137 (Ga. Ct. App. 2001), also cited by Defendant, is equally distinguishable, as the court there found the plaintiff had no past damages at all, and the defendant had already ceased running the alleged false advertisement at issue.

Finally, Defendant contends that Plaintiffs should not be allowed to seek equitable/prospective relief under her GUDTPA claim because they seek money damages under other counts of their FAC and therefore have an "adequate remedy at law."  (Mot. to Dismiss at 32.)  Defendant's baseless contention wholly ignores the fact that alternate pleading is proper and routine under Rule 8.  Moreover, it is axiomatic that the GUDTPA "does not preclude a right of recovery under the common laws or other statutes."  *Magliaro v. Lewis*, 203 Ga. App. 632 (1992).  To be certain, Georgia courts routinely allow litigants to simultaneously seek equitable claims for prospective relief under the GUDTPA and monetary relief under some other common law claim.  *Square Intern., Ltd. V. BBDO Atlanta, Inc.*, 455 F. Supp. 2d 1347 (N.D. Ga. 2006); *Int'l Brominated Solvents Ass'n v. ACGIH, Inc.*, 393 F. Supp. 2d 1362 (M.D. Ga. 2005); *Davita, Inc. v. Nephrology Assocs.*, 253 F. Supp. 2d 1370 (S.D. Ga. 2003).

### 2.   Plaintiff Brown Has Pled a Valid Claim Under California's Unfair Competition Law.

Plaintiff Brown properly alleges that Defendant engaged in conduct giving rise to a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.* ("UCL").  The UCL declares as unfair competition "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal Bus. & Prof. Code § 17200.  "Because [UCL § 17200] is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition."  *Morgan v. AT&T Wireless Servs., Inc.*, 2009 WL 3019780 at *11 (Cal. Ct. App. Sept. 23, 2009) (internal citations omitted).  Plaintiffs' FAC sufficiently alleges facts to sustain a UCL claim on behalf of Plaintiff Brown and the California subclass.

### i.   Plaintiff Brown has properly alleged unlawful conduct under the UCL.

An unlawful business practice under the UCL is "'anything that can properly be called a business practice and that at the same time is forbidden by law.'"  (*Id*.)  Plaintiff Brown's detailed allegations concerning the false and misleading advertisements, representations, and

36

concealment by Defendant (discussed above in Section C(1), *infra*) establish a violation of § 17500, which is a predicate statute for violations of § 17200.[14]  (*See also* FAC, ¶¶78-82.)  A plain reading of Plaintiffs' FAC, including Plaintiff Brown's UCL claim (which adopts by reference the FAC's prior allegations), demonstrates that Plaintiff Brown has properly alleged that Defendant's misconduct is unlawful as required under § 17200.  Defendant's arguments to the contrary are due to be rejected.

### ii.     Plaintiff Brown has alleged unfair conduct under the UCL.

Plaintiff Brown also alleges that Defendant engaged in "unfair" conduct giving rise to claims pursuant to the UCL.  Defendant misstates the applicable requirements for stating a claim under the "unfair" prong, as the mandate set forth in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) that unfair conduct "must be tethered to specific constitutional, statutory, or regulatory provisions" is limited only to actions by competitors alleging anticompetitive practices, and does not relate to actions by consumers.  *Id.* at 187 n.12.  An "unfair" business practice as proscribed by the UCL occurs when conduct "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *People v. Casa Blanca Convalescent*

---

[14] Section 17200 specifies that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  Cal. Bus. & Prof. Code § 17200.  Section 17500, in turn, sets forth unlawful conduct pertaining to false advertising, as alleged by Plaintiff:

"**It is unlawful** for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever **or to induce the public to enter into any obligation relating thereto,** to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or **any advertising device**, or by public outcry or proclamation, **or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or mislead**ing, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised".

