**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ )
)
MICHAEL TERRILL, ROBERT BROWN,                )
MICHAEL VOGLER, PALECIA BOYD,               )
AND DENISE PACK on behalf of                            )
themselves and all others similarly situated,          )
)     CASE NO:  CV108-030
Plaintiffs,                              )
)
v.                                                                          )
)
ELECTROLUX HOME PRODUCTS, INC.          )
d/b/a FRIGIDAIRE®,                                           )
)
Defendant.                             )
\_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ \_ )

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iv

ARGUMENT .....................................................................................................1

I.    Georgia's Choice-of-Law Rules Mandate That the Law of Each Plaintiff's Home
      State Apply to His or Her Claims. .............................................................1

      A.    The Court Cannot Test the Sufficiency of Plaintiffs' Claims Until It
            Determines What Law To Apply. ..........................................................1

      B.    Plaintiffs' Claims Are Governed by the Laws of Their Home States.....................3

II.   Plaintiffs' Claims Fail Under All Applicable States' Laws...............................5

      A.    Plaintiffs Do Not State a Claim for Breach of Express Warranty (Count II).
            ...............................................................................................5

            1.    None of the Plaintiffs Has Identified a Defect in "Material or
                  Workmanship" Covered by the Express Warranty at Issue.....................5

            2.    Plaintiffs Boyd, Pack, Terrill and Brown Fail To Properly Allege
                  Notice and an Opportunity To Cure............................................6

                  a.    A Lawsuit Is Not Notice and an Opportunity To Cure..................6

                  b.    Alleged Pre-Existing Knowledge Does Not Nullify the
                        Notice Requirement. ...............................................7

      B.    Plaintiffs Have Not Stated a Claim for Breach of Implied Warranty (Count
            III). .......................................................................................8

            1.    Plaintiffs Have Failed To Allege That Their Washers Were
                  Unmerchantable at the Time of Sale..........................................8

            2.    As With Their Express Warranty Claims, All But One of the
                  Plaintiffs Fail To Properly Allege That They Provided Notice of
                  the Alleged Breach...........................................................9

            3.    The Implied Warranty Claims Alleged by Plaintiffs Boyd, Terrill
                  and Brown Also Fail for Lack of Privity. ....................................9

      C.    Plaintiffs' Unjust Enrichment Claims (Count IV) Are Barred As a Matter
            of Law. ..................................................................................11

D.    Plaintiffs' Magnuson-Moss Warranty Act Claims (Count V) Fail for the Same Reasons as Their Express and Implied Warranty Claims. ..........................13

E.    Plaintiffs' Consumer Protection Claims Must Be Dismissed (Counts I, VI-VIII). ................................................................................................................14

    1.    Plaintiff Boyd Cannot State a Claim Under the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") (Count I)............................14

        a.    Plaintiff Boyd Has Not Alleged an Affirmative Misstatement Capable of Giving Rise to a GUDTPA Claim. ........................................................................................................14

        b.    The GUDTPA Claim Also Fails for Lack of Causation. ...............15

        c.    Ms. Boyd Is Not Likely To Be Harmed Absent Injunctive Relief..............................................................................................16

    2.    Plaintiff Brown Fails To State a Claim Under California's Unfair Competition Law ("UCL") (Count VI).....................................................16

        a.    Electrolux's Conduct Cannot Be "Unlawful" Under the UCL.................................................................................................16

        b.    Plaintiff Brown Fails To Meet the "Unfair" Prong of the UCL.................................................................................................17

        c.    Plaintiff Brown Does Not Adequately Allege a Claim Under the "Fraud" Prong of the UCL. ............................................18

    3.    Plaintiff Vogler Cannot State a Claim Under the Texas Deceptive Trade Practices & Consumer Protection Act ("TDTPA") (Count VII)............................................................................................................19

        a.    Plaintiff Vogler's Claims Under TDTPA Section 17.46(b)(5) and (7) Fail Because He Has Not Alleged an Actionable, Affirmative Misrepresentation. ...................................19

        b.    Mr. Vogler's TDTPA Claim Also Fails for Lack of Reliance..........................................................................................20

        c.    Mr. Vogler Failed To Give Notice................................................21

    4.    Plaintiff Terrill Does Not State a Valid Claim Under Wisconsin's Deceptive Trade Practices Act ("WDTPA") (Count VIII). ......................21

a.    Mr. Terrill Has Not Identified an Affirmative Misrepresentation Capable of Giving Rise to a WDTPA Claim. ............................................................................21

b.    The WDTPA Claim Also Fails for Lack of Reliance. ...................22

5.    Even If Plaintiffs Had Properly Pled Each Element of Their Consumer Fraud Claims, They Are Not Pled With the Requisite Particularity. ..............................................................................................23

CONCLUSION .....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379 (7th Cir. 2003) ...............................7

*Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262 (4th Cir. 1998)........................................8

*Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710 (7th Cir. 1992)...................................................8

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .......................................................................24

*Avery v. State Farm Mutual Automobile Insurance Co.*,
   835 N.E.2d 801 (Ill. 2005) ............................................................................................4

*Ball v. Johanns, No. CIV. S-07-1190 LKK/DAD*,
   2008 U.S. Dist. LEXIS 9609 (E.D. Cal. Jan. 29, 2008)................................................12

*Ball v. Sony Electrics Inc.*, No. 05-C-307-S,
   2005 WL 2406145 (W.D. Wis. Sept. 28, 2005) ............................................10, 12, 13

*Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910 (Ill. 2007)........................................4

*Berry v. Budget Rent A Car System, Inc.*,
   497 F. Supp. 2d 1361 (S.D. Fla. 2007) ..........................................................1, 2, 4, 5

*Berry v. Indianapolis Life Insurance Co.*,
   608 F. Supp. 2d 785 (N.D. Tex. 2009) .............................................................1, 2, 3

*Berryman v. Merit Prop. Mgmt.*, 62 Cal. Rptr. 3d 177 (Ct. App. 2007)...........................18

*Birdsong v. Toyota Motor Credit Corp.*,
   No. 2000-C1-06279, 2002 WL 32830975 (Tex. Dist. Ct. May 15, 2002) ............19, 20

*Brenner v. Future Graphics, LLC*, 258 F.R.D. 561 (N.D. Ga. 2007)..................................4

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*,
   288 F.3d 1012 (7th Cir. 2002) ...................................................................................4, 9

*Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999)....................................................................9

*Calkins v. Valley Mobile Homes, Inc.*, No. 791186,
   1981 WL 139389 (Wis. Ct. App. Feb. 24, 1981).................................................13, 14

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
   87 Cal. Rptr. 3d 5 (Ct. App. 2008)................................................................................7

*Chaurasia v. General Motors Corp.*, 126 P.3d 165 (Ariz. Ct. App. 2006) ......................14

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ................................17

*Compaq Computer Corp. v. LaPray*, 135 S.W.3d 657 (Tex. 2004) ...................................4

*Computer Network, Inc. v. AM General Corp.*,
  696 N.W.2d 49 (Mich. Ct. App. 2005) .......................................................................14

*In re Conagra Peanut Butter Products Liability Litigation*,
  No. 1:07-MD-1845-TWT, 2008 U.S. Dist. LEXIS 40753
  (N.D. Ga. May 21, 2008) ..............................................................................................2

*Daugherty v. American Honda Motor Co.*,
  51 Cal. Rptr. 3d 118 (Ct. App. 2006) ...................................................................17, 18

*Demorato v. Carver Boat Corps.*, No. 06-240, 2007 WL 1456207
  (D.N.J. May 16, 2007), *aff'd*, 304 F. App's 100 (3d Cir. 2008).................................13

*Energy Four, Inc. v. Dornier Medical System, Inc.*,
  765 F. Supp. 724 (N.D. Ga. 1991) ..............................................................................15

*Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844 (Tex. App. 2005).........................................9

*In re Ford Motor Co. Bronco II Product Liability Litigation*,
  177 F.R.D. 360 (E.D. La. 1997)....................................................................................4

*Ford Motor Co. v. Rice*, 726 So. 2d 626 (Ala. 1998) .........................................................9

*Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323 (N.D. Ga. 2004)...........................3

*Gill v. Blue Bird Body Co.*, 147 F. App'x 807 (11th Cir. 2005).......................................13

*Godfry v. State Farm Mutual Insurance Co.*, No. 08-4813,
  2009 U.S. Dist. LEXIS 19123 (E.D. Pa. Mar. 4, 2009)................................................2

*Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340 (N.D. Ga. 2009)...............12

*Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675 (Tex. 2002).........................................20

*Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222 (N.D. Ga. 2005)...................13

*Hodgson v. Man Finance Inc.*, No. 06-1944,
  2006 U.S. Dist. LEXIS 94307 (E.D. Pa. Dec. 29, 2006)..............................................2