*Homes, Inc.*, 159 Cal. App. 3d 509, 530; *Wolf v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 4th 554, 560 (1996). *See also Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490 (2003); *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). Plaintiffs' FAC is replete with allegations evidencing that the conduct employed by Defendant is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers. Defendant's argument, which is premised upon inapposite and unsupported law, is simply without merit.[15]

### iii. Plaintiff Brown has alleged fraudulent business practices under the UCL.

A fraudulent business practice is one in which "'members of the public are likely to be deceived.'" *In Re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (quotation omitted). "A UCL claim based on the fraudulent prong can be based on representations that deceive because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive.... [a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *Morgan v. AT&T Wireless Servs., Inc.*, 2009 WL 3019780 at *12 (internal citation omitted).[16] Plaintiff Brown sufficiently alleges that the advertisements and representations by Defendant are misleading and likely to deceive the public because, *inter alia*, the statements do not disclose a serious design defect which renders the statements untrue. (FAC, ¶2, 8, 30, 33, 37, 42.) As alleged in Plaintiffs' FAC, Defendant was well aware of this common defect yet failed to disclose it to the buying public. (FAC, ¶37, 39.) Although not

---

[15] Even if Plaintiff Brown's unfair conduct claim under the UCL were required to be "tethered to statutory or regulatory provisions," Plaintiff Brown has, as discussed above, adequately alleged that Defendant's conduct is violative of California statutory law.

[16] The *Morgan* court discussed a case in which a true statement that was misleading was held to violate the UCL: "For example, in *Pastoria v. Nationwide Ins.*, *supra*, 112 Cal. App. 4th 1490, the plaintiffs alleged: (1) they purchased insurance policies based upon the defendant insurance company's description of the premiums, lack of deductibles, and other policy benefits; (2) less than two months later the insurer notified them of significant changes to their policies, including material increases in premiums and substantial deductibles; and (3) the insurer knew of the impending changes to the policies at the time plaintiffs purchased them, but did not communicate that to the plaintiffs. (*Id.* at 1493.) The court held that those allegations were sufficient to state a claim for relief under the fraudulent business practices prong of the UCL. (*Id.* at 1499). *Morgan v. AT&T Wireless Servs., Inc.* at *12.

required to do so to assert a viable UCL claim, Plaintiffs allege that Defendant had a duty, under all the circumstances, to disclose the common defect known by it and problems resulting therefrom.  (FAC, ¶4).

Moreover, Plaintiff Brown is not required to plead reliance "with specificity" to assert a claim under the fraudulent prong of the UCL.  *In Re Tobacco II*, 46 Cal. 4th at 312 ("relief under the UCL is available without individualized proof of deception, reliance, and injury").  Because the focus of the UCL is on the conduct of the defendant and not of the consumer, the "determination as to whether a business practice is deceptive is based on the likely effect such [a] practice would have on a reasonable consumer."  *Morgan*, *supra* (internal citations omitted).  Nonetheless, Plaintiff Brown has properly pled reliance sufficiently to assert a valid UCL claim.  (FAC, ¶¶5, 6, 9, 81-82.)

Further, Plaintiff Brown has properly alleged an "injury in fact" to assert a UCL claim.  (FAC, ¶81.)  Plaintiff Brown repeatedly alleges that he and members of the California subclass would not have paid money for the Washing Machines in the absence of the misleading and false representations by Defendant.  (*Id.*, ¶¶5, 6, 81.)  Because of Defendant's fraudulent conduct, Plaintiff Brown and members of the California subclass are damaged not only by payment for a defective product, but by future expense which must be incurred in repairing or replacing the defective machine and/or damaged clothing.  (FAC, ¶40.)  Thus, Plaintiff Brown has proper standing and "injury in fact" resulting from Defendant's fraudulent conduct.  Plaintiff Brown asserts a claim pursuant to the fraud prong of the UCL upon which relief may be granted.

### 3.    Plaintiff Vogler Has Pled a Valid Claim Under the Texas Deceptive Trade Practices Act.

Plaintiff Vogler asserts claims against Defendant under the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTP-CPA").  Because Plaintiff Vogler alleges facts which fully support his claim for relief pursuant to the TDTP-CPA, Defendant's motion to dismiss this claim is due to be denied.

### i.   Plaintiff Vogler alleges actionable misconduct by Defendant under the TDTP-CPA

Plaintiff Vogler's claims for Defendant's violations of the TDTP-CPA are premised on Tex. Bus. & Com. Code § 17.46(b).[17]  Like the Plaintiffs discussed in Section C(1) & (2) above, Plaintiff Vogler also contends that Defendant's representations (as outlined in Plaintiffs' FAC at ¶¶ 30-35, 37-45) concerning the Washing Machines are rendered misleading, confusing and/or false by virtue of Defendant's failure to disclose the known design defect.   Although, like Georgia's GUDTPA, Texas' TDTP-CPA does not require affirmative representations to state a claim, these representations fully support Plaintiff Vogler's claims pursuant to the TDTP-CPA.[18]

Further, Defendant again seeks to minimize its misconduct by attempting to characterize it at nothing more than non-actionable "puffery."  (Mot. to Dismiss at 37.)  However, unlike the claims of expertise of an investment broker (a position fraught with opinion and judgment) in the *Reynolds v. Murphy*, 188 S.W. 3d 252 (Tex. App. 2006) decision cited by Defendant, here, as discussed previously, the misrepresentations go to the heart of the usefulness of the product, to the very purpose for which it was intended.