*Hubbard v. GMC*, No. 95 Civ. 4362,
    1996 U.S. Dist. LEXIS 6974 (S.D.N.Y. May 22, 1996)................................................9

*Hudson v. Gaines*, 403 S.E.2d 852 (Ga. Ct. App. 1991) ................................................6, 7

*In re Johnston Industrial, Inc.*, 300 B.R. 821 (Bankr. M.D. Ga. 2003)............................15

*Karnuth v. Rodale, Inc.*, No. Civ.A. 03-742,
    2005 WL 1683605 (E.D. Pa. July 18, 2005)..................................................................4

*Lewis v. Mercedes-Benz USA, LLC*, No. 1:03-CV-4000-JOF,
    2004 WL 3756384 (N.D. Ga. Sept. 13, 2004) ...............................................................7

*Marrale v. Gwinnett Place Ford*, 609 S.E.2d 659 (Ga. Ct. App. 2005) ...........................15

*Med South Health Plans, LLC v. Life of the South Ins. Co.*,
    No. 4:07-CV-134(CDL), 2008 WL 2119915 (M.D. Ga. May 19, 2008) ...................16

*Monticello v. Winnebago Industrial, Inc.*,
    369 F. Supp. 2d 1350 (N.D. Ga. 2005) ................................................................11, 13

*Neal Pope, Inc. v. Garlington*, 537 S.E.2d 179 (Ga. Ct. App. 2000) ...............................15

*Neal v. SMC Corp.*, 99 S.W.3d 813 (Tex. App. 2003) ................................................13, 14

*Neuser v. Carrier Corp.*, No. 06-C-645-S,
    2007 WL 1470855 (W.D. Wis. May 15, 2007) ...........................................................12

*Novell v. Migliaccio*, 749 N.W.2d 544 (Wis. 2008) .........................................................22

*O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110 (D. Minn. 2008),
    *aff'd*, 574 F.3d 501 (8th Cir. 2009)...............................................................................9

*Paces Ferry Dodge, Inc. v. Thomas*, 331 S.E.2d 4 (Ga. Ct. App. 1985) ..........................15

*Parent v. Brunswick Family Boat Co.*, No. 1:05-cv-1477,
    2006 U.S. Dist. LEXIS 77835 (N.D. Ga. Oct. 25, 2006)............................................11

*Paulson v. Olson Implement Co.*, 319 N.W.2d 855 (Wis. 1982)......................................10

*Perona v. Volkswagen of America, Inc.*, 684 N.E.2d 859 (Ill. App. Ct. 1997)..............7, 13

*Perry v. Cohen*, 285 S.W.3d 137 (Tex. App. 2009) .........................................................20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ..................................................4, 5

*Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467 (Ga. Ct. App. 1990) ...............................15

*Reynolds v. Murphy*, 188 S.W.3d 252 (Tex. App. 2006) ...................................................20

*Rottman v. Krabloonik, Inc.*, 834 F. Supp. 1269 (D. Colo. 1993) .......................................2

*Schreib v. Walt Disney Co.*, No. 1-05-0094, 2006 WL 573008 (Ill. Ct. App. Feb.
    1, 2006) ..........................................................................................................................13

*Sidco Products Marketing, Inc. v. Gulf Oil Corp.*, 858 F.2d 1095 (5th Cir. 1988) ...........19

*Singer v. AT&T Corp.*, 185 F.R.D. 681 (S.D. Fla. 1998) ....................................................3

*Smith & White Health Plan, Inc. v. Ruffino*, No. C14-94-00039-CV,
    1994 WL 107286 (Tex. App. Mar. 31, 1994) ...............................................................21

*Soto v. CarMax Automobile Superstores, Inc.*,
    611 S.E.2d 108 (Ga. Ct. App. 2005) ..............................................................................8

*Spacesaver Corp. v. Marvel Group, Inc.*,
    621 F. Supp. 2d 659 (W.D. Wis. 2009) ..................................................................22, 23

*Spector v. Norwegian Cruise Line Ltd.*, No. 01-02-00017-CV,
    2004 WL 637894 (Tex. App. Mar. 30, 2004) ................................................................20

*State v. America TV & Appliance of Madison, Inc.*, 430 N.W.2d 709 (Wis. 1988) ..........22

*St. Paul Mercury Ins. Co. v. Viking Corp.*, No. 04-C-1124, 2007 WL 129063
    (E.D. Wis. Jan 12, 2007), *aff'd*, 539 F.3d 623 (7th Cir. 2008) ....................................22

*TKO, Ltd. v. Manternach*, No. 97-3066,
    1998 WL 731165 (Wis. Ct. App. Oct. 21, 1998) ..........................................................23

*Taterka v. Ford Motor Co.*, 271 N.W.2d 653 (Wis. 1978) ..................................................8

*Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233 (Wis. 2004) ............................9, 22

*Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL),
    2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ................................................17, 18, 19

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) ......................................................18, 19

*Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349 (Tex. App. 2003) .......................................5

*In re Tri-State Crematory Litigation*, 215 F.R.D. 660 (N.D. Ga. 2003) ............................4

*Tyler v. Peltier Enterprs., Inc. v. Hilton*, 51 S.W.3d 616 (Tex. App. 2000).....................20

*U.S. Roofing Inc. v. Credit Alliance Corp.*,
    228 Cal. App. 3d 1431 (Ct. App. 1991).................................................................10, 11

*Valenti v. Hewlett-Packard Co.*, No. 03-2257,
    2004 WL 1277490 (Wis. Ct. App. June 3, 2004) ......................................................23

*Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y. 1997) .................................................9

*Wilson v. Style Crest Products, Inc.*, 627 S.E.2d 733 (S.C. 2006) .....................................9

*Wolph v. Acer America Corp., No. C 09-01314,*
    2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ....................................................10, 12

*Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204 (Ct. App. 1997) .........................................9

*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194 (11th Cir. 2001)...........................24

## STATUTES

Cal. Bus. & Prof. Code §§ 17500 *et seq.* .........................................................................16

Cal. Com. Code §§ 2101 *et seq.* .........................................................................................3

Cal. Com. Code § 2607(A) ...................................................................................................8

Ga. Code Ann. §§ 11-2-101 *et seq.*......................................................................................3

S.C. Code Ann. §§ 36-2-101 *et seq.* ....................................................................................3

Tex. Bus. & Com. Code Ann § 2.101 *et seq.*.......................................................................3

Tex. Bus. & Com. Code Ann. § 17.46(b) ....................................................................19, 20

Tex. Bus. & Com. Code Ann. § 17.50(a)(1) .......................................................................20

Tex. Bus. & Com. Code Ann. § 17.501(a) ..........................................................................21

Tex. Bus. & Com. Code Ann. § 17.505(e) ..........................................................................21

Wis. Stat. Ann. §§ 402.101 *et seq.*......................................................................................3

Wis. Stat. Ann. § 402.607(3)(a) ...........................................................................................8

Defendant Electrolux Home Products, Inc. ("Electrolux" or "the Company") respectfully submits this reply memorandum in further support of its Motion To Dismiss Plaintiffs' First Amended Class Action Complaint.  ([79], [82].)

Plaintiffs contend in their Opposition ([88]) that they have adequately alleged all of the elements necessary to establish their various claims, whether Georgia law applies – as they propose – or whether the Court applies the law of each plaintiff's home state.  Plaintiffs have it precisely backwards.  As set forth below, there is no basis for plaintiffs' suggestion that Georgia law can be applied uniformly to Electrolux consumers all over the country.  But regardless of what law applies, plaintiffs have failed to allege the necessary elements of their claims under both Georgia law and the law of their home states.  Accordingly, all of plaintiffs' claims must be dismissed.

<u>**ARGUMENT**</u>

**I.     GEORGIA'S CHOICE-OF-LAW RULES MANDATE THAT THE LAW OF EACH PLAINTIFF'S HOME STATE APPLY TO HIS OR HER CLAIMS.**

Plaintiffs assert that it is "both unnecessary and inappropriate for the Court to decide choice of law matters at this early stage of the litigation" but argue that, if the Court does undertake a choice-of-law analysis, Georgia law should apply to all plaintiffs' claims.  (Pls.' Opp. at 6-9.)  Plaintiffs are wrong in both respects.

**A.     The Court Cannot Test the Sufficiency of Plaintiffs' Claims Until It Determines What Law To Apply.**

"[C]hoice of law . . . is normally a 'threshold inquiry that must be made before the Court can adequately address the sufficiency of the pleadings.'"  *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 n.16 (N.D. Tex. 2009) (citation omitted); *see also Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007).  This is especially true where – as here – each state applies a different legal standard to the claims alleged by plaintiffs, and the question whether plaintiffs have appropriately pled the required elements of their claims

"depends on the Court first determining this fundamental choice of law question." *Budget Rent A Car*, 497 F. Supp. 2d at 1364-65.