Most importantly, Defendant ignores the fact that Plaintiff Vogler's TDTP-CPA claims are based upon both misrepresentations <u>and</u> the failure to disclose material information.  As

---

[17] Section 17.46(b) defines the term "false, misleading, or deceptive acts or practices" as including, "but not limited to, the following acts:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not; ….

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another….

(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Tex. Bus. & Com. Code § 17.46(b) (5), (7), & (24).

[18] The case cited upon by Defendant to support its argument concerning the requirement of an affirmative representation under TDTP-CPA, *Steptoe v. True*, 38 S.W.3d 213 (Tex. App. 2001), explicitly acknowledges that a failure to disclose may be actionable pursuant to the TDTP-CPA.

Defendant is aware, TDTP-CPA § 17.46(b)(24) declares as unlawful "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." Here, Plaintiff Vogler has sufficiently pled that Defendant concealed its awareness of the common defect, and that he and members of the Texas subclass would not have purchased Defendant's machines had the known defect been disclosed. (FAC, ¶90-91.) These facts, as sufficiently pled in Plaintiffs' FAC, are tailor made for a claim under TDTP-CPA § 17.46(b)(24).

ii. **Plaintiff Vogler's TDTP-CPA claim does not fail for "lack of reliance."**

Respectfully, Defendant's contention that reliance is a required element of a TDTP-CPA claim is misplaced.[19] (Mot. to Dismiss at 37-38.) Regardless, Plaintiff has pled facts sufficient to demonstrate reliance on Defendant's misconduct. (FAC, ¶¶90-92.) Indeed, the cases cited by Defendant are inapposite and all concerned affirmative **proof** required at the class certification stage, the summary judgment stage, or at trial - - - not at the Rule 12(b)(6) Motion to Dismiss stage.[20]

The TDTP-CPA only requires that the defendant's conduct be a "producing factor" of plaintiff's damage, which Plaintiff Vogler has properly alleged. (*Id.*) In *Jeep Eagle Sales Corp.*

---

[19] Defendant bases its entire argument upon a misapplied quote from a *dissenting opinion* to argue that an affirmative representation and reliance are requirements to assert a claim pursuant to the TDTP-CPA. (Mot. to Dismiss at 37-38.) Indeed, the quoted language from the dissent in *Henry Schein v. Stromboe*, 102 S.W.3d 675, 705 (Tex. 2002) explicitly notes that the quoted language from *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App. 2000), which purports to require proof of reliance for a TDTP-CPA claim is, in fact, dicta (at best), as the *Checker Bag* court never addressed the issue of reliance since that argument had not been preserved for appeal. *Stromboe*, 102 S.W.3d at 705. Reliance, therefore, may not be deemed a requirement for all claims pursuant to TDTP-CPA. Likewise, the existence of an affirmative representation is not addressed by the *Stromboe* court and is contradicted by the express language of § 17.46(b)(24): "*failing to disclose* information concerning goods or services which was known at the time of the transaction if such *failure to disclose* such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed." (emphasis supplied), *inter alia*.

[20] *Spector v. Norwegian Cruise Line, Ltd.*, No. 01-02-00017-CV, 2004 WL 637894 (Tex. App. Mar. 30, 2004) (on motion for class certification); *Henry Schein*, 102 S.W.3d at 686-87 (on motion for class certification); *Peltier Eneter., Inc., v. Hilton*, 51 S.W.3d 616 (Tex. App. 2001).

41

*v. Mack Massey Motors, Inc.*, 814 S.W.2d 167, 175-76 (Tex. App. 1991), the court noted that the term "[p]roducing cause [as used in § 17.50] does not include foreseeability, but rather whether a defendant's action, in a natural sequence, excited, contributed to or factually caused the harm complained of." (*Id.*)  In the instant case, Plaintiff Vogler has more than adequately alleged that Defendant's conduct (as specified in the FAC) caused the harm suffered by him and members of the Texas subclass, as required by the TDTP-CPA.