While plaintiffs argue that a choice-of-law determination is "premature" because discovery is ongoing (Pls.' Opp. at 6), courts have recognized that "[t]his argument . . . has little force where the [choice of law] criteria to be considered may be determined from the face of the complaint." *Rottman v. Krabloonik, Inc.*, 834 F. Supp. 1269, 1271 (D. Colo. 1993). That is the case here. The five named plaintiffs allege that they bought their washing machines from retailers within their respective states of residence. (Am. Compl. ¶¶ 13-17.) And each alleges that the washing machine was used – and exhibited the alleged defect – in his or her home state. (*Id.*) Thus, "[n]o additional evidence is necessary to answer th[e] choice of law question[s]." *Budget Rent A Car*, 497 F. Supp. 2d at 1364; *see also Rottman*, 834 F. Supp. at 1271 (similar).[1]

None of the cases cited by plaintiffs (*see* Pls.' Opp. at 6) is to the contrary. In some of plaintiffs' cases, the courts explicitly recognized the need to determine what state's law governs when ruling on a motion to dismiss. *See Godfry v. State Farm Mut. Ins. Co.*, No. 08-4813, 2009 U.S. Dist. LEXIS 19123, at *7 n.4 (E.D. Pa. Mar. 4, 2009) ("[B]oth parties are familiar with the relevant forum contacts," and "the reasons for declining review of a choice of law issue at the motion to dismiss stage are not implicated by this case."); *In re Conagra Peanut Butter Prods. Liab. Litig.*, No. 1:07-MD-1845-TWT, 2008 U.S. Dist. LEXIS 40753, at *35 (N.D. Ga. May 21, 2008) (noting that "some consideration of the applicable rules will be necessary for resolution of the motion to dismiss" and that "it is obvious to me that this case implicates more than Georgia law"). And plaintiffs' other cases involved circumstances – absent here – where the information necessary to conduct the choice-of-law analysis could not be discerned from the complaint. *See Hodgson v. Man Fin. Inc.*, No. 06-1944, 2006 U.S. Dist. LEXIS 94307, at *5 (E.D. Pa. Dec. 29,

---

[1]    Indeed, a finding that the Amended Complaint's "allegations do not allow the Court sufficient factual detail to make a considered choice of law analysis" would be independent grounds for dismissal. *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 n.16 (N.D. Tex. 2009) ("A complaint should be dismissed when the governing law cannot be determined from the facts alleged therein.") (citation omitted).

2006) (holding that "significant factual issues" at issue in the case favored postponing application of Pennsylvania's "most significant relationship" test – which requires a more fact-specific inquiry than Georgia's *lex loci delicti* and *lex loci contractus* tests); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 691 (S.D. Fla. 1998) (deferring choice-of-law ruling where the contacts applicable to the relevant choice of law analysis were "too distant and speculative" to be properly evaluated based on the pleadings).[2]  For all of these reasons, there is no basis for plaintiffs' suggestion that the Court should defer its choice-of-law analysis.

      **B.**    **Plaintiffs' Claims Are Governed by the Laws of Their Home States.**

      Plaintiffs are also wrong in arguing that a proper choice-of-law analysis would demonstrate that Georgia law governs all of their claims.

      According to plaintiffs, Georgia law automatically applies to their "common law" breach of express warranty, breach of implied warranty and unjust enrichment claims because, under Georgia's choice-of-law rules, the law of a foreign jurisdiction may only be applied to "statutory" causes of action.  (Pls.' Opp. at 7.)  But it is well recognized that express and implied warranty claims involving the sale of goods are governed by a code and therefore are statutory in nature.[3]  *See, e.g.*, *Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323, 1329 (N.D. Ga. 2004) (applying the foreign law of the place the purchaser bought the product to breach of express and implied warranty claims under Georgia's *lex loci contractus* approach).  Plaintiffs cannot avoid this legal principle merely by failing to cite the applicable warranty statutes in their Amended Complaint.

      The same is true with regard to plaintiffs' unjust enrichment claims.  As Electrolux explained in its opening brief, "due process" precludes application of Georgia law to non-

---

[2]    *Singer* is not, as plaintiffs assert (Pls.' Opp. at 6), an Eleventh Circuit decision.

[3]    *See, e.g.*, Cal. Com. Code §§ 2101 *et seq.* (express and implied warranty); Ga. Code Ann. §§ 11-2-101 *et seq.* (express and implied warranty); S.C. Code Ann. §§ 36-2-101 *et seq.* (express and implied warranty); Tex. Bus. & Com. Code §§ 2.101 *et seq.* (express and implied warranty); Wis. Stat. Ann. §§ 402.101 *et seq.* (express and implied warranty).

statutory claims absent evidence that "'the particular transaction had some significant relation to Georgia.'" *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 678 (N.D. Ga. 2003) (citation omitted); *see also Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 571 (N.D. Ga. 2007).  Here, plaintiffs' unjust enrichment claims have no real connection to Georgia.  Each plaintiff purchased and used his or her washing machine in his or her home state.  And other than plaintiff Boyd, who is a resident of Georgia, not one of the plaintiffs has alleged any contacts with the state.  As a result, uniform application of Georgia law to these plaintiffs' claims would be "arbitrary or unfair" and would violate due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985); *Karnuth v. Rodale, Inc.*, No. Civ.A. 03-742, 2005 WL 1683605, at *4 (E.D. Pa. July 18, 2005).

Plaintiffs' suggestion that "due process" principles "require[] the application of Georgia law" to all of their claims because Electrolux has corporate offices in the state (Pls.' Opp. at 8-9) is precisely backwards.  Courts have consistently rejected the notion that the law of the place of the "manufacturer's residence" governs product liability claims because such an approach runs counter to consumers' legitimate expectations and ignores the superior interests of the home states where the buyers live, shop and use their products.  *See, e.g.*, *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1016 (7th Cir. 2002) (rejecting application of the law of the manufacturer's residence to the claims of a nationwide class, terming plaintiffs' approach "a novelty"); *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 921 (Ill. 2007) ("California has no interest in extending its laws to noncitizens and to actions that occurred outside of its borders."); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 855 (Ill. 2005); *Compaq Computer Corp. v. LaPray*, 135 S.W.3d 657, 681 (Tex. 2004).[4]  Clearly, a consumer

---

[4]   *Accord Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1365-66 (S.D. Fla. 2007) (rejecting suggestion that because the alleged misconduct emanated from Budget Rent A Car's New Jersey headquarters, New Jersey law governed a putative nationwide class's consumer fraud claims); *Karnuth v. Rodale, Inc.*, 03-742, 2005 WL 1683605, at *4 (E.D. Pa. July 18, 2005) (similar); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 369-71 (E.D. La. 1997) (similar).

who buys a washing machine in Idaho from an Idaho retailer and experiences a problem with it in Idaho justifiably expects Idaho law to govern her claim, regardless of where the manufacturer resides.[5]  For these reasons, the Supreme Court has explicitly rejected the presumption that the law of the forum (or the defendant's home state) automatically controls where, as here, plaintiffs have no connection to that state.  *See Shutts*, 472 U.S. at 821.

In sum, the five named plaintiffs allege that they bought their washing machines within their respective states of residence and claim that their washing machines were used – and exhibited the alleged defect – in their home states.  (Am. Compl. ¶¶ 13-17.)  Accordingly, under Georgia choice-of-law principles and basic notions of due process, each plaintiff's claims should be governed by his or her own state's laws.

## II.   PLAINTIFFS' CLAIMS FAIL UNDER ALL APPLICABLE STATES' LAWS.

### A.   Plaintiffs Do Not State a Claim for Breach of Express Warranty (Count II).

#### 1.   None of the Plaintiffs Has Identified a Defect in "Material or Workmanship" Covered by the Express Warranty at Issue.

Plaintiffs argue that they have stated a valid claim for breach of express warranty because they have alleged a defect in the wash baskets used in their machines, and under Electrolux's warranty, the "stainless steel wash basket, would be eligible for repair in the event of defects in materials or workmanship, and a replacement 'part' would be provided up to the 25th year of ownership."  (Am. Compl. ¶ 51.)  But plaintiffs conflate Electrolux's two warranties:  the one-year warranty is for replacement of parts that are "defective in materials and workmanship," while the 25-year warranty is solely for "replacement" of an "inner wash basket ***that breaks*** due to a defect in materials or workmanship."  (Def.'s Br. at 3 (emphasis added).)  Try as they might, plaintiffs cannot twist their Amended Complaint into one that pleads a ***broken*** wash basket – thus making the twenty-five year warranty irrelevant.

---

[5]   *See, e.g.*, *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 357 (Tex. App. 2003) ("[A]pplying the law of each consumer's state would protect the parties' justified expectations.").