### iii.    Plaintiff Vogler provided adequate notice under the TDTP-CPA

Defendant contends that Plaintiff Vogler failed to provide it with advance, written notice of the complaint and the amount of damages claimed, an act which allegedly mandates a 60-day abatement of Plaintiff's claim.  (Mot. to Dismiss at 38-39.)

Defendant's argument is flawed, however, because Plaintiff Vogler did, in fact, provide notice of his FAC to Defendant in November 2008 as set forth in ¶ 15 of Plaintiffs' FAC. Plaintiff Vogler's notice set forth the basis of his FAC, *i.e.* that he was experiencing physical problems from the mold and mildew in his Washing Machine, and offered to resolve the matter with Defendant if it would send him a free replacement boot.  Thus, Plaintiff Vogler satisfied the minimal elements of section 17.505 of the DTPA.  See *Hines v. Hash*, 843 S.W. 2d 464, 468 (Tex. 1992).   To be certain, Plaintiff Vogler is in the process of providing additional notice to Defendant and the state's consumer protection division under the DTPA.

If the Court deems the aforementioned notice by Plaintiff Vogler to be inadequate, the remedy is not dismissal, as sought by Defendant, but abatement of the claims for 60 days during which Plaintiff Vogler would have an opportunity to give notice to Defendant.  *Hines v. Hash*, 843 S.W. 2d 464, 469 (Tex. 1992).

### 4.    Plaintiff Terrill Has Pled a Valid Claim Pursuant to Wisconsin's Deceptive Trade Practices Act.

To prevail on a claim under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 ("WDTPA"), Plaintiff Terrill must prove: (1) the defendant made a representation to the

42

public with an intent to induce an obligation; (2) the representation was untrue, deceptive, or misleading; and (3) the representation materially induced a pecuniary loss to the Plaintiff. *Novell v. Migliaccio*, 749 N.W. 2d 544 (Wis. 2008). Defendant asserts Plaintiff Terrill's claims under the WDTPA fail because Plaintiff has not alleged any representation which was untrue, deceptive or misleading, or that any misrepresentation induced a loss to the Plaintiff. (Mot. to Dismiss at 40-42.)

As shown herein, Plaintiff Terrill properly alleges that Defendant committed unlawful conduct which gives rise to a claim under the WDTPA. Plaintiff Terrill explicitly alleges affirmative misrepresentations which are "untrue, deceptive or misleading" as required by § 100.18, and further alleges the representations induced a loss to him and members of the Wisconsin subclass. Defendant's motion to dismiss Plaintiff Terrill's WDTPA claims should be denied.

> **i.    Plaintiff Terrill alleges misrepresentations which give rise to his WDTPA claim.**

Plaintiff Terrill alleges that Defendant made representations that were untrue, misleading and deceptive, and alleges that such representations materially induced Plaintiff Terrill and the Wisconsin subclass to purchase Defendant's Washing Machines. (FAC, ¶¶93, 95, 96, 97-98.) As previously discussed, Plaintiff Terrill does not base his claim on mere statements of opinions or puffery, but rather relies upon false statements of material fact by Defendant concerning the machine's overall usefulness and intended use.

As Plaintiffs' FAC demonstrates, Plaintiff Terrill does not rely merely upon the failure of Defendant to disclose the known design defect, but rather alleges that the affirmative representations made by Electrolux concerning its Washing Machines are misleading and untrue given the design defect and resulting problems arising from the known defect. (*Id.*) Because Plaintiff Terrill's claims pursuant to the WDTPA are premised upon the falsity of the representations, as well as their misleading and deceptive nature, Defendant's motion to dismiss should be denied.

43

### ii.   Plaintiff Terrill has alleged that the false representations induced a loss.

Despite Defendant's assertions to the contrary, reasonable reliance is not required to sufficiently allege a WDTPA claim as asserted by Defendants.  Plaintiff Terrill need only assert that the representations induced a loss, which he has done.  *Novell*, 749 N.W. 2d 544.  Here, Plaintiff Terrill alleges that "Defendant's untrue, deceptive and misleading assertions, representations and statements of fact concerning the qualities and characteristics of its Washing Machines materially induced Plaintiff Terrill and the Wisconsin Sub-Class to purchase Defendant's Washing Machines."  (FAC, ¶98.)  Plaintiff's allegations that Defendant induced Plaintiff Terrill are sufficient to state a claim upon which relief may be granted pursuant to the WDTPA.