Nor have plaintiffs pled an alleged defect in **_materials_** or **_workmanship_** under the one-year warranty.  Plaintiffs claim that the bellows – *i.e.*, the rubber seal – on their washing machine doors collect water, allegedly resulting in mold or mildew.  (*See* Am. Compl. ¶¶ 37, 39.)  Plaintiffs do not plead that the bellows has failed to do its job – keeping a seal when the door is closed.  Rather, they simply take issue with the fact that they need to perform routine maintenance by wiping moisture out of their machines after use.  But none of the marketing statements identified in the Amended Complaint promises anything about the scope of the user's preventive maintenance.  Thus, plaintiffs cannot point to any express warranty that was allegedly breached in this case.  Moreover, even if the one-year warranty applied, the claims of Boyd, Terrill and Vogler – who experienced their problems more than a year after purchase – are outside the warranty period and must fail.

> **2.     Plaintiffs Boyd, Pack, Terrill and Brown Fail To Properly Allege Notice and an Opportunity To Cure.**

Plaintiffs Boyd, Pack, Terrill and Brown fail to allege that they gave Electrolux reasonable notice and an opportunity to cure.  (Def.'s Br. at 14-17.)  Ms. Boyd and Ms. Pack make no allegations about notice whatsoever.  And Mr. Terrill and Mr. Brown waited unreasonably long (six months and three years, respectively) after first experiencing problems to provide notice.

> **a.     A Lawsuit Is Not Notice and an Opportunity To Cure.**

Plaintiffs Boyd (Georgia) and Pack (South Carolina) argue that pre-suit notice was unnecessary because filing this lawsuit put Electrolux on "notice" of their claims.  (Pls.' Opp. at 13-15.)  But Ms. Pack cannot cite a single South Carolina case to this effect, and neither of Ms. Boyd's Georgia cases supports her argument.

In *Hudson v. Gaines*, 403 S.E.2d 852 (Ga. Ct. App. 1991) (Pls.' Opp. at 13), for example, the court excused the notice requirement because the plaintiff had been sold two stolen dump trucks.  Thus, even as the court observed that notice is "[a] condition **_precedent_** to filing suit

6

under Article 2 of the UCC," it excused compliance with that requirement "*in the circumstances of this case*," construing the lawsuit itself as reasonable notice.  *Id.* at 854 (emphasis added). The court was careful to limit the holding to its unique facts, explaining that the notice requirement "minimizes the possibility of prejudice by giving the seller ample opportunity to cure the defect, investigate the claim, or reduce damages at an early stage."  *Id.*  However, the plaintiff's claims there did not involve a curable defect:  a stolen dump truck cannot become un-stolen.  *Id.*  Because there was nothing to investigate, no defect to cure, and no way to mitigate damages, the justifications for pre-suit notice and an opportunity to cure were not present.  *Id.*

By contrast, here, the defect alleged by plaintiffs was not, by its very nature, incurable. To the contrary, plaintiffs themselves admit that the Company sought to advise individuals who contacted Electrolux about problems with their machines and offered money for new parts or rebates on new machines.  (Am. Compl. ¶¶ 13-14.)  Because plaintiffs Boyd and Pack never gave notice of their alleged problems, and therefore never allowed Electrolux the opportunity to cure, their warranty claims should be dismissed.[6]

### b.    Alleged Pre-Existing Knowledge Does Not Nullify the Notice Requirement.

Plaintiffs also argue that notice was unnecessary because defendant had actual knowledge that their washers were defective, as evidenced by the fact that the Company issued a service advisory about the alleged problem.  (Pls.' Opp. at 16.)  But a manufacturer's mere awareness that a product may generally be susceptible to problems is not enough to satisfy the notice requirement, even where there has been a product recall.  *See, e.g.*, *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 863 (Ill. App. Ct. 1997).  Rather, UCC section 2-607's notice requirement

---

[6]    *See, e.g.*, *Lewis v. Mercedes-Benz USA, LLC*, No. 1:03-CV-4000-JOF, 2004 WL 3756384, at *4 (N.D. Ga. Sept. 13, 2004) (granting manufacturer's motion to dismiss federal and state warranty claims where plaintiffs failed to adequately plead notice of defect and reasonable opportunity to repair); *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 87 Cal. Rptr. 3d 5, 20-22 (Ct. App. 2008) (reversing judgment for plaintiff who "concede[d] it did not notify [defendant] of the alleged breach of warranty until it filed the lawsuit"); *Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379, 383-84 (7th Cir. 2003) (dismissing warranty claim on same grounds).

is not satisfied unless the manufacturer is given notice that a ***particular*** buyer's machine has exhibited an alleged defect, so that it can investigate and attempt to cure the problem. *Id.* Similarly, both California and Wisconsin law expressly required plaintiffs Brown and Terrill to give Electrolux timely notice of **"*any*"** alleged breach of warranty "or be barred from any remedy." Cal. Com. Code § 2607(A) (emphasis added); Wis. Stat. Ann. § 402.607(3)(a) (emphasis added). For this reason too, their warranty claims fail.[7]

    **B.**    **Plaintiffs Have Not Stated a Claim for Breach of Implied Warranty (Count III).**

        **1.**    **Plaintiffs Have Failed To Allege That Their Washers Were Unmerchantable at the Time of Sale.**

As set forth in Electrolux's opening brief, plaintiffs have failed to allege that their washing machines were unmerchantable because: (1) they did not fail of their essential purpose; and (2) merchantability is measured at the time of sale. (Def.'s Br. at 18-19.) Plaintiffs are unable to rebut either point.

Plaintiffs do not claim to have alleged that any of their washing machines have stopped working or that their machines do not clean clothes. Instead, they merely claim that they have experienced problems with their washers related to owner maintenance. This is not enough to plead that the products are "unmerchantable." *See, e.g.*, *Soto v. CarMax Auto Superstores, Inc.*, 611 S.E.2d 108, 110 (Ga. Ct. App. 2005) (problems that do not render product unusable do not make the product unmerchantable); *Taterka v. Ford Motor Co.*, 271 N.W.2d 653, 655 (Wis. 1978) (undisputed facts demonstrated that automobile with a rust-causing latent defect was "merchantable," as it was still fit for the purpose of driving).

---

[7]    Plaintiffs' reliance on the Seventh Circuit's decision in *Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710 (7th Cir. 1992) (Pls.' Opp. at 15), is misplaced. There, the buyer *notified* the seller that the product would not perform as required shortly after the buyer accepted it. *Id.* at 715. "[Arcor's] holding does not apply to the present situation, in which [Brown and Terrill] made no complaints after accepting the seller's tender." *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 267 (4th Cir. 1998).

As to establishing unmerchantability *at the time of sale*, plaintiffs argue that all of defendants' washing machines are susceptible to the alleged mold/mildew problem and are thus "defective" at the time of sale.  (Pls.' Opp. at 19-20.)  But, as Electrolux pointed out in its motion to strike class allegations, the overwhelming majority of courts – including courts in plaintiffs' home states – do not recognize a cause of action for so-called "unmanifested" defects.[8]  Thus, if a product does not malfunction, no warranty has been breached.  For this reason alone, plaintiffs' implied warranty claims should be dismissed.

### 2.   As With Their Express Warranty Claims, All But One of the Plaintiffs Fail To Properly Allege That They Provided Notice of the Alleged Breach.

Plaintiffs concede that under the state laws applicable to each of their claims, implied warranty actions are subject to the same notice requirements as express warranty claims.  (Pls.' Opp. at 20.)  Thus, for the same reasons discussed above, plaintiffs Boyd, Pack, Terrill and Brown have failed to plead notice and a reasonable opportunity to cure.  For this reason too, their implied warranty claims should be dismissed.  *See* Section II.A.2, *supra*.

### 3.   The Implied Warranty Claims Alleged by Plaintiffs Boyd, Terrill and Brown Also Fail for Lack of Privity.

Plaintiffs Boyd, Terrill and Brown do not dispute that the laws of Georgia, Wisconsin and California – which govern their respective claims – all require privity (*i.e.*, a direct relationship between the buyer and seller) in order to state an implied warranty claim.  (Pls.' Opp. at 21-22.)  Rather, they suggest that where a manufacturer issues an express warranty, it is also liable for

---

[8]    *See, e.g.*, *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002); *Briehl v. GMC*, 172 F.3d 623, 629 (8th Cir. 1999); *O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1116-17 (D. Minn. 2008), *aff'd*, 574 F.3d 501 (8th Cir. 2009); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99-100 (S.D.N.Y. 1997); *Hubbard v. GMC*, No. 95 Civ. 4362, 1996 U.S. Dist. LEXIS 6974, at *9-10 (S.D.N.Y. May 22, 1996); *Wilson v. Style Crest Prods., Inc.*, 627 S.E.2d 733, 736 (S.C. 2006); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 240-41 (Wis. 2004); *Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 859-61 (Tex. App. 2005); *Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204, 208-09 (Ct. App. 1997).

implied warranty claims even where it has never interacted directly with the purchaser.  (*Id.* at 21.)  Plaintiffs are wrong, and none of the cases they cite support this argument.

The sole Wisconsin case cited by plaintiff Terrill analyzed whether extensive one-on-one dealings between a manufacturer and end-purchaser with regard to specially-made equipment created an express – not implied – warranty.  *See Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 859-60 (Wis. 1982).[9]  Moreover, Wisconsin law is clear that implied warranties "are created only between seller and buyer as part of the sales contract," even where the manufacturer has made an express warranty to an end-purchaser.  *Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *4 (W.D. Wis. Sept. 28, 2005) (dismissing product purchasers' implied warranty claim despite existence of express warranty because "[the] plaintiffs [were] not in privity with defendant and [were] the beneficiary of implied warranties only from their immediate sellers").

Similarly, plaintiffs' only California case also involved direct one-on-one negotiations and an oral agreement between the end-purchaser and supplier of specialty equipment – not a situation where a purchaser bought a product from a retailer and never interacted with the manufacturer.  *See U.S. Roofing Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431 (Ct. App. 1991).[10]  In fact, a California court recently rejected the argument that *U.S. Roofing* supports a finding of privity in cases where, as here, a product manufacturer has had no dealings with the product purchaser.  *See Wolph v. Acer Am. Corp.*, No. C 09-01314, 2009 WL 2969467, at *2-3

---

[9]    In *Paulson*, the manufacturer of a specially-made grain drying bin "*directly* promised [the end-purchaser during oral discussions] on two occasions that a specially tailored Super Steel grain drying bin would dry their harvest of 5,000 bushels of corn within twenty-four hours."  319 N.W.2d at 859 (emphasis in original).  The court held this promise to be a warranty.  *Id.* at 858-59.  By contrast, Terrill's washer was not individually customized, nor did he communicate directly with or receive oral promises from Electrolux.

[10]    In *U.S. Roofing*, the supplier directly discussed the needs of a particular job with the end-purchaser of a truck-mounted crane, directly negotiated and entered into an oral sales agreement for the equipment, and directly accepted deposits from the plaintiff.  *See* 228 Cal. App. 3d at 1438.  The plaintiff entered into a lease-to-purchase arrangement with a third-party leasing company whereby it purchased the crane from the supplier and leased it to the plaintiff with an option to buy.  *Id.*  Citing the extensive one-on-one "direct dealings" between the supplier and plaintiff, the court found that privity existed for a breach of implied warranty claim.  *Id.* at 1442.

(N.D. Cal. Sept. 14, 2009).  In *Wolph*, plaintiffs bought their Acer notebook computer from Wal-Mart, but asserted implied warranty claims against Acer, too.  *Id.* at *2.  Citing *U.S. Roofing*, plaintiffs argued that there was a fact issue about whether they were in privity with Acer.  *Id.* The court was not persuaded:  "[I]n *U.S. Roofing*, there was evidence regarding direct dealings and an oral contract between the plaintiff and the manufacturer.  In contrast here, Plaintiffs do not allege any facts to support an inference that there were any direct dealings between them and Acer or that they have a contract."  *Id.* (citation omitted).  Plaintiffs there – just like plaintiffs here – also argued that there are two exceptions to California's privity requirement:  "(1) when there is an express warranty and (2) when consumers rely on representations made by the manufacturer in advertisements or promotional materials."  *Id.* at *3.  The court rejected both arguments and dismissed the implied warranty claim.  *Id.*

Ms. Boyd's implied warranty claim fares no better under Georgia law.  Although she cites a 30-year-old case to argue that privity exists where the manufacturer includes an express warranty with a product (Pls.' Opp. at 21), she conveniently ignores the more-recent cases applying Georgia law that squarely hold otherwise.  *See, e.g.*, *Parent v. Brunswick Family Boat Co.*, No. 1:05-cv-1477, 2006 U.S. Dist. LEXIS 77835, at *13-14 (N.D. Ga. Oct. 25, 2006) (no privity exists between buyer at retail and manufacturer that issued express warranty); *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) (finding lack of privity despite manufacturer's express warranty).

For these reasons, the implied warranty claims alleged by plaintiffs Boyd, Terrill and Brown should be dismissed for lack of privity.

### C.    Plaintiffs' Unjust Enrichment Claims (Count IV) Are Barred As a Matter of Law.

Plaintiffs Terrill (Wisconsin), Vogler (Texas), Boyd (Georgia) and Pack (South Carolina) argue that they are permitted to plead their unjust enrichment claims in the alternative to their warranty claims.  (Pls.' Opp. at 25-27.)  But while plaintiffs generally "may plead equitable

11

claims in the alternative, the party may only do so if one or more of the parties contests the existence of an express contract governing the subject of the dispute." *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009) (citing *Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006)).  Here, plaintiffs explicitly allege that Electrolux made an express warranty to them (Am. Compl. ¶ 51), and Electrolux does not dispute that.  Thus, plaintiffs cannot assert equitable claims for unjust enrichment.

In an effort to evade this rule, plaintiffs argue that Electrolux challenges whether the "express warranty governs the [alleged] 'serious design defect with [the Washing Machines'] stainless steel drum and gasket."  (Pls.' Opp. at 27 (quoting Am. Compl. ¶ 2).)  But the fact that Electrolux disputes that there has been a ***breach*** of the express warranty does not mean there is no warranty to begin with.  The case law is clear that where – as here – plaintiffs allege express warranty claims and the defendant admits that an express warranty exists, plaintiffs may not also allege unjust enrichment claims simply because the defendant argues that the complaint falls outside the warranty's terms.[11]  *See e.g.*, *Sony*, 2005 WL 2406145, at *6 ("Unjust enrichment is not a mechanism for supplementing that which a purchaser perceives as inadequate contractual remedies [arising from express warranty].");  *see also Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 WL 1470855, at *26 (W.D. Wis. May 15, 2007) (similar).[12]  If that were the case, warranty limitations would be meaningless.  Rather, "any remedy must be based on the law of contract

---

[11]   The sole case cited by plaintiffs in support of their proposition that they may plead unjust enrichment claims despite the existence of a governing express warranty is inapposite.  In *Ball v. Johanns*, No. CIV. S-07-1190 LKK/DAD, 2008 U.S. Dist. LEXIS 9609, at *9-10 (E.D. Cal. Jan. 29, 2008), a question of fact existed as to whether a contract governed the subject matter of a dispute.  Thus, the plaintiff there could properly plead claims for both breach of contract and unjust enrichment.  *Id.*  Here, however, nobody denies that the Electrolux express warranty governs its washers.

[12]   Plaintiffs attempt to distinguish *Sony* and *Neuser* by arguing that they "are not pleading unjust enrichment 'as a mechanism for supplementing that which a purchaser perceives as inadequate contract remedies,'" (Pls.' Opp. at 27-28 n.6), but that is precisely what they are doing.  Likewise, plaintiffs' attempt to distinguish *Neuser* by arguing that the plaintiff there did not assert an express warranty claim is equally baseless.  *See, e.g.*, 2007 WL 1470855, at *25-26 ("The reasoning of *Ball [v. Sony]* applies equally even though plaintiffs' contract claim has failed. . . .  In the face of these existing contracts there is no unjust enrichment claim available.").

and warranty, not unjust enrichment." *Sony*, 2005 WL 2406145, at *6. Thus, plaintiffs' unjust enrichment claims are barred.

> **D.     Plaintiffs' Magnuson-Moss Warranty Act Claims (Count V) Fail for the Same Reasons as Their Express and Implied Warranty Claims.**

As set forth in Sections II.A and II.B above, no plaintiff can state a valid claim for either breach of express or implied warranty under the applicable state laws. Thus, plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims also must fail. *See Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810-11 (11th Cir. 2005) (per curiam); *see also Demorato v. Carver Boat Corps.*, No. 06-240, 2007 WL 1456207, at *8 (D.N.J. May 16, 2007) ("Breach of warranty actions that fail under state law will also fail under the Magnuson-Moss Act."), *aff'd*, 304 F. App's 100 (3d Cir. 2008).

Contrary to plaintiffs' assertion (Pls.' Opp. at 28), the MMWA does not alter state law pre-suit notice requirements for warranty claims. *See, e.g.*, *Monticello*, 369 F. Supp. 2d at 1356 ("The Act supplements, rather than supplants state law."); *Schreib v. Walt Disney Co.*, No. 1-05-0094, 2006 WL 573008, at *5 (Ill. Ct. App. Feb. 1, 2006); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 864 (Ill. App. Ct. 1997). Thus, because plaintiffs Boyd, Pack, Terrill and Brown failed to provide proper notice and an opportunity to cure as required under their states' warranty laws (*see* Sections II.A.2 and II.B.2, *supra*), their MMWA claims are barred.

Plaintiffs' argument that they are entitled to revoke acceptance of their washers under the MMWA (Pls.' Opp. at 29) is also wrong. No plaintiff alleges that he or she bought a washer directly from Electrolux, as is required to state a claim for revocation under the applicable state laws. *See, e.g.*, *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1233-34 (N.D. Ga. 2005) ("[T]he majority of courts who have addressed the question of whether revocation is available against a manufacturer with whom the buyer has not dealt directly have held that the buyer has no such entitlement.") (collecting cases); *Neal v. SMC Corp.*, 99 S.W.3d 813, 816-18 (Tex. App. 2003); *Calkins v. Valley Mobile Homes, Inc.*, No. 791186, 1981 WL 139389, at *8

(Wis. Ct. App. Feb. 24, 1981) (table decision, 306 N.W.2d 304).  Plaintiffs cite no authority to the contrary.[13]  And plaintiffs cannot state a claim for revocation under the MMWA alone where state law does not recognize such a claim.  *See Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 172 (Ariz. Ct. App. 2006).[14]  As a result, plaintiffs are not entitled to revocation under the MMWA as a matter of law.

### E.     Plaintiffs' Consumer Protection Claims Must Be Dismissed (Counts I, VI-VIII).

#### 1.     Plaintiff Boyd Cannot State a Claim Under the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") (Count I).

Ms. Boyd argues that she has stated a claim under the GUDTPA because the statute does not require an affirmative misrepresentation or reliance and because she and others will be damaged in the future absent a GUDTPA injunction.  (Pls.' Opp. at 30-34.)  Her arguments are without merit.

##### a.     Plaintiff Boyd Has Not Alleged an Affirmative Misstatement Capable of Giving Rise to a GUDTPA Claim.

Analogizing the GUDTPA to the federal Lanham Act, Boyd suggests that concealment or non-disclosure claims are actionable under GUDTPA.  (*Id.* at 30-33.)  But the Lanham Act is not at issue here, and plaintiff Boyd does not cite a single case for the proposition that non-disclosure,

---

[13]   Plaintiffs' suggestion that plaintiffs Pack and Vogler can state valid revocation claims because their implied warranty claims do not require privity under South Carolina and Texas law (Pls.' Opp. at 29) is a red-herring. "Unlike a claim of warranty that seeks a fix for defective goods or damages, a revocation seeks to put the buyer in the same position as if he had rejected the goods at the time of delivery. . . .  A manufacturer, having no part in the sales transaction, would have no part in returning the parties to a status quo." *Neal*, 99 S.W.3d at 816 (citations omitted); *see also Calkins*, 1981 WL 139389, at *8 (noting the distinction between the privity requirement in the revocation context versus the implied warranty context).  Thus, the majority approach requires privity for revocation claims even where it is not required under applicable state law to plead an implied warranty claim. *See, e.g.*, *Neal*, 99 S.W.3d at 816.

[14]   Plaintiffs also suggest that because they do not allege continued use of their washers, they cannot be found to have re-accepted them.  (Pls.' Opp. at 29.)  However, if the nonconformities with plaintiffs' washers are as substantial as plaintiffs allege them to be, their retained possession of the washers precludes revocation as a matter of law. *See, e.g.*, *Computer Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 58-59 (Mich. Ct. App. 2005) (retaining possession of product after manifestation of alleged defect barred revocation claim as a matter of law).

without more, can support a GUDTPA claim.  (*Id.*)[15]  Moreover, the Lanham Act case that plaintiffs cite actually states that "[a] mere failure to disclose is not actionable under the Lanham Act unless ***representations made*** are 'affirmatively misleading, partially incorrect, or untrue as a result of [a] failure to disclose a material fact.'"  *Energy Four, Inc. v. Dornier Med. Sys., Inc.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991) (emphasis added) (second alteration in original) (citation omitted).

The few affirmative misrepresentations Boyd does allege, such as "your laundry never looked so good," "keep your clothes looking their best" and "your clothes feel fresher and last longer" (Am. Compl. ¶ 30), are "puffing" statements that, as discussed in Electrolux's opening brief, are not actionable under GUDTPA as a matter of law.  Boyd has pled no affirmative misstatement of material fact sufficient to state a claim.

### b.    The GUDTPA Claim Also Fails for Lack of Causation.

Boyd suggests that she need not have relied upon Electrolux's alleged misconduct in order to state a GUDTPA claim.  (Pls.' Opp. at 33-34.)  But Georgia law is clear that "[a]t the very minimum, [the plaintiff] must show some causal connection between something [the defendant] has done and his own nonspeculative damages in order to receive relief'" under the GUDTPA.  *In re Johnston Indus., Inc.*, 300 B.R. 821, 824 (Bankr. M.D. Ga. 2003) (second and

---

[15]    The cases that Boyd cites (Pls.' Opp. at 34 n.11) neither involve GUDTPA nor hold that unfair trade practices claims based only on non-disclosure are valid.  For example, *Marrale v. Gwinnett Place Ford*, 609 S.E.2d 659 (Ga. Ct. App. 2005) involved an affirmative misrepresentation (not a failure to disclose, as Boyd claims) in a used car purchase and the claim was made under Georgia's Fair Business Practices Act ("FBPA"), not GUDTPA.  In that case, "[t]he salesman who sold [the plaintiff] the car ***said*** that it had never been in an accident."  *Id.* at 662 (emphasis added).  The other cases Boyd cites are equally inapposite.  *See Neal Pope, Inc. v. Garlington*, 537 S.E.2d 179, 180-81 (Ga. Ct. App. 2000) (claim was brought under FBPA and court found car dealer had affirmative statutory duty to disclose repairs to car claimed to be "new" and "salesman ***said*** that other than the mileage, there had been no problems with the car," though the car had "components [that] had melted down" and underwent engine replacement (emphasis added)); *Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467 (Ga. Ct. App. 1990) (claim was brought under FBPA and involved a stolen vehicle that dealer had no legal right to sell); *Paces Ferry Dodge, Inc. v. Thomas*, 331 S.E.2d 4 (Ga. Ct. App. 1985) (FBPA claim where car represented as "new" had actually been in prior accident).

third alterations in original) (quoting *Friedlander v. HMS-PEP Prods., Inc.*, 485 S.E.2d 240, 242 (Ga. Ct. App. 1997)).

Ms. Boyd does not allege that *she* read or saw *any* alleged misrepresentation by Electrolux, much less that *her* exposure to such a misrepresentation caused *her* damages.  For this reason too, her claim fails.

### c.   Ms. Boyd Is Not Likely To Be Harmed Absent Injunctive Relief.

Ms. Boyd does not dispute that the GUDTPA permits only injunctive relief for future harm, and *not* money damages or disgorgement of profits.  (Pls.' Opp. at 34-36.)  Nonetheless, her Amended Complaint *alleges* that "[a]s a result of Defendant's violations of the Georgia Uniform Deceptive Trade Practices Act," she and other putative class members "have been damaged" (past tense) – *not* that she will be injured in the future.  (Am. Compl. ¶ 49.)  This too warrants dismissal.  *Med S. Health Plans, LLC v. Life of the S. Ins. Co.*, No. 4:07-CV-134(CDL), 2008 WL 2119915, at *8 (M.D. Ga. May 19, 2008) (plaintiff's "fail[ure] to allege that it 'is likely to be damaged' by . . . allegedly deceptive trade practices in the future" was grounds for dismissal of GUDTPA claim) (citations omitted).

### 2.   Plaintiff Brown Fails To State a Claim Under California's Unfair Competition Law ("UCL") (Count VI).

Plaintiffs do not dispute that a plaintiff pleading a claim under the UCL must allege conduct by the defendant that is:  (1) unlawful; (2) unfair; or (3) fraudulent or deceptive.  (Pls.' Opp. at 36-39.)  Plaintiff Brown fails to sufficiently plead any of the three.  In addition, Mr. Brown failed to allege that he actually relied on Electrolux's conduct to his detriment, as required under the statute.

### a.   Electrolux's Conduct Cannot Be "Unlawful" Under the UCL.

Mr. Brown argues that he has pled unlawful conduct because he has alleged that Electrolux's conduct violates California's False Advertising Act, Cal. Bus. & Prof. Code §§ 17500 *et seq.*  (*Id*. at 36-37.)  But *nowhere does plaintiffs' Complaint even mention the False*

*Advertising Act*.  Moreover, plaintiff Brown cannot identify a false statement of fact that Electrolux has made in advertising about its products.  Instead, the Amended Complaint merely alleges that Electrolux engaged in non-actionable puffery.  (*See* Def.'s Br. at 29-30.)  Notably, a California federal court recently dismissed very similar claims under the unlawful prong of the UCL and the False Advertising Act because, *inter alia*, the statements the defendant allegedly made about its washing machines were "properly considered non-actionable puffery." *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486, at *7 & n.5 (N.D. Cal. Oct. 13, 2009) (including statements that washers are "designed . . . for years of dependable operation," "easy to use," "'best' in their class," "top-of-the-line," "highest quality," "save you time by allowing you to do fewer, larger loads," and "save the consumer energy and water").  Thus, plaintiff fails to satisfy this prong of the UCL.

> **b.**      **Plaintiff Brown Fails To Meet the "Unfair" Prong of the UCL.**

Plaintiffs also argue that Mr. Brown has pled "unfair" conduct because Electrolux's actions "offend[ed] an established public policy" or are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  (Pls.' Opp. at 38.)  But courts have repeatedly held that this "unfairness" prong of the UCL does not apply to claims – like those alleged here – that arise from basic product marketing and subsequent product malfunction after the expiration of the express warranty.  *See Tietsworth*, 2009 WL 3320486, at *7; *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 129-30 (Ct. App. 2006) (holding that "unfairness" prong of UCL did not apply to claims that engine components allegedly caused premature oil leaks that could, in turn, cause potentially serious additional engine damage because "the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers"); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008) (same).  For this reason too, plaintiff Brown's UCL claims fail.

17

c.    **Plaintiff Brown Does Not Adequately Allege a Claim Under the "Fraud" Prong of the UCL.**

Plaintiffs argue that Mr. Brown has sufficiently pled a claim under the UCL's "fraud" prong because the California Supreme Court's recent decision in *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009), purportedly allows recovery based on an allegation that "members of the public are likely to be deceived" by Electrolux's conduct, even if Mr. Brown himself was not actually exposed to, did not rely on, and therefore was not injured as a result of Electrolux's alleged deceptive conduct. (Pls.' Opp. at 38-39 (arguing that *In re Tobacco II* holds that a plaintiff can recover under the UCL "without individualized proof of deception, reliance, and injury").) This argument misreads *In re Tobacco II*, which merely holds that ***proposed class members*** need not prove individualized deception, reliance and injury to prevail under the UCL. By contrast, the decision is clear that the ***named plaintiffs*** in a proposed class action ***do*** need to prove deception, reliance and injury to advance UCL claims. 207 P.3d at 39. Other courts have so recognized. *See Tietsworth*, 2009 WL 3320486, at *8 (citing *In re Tobacco II*, 207 P.3d 20 (Cal. 2009)).

As Electrolux pointed out in its opening brief, Mr. Brown does not allege that he personally saw or heard any particular representations from Electrolux that he claims were false. (Def.'s Br. at 6.) And, as set forth in Electrolux's opening brief (*id.* at 34), courts have consistently held that under California law, the mere failure to disclose information cannot give rise to a claim under the fraud prong of the UCL in these circumstances. *See Berryman v. Merit Prop. Mgmt.*, 62 Cal. Rptr. 3d 177, 188 (Ct. App. 2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL."); *Daugherty*, 51 Cal. Rptr. 3d at 128-29 (failure to disclose a fact one has no affirmative duty to disclose does not satisfy the "likely to deceive" requirement of the UCL). Plaintiffs make no attempt to distinguish any of these authorities, and the *Tietsworth* court recently confirmed that "a mere failure to disclose a latent defect does not constitute a fraudulent business practice." 2009 WL

18

3320486, at *8 ("Defendants owed no affirmative duty to Plaintiffs to disclose any alleged defect with the Electronic Control Boards, as Defendants did not make any misrepresentations regarding this component of the Machines.") (citing *Daugherty*, 51 Cal. Rptr. 3d at 128).  Thus, Mr. Brown has not properly alleged fraudulent conduct under the UCL.

In addition, plaintiff Brown's claim under the fraud prong of the UCL also fails for lack of reliance or injury.  There is no allegation in the Amended Complaint that Mr. Brown ever relied on a statement by Electrolux in buying his washer, as required under *In re Tobacco II*, 207 P.3d at 39.  And plaintiff Brown does not even allege an actual injury that was caused by Electrolux.  This is because, although he waited three years to complain to Electrolux about his alleged "mold and mildew problems," Electrolux offered to replace his bellows.  For this reason too, Mr. Brown's UCL claim fails.

### 3.   Plaintiff Vogler Cannot State a Claim Under the Texas Deceptive Trade Practices & Consumer Protection Act ("TDTPA") (Count VII).

In support of his TDTPA claim, plaintiff Vogler argues that the TDTPA does not require an affirmative misrepresentation or reliance to state a claim, and that he has complied with the statute's pre-suit notice requirements.  (Pls.' Opp. at 40-42.)  These arguments fail.

#### a.   Plaintiff Vogler's Claims Under TDTPA Section 17.46(b)(5) and (7) Fail Because He Has Not Alleged an Actionable, Affirmative Misrepresentation.

Plaintiff Vogler acknowledges that his TDTPA claims are premised on Section 17.46(b)(5), (7) and (24) of the statute.  (*Id.* at 40 & n.17.)  And Texas courts have made clear that "Subsections (5) [and] (7) . . . of the DTPA require an affirmative representation regarding the . . . consumer transaction which was wrong."  *Birdsong v. Toyota Motor Credit Corp.*, No. 2000-C1-06279, 2002 WL 32830975, at *3 (Tex. Dist. Ct. May 15, 2002) (citing Tex. Bus. & Com. Code Ann. § 17.46(b)(5) & (7)); *Sidco Prods. Mktg., Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1099 (5th Cir. 1988)).  Thus, the alleged "concealment" or "non-disclosure" of information, standing alone, does not give rise to a cause of action under Section 17.46(b)(5) and (7) of the

statute.  *Birdsong*, 2002 WL 32830975, at *3; Tex. Bus. & Com. Code Ann. § 17.46(b)(5) & (7) (plain language of the statute requires an affirmative representation concerning the goods or services in question).  Plaintiffs are unable to identify any Texas case law to the contrary.

As set forth in Sections II.E.1.a, and II.E.2.a, *supra*, the only affirmative representations by Electrolux identified in plaintiffs' Amended Complaint are entirely irrelevant to the alleged defect and, in any event, are nothing more than mere "puffery," which cannot give rise to a consumer fraud claim.  *See Reynolds v. Murphy*, 188 S.W.3d 252, 268 (Tex. App. 2006).[16]  Thus, plaintiff Vogler's TDTPA claim fails for this reason alone.

### b. Mr. Vogler's TDTPA Claim Also Fails for Lack of Reliance.

Mr. Vogler also argues that reliance is not an element of his TDTPA claim; rather, he posits, a defendant's conduct need only be a "producing factor" of a plaintiff's damage.  (Pls.' Opp. at 41-42.)  But Section 17.46(b)(5), (7) and (24), upon which Vogler premises his TDTPA claim, explicitly require ***both*** that the alleged conduct complained of "constitute[d] a producing cause of [the consumer's] economic damages" ***and*** that the consumer "relied on [the alleged misconduct] to the consumer's detriment."  Tex. Bus. & Com. Code Ann. § 17.50(a)(1).  And if the statute left any room for doubt, the Texas Supreme Court has squarely held that reliance is an element of statutory fraud claims like those asserted here.  *See Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 (Tex. 2002).[17]

---

[16] Mr. Vogler attempts to brush *Reynolds* aside by suggesting that an investment broker's statements about the quality and benefits of his advice do not "go to the heart or usefulness of the product" (Pls.' Opp. at 40), but they clearly do.

[17] *See also Spector v. Norwegian Cruise Line Ltd.*, No. 01-02-00017-CV, 2004 WL 637894, at *7 n.16 (Tex. App. Mar. 30, 2004) ("The Supreme Court has recently recognized that laundry-list violations now require a showing of detrimental reliance.") (citing *Henry Schein*, 102 S.W.2d at 686); *Tyler v. Peltier Enterps., Inc. v. Hilton*, 51 S.W.3d 616, 624 (Tex. App. 2000) (describing reliance as "an essential element" of a TDTPA "laundry-list" claim).  Mr. Vogler tries to distinguish these clear holdings by the procedural posture of the cases (Pls.' Opp. at 41), but that would not change whether reliance is an element of a cause of action.  *See, e.g., Perry v. Cohen*, 285 S.W.3d 137, 145 (Tex. App. 2009) (affirming dismissal of claims where "alleged misrepresentations and reliance were not specifically pleaded").

Although the Amended Complaint quotes puffery from "Frigidaire's website" about the washing machines at issue (Am. Compl. ¶ 30), the simple fact remains that Mr. Vogler never alleges that *he* viewed any such representations in connection with *his* purchase, or that *he* relied upon them in buying the washer, as the TDTPA requires.  As such, his TDTPA claims are deficient as a matter of law and should be dismissed.

### c.      Mr. Vogler Failed To Give Notice.

Mr. Vogler contends that he complied with the TDTPA's pre-suit notice requirements. (Pls.' Opp. at 42.)  But he does not allege anywhere in the Amended Complaint that "at least sixty days prior to bringing suit," he gave "*written* notice advising the defendant, in reasonable detail, of the consumer's specific complaint" and the amount of damages he planned to seek. *Smith & White Health Plan, Inc. v. Ruffino*, No. C14-94-00039-CV, 1994 WL 107286, at *2 (Tex. App. Mar. 31, 1994) (citing Tex. Bus. & Com. Code Ann. § 17.505(a) (emphasis added)). Nor does Mr. Vogler allege compliance with Section 17.501(a) of the statute, which, *inter alia*, requires a plaintiff suing in a representative capacity to send a copy of the Section 17.505(a) notice to the Texas Consumer Protection Division at the same time it is sent to the defendant. Tex. Bus. & Com. Code Ann. § 17.501(a).  Thus, even if Mr. Vogler had stated a valid TDTPA claim, it would have to be abated for sixty days.  *Id.*[18]

### 4.      Plaintiff Terrill Does Not State a Valid Claim Under Wisconsin's Deceptive Trade Practices Act ("WDTPA") (Count VIII).

Mr. Terrill argues that he has alleged affirmative misrepresentations and that reliance is not an element of a WDTPA claim.  (Pls.' Opp. at 43-44.)  Both arguments fail.

### a.      Mr. Terrill Has Not Identified an Affirmative Misrepresentation Capable of Giving Rise to a WDTPA Claim.

Mr. Terrill concedes that only affirmative misrepresentations are actionable under the WDTPA, arguing instead that he has in fact alleged such misrepresentations.  (*Id.* at 43.)  But as

---

[18]      The sixty-day abatement period runs from the date that written notice is properly served.  Tex. Bus. & Com. Code Ann. § 17.505(e).

set forth in Sections II.E.1.a, II.E.2.a, and II.E.3.a, *supra*, the only affirmative statements by Electrolux identified in the Amended Complaint (Am. Compl. ¶ 30) are irrelevant to plaintiffs' claims against the company and, in any event, are mere puffery.

Wisconsin courts have repeatedly held that such "puffery" cannot give rise to a consumer fraud claim. *See, e.g.*, *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245-46 (Wis. 2004). Indeed, in very similar circumstances, the Wisconsin Supreme Court rejected WDTPA claims alleged by the state attorney general against a seller of washing machines that its products were the "best" and "finest." *State v. Am. TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 712 (Wis. 1988). As the court explained there, the defendant's "assertion is not a statement of fact which can be proven false. Rather, it is an example of puffery, long considered an acceptable advertising technique." *Id.* As a result, the court held that the state failed to properly plead a WDTPA claim. *Id.* at 712-13. This Court should do the same.

**b.      The WDTPA Claim Also Fails for Lack of Reliance.**

Mr. Terrill argues that he need not plead reliance in support of his WDTPA claim, and that all the statute requires is that the alleged misrepresentations "induced a loss." (Pls.' Opp. at 44.) However, the lone case Terrill cites for this proposition, *Novell v. Migliaccio*, 749 N.W.2d 544, 551 (Wis. 2008), is to the contrary. In *Novell*, the court addressed "whether ***reasonable*** reliance is a necessary element in a § 100.18 claim," not whether ***actual*** reliance is required. *See id.* at 551 (emphasis in original). Moreover, cases decided both before and after *Novell* are explicit that actual reliance is required. *See, e.g.*, *Spacesaver Corp. v. Marvel Group, Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) ("'[R]eliance is an aspect of the third element [of a claim under § 100.18], whether a representation caused the plaintiff's pecuniary loss.'" (second alteration in original) (quoting *Novell*, 749 N.W.2d at 553)); *St. Paul Mercury Ins. Co. v. Viking Corp.*, No. 04-C-1124, 2007 WL 129063, at *26 (E.D. Wis. Jan 12, 2007) ("A plaintiff must . . . show actual reliance on the representation" in order to state a WDTPA claim.) (citation omitted), *aff'd*, 539 F.3d 623 (7th Cir. 2008).

Mr. Terrill has not come close to pleading actual reliance.  Like the other plaintiffs, he does not allege that *he* viewed and relied upon any such representations in connection with *his* purchase of the washing machine at issue, as required under the WDTPA.  Thus, "even assuming that the [alleged] statements" from Frigidaire's website "could be deemed misleading, the statements could not have *caused* [Mr. Terrill] any losses if [he] did not see them."  *Valenti v. Hewlett-Packard Co.*, No. 03-2257, 2004 WL 1277490, at *1 (Wis. Ct. App. June 3, 2004) (table decision, 685 N.W.2d 172) (per curiam) (emphasis added).  For this reason, too, Mr. Terrill's WDTPA claim is fatally deficient and should be dismissed.[19]

> ### 5.    Even If Plaintiffs Had Properly Pled Each Element of Their Consumer Fraud Claims, They Are Not Pled With the Requisite Particularity.

Finally, plaintiffs' consumer fraud claims (Counts I, VI-VIII) also fail because even if plaintiffs had alleged all of the requisite elements of their claims, they are not pled with sufficient particularity.  While plaintiffs claim that the allegations in paragraphs 1, 2, 4, 6, 8, 30, 33 and 37 of the Amended Complaint satisfy Federal Rule of Civil Procedure 9(b) (Pls.' Opp. at 45), even a cursory review of those allegations makes clear they do not.  Paragraphs 1, 2, 4, 6, 8 and 37 merely allege – in conclusory fashion – that Electrolux failed to disclose the alleged defect in its washers.  But as previously explained (*see* Sections II.E.1.a, II.E.3.a, and II.E.4.a, *supra*), concealment allegations are not even actionable under the GUDTPA (Boyd) or the WDTPA (Terrill); nor can they support claims under Section 17.46(b)(5) and (7) of the TDTPA (Vogler).  Moreover, none of the plaintiffs alleges that he or she specifically relied on any particular alleged nondisclosure in the purchase of his or her washer.  (*See* Am. Compl. ¶¶ 13-17.)

---

[19]    *See also Spacesaver Corp. v. Marvel Group, Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) (dismissing WDTPA claim for failure to allege that "defendant made any misrepresentations to *plaintiff*") (emphasis in original); *TKO, Ltd. v. Manternach*, No. 97-3066, 1998 WL 731165, at *2 (Wis. Ct. App. Oct. 21, 1998) (table decision, 587 N.W.2d 456) (affirming dismissal of WDTPA claim "by virtue of [plaintiff's] admission that it did not rely upon any written or oral statements by [defendant]").

Only paragraphs 8, 30 and 33 of the Amended Complaint even purport to allege an affirmative misrepresentation.  Paragraphs 8 and 33 baldly assert – with **no** particularity – that Electrolux "misrepresent[ed] . . . its knowledge regarding the defect . . . to consumers" and "marketed [and] advertised and Warranted that its Washing Machines were . . . free from defects."  Such allegations fall woefully short of particularizing the "who, what, when, where and how" of the alleged fraud under Rule 9(b).  *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).[20]

Paragraph 30 of the Amended Complaint is the **only** one plaintiffs cite that actually identifies affirmative statements allegedly made by Electrolux.  But as previously explained (*see* Sections II.E.1.a, II.E.2.a, II.E.3.a, and II.E.4.a, *supra*), statements like "you've never done your laundry like this," "your laundry never looked so good" and "keep your clothes looking their best" are classic non-actionable puffery.  Moreover, none of the plaintiffs alleges having seen, heard or relied upon them.

Thus, all of plaintiffs' consumer fraud claims should also be dismissed because they are not pled with the particularity required by Rule 9(b).

---

[20]   Indeed, these "allegations" do not even satisfy Rule 8.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (citations omitted) (alteration in original).

24

## CONCLUSION

For the foregoing reasons, Electrolux respectfully requests that the Court enter an order dismissing all counts of plaintiffs' First Amended Class Action Complaint.

S/BENJAMIN H. BREWTON
STATE BAR NO. 002530
TUCKER, EVERITT, LONG,
BREWTON & LANIER
P. O. BOX 2426
AUGUSTA, GEORGIA 30903
Telephone: (706) 722-0771
Facsimile: (706) 722-7028
E-mail:   bbrewton@thefirm453.com

and

SKADDEN, ARPS, SLATE MEAGHER
    & FLOM LLP
John H. Beisner (*pro hac vice*)
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
Email:  john.beisner@skadden.com

J. Russell Jackson (*pro hac vice*)
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
Email:  russell.jackson@skadden.com

Attorneys for Defendant
Electrolux Home Products, Inc.

## CERTIFICATE OF SERVICE

I certify that on the 19th day of October, 2009, I have served a copy of the foregoing upon all interested parties in accordance with ECF rules by electronically filing the foregoing with the Clerk of Court using the CM/ECF system.

S/BENJAMIN H. BREWTON
STATE BAR NO. 002530
TUCKER, EVERITT, LONG,
BREWTON & LANIER
P. O. BOX 2426
AUGUSTA, GEORGIA 30903
Telephone: (706) 722-0771
Facsimile: (706) 722-7028
E-mail:   bbrewton@thefirm453.com