### 5.   Plaintiffs' Have Pled Their Deceptive Trade Practices Claims with Sufficient Particularity Under Fed.R.Civ.P. 9(b)

Defendant contends that Plaintiffs' Deceptive Trade Practices claims should be dismissed for failing to plead with the specificity required by Federal Rules of Civil Procedure 9(b).  (Mot. to Dismiss at 43.)  Even if one assumed, *arguendo*, that any heightened pleading standard is even applicable to these claims, the allegations in the FAC are specific enough to meet the requirements of Rule 9(b).  Rule 9(b) states, in relevant part, that "[i]n all averments of fraud …, the circumstances constituting the fraud … shall be stated with particularity."  As the Eleventh Circuit has repeatedly stressed, "the application of Rule 9(b), however, must not abrogate the concept of notice pleading."  *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  Likewise, the Sixth Circuit recently noted:

> "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with the Federal Rule of Civil Procedure 8.  Rule 8 requires only 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations'.  Rule 8 is commonly understood to embody a regime of 'no displeading' where technical pleading requirements are rejected in favor of an approach designed to reach the merits of an action.   (citations omitted.)   When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce

> formalities to pleading, but instead to provide defendants with a more specific
> form of notice as to the particulars of their alleged misconduct.  The purpose
> undergirding the particularity requirement of Rule 9(b) is to provide a defendant
> fair notice of the substance of plaintiff's claim in order that the defendant may
> prepare a responsive pleading."

*U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir. 2007)
(internal citations omitted).  As demonstrated throughout this Brief, Plaintiffs' detailed FAC
more than adequately gives Defendant "fair notice" of the substance of Plaintiffs' claims.

To argue that the FAC "does not plead the basic 'who, what, when and how' of the
fraud," Defendant must ignore the allegations of the FAC (almost in their entirety), as these
factors are repeatedly plead throughout the FAC.  As cited more fully in previous Sections
herein, the FAC alleges specific misrepresentation and concealment of material information by
Defendant in marketing, warranting, selling and servicing certain models of its front-load
washing machines.  (FAC, ¶¶1, 2, 4, 8, 30, 33, 37.)  The FAC clearly alleges that Defendant
failed to disclose – prior to a sale – a known design defect with steel drum and gasket of the units
that causes them to accumulate substantial composites of mold inside the machine.  (*Id*. at ¶¶ 2,
6, 37.)  The FAC includes the very language of many of these misrepresentations.  (*Id*. at ¶ 30.)
As such, Plaintiffs' FAC far exceeds the pleading requirements of Rule 9(b).

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is due to be denied.

/s/ R. Brent Irby
R. Brent Irby (State Bar No. 224232)

OF COUNSEL:
Charles A. McCallum, III
McCallum, Hoaglund, Cook & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama  35216
Telephone:  (205)824-7767
Facsimile:  (205)824-7768
Email:  birby@mhcilaw.com
         cmccallum@mhcilaw.com

Lee W. Brigham
BELL & BRIGHAM
457 Greene Street
Augusta, Georgia 30903
Telephone:  (706) 722-2014
Facsimile:  (706) 722-7552
Email: lee@bellbrigham.com

Mark J. Tamblyn *(pro hac vice)*
Ian J. Barlow *(pro hac vice)*
WEXLER WALLACE LLP
455 Capitol Mall Suite 231
Sacramento, California 95814
Telephone:  (916) 492-1100
Facsimile:  (916) 492-1124
Email: mjt@wexlerwallace.com
         ijb@wexlerwallace.com

Kenneth A. Wexler *(pro hac vice)*
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
Email: kaw@wexlerwallace.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Benjamin H. Brewton
TUCKER, EVERITT, LONG, BREWTON & LANIER
Post Office Box 2426
Augusta, Georgia  30903
Telephone:  (706)722-0771
Facsimile:  (706)722-7028
Email: bbrewton@thefirm453.com

John H. Beisner
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telephone:  (202)371-7000
Facsimile:  (202)393-5760
Email: john.beisner@skadden.com

J. Russell Jackson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, New York  10036
Telephone:  (212)735-3000
Facsimile:  (212)735-2000
Email:  Russell.jackson@skadden.com

/s/ R. Brent Irby
R. Brent Irby (State Bar No. 224232)
McCallum, Hoaglund, Cook & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama  35216
Telephone:  (205)824-7767
Facsimile:  (205)824-7768
Email: birby@mhcilaw.com

47