# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

| | |
|---|---|
| MICHAEL TERRILL, ROBERT BROWN, MICHAEL VOGLER, PALECIA BOYD, and DENISE PACK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTROLUX HOME PRODUCTS, INC., d/b/a FRIGIDAIRE,<br><br>Defendant. | Case No: CV-108-030<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

**TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT.....................................1

II.  ARGUMENT..............................................................................4

   A.  Refinement Of The Proposed Class Definition..........................................4

   B.  The Proposed Nationwide Class And State-Based Subclasses Satisfy The
       Standards For Predominance And Superiority........................................7

       1.  Georgia Law Applies on a Nationwide Basis................................7

       2.  Application of Georgia Law Satisfies Due Process.........................9

       3.  In The Alternative, The Court May Certify Five State-Based
           Subclasses..............................................................11

           a.  California............................................................13

           b.  South Carolina.......................................................13

           c.  Wisconsin............................................................14

           d.  Texas................................................................15

           e.  Georgia..............................................................16

   C.  Plaintiffs' Claims Are Subject To Common Proof.................................17

       1.  Deceptive Trade Practices.............................................17

       2.  Claims Based on Latent Defects Do Not Turn on Individualized
           Evidence...............................................................20

       3.  Plaintiffs' Warranty Claims...........................................23

           a.  Notice Requirements Are Not Subject To Individualized
               Inquiries..........................................................23

           b.  Plaintiffs Express Warranty Claims Are Subject To Common
               Questions Of Law And Fact.........................................28

               i.  Uniform Tumble Action Washer Warranty...............28

i

|  |  | ii. | Frigidaire Has Refused To Repair On A Classwide Basis And Any Individual Repairs Are A Matter Of Damages.................................................29 |

|  | 4. | Unjust Enrichment...................................................31 |

|  | 5. | Affirmative Defenses Do Not Preclude Certification....................32 |

| D. | Plaintiffs Satisfy The Typicality And Adequacy Requirements of Rule 23(A)................................................................................33 |

| III. | CONCLUSION...........................................................................34 |

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Allapattah Services, Inc. v. Exxon Corp.*
    333 F.3d 1248, 1259-61 (11th Cir. 2003) ........................................................ 38

*Allstate Ins. Co. v. Hague*
    449 U.S. 302, 318, 320 (1981)......................................................................... 16

*Am. Nat. Ins. Co. v. Bratcher*
    543 U.S. 870, 125 S.Ct. 277, 160 L.Ed.2d 117 (2004)...................................... 38

*Barden v. Hurd Millwork Co.*
    249 F.R.D. 316, 322 (E.D. Wis. 2008) ............................................................. 20

*Bayer Cropscience, LP v. Booth*
    No. 7:04-cv-92, 2005 U.S. Dist. LEXIS, at *8 (M.D. Ga. Aug. 31, 2005) ...... 15

*Beattie v. Century-Tel, Inc.*
    511 F.3d 554, 562 (6th Cir. 2007) ................................................................... 36

*Brenner v. Future Graphics, LLC*
    258 F.R.D. 561, 572 (N.D. Ga. 2007)............................................................... 36

*Carter v. Anderson Merchandisers, LP*
    No. EDCV 08-25-VAP (OPx), 2008 U.S. Dist. LEXIS 53852, at *11 (C.D. Cal. July 10, 2008) ............................................................................................................... 12

*Cartwright v. Viking Indus.*
    No. 2:07-CV-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286, at *50 (E.D. Cal. Sept. 14, 2009) ................................................................................................. 19, 32, 37

*Caterpillar, Inc. v. Williams*
    492 U.S. 386, 391 (1987)................................................................................. 15

*CG v. Commonwealth of Pennsylvania*
    No. 1:06-CV-1523, 2009 U.S. Dist. LEXIS 90028, at *8-*9 (E.D. Pa. Sept. 29, 2009).. 29

*Cole v. GMC*, 484 F.3d 717, 726 (5th Cir. 2007) ................................................. 21, 28

*Daffin v. Ford Motor Co.*
    468 F.3d 549 (6th Cir. 2006) ...................................................................... 27, 35

*Elliot v. ITT Corp.*
   150 F.R.D. 569, 575 (N.D. Ill. 1992) ................................................................. 28

*Energy Four, Inc. v. Dornier Med. Systems, Inc.*
   765 F. Supp. 724, 731 (N.D. Ga. 1991) ............................................................ 24

*Frank Briscoe Co. v. Georgia Sprinkler Co.*
   713 F.2d 1500, 1503 (11th Cir. 1983) ............................................................. 14

*Gable v. Land Rover North America*
   2008 WL 441960 (C.D. Cal.) (2008) ................................................................ 28

*Greenwood v. Compucredit Corp.*
   No. C 08-04878 CW, 2010 U.S. Dist. LEXIS 3839, at *8-*9 (N.D. Cal. Jan. 19, 2010). 12

*Henry v. Cash Today, Inc.*
   199 F.R.D. 566, 571-72 (S.D. Tex. 2000) ........................................................ 22

*In re Bridgestone/Firestone Inc. v. Wilderness Tires Prods. Liab. Litig.*
   155 F. Supp. 2d 1069, 1109  (S.D. Ind. 2001) ............................................... 31

*In re ConAgra Peanut Butter Prods. Liab. Litig.*, 2008 WL 2132233 at *3 (N.D. Ga. May 21,
   2008) .................................................................................................................. 37

*In re Computer Memories Sec. Litig.*
   111 F.R.D. 675, 686 & n.8 (N.D. Cal. 1986) ................................................... 18

*In re Domestic Air Transp. Antitrust Litig.*
   137 F.R.D. 677, 683 n.5 (N.D. Ga. 1991) ....................................................... 12

*In re Live Concert Antitrust Litig.*
   247 F.R.D. 98, 141 (C.D. Cal. 2007) ............................................................... 28

*In re Microsoft XBox 360 Scratched Disc Litigation*
   No. C07-1121, 2009 U.S. Dist. LEXIS 109075 (W.D. Wash. 2009) ............... 28

*In re Monumental Life Ins. Co.*
   365 F.3d 408, 420-21 (5th Cir. 2004) .............................................................. 38

*In re Ruzulin Products Liability*
   10 F.R.D. 61 (S.D.N.Y. 2002) .......................................................................... 37

*In re Simon II Litig.*
   No. 00-CV-5332, 2002 U.S Dist. LEXIS 25632, at *276 (E.D.N.Y. Oct. 22, 2002) ....... 18

*In re Static Random Access Memory Antitrust Litig.*
　　No. C 07-01819 CW, 2009 U.S. Dist. LEXIS 110407, at *60 (N.D. Cal. Nov. 25, 2009)
　　.................................................................................................................................... 18

*In re Terazosin Hydrochloride Antitrust Litig.*
　　220 F.R.D. 672, 701 n.45 (S.D. Fla. 2004).................................................................. 18

*In re Tri-State Crematory Litig.*
　　215 F.R.D. 660, 677 (N.D. Ga. 2003)................................................................... 14, 16

*Kelley v. Microsoft*
　　251 F.R.D. 544 (W.D. Wash. 2008) ............................................................................ 37

*Klay v. Humana, Inc.*
　　382 F.3d 1241, 1259 (11th Cir. 2004) ........................................................................ 36

*Locus v. Duke Univ.*
　　No. 1:08CV607, 2009 U.S. Dist. LEXIS 12764, at *15-*16 (M.D.N.C. Feb. 19, 2009) . 15

*Mauldin v. Wal-Mart Stores, Inc.*
　　1:01-CV-2755-JEC, 2002 U.S. Dist. LEXIS 21024, at *25 (N.D. Ga. Aug. 23, 2002) ... 12

*Metowski v. Traid Corp.*
　　28 Cal. App. 3d 332, 339 (1972) ................................................................................ 32

*Parks Automotive Group, Inc. v. General Motors Corp.*
　　237 F.R.D. 567 (D.S.C. 2006) .................................................................................... 38

*Paulson v. Olson Implement Co.*
　　319 N.W.2d 855, 858-59 (Wis. 1982) ......................................................................... 21

*Phillips Petroleum Co. v. Shutts*
　　472 U.S. 797, 818 (1985)............................................................................................ 16

*Powers v. Gov't Employees Ins. Co.*
　　192 F.R.D. 313, 320 (S.D. Fla. 1998).......................................................................... 18

*Prado-Steiman v. Bush*
　　221 F.3d 1266, 1273 (11th Cir. 2000) ........................................................................ 12

*Sanders v. Lull Intern., Inc.*, 411 F.3d 1266 (11th Cir. 2005) ....................................... 38

*Sinclair v. United Healthcare of Georgia*
　　No. 1:96-cv-3412-GET, 1997 U.S. Dist. LEXIS 23696, at *3-*4 (N.D. Ga. May 5, 1997)
　　.................................................................................................................................... 28

*Smith v. Ga. Energy United States*
    259 F.R.D. 684, (S.D. Ga. 2009) ................................................................... 22, 23, 25, 37

*Spacesaver Corp. v. Marvel Group, Inc.*
    621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) ................................................ 20

*Sturdevant v. Deer*
    73 F.R.D. 375, 378 (E.D. Wis. 1976) .......................................................... 28

*The Fair v. Kohler Die & Specialty Co.*
    228 U.S. 22, 25 (1912) ................................................................................. 15

*Thomas v. Louisiana-Pacific Corp.*
    246 F.R.D. 505, 506, 517 (D.S.C. 2007) ................................................. 19, 31

*Tomlinson v. El Paso Corp.*
    No. 04-cv-02686-WDM-MEH, 2008 U.S. Dist. LEXIS 21668, at *28 (D. Colo. Mar. 18,
    2008) ............................................................................................................ 12

*Vinson v. P&G Mfg. Co.*
    No. CV 108-003, 2008 U.S. Dist. LEXIS 91559, at *9-*10 (S.D. Ga. Nov. 12, 2008) ... 28

*Walsh v. Ford Motor Co.*
    807 F.2d 1000, 1017 (D.C. Cir. 1986) ........................................................ 18

*Waste Management Holdings, Inc. v. Mowbray*
    208 F.3d 288, 296, n. 4 (1st Cir. 2000) ....................................................... 38

*Yarway Corp. v. Eur-Control USA, Inc.*
    No. C81-1476A, 1984 U.S. Dist. LEXIS 24233, at *2 (N.D. Ga. Aug. 20, 1984) ........... 15

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200, *et seq.* ............................................................... 19

Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"),
    O.C.G.A. § 10-1-371, *et seq.* .................................................................. 16, 22

O.C.G.A. § 10-1-372(a)(2), (3) ........................................................................... 24

O.C.G.A. § 10-1-372(b) ...................................................................................... 25

Tex. Bus. & Com. Code § 17.46(b)(5) and (24) ................................................... 24

Tex. Bus. & Comm. Code Ann. §§ 17.41, *et seq.* ................................................ 22

Tex. Civ. Prac. And Rem. Code §§ 33.012(a) ................................................................. 39

Wis. Stat. § 100.18 ......................................................................................................... 20

## FEDERAL RULES AND STATUTES

Fed. R. Civ. P. 23(c)(5) .................................................................................................. 17

Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* ...................... 21

Rule 23(b)(3) ................................................................................................................... 19

## STATE CASES

*Alford Chevrolet-Geo v. Jones,* 91 S.W.3d 396 (Tex. App. (Texarkana) 2002) .......................... 25

*Am. Home Shield of Texas v. Kortz,* No. 01-99-00380-CV, 2000 Tex. App. LEXIS 6125, at *13
(Tex. Ct. App. Sept. 7, 2000) ............................................................................................. 22

*Avnet, Inc. v. Wyle Labs., Inc.,* 437 S.E.2d 302, 306 (Ga. 1993) .................................................. 14

*Blanchar v. Lake Land Builders, Inc.,* 301 Wis.2d 750, 731 N.W.2d 384 (Wis. App. 2007) ...... 24

*Cole v. Sunnyside Corp.,* 610 N.W.2d 511 (Wis. App. 2000) ........................................................ 24

*Compare Servais,* 380 S.E.2d at 862 ........................................................................................... 22

*Cornerstone Design, Ltd. v. Elumatec USA, Inc.,* 736 N.W.2d 542, at *18 (Wis. Ct. App. 2007)
.......................................................................................................................................... 32

*Cuesta v. Ford Motor Co.,* 209 P.3d 278, 286 (Okla. 2009) ....................................................... 28

*Earthlink, Inc. v. Eaves,* 666 S.E.2d 420, 426 (Ga. Ct. App. 2008) ...................................... 16, 37

*Ford Motor Co. v. Lee,* 237 Ga. 554, 229 S.E.2d 379 (Ga. 1976) ............................................... 39

*Goldstein v. Searle,* 378 N.E.2d 1083, 1088 (Ill. Ct. App. 1978) ................................................ 30

*Graebel/ Houston Movers, Inc. v. Chastain,* 26 S.W.3d 24 (Tex. App. (Houston) 2000) ........... 25

*Hansen v. New Holland North America, Inc.,* 574 N.W.2d 250 (Wis. App. 1997) ...................... 38

*Heldenfels Bros v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex. 1992) ................................ 37

*Hewlett-Packard Co. v. Superior Court*, 167 Cal. App. 4th 87 (2008) ........................................ 19

*Hudson v. Gaines*, 403 S.E.2d 852, 854 (Ga. Ct. App. 1991) ................................................ 29, 40

*Imperial Die Casting Co. v. Covil Insulation Co.*, 216 S.E.2d 532 (S.C. 1975) .......................... 39

*In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).................................................................. 25

*JHC Ventures, L.P. v. Fast Trucking, Inc.*, 94 S.W.3d 762 (Tex. App. San Antonio 2002) ........ 39

*Johnson v. Glaxo SmithKline, Inc.*, 83 Cal.Rptr.3d 601 (Cal. App. 2 Dist. 2008) ...................... 23

Johnson v. Jaguar Cars, Inc., No. 1:05-CV-3161-RLV, 2006 U.S. Dist. LEXIS 41166, at *9 ... 22, 26

*Lubin v. Farmers Group, Inc.*, 2009 Tex. App. LEXIS 8584 (Tex. Ct. App. Nov. 6, 2009) . 23, 25

*MADCAP I, LLC v. McNamee*, 702 N.W.2d 16, 23-24 (Wis. Ct. App. 2005) .............................. 24

*Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (Cal. 2002)...................... 23

*Microsoft Corp. v. Manning*, 914 S.W.2d 602, 609 (Tex. Ct. App. 1995).................................... 21

*Morgan v. AT&T Wireless Servs.*, 177 Cal. App. 4th 1235 (2009) ........................................... 23, 24

*Novell v. Migliaccio*, 749 N.W.2d 544, 553 (Wis. 2008) .............................................................. 20

*Oden & Sims Used Cars, Inc. v. Thurman*, 301 S.E.2d 673 (Ga. Ct. App. 1983) ........................ 29

*Puttkammer v. Minth*, 226 N.W.2d 361, 363 (Wis. 1978)............................................................. 37

*QHG of Lake City, Inc. v. McCutcheon*, 600 S.E.2d 105, 108 (S.C. Ct. App. 2004) ................... 37

*Schmidt v. Bassett Furniture Indust.*, 2009 WL 3380354 (E.D. Wis. Oct. 20, 2009) ........... 24, 25

*Seaside Resorts v. Club Car, Inc.*, 416 S.E.2d 655, 664 (S.C. Ct. App. 1992)................ 20, 31, 32

*Servais v. Philbrick*, 380 S.E.2d 496, 497 (Ga. Ct. App. 1989) .................................................. 22

*Slaton v. Hall*, 148 S.E. 741 (Ga. 1929) ...................................................................................... 14

*Small v. Pioneer Machinery, Inc.*, 494 S.E.2d 835 (S.C. App. 1997) ........................................... 39

*SunTrust Bank v. Hightower*, 660 S.E. 2d 745 (Ga. Ct. App. 2008) ............................................ 40

*Texas South Rentals, Inc. v. Gomez*, 267 S.W.3d 228 (Tex. App.Corpus Christi 2008).............. 24

*Trustees of Jesse Parker Williams Hosp. v. Nisbet*, 7 S.E.2d 737 (Ga. 1940)............................. 14

*Village Auto Ins. Co. v. Rush*, 649 S.E.2d 862, 865 (Ga. Ct. App. 2007) ............................ 23, 25

*Villalon v. Vollmering*, 676 S.W.2d 220, 222 & n.1 (Tex. Ct. App. 1984) ................................ 21

*Wal-Mart Stores, Inc. v. Wheeler*, 586 S.E.2d 83, 86 (Ga. Ct. App. 2003)................................. 31

## MISCELLANEOUS

2 J. McCarthy, Trademarks and Unfair Competition § 27:7(B) (2nd Ed. 1989) .......................... 24

North American Science Associates, Inc.................................................................................... 16

*Protecting Consumers in the Modern Age:  Wisconsin's Deceptive Trade Practices Act*, 81 Wis. Law. 14 (Oct. 2008) ............................................................................................................... 25

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

There are few proposed consumer class actions where plaintiffs have the benefit of the defendant company's internal document that defines the *common problem* and the *common solution* to it.

In its Service Flash LN073, Electrolux Home Products, Inc. d/b/a Frigidaire ("Frigidaire" or "Defendant") concedes that there is a "likelihood of a biofilm formation" that has been reduced by the design of its newer washing machines. (Plaintiffs' Motion and Memorandum of Law in Support of Motion for Class Certification ("Motion for Class Certification" or "Motion"), Ex. A.)   Although Frigidaire's Opposition to Plaintiffs' Motion for Class Certification ("Opposition") argues that there are a myriad of reasons why mold and mildew forms in its Washing Machines, Frigidaire has addressed biofilm, or mold and mildew, issues by replacing and re-designing the very component that Plaintiffs allege is defective – the convoluted bellow. Frigidaire has itself suggested and started to implement a common fix (a new boot design without convolutions) to a common problem (a convoluted boot that accumulates water). Against this backdrop, Frigidaire argues that class certification is impossible.

As the "SOLUTION" to "water standing in the bottom of the washer boot after completion of a wash cycle . . . [and] the likelihood of a biofilm formation," Frigidaire designed "[a] new boot style that *does not have convolutions* . . . ." (Mot., Ex. A (emphasis added).) Furthermore, Frigidaire now indicates that "in 2006, Electrolux began introducing a new 'S' shaped boot design on certain Frigidaire models, which was subsequently phased into other models.   The 'S' shaped bellow *does not have convolutions* in which *water can become trapped*." (Opp. at 10 (citing Opp., Ex. 11 (Declaration of Chris Hill ("Hill Declaration") ¶ 9) (emphasis added)).)   Replacement gaskets were also repeatedly recommended or offered by Frigidaire service technicians to address customers' concerns about Washing Machines' mold and mildew problems:

- [Customer:] It Stinks! The rubber door gasket holds water, does not drain the way it is designed. Is there a 'new improved model'? If so please give us an idea how to stop this . . . . [Frigidaire:] At this time we do have another boot with a drain feature to help eliminate the situation you are speaking of . . . the boot was not on your machine when you purchased it, as it is so new that it was not in production yet. However, an authorized servicer could install it for you at no charge under the manufacturer's warranty. They can help with P/N 134515300.[1] (Declaration of Mark J. Tamblyn in Support of Reply Memorandum in Support of Motion for Class Certification ("Tamblyn Decl."), Ex. A. (Electrolux 001845-46).)

- [Customer:] Water collects in the rubber seal around the door of the washer leaving a mildew/mold smell in the washer. Should this not drain out? . . . . [Frigidaire:] Note: there is a newer bellows, P/N 134515300, that could be put on this washer. (*Id.*, Electrolux 001473-74.)

- [Customer:] The 'flexible gasket' . . . collects water and mildews (stinks). On page 8 of the Avoid Service checklist page says, 'Water collects in the folds of the bellows at the end of cycle . . . .' Collected water in FL leads to mildew . . . . This has been a problem since we bought the washer . . . . What do you suggest? [Frigidaire:] Note: there is a newer boot, P/N 134515300, that will hold less water. (*Id.*, Electrolux 001465-66.)

- RECV INVO------DX:MILDEW IN THE BOOT----SVR:REPL. THE BOOT FOR THE UNIT.----REPL. DENIED @THIS TIME. (*Id.*, Electrolux 001850.)

Nevertheless, Frigidaire attempts to conjure various individualized fact questions that are simply not relevant to the core question of whether the class device is the most efficient method of addressing the merits of Plaintiffs' claims. For instance, Frigidaire indicates that one customer's washing machine was "'on well water'" (Opp. at 11 (citation omitted)) and that consumers "'use more detergent than they really need'." (*Id.* at 7 (quotation omitted)). According to Frigidaire, consumers are to blame for mold and mildew formation because they failed to wipe down their Washing Machine's boot after use, did not consistently clean their machine with cleaning tablets, bleach and chlorine and did not leave the door to their Washing Machine ajar after wash cycles. (*Id.* at 7-8.)

Yet, Frigidaire has also instructed that consumers should "***NOT* leave the washer door open**" because doing so could subject children to harm. (First Amended Complaint ("FAC") ¶

---

[1] P/N 134515300 is the "new boot" referenced in Frigidaire's Service Flash LN073. (Mot., Ex. A.)

44 (emphasis in the original).)  Furthermore, while some isolated news articles may have provided consumers with maintenance tips, consumers did not otherwise know that they would have to address persistent mold and mildew problems and that their "*high-efficiency*" Washing Machine would require them to run *extra wash cycles* to address such problems.  (Opp. at 7.) Frigidaire's Care and Cleaning instructions also do not state that wiping down the convolutions of the Washing Machine's boot has anything to do with preventing mold and mildew from forming in the Washing Machine.  (Mot., Ex. Q.)  In any event, customers who *did* follow these various maintenance suggestions still experienced recurring mold and mildew problems.

- Since we have purchased this washer/dryer we have had a mold problem with the seal on the door of the washer retaining water which produces mold and then a wash load that smells very bad.  W[]e have over the years very *religiously left the door open and wiped the seal.  We even periodically scrub the inside of the seal with a toothbrush and bleach or alcohol to clean the mold.*  Searching online now we find that this is a design flaw which can be corrected with a replacement seal which does not retain the water.  I would like for Frigidaire to correct the problem as *even with all our attention* the wash still smells badly. . . . .  Progress!  I contacted Frigidaire.  They finally agreed that once mold is in the machine, *there is nothing you can do to get it out.  It will keep coming back.  (Save your bleach . . . it will not work.)*  They agreed to have a serviceman come out and replace the rubber gasket on my machine at no charge.  There is a new model of gasket that doesn't trap the water like the original does.  (Tamblyn Decl., Ex. B (Electrolux 001467-68 (emphasis added).)

- [Customer:]  Thanks for all the advice but *you are telling me nothing new.*  I thought it was quite clear that the reason my clothes stink is that the water pools in the door seal due to a poor design – isn't that why the design has now been changed only a year later?  The holes to drain are on the side of the seal rather than on the bottom so the water never drains out.  I would like it fixed *not just advice to do more of what I have already been doing that doesn't work and quite frankly I don't think I should have to be doing with a brand new washing machine.*  My old machine was maintenance free – this cos[]t a lot more and was supposed to be so great.  I hope you can make it so!  [Frigidaire:]  I am sorry, but I can not [sic] personally help you with your concession request . . . I forwarded your e-mail to our Customer Care Center.  However, the Customer Care Center is a busy place, . . . . (*Id.*, Electrolux 001927 (emphasis added).)

- This past spring we purchased a front load washer.  I like it except it stinks like mildew and mold.  I have *tried leaving the front door open*[] to allow it [t]o dry and air better but that does not help . . . I am beginning to get quite frustrated with

the washer and am wishing I had not bought it.  (*Id.*, Electrolux 001937 (emphasis added).)

- Issue: washer HAS odor cx want to speak w/ supervisor resolution:educ cx put baking soda and/or charcoal educ cx to purchase purewasher washing machine cleaner..or she can occasionally use warm water in washing her clothes..To remove odors add one cup chlorine bleach to the empty tub. Complete the Regular cycle using hot wash water and cold rinse water. Odors may develop if items are left in the washer too long . . . Repeated use of cold water and liquid detergents may create an odor in the washer . . . *still doesnt work.. cx said that she already done everything that i've suggested.* (*Id.*, Electrolux 001874 (emphasis added).)

- CCi b/x bellow is black moldy  -I educated c on cleaning bellow  -c stated *she wipes the water out almost everyday and is leaving the door ajar* --advised to wipe the water out at the end of the day everytime  -as good will ge [*sic*]. . . . (*Id.*, Electrolux 001904 (emphasis added).)

Frigidaire also argues that Plaintiffs' proposed class definition is overbroad, that Georgia law does not apply to this action and that variations in state law defeat predominance and superiority.  Plaintiffs have addressed this issue by limiting the class definition to include only those Washing Machines that are equipped with a convoluted bellow.  Furthermore, Georgia's choice-of-law rules require that Georgia law is applied to the entire action because Plaintiffs have pled breach of warranty and unjust enrichment causes of action under common law and not foreign state statutes.  In addition, due process requires that Georgia law applies to Plaintiffs' claims because of Georgia's significant aggregate contacts with this action.  Lastly, variations in state law do not hinder class certification because Plaintiffs have expressly pled that, if Georgia law is not applied on a nationwide basis, Plaintiffs request certification of state-based subclasses based on their respective residences.  As a result, variations in state law cannot undermine class certification in this case.

Frigidaire further contends that none of Plaintiffs' claims can be certified due to a myriad of purported "individual issues" involving absent class members Frigidaire has concocted, such as "whether and why" any class member has experienced a mold problem.  However, Frigidaire's contentions wholly disregard the very nature of Plaintiffs' latent defect claims.  As shown herein, each claim premised on Frigidaire's inherently defective machines, including

Plaintiffs' deceptive trade practices claims and unjust enrichment claims, are subject to common proof applicable to all class members.

Plaintiffs' warranty claims are also subject to common proof. Notice may be demonstrated on a class-wide basis in that the filing of this lawsuit and Frigidaire's actual knowledge of the alleged defect and breach satisfy notice requirements as to the proposed Class. In addition, Plaintiffs' express warranty claims do not turn on individual evidence because all Class Members are subject to Frigidaire's uniform Tumble Action Washer Warranty, Frigidaire has breached its warranty on a class-wide basis by refusing or failing to cure the alleged defect and reliance is not a requirement under the states' laws governing Plaintiffs' proposed sub-classes nor an impediment to class certification.

Frigidaire also suggests that the issue of predominance defeats certification by its unilateral interjection, without evidentiary support, of speculative affirmative defenses. Accutely aware of this tactic, the majority of courts, including the Eleventh Circuit Court of Appeals, have uniformly held that the presence of alleged affirmative defenses does not preclude certification.

And finally, Frigidaire claims that the named Plaintiffs' warranty claims fail to satisfy adequacy and typicality because Plaintiffs are allegedly outside of the warranty period and have failed to provide adequate notice. As Plaintiffs have consistently shown throughout this litigation, Frigidaire's tired assertions in this regard are without merit.

For these reasons, as discussed more fully below, Plaintiffs respectfully submit that the class should be certified on a nationwide basis or, alternatively, on a five state sub-class basis.

## II.    ARGUMENT

### A.    Refinement Of The Proposed Class Definition

To address Frigidaire's concern regarding over-breadth of the class (Opp. at 14-15), Plaintiffs seek certification of a class consisting only of those purchasers of the over half a million machines that contain the defective boot: "All persons and entities in the United States who purchased, other than for resale, during the previous four (4) years any of the Washing

Machines[2] that were equipped with a convoluted bellow."[3]

"The act of refining a class definition is a natural outcome of federal class action practice." *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 683 n.5 (N.D. Ga. 1991). Courts routinely permit plaintiffs to refine the class definition to address objections to the proposed definition or enhance the precision of the proposed class definition in considering plaintiffs' motion for class certification. *See, e.g., Greenwood v. Compucredit Corp.*, No. C 08-04878 CW, 2010 U.S. Dist. LEXIS 3839, at *8-*9 (N.D. Cal. Jan. 19, 2010) (class was ascertainable and that defendants' objections were addressed after plaintiffs amended their proposed class definition in their reply brief); *Tomlinson v. El Paso Corp.*, No. 04-cv-02686-WDM-MEH, 2008 U.S. Dist. LEXIS 21668, at *28 (D. Colo. Mar. 18, 2008) (plaintiffs' narrowing of the class definition in their reply brief was "helpful for [the court's] determination of the motion for class certification."); *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-25-VAP (OPx), 2008 U.S. Dist. LEXIS 53852, at *11 (C.D. Cal. July 10, 2008) ("Indeed, courts routinely narrow class definitions at the certification stage.") (citations omitted).

Furthermore, "the Eleventh Circuit has held that Rule 23(c)(1) grants district courts broad discretion to alter or amend the definition of the class at any time throughout the litigation, prior to a final decision on the merits of the action." *Mauldin v. Wal-Mart Stores, Inc.*, 1:01-CV-2755-JEC, 2002 U.S. Dist. LEXIS 21024, at *25 (N.D. Ga. Aug. 23, 2002) (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000)). The court in *Mauldin* agreed with the defendant's contention that the proposed class definition was overbroad. *Mauldin*, 2002 U.S. Dist. LEXIS 21024, at *19-*20, *23-*24. However, rather than deny plaintiff's certification in its entirety, the court revised the class definition, narrowing its scope. *Id.* at *24-*25, *52. The court concluded: "it would be [a] waste of judicial resources to deny the plaintiff's motion for class certification" on the basis of plaintiff's overbroad class definition "and to require her to re-

---

[2] Washing Machines are defined as "Frigidaire® Front Load Washing Machines, including but not limited to Models BTF2140E, BLTF2940E, FTF2140E, FWFB9100E, FWFB9200E, GLTF2940E, LTF2140E and LTF2940E." (FAC ¶ 1.) Each of the models included in the term "Washing Machines" has a convoluted boot and is referenced in Frigidaire's Service Flash LN073.
[3] The terms "bellow," "gasket" and "boot" appear interchangeably in Frigidaire's documents.

file another motion for class certification with a revised definition of the proposed class . . . ." *Id.* at *25.

Here, Plaintiffs' revised class definition tailors the proposed class to consist only of those consumers who purchased a Frigidaire front-load washer with a convoluted boot. As a result, under the modified class definition, every class member owns a Washing Machine designed with a defective boot that accumulates water and causes mold and mildew to form inside the Washing Machine.

**B.**  **The Proposed Nationwide Class And State-Based Subclasses Satisfy The Standards For Predominance And Superiority**

Frigidaire argues that Georgia's choice-of-law rules and due process require that fifty (50) states' laws apply to this action and that variations in state law make this proposed class action unmanageable. However, it is appropriate that Georgia law apply to this action because Plaintiffs have pled breach of warranty and unjust enrichment claims under common law and this action has significant aggregate contacts with Georgia. Furthermore, variations in state law are not an issue in this case because Plaintiffs specifically pled state-based subclasses in the event that Georgia law is not applied to the entire case.

**1.**  **Georgia Law Applies on a Nationwide Basis**

Frigidaire again argues that *lex loci contractus* and *lex loci delicti* require application of the laws of the Plaintiffs' home states (Opp. at 17-20) and accuses Plaintiffs of "avoid[ing] a choice-of-law analysis." (*Id.* at 19.) Frigidaire is incorrect on both points.

Plaintiffs are not avoiding a choice-of-law analysis. Rather, Plaintiffs contend that, *under Georgia choice-of-law rules*, application of another jurisdiction's laws are limited to circumstances where another state's statutes and case law interpreting those statutes are involved. Frigidaire has itself conceded this point. (Defendant's Memorandum of Law in Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Motion to Dismiss") [Dkt. No. 80] at 11 n.2 ("federal courts have held that Georgia's choice-of-law regime

7

'has an unusual *characteristic*' in that 'the application of another jurisdiction's laws is limited'"

only to statutory claims and not common law claims) (quoting *In re Tri-State Crematory Litig.*,

215 F.R.D. 660, 677 (N.D. Ga. 2003) ("*Tri-State Crematory*") (emphasis added) (citations

omitted)).)

According to Georgia choice-of-law rules "'[w]hen no statute is involved, Georgia courts

apply the common law as developed in Georgia rather than foreign case law.'" *Tri-State*

*Crematory*, 215 F.R.D. at 677 (quoting *Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d

1500, 1503 (11th Cir. 1983)). The Supreme Court of Georgia has indicated that no foreign

statute is "involved" and that Georgia law presumptively applies "'where no statute of the

foreign State is *pleaded*.'" *Tri-State Crematory*, 215 F.R.D. at 678 n.6 (quoting *Avnet, Inc. v.*

*Wyle Labs., Inc.*, 437 S.E.2d 302, 306 (Ga. 1993) (quoting *Slaton v. Hall*, 148 S.E. 741 (Ga.

1929)) (emphasis added)). *Tri-State Crematory* held that it was "bound by case law from the

Supreme Court of Georgia and the United States Court of Appeals for the Eleventh Circuit," *id.*

at 677 (citations omitted), and that because no foreign states' laws were "involved," or pleaded,

Georgia law applied to all of the plaintiffs' claims, including breach of contract and unjust

enrichment. *Id.* at 677-678 n.6. *Tri-State Crematory* applied Georgia law despite that

defendants "'contend[ed] that all fifty states' laws [were] going to become involved in th[e]

case.'" *Id.* at 677 (quotation omitted). Here, Plaintiffs have pled breach of express warranty,

breach of implied warranty and unjust enrichment claims under *common* law.

Such decisions by the Eleventh Circuit and the Supreme Court of Georgia do not invite

manipulation, as Frigidaire suggests. (Opp. at 19.) The reasoning behind this characteristic of

Georgia choice-of-law rules was clearly explained by the Supreme Court of Georgia in *Trustees*

*of Jesse Parker Williams Hosp. v. Nisbet*, 7 S.E.2d 737 (Ga. 1940).

In *Nisbet*, the court analyzed whether a contract executed in Florida should be construed

under Florida law or the law of the forum state, Georgia. *Nisbet*, 7 S.E.2d at 741. The court

observed that "[t]here is no presumption that the common law of England exists in [a foreign

state]" that was not one of the thirteen original colonies. *Id.* (citations omitted). Since Florida

was not one of the original thirteen colonies, the court found that "there is no presumption that the common law exists in that State, *even though it may have been adopted by statute*." *Id.* (emphasis added). Under these circumstances, common law is construed under Georgia law, "in preference to the construction given by the courts of the State of the contract." *Id.* (citations omitted). The court held that, "in the absence of any *pleaded* Florida law, the contract will be construed in accordance with the laws and decisions of [Georgia]." *Id.* (emphasis added). Indeed, Frigidaire cites to no authority that disturbs this reasoning.[4]

The cases that Frigidaire cites for the proposition that common law "tort-based claims are subject to the *lex loci delicti* test even if they arise under common law" (Opp. at 20) do not analyze the choice-of-law principle articulated in *Nisbet* and *Avnet*, among other decisions.   To be sure, in cases discussing tort-based claims where this choice-of-law principle was discussed, courts applied Georgia law and not the law of the state where the injury occurred.  *See, e.g., White v. Borders*, 123 S.E.2d 170, 172 (Ga. Ct. App. 1961) ("No Tennessee statute was involved in the case pleaded . . . This being so, the common law of Georgia rather than that of Tennessee will control in an action brought in Georgia courts even though the injury occurred in Tennessee.") (citations omitted); *see also Craven v. Brighton Mills Inc.*, 73 S.E.2d 248, 250 (Ga. Ct. App. 1952) (although plaintiff's property was damaged in South Carolina, "common law as interpreted by [Georgia] courts determine[d] the rights of the respective parties" because the contributory negligence was not "pleaded and proved" under South Carolina law).

## 2.    Application of Georgia Law Satisfies Due Process

Due process also requires that Georgia law apply to Plaintiffs' claims, including for common law unjust enrichment and violations of the Georgia Uniform Deceptive Trade Practices

---

[4] In addition, it is widely recognized that plaintiffs are the "masters of their pleadings" and are "free to plead as many or as few causes of action as they wish[], and more importantly, [are] free to limit their theories of recovery . . . ." *Locus v. Duke Univ.*, No. 1:08CV607, 2009 U.S. Dist. LEXIS 12764, at *15-*16 (M.D.N.C. Feb. 19, 2009); *Bayer Cropscience, LP v. Booth*, No. 7:04-cv-92, 2005 U.S. Dist. LEXIS, at *8 (M.D. Ga. Aug. 31, 2005) (holding that defendants' actions "usurp[ed] the normal status of plaintiff as the 'master of his claim,' with the power to choose the forum and the legal theory of the case.") (quoting *Caterpillar, Inc. v. Williams*, 492 U.S. 386, 391 (1987)); *see also Yarway Corp. v. Eur-Control USA, Inc.*, No. C81-1476A, 1984 U.S. Dist. LEXIS 24233, at *2 (N.D. Ga. Aug. 20, 1984) ("[T]he plaintiff is master of his claim and can choose" the claim under which the suit will arise) (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1912)).

Act ("GUDTPA"), O.C.G.A. § 10-1-371, *et seq.*[5]  Frigidaire relies on a host of Seventh Circuit and non-Georgia state court decisions to argue that due process does not require application of Georgia law simply because Frigidaire is headquartered in Georgia.  (Opp. at 22.)  However, Plaintiffs cited Supreme Court[6] and Georgia federal and state court cases[7] that hold that the location of the defendant's company in a particular state is important for determining whether it is arbitrary or unfair to apply that state's law.  (Mot. at 12.)

Furthermore, Plaintiffs are not arguing that due process requires that Georgia law apply only because Frigidaire is headquartered in Georgia.  (Opp. at 22.)  Indeed, Plaintiffs' Motion describes Frigidaire's significant *aggregation* of contacts with Georgia.[8]  For instance, while Frigidaire indicates that some washing machine tests were conducted in Iowa (Opp. at 21 n.5), Frigidaire concedes that it contracted with the North American Science Associates, Inc. ("NAMSA") to conduct tests in Kennesaw, Georgia on matters related to the heart of this litigation – mold and mildew formation in Frigidaire's Washing Machines.  (Mot. at 12.)

In addition, Frigidaire's core contention that "plaintiffs have no connection to [Georgia]" (Opp. at 22) does not withstand even the slightest scrutiny.  Frigidaire – headquartered in Georgia – cannot deny its significant connection to the litigation here.  It sells its Washing Machines in Georgia.  One of the named Plaintiffs, Palecia Boyd, and putative class members purchased their Washing Machines in Georgia.  The Electrolux Warranty Corporation is based in Augusta. (Tamblyn Decl., Ex. C (Summary of Service Contract Terms and Conditions)). Frigidaire's Major Appliance Warranty – which governs the Washing Machine defects at issue in this action – requires consumers to contact Frigidaire in Augusta, Georgia to receive service under the warranty (Mot. at 12), and its Customer Support services are based in Martinez,

---

[5] Plaintiffs plead statutory fraud under the laws of California, Texas and Wisconsin "only in the event that the Court determines that Georgia law shall not be applied to the claims of all Class members .. .." (FAC ¶ 20.)
[6] Mot. at 11-12 (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 318, 320 (1981)).
[7] *Id.* at 12 (citing *In re Tri-State Crematory Litig.*, 215 F.R.D. at 678 and *Earthlink, Inc. v. Eaves*, 666 S.E.2d 420, 426 (Ga. Ct. App. 2008)).
[8] Applying Georgia law satisfies due process where Georgia has "'significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302-312-13 (1981)).

Georgia. (Tamblyn Decl., Ex. D (Frigidaire Customer Support).)

Moreover, Frigidaire does not deny that the product training manual content referring to Washing Machines' mold and mildew problems originated in Georgia (Mot. at 12) and is careful to state that its Washing Machine user manuals, use and care guides and Service Flash LN073 were *drafted primarily* in Iowa. (Opp., Hill Decl. ¶¶ 6-7.) Frigidaire also indicates that "front load washers were designed *primarily*" in Iowa. (*Id.* at ¶ 8.) However, Frigidaire does not disavow that Frigidaire executives in Georgia were involved in developing or approving such materials and front load washer designs.

Based on these activities, in addition to Frigidaire maintaining its headquarters in Georgia, Frigidaire's contention that "Georgia has no real connection to – or interest in – the resolution of plaintiffs' claims" (Opp. at 23.) is simply not credible. Georgia has a significant aggregation of contacts with the facts and claims underlying this action such that applying Georgia law would be neither arbitrary nor fundamentally unfair.

### 3.   In The Alternative, The Court May Certify Five State-Based Subclasses

Plaintiffs have expressly pled that "in the event that the Court determines that Georgia law shall not be applied to the claims of all Class members . . . *Plaintiffs bring this action on behalf of the following [statewide] sub-classes, . . .*" (FAC ¶ 20.) The five (5) statewide classes are limited to consumers in California, South Carolina, Wisconsin, Texas and Georgia law – the states of residence of the class representatives.[9] As a result, Plaintiffs are not asserting claims on behalf of a nationwide class if Georgia law is not applied to the entire action and are not required to establish that "the laws of all 50 states are sufficiently uniform to make a class trial feasible." (Opp. at 24.)

Fed. R. Civ. P. 23(c)(5) provides courts with authority and flexibility to maintain a class

---

[9]   Each of the state-based class definitions incorporates the modified definition of the proposed nationwide class. For example, the California state subclass consists of "All persons and entities in the State of California who purchased, other than for re-sale, [during the previous four (4) years any of the Washing Machines that were equipped with a convoluted bellow.]" (FAC ¶ 20.)

action by creating subclasses.[10]  Courts have recognized that, while nationwide classes involving variations in state law may present manageability problems, the "[u]se of subclasses to make class actions more manageable is fair and routine."  *In re Simon II Litig.*, No. 00-CV-5332, 2002 U.S Dist. LEXIS 25632, at *276 (E.D.N.Y. Oct. 22, 2002) (string cite omitted); *see also In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 686 & n.8 (N.D. Cal. 1986) (California law would either apply "across the board" or subclasses may be employed to alleviate any problems associated with applying multiple states' laws).

More specifically, numerous courts have held that manageability was satisfied where the proposed classes consisted of separate state-based classes. *See, e.g., In re Static Random Access Memory Antitrust Litig.*, No. C 07-01819 CW, 2009 U.S. Dist. LEXIS 110407, at *60 (N.D. Cal. Nov. 25, 2009) (certifying twenty-seven state classes and finding state classes were preferable to "the institution of countless individual lawsuits with the same facts and legal issues.") (citation omitted); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 701 n.45 (S.D. Fla. 2004) ("*Terazosin*") (certifying state-wide classes and finding individualized choice of law analyses not required where plaintiffs sought to apply state law to separate state classes); *see also Powers v. Gov't Employees Ins. Co.*, 192 F.R.D. 313, 320 (S.D. Fla. 1998) (certifying a "class comprised of members from a single state cures and/or significantly limits problems associated with variances in state laws.").[11]

In *Terazosin*, plaintiffs sought certification of seventeen (17) state-based classes. *Terazosin*, 220 F.R.D. at 675, 682-83.  Defendants argued that the proposed classes, including the California and Wisconsin classes, were unmanageable in part because "they would require countless individualized analyses of choice of law questions; . . . ."  *Id.* at 700.  In response, plaintiffs argued they were "'not seeking to apply a single state's law to a nationwide . . . class of purchasers, but rather to apply state law to *separate state classes* that include those persons who

---

[10]  Fed. R. Civ. P. 23(c)(5) states that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Rule 23(c)(5).
[11] *See also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (variations in state law must not present "'insuperable obstacles'" and may be managed by creating subclasses of "states that have similar legal doctrines.") (quotations omitted).

purchased [the pharmaceutical product] in each state.'   Therefore, each state's substantive antitrust law will apply to that particular state class' claims." *Id.* at 701 n.45 (emphasis added) (citation omitted).   The court found plaintiffs' response to be "particularly persuasive," *id.*, and held that Rule 23(b)(3) was satisfied. *Id.* at 701.

Similarly, in this case, Plaintiffs' proposed state-wide subclasses squarely address Frigidaire's assertion that predominance and superiority are defeated due to state law variations. (Opp. at 23-28.)   These state sub-classes do not require the application of multiple states' laws to numerous classes or a single state's law to a nationwide class.

California, South Carolina, Wisconsin, Texas and Georgia courts have certified class actions based on the same claims that Plaintiffs allege in this case.   In addition, as discussed below, precedent in these states does not support Frigidaire's view that various elements such as privity, reliance and notice bar certification.

### a.      California

For example, California courts have certified state-based class actions involving product defects where plaintiffs alleged breach of warranty, violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and unjust enrichment. *See*, *e.g.*, *Cartwright v. Viking Indus.*, No. 2:07-CV-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286, at *50 (E.D. Cal. Sept. 14, 2009) (certifying class action involving defective window products); *Hewlett-Packard Co. v. Superior Court*, 167 Cal. App. 4th 87 (2008) (maintaining certification of class action involving defective notebook computer monitors).   The *Cartwright* court found that predominance was satisfied under Rule 23(b)(3) after analyzing issues pertaining to notice, *Cartwright*, 2009 U.S. Dist. LEXIS 83286, at *27 n.9, privity, *id.* at *29-*33, reliance, *id.* at *40, and whether unjust enrichment was an independent cause of action. *Id.* at *41.

### b.      South Carolina

South Carolina courts have certified class actions involving product defects where plaintiffs alleged breach of express and implied warranty claims. *See*, *e.g.*, *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 506, 517 (D.S.C. 2007) (certifying class action involving

defective home trim that caused "health threatening *mold, mildew, [and] fungi* . . . .") (emphasis added). *Thomas* held that Plaintiffs and absent class member were "not required to notify Defendants of the breach. Defendants did not sell TrimBoard directly to the Plaintiff or putative class members . . . Because there is no requirement that Plaintiffs and putative class members give notice to [the manufacturer], no individualized inquiry in that regard is necessary." *Thomas*, 246 F.R.D. at 513.[12]  Frigidaire also concedes that *South Carolina law does not require privity* for establishing breach of implied warranty or breach of express warranty claims. (Opp., App. A at 13.)   In addition, although Frigidaire indicates that South Carolina's consumer protection statute prohibits class actions (*id.* at 2) and includes a public interest requirement (*id.* at 11), Plaintiffs have not asserted a claim under this statute.

### c.    Wisconsin

At least one Wisconsin court certified a multi-state class of Wisconsin consumers who purchased defective glass products where Plaintiffs alleged a breach of express warranty claim. *See, e.g.*, *Barden v. Hurd Millwork Co.*, 249 F.R.D. 316, 322 (E.D. Wis. 2008).   While Frigidaire indicates that Wisconsin courts "have construed the state's consumer protection law to require reliance" (Opp., App. A at 9 n.47), the Wisconsin Supreme Court held that "plaintiffs . . . do not have to demonstrate reasonable reliance as an element of the [Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. § 100.18,] claim." *See Novell v. Migliaccio*, 749 N.W.2d 544, 553 (Wis. 2008).  Furthermore, the case to which Frigidaire cites for the proposition that reliance is required under the WDTPA states that "the question is whether 'the representation . . . *materially induce[d] the plaintiff's decision to act* and [whether the] plaintiff would have acted in the absence of the representation.'"  *Spacesaver Corp. v. Marvel Group, Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) (citing *Novell*, 749 N.W.2d at 554) (emphasis in the original). Indeed, Plaintiffs here have alleged that Frigidaire's "untrue, deceptive and misleading

---

[12] The Court in *Thomas* held that Plaintiffs and class members were not required to give notice to Defendants after analyzing *Seaside Resorts v. Club Car, Inc.*, 416 S.E.2d 655 (S.C. Ct. App. 1992), which Plaintiffs cited in Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Opposition to Motion to Dismiss") and their Motion for Class Certification.  (Opp. to Mot. to Dismiss [Dkt. No. 88] at 15); Mot. at 15, 20).

assertions, . . . concerning the qualities and characteristics of its Washing Machines *materially induced* Plaintiff Terrill and the Wisconsin Sub-Class to purchase Defendant's Washing Machines." (FAC ¶ 98 (emphasis added).)

The Wisconsin Supreme Court also found that privity is satisfied where the manufacturer made express representations regarding a product's abilities for purposes of inducing sale. *See, e.g., Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 858-59 (finding privity based the representations made about the abilities of a grain drying bin for purposes of inducing a sale). As stated below, and in previous briefing (Opp. to Mot. to Dismiss at 21-22), Frigidaire has offered uniform express warranties to consumers and made class-wide representations regarding the quality and ability of its Washing Machines to induce consumers to purchase them.

### d.     Texas

Texas courts have certified classes based on defective products where plaintiffs alleged breach of warranty, Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* and unjust enrichment claims. *See, e.g., Microsoft Corp. v. Manning*, 914 S.W.2d 602, 609 (Tex. Ct. App. 1995) (certifying a class of purchasers of software with latent defects and holding that if the defect exists in all "MS-DOS 6.0 software, it is not necessary for the purchasers to actually suffer a loss of data as a result of that defect for them to suffer damage.")  In addition, the Fifth Circuit, in a case cited by Frigidaire (*see, e.g.,* Opp. at 24-25), identified Texas as a jurisdiction where reliance was *not required* for asserting an express warranty claim. *See Cole v. GMC*, 484 F.3d 717, 726 (5th Cir. 2007) (including Texas among jurisdictions that "have no reliance requirement.") (citing *Villalon v. Vollmering*, 676 S.W.2d 220, 222 & n.1 (Tex. Ct. App. 1984)).[13]  Texas courts have also certified class actions where plaintiffs alleged violation of the

---

[13] Even in the event that this Court found a reliance requirement for asserting an express warranty claim under Texas law, such would not preclude class certification.  For instance, the Court in *Southwestern Bell Tel. Co. v. Mktg. on Hold, Inc.*, 170 S.W.3d 814, 828 (Tex. Ct. App. 2005) ("*Southwestern Bell*") affirmed class certification where plaintiffs alleged express warranty and unjust enrichment claims and specifically held that "[e]ven if we assume, without deciding, that reliance is a requisite element of [express warranty], a class action is not necessarily defeated." *Id.* The *Southwestern Bell* court also found that the issue of reliance did not require independent inquiry because the representations at issue were uniform across the class. *Id.* at 828 n.25. Similarly, in this case, the Tumble Action Washer Warranty is uniform for each putative class member.  Moreover, pre-purchase concealment of the common defect is common to the entire class.

Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Comm. Code Ann. §§ 17.41, *et seq.*  *See, e.g., Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 571-72 (S.D. Tex. 2000) (certifying Texas consumer class where plaintiffs alleged a DTPA claim); *see also Am. Home Shield of Texas v. Kortz*, No. 01-99-00380-CV, 2000 Tex. App. LEXIS 6125, at *13 (Tex. Ct. App. Sept. 7, 2000) (same).

### e.  Georgia

Lastly, as Plaintiffs detailed in their opening brief, the proposed Georgia sub-class may be certified under Georgia law.  Georgia courts have certified Georgia-based classes where plaintiffs asserted claims under the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10-1-371, *et seq.* and unjust enrichment.  *See, e.g., Smith v. Ga. Energy United States*, 259 F.R.D. 684, (S.D. Ga. 2009) (granting class certification where plaintiffs alleged GUDTPA and unjust enrichment claims and holding that "[r]eliance . . . would not preclude class treatment *even if Defendants can show a lack of reliance as to any particular class member*.") (citations omitted) (emphasis added).  Frigidaire is also incorrect that Georgia law requires reliance for asserting a breach of express warranty claim in this action.  (Opp., App. A at 15 n.68.)  The case Frigidaire relies upon, *Servais v. Philbrick*, 380 S.E.2d 496, 497 (Ga. Ct. App. 1989), concerned a doctor's oral representation a procedure was "'routine' and that there was 'nothing to worry about.'"  *Id.*  Plaintiff suffered permanent injuries as a result of the procedure and sued for breach of express warranty.  *Id.*  The Court in *Servais* analyzed whether the doctor's representation constituted an express warranty.  *Id.*

*Servais* offers no aid to Frigidaire in that this case involves class claims based on a uniform, written manufacturer's warranty governing defective Washing Machines.  *Compare Servais*, 380 S.E.2d at 862 *with Johnson v. Jaguar Cars, Inc.*, No. 1:05-CV-3161-RLV, 2006 U.S. Dist. LEXIS 41166, at *9 ("Under Georgia law, a written warranty that provides for repair or replacement of parts imposes two conditions . . . notice . . . [and] reasonable opportunity to repair the defect."  The court does not indicate that reliance is a requirement for asserting breach of a manufacturer's written warranty.).  Plaintiffs are aware of no other authority indicating that

Georgia law requires reliance for asserting breach of written warranty under the circumstances of this case.  For the reasons mentioned above, Plaintiffs' proposed state-based subclasses provide a viable and sensible alternative for managing this action.

### C.   Plaintiffs' Claims Are Subject To Common Proof

Frigidaire also contends that no proposed class may be certified because Plaintiffs' claims and Frigidaire's affirmative defenses turn on individualized facts.  However, Plaintiffs' claims are subject to generalized proof under applicable state laws and common questions of law and fact readily predominate over individual questions. Moreover, as discussed below, Frigidaire's affirmative defenses do not present predominating individualized issues.

### 1.    Deceptive Trade Practices

The common set of facts that give rise to this litigation make the deceptive trade practices laws of Georgia, California, Texas and Wisconsin,[14] subject to common poof.  Under such circumstances, Georgia courts certify claims for violation of GUDTPA. *See, e.g., Smith v. Ga. Energy United States*, No. CV208-20, 2009 U.S. Dist. LEXIS 69812, at *19-*20 (S.D. Ga. Aug. 10, 2009) (certifying class of plaintiffs asserting GUDTPA claims); *Village Auto Ins. Co. v. Rush*, 649 S.E.2d 862, 865 (Ga. Ct. App. 2007) (same).   California courts also certify class actions for violations of Cal. Bus. & Prof. Code § 17000, et. seq. See, e.g., *Morgan v. AT&T Wireless Servs.*, 177 Cal. App. 4th 1235 (2009) (class certification of UCL claims); *Johnson v. Glaxo SmithKline, Inc.*, 83 Cal.Rptr.3d 601 (Cal. App. 2 Dist. 2008) (reversing denial of class certification asserting, *inter alia*, § 17200 claims); *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (Cal. 2002) (affirming class certification of consumer fraud claims based on  defendant's concealment of material information).  Likewise, Texas and Wisconsin certify deceptive practices claims.  See, e.g., *Lubin v. Farmers Group, Inc.*, 2009 Tex. App. LEXIS 8584 (Tex. Ct. App. Nov. 6, 2009) (class certification of Texas deceptive practices act

---

[14]Plaintiffs seek certification of only four subclasses with respect to the deceptive trade practices claims. Accordingly, the law of Georgia, California, Texas and Wisconsin apply to the respective subclasses for deceptive trade practices claims.  Plaintiffs recognize that South Carolina law does not permit class action treatment of such claims; therefore, Plaintiffs do not assert such claims on behalf of the South Carolina subclass.

claims); *Texas South Rentals, Inc. v. Gomez*, 267 S.W.3d 228 (Tex. App.Corpus Christi 2008);

*Schmidt v. Bassett Furniture Indust.*, 2009 WL 3380354 (E.D. Wis. Oct. 20, 2009).

Each of the pertinent states' statutes provide a private cause of action; provide that non-

disclosure, when combined with a "misleading, partially incorrect or untrue representation" is

actionable conduct;[15] permit injunctive relief; analyze actionable conduct pursuant to an

objective or reasonable person standard rather than subjectively based upon an individual

analysis of each class member;[16] and do not require proof of class-wide reliance; and contain no

other substantive issues which raise predominating individual issues.[17]   The common questions

presented by the deceptive trade practices law of Georgia, California, Texas and Wisconsin

present a cohesive action that warrants certification.

The law in each of the four states make it abundantly clear that none of the "red-herring"

issues raised by Frigidaire (Opp. pp. 34-37) are even relevant to (much less predominant in)

Plaintiffs' deceptive trade practices claims.   Georgia requires proof only that the public is likely

to be deceived by Frigidaire's conduct.  *See, e.g.*, O.C.G.A. § 10-1-372(a)(2), (3).   Further,

---

[15] *Energy Four, Inc. v. Dornier Med. Systems, Inc.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991) (*quoting* 2 J. McCarthy, Trademarks and Unfair Competition § 27:7(B) (2nd Ed. 1989)).(GUDTPA covers concealment or non-disclosure where "representations made are affirmatively misleading, partially incorrect, or *untrue as a result of [a] failure to disclose a material fact*."). Frigidaire's failure to disclose the known, inherent defect constitutes actionable conduct under the GUDTPA. Likewise, California, Texas and Wisconsin also provide relief for non-disclosures combined with representations. *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1256-57 (2009); *MADCAP I, LLC v. McNamee*, 702 N.W.2d 16, 23-24 (Wis. Ct. App. 2005) (acknowledging that a failure to disclose which shows that the affirmative representation is false is actionable under Wisconsin's deceptive trade practices act); (acknowledging that a failure to disclose which shows that the affirmative representation is false is actionable under Wisconsin's deceptive trade practices act); Tex. Bus. & Com. Code § 17.46(b)(5) and (24) (providing actionable claims for both representations, as well as failure to disclose material facts).

[16] Defendant acknowledges that California applies a reasonable person standard and that Texas applies an objective standard.  Georgia and Wisconsin also apply a reasonable person standard.  *See, e.g., Cole v. Sunnyside Corp.*, 610 N.W.2d 511 (Wis. App. 2000) (a § 100.18 claim "involves determining what a reasonable person would have understood the [defendant's] advertisement to mean").

[17] Wisconsin's requirement of defendant's intent is limited to an intent to induce the public to purchase product - (something Frigidaire itself would be hard-pressed to deny), *Blanchar v. Lake Land Builders, Inc.*, 301 Wis.2d 750, 731 N.W.2d 384 (Wis. App. 2007).  This issue and evidence establishing it focuses on the defendant, not individual variations among class members.  No material difference is presented by this ancillary matter of proof; in this case, proof that Frigidaire intended to persuade the public to purchase its Washers by its deceptive conduct is apparent.

Plaintiffs "need not prove … actual confusion or misunderstanding." O.C.G.A. § 10-1-372(b). Accordingly, there are no individualized issues relevant to the Court's consideration of a GUDTPA violation. Rather, a determination of whether the public is likely to be damaged may be determined on a class-wide basis, without regard to individual issues of background or knowledge of any class member. *See, e.g., Smith v. Ga. Energy United States*, No. CV208-20, 2009 U.S. Dist. LEXIS 69812, at *19-*20 (S.D. Ga. Aug. 10, 2009); *Village Auto Ins. Co. v. Rush*, 649 S.E.2d 862, 865 (Ga. Ct. App. 2007).

Similarly, California's pertinent law requires only injury in fact and reliance by the representative. *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *see*, FAC, ¶ 6 (pleading reliance of all plaintiffs, including California resident Brown). Wisconsin also allows class-wide proof, requiring that the plaintiff show that "defendant's misrepresentation/omission materially induced [plaintiffs' conduct] (i.e., was a significant factor in contributing to the plaintiff's decision)." *Protecting Consumers in the Modern Age:  Wisconsin's Deceptive Trade Practices Act*, 81 Wis. Law. 14 (Oct. 2008); s*ee also Schmidt v. Bassett Furniture Indust.*, 2009 WL 3380354 (E.D. Wis. Oct. 20, 2009) ("[class action] plaintiffs could conceivably prevail on their DTPA claim even if they are unable to prove that their [belief concerning defendant's misleading representation] was reasonable.").

Finally, under Texas law, class-wide reliance may be established by generalized proof that all class members paid for the defective Washing Machines. *See, e.g., Lubin v. Farmers Group, Inc.*, 2009 WL 3682602 (Tex. App. (Austin) 2009); *Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396 (Tex. App. (Texarkana) 2002); *Graebel/ Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24 (Tex. App. (Houston) 2000) (same). Texas courts have recognized the issue of class-wide reliance imposes no impediment to finding predominance, but actually establishes another common issue - within a Texas deceptive trade practices class. *See, e.g., Lubin, Jones*, and *Chastain*.

Frigidaire's concerted effort to obscure the fundamental wrong and the cohesion of the class notwithstanding, Plaintiffs' claims for violation of deceptive trade practices acts applicable

19

to their respective states share common questions of fact and law that overwhelmingly predominate and do not turn on individual issues.

### 2.     Claims Based on Latent Defects Do Not Turn on Individualized Evidence

Frigidaire also contends that none of Plaintiffs' claims can be certified because individual evidence is allegedly required to determine whether the defect has manifested itself as to all absent class members. (Opp., pp. 29-32.) Likewise, Frigidaire contends that individual evidence is required to determine the specific cause of any mold and mildew problems experienced by all absent class members. *Id*. These arguments ignore the very nature of Plaintiffs' latent defect claims.

This case involves an undisclosed latent defect that afflicts all machines purchased by the proposed class:. a bellow with convolutions that accumulates water and fails to adequately prevent mold and mildew from forming. At the time each machine was sold, it contained an inherent design defect - - - a common defect known and acknowledged by Frigidaire, as its own Service Flash and other documents demonstrate. *See*, Tamblyn Decl., Ex. F (Frigidaire customer service technicians indicate that mold and mildew problems are due to the design of the Washing Machines). And in Georgia, as in other states, such undisclosed latent defects are actionable, even if they do not immediately manifest. *See, e.g., Johnson v. Jaguar Cars, Inc.*, No. 1:05-cv-3161-RLV, 2006 U.S. Dist. LEXIS 41166 at 12 (N.D. Ga. June 6, 2006).

The claims here arise from a common latent defect, breach of identical warranties, Frigidaire's failure to cure, and damages in the form of diminished value of the machines, among other things.[18] The class may consequently be certified regardless of whether the defect has

---

[18] Under Georgia law, economic damages need not be shown under the state Uniform Deceptive Trade Practices Act ("UDTPA"), Georgia Code Ann. §10-1-373; *see also Future Prof'ls v. Darby*, 470 S.E. 2d 644, 646 (Ga. 1996). Thus, Plaintiffs' UDTPA claim may be maintained even where absent class members did not experience economic damages as a result of the mold and mildew problems. Although Frigidaire argues in its Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 79) and in its Opposition to Class Certification (Doc. No. 106) that Plaintiffs have no standing to assert claims under the UDTPA, Plaintiffs contend that proper standing under Georgia Code Ann. §10-1-373 exists, as addressed by Plaintiffs on pp. 30-35 of their Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 88).

manifested itself as to all absent class members. Frigidaire's speculation that some unidentified absent class member "might not" have experienced mold or mildew problems is no barrier. If accepted, Frigidaire's logic would preclude altogether from bringing class actions based on latent defects. Fortunately, this reasoning has been rejected by numerous courts.

For example, the plaintiff in *Daffin v. Ford Motor Co.*, 468 F.3d 549 (6th Cir. 2006) brought a class action on behalf of owners of a mini-van which was equipped with an allegedly defective accelerator. *Id.* at 550-51. The district court certified the warranty claim and defendant appealed, contending the class was overbroad and was comprised of class members who could not recover because the accelerator defect "never manifested itself." *Id.* at 551-52.

The Sixth Circuit held that the district court did not abuse its discretion, observing that the "question of whether the [accelerator] is defective is common to all owners because they all have the same [accelerator] and warranty [promising to repair the common minivan defect]." *Id.* (citation omitted). The court also held that typicality was met, because the defendant breached its warranty by providing defective designed minivans and that such defects reduced the value of the minivans. *Id.* The court explicitly stated that "[t]he mere fact that Daffin's [accelerator] stuck, while other class members' [accelerators] have not stuck, does not render Daffin atypical." *Id.* at 553. The court observed such an argument disregards that plaintiff's and other class members' claims arose from the same practice (delivering a non-conforming minivan), the same defect and were based on the same legal theory. *Id.* Finally, the court held that plaintiff would adequately protect the interests of the class because her and other class members' minivans had the same defect and she and class members asserted the same claim for the minivan's reduced value. *Id.* at 554.

This case is no different. Each of the proposed class representatives and every class member in this case are asserting claims based on their purchase of Washing Machines with a common design defect recognized by Frigidaire. Moreover, each of them were all subject to identical warranty provisions and, as to each of them, Frigidaire failed to repair or replace the defective gaskets and/or Washing Machines. As in *Daffin*, Rule 23 elements are satisfied

regardless of whether all class members' Washing Machines manifested the defects at issue. *See also Cuesta v. Ford Motor Co.*, 209 P.3d 278, 286 (Okla. 2009) ("Manifestation of the defect is not required for certification.") (citations omitted); *see also Elliot v. ITT Corp.*, 150 F.R.D. 569, 575 (N.D. Ill. 1992) (holding that a class may be certified even if the class definition includes members "who have not been injured or do not wish to pursue claims against the defendant.") (citations omitted); *Sturdevant v. Deer*, 73 F.R.D. 375, 378 (E.D. Wis. 1976) (same); *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 141 (C.D. Cal. 2007) (holding that class certification was not precluded because some class members suffered no injury).[19]

Moreover, even if it were necessary for such defects to manifest as to each and every absent class member, the relevant inquiry at this stage is whether the named Plaintiffs have satisfied the pre-requisites of Rule 23, not whether absent class members can maintain viable claims. In essence, Frigidaire is improperly attempting to conflate standing of absent class members with the question of whether the named Plaintiffs have satisfied the elements of Rule 23. *See, e.g., Vinson v. P&G Mfg. Co.*, No. CV 108-003, 2008 U.S. Dist. LEXIS 91559, at *9-*10 (S.D. Ga. Nov. 12, 2008) ("In determining whether to certify the class. . . the Court must focus on the named plaintiffs. (citation omitted); *Sinclair v. United Healthcare of Georgia*, No. 1:96-cv-3412-GET, 1997 U.S. Dist. LEXIS 23696, at *3-*4 (N.D. Ga. May 5, 1997) (analyzing whether named plaintiffs had standing to assert claims on behalf of putative class members and distinguishing standing from class certification questions under Rule 23); *CG v. Commonwealth*

---

[19]  Several of the cases relied upon by Frigidaire in support of its contention that certification is improper because individual evidence is allegedly required to determine whether the defect has manifested as to all absent class members are easily distinguishable. For example, in *In re Microsoft XBox 360 Scratched Disc Litigation*, No. C07-1121, 2009 U.S. Dist. LEXIS 109075 (W.D. Wash. 2009), the defect at issue only manifested itself upon consumer misuse, which is not the case here. Indeed, there was no product misuse by the named Plaintiffs in this action, yet the mold and mildew problems nonetheless manifested. Moreover, unlike the sudden and immediate manifestation upon misuse in *In re Microsoft*, here mold and mildew accumulate over time with each use, beginning with the machine's first use, even when no consumer misuse is involved. Likewise, *Gable v. Land Rover North America*, 2008 WL 441960 (C.D. Cal.) (2008) is distinguishable because, as that court recognized, tires are intentionally designed to wear for various reasons. In *Gable*, there was a legitimate causation issue relating to the manifestation of a defect which resulted in worn tires. In contrast, Washing Machines are certainly not intentionally designed to stain clothes with mold, which is what occurs as a result of Frigidaire's defect. Finally, *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) is distinguishable in that the defect at issue did not manifest as to the named plaintiffs and, unlike Frigidaire in this case, the defendant in *Cole* instituted a comprehensive voluntary recall program which rectified the problem for a majority of class members.

*of Pennsylvania*, No. 1:06-CV-1523, 2009 U.S. Dist. LEXIS 90028, at *8-*9 (E.D. Pa. Sept. 29, 2009) ("While the named Plaintiffs must have standing to assert their claims before the Court, only the requirements of *Rule 23* need be established as to unnamed class members.") (emphasis in the original).

### 3. Plaintiffs' Warranty Claims

Frigidaire also argues that Plaintiffs' breach of warranty claims present individual questions that render class treatment impossible.  Specifically, Frigidaire argues that whether Plaintiffs and putative class members gave reasonable notice, whether class members' claims are subject to the Tumble Action Washer Warranty and whether Frigidaire had an opportunity to cure the alleged defect present individual questions.  (Opp. at 38-47.)  In addition, Frigidaire asserts that reliance requirements under Georgia and Texas law will require an individualized inquiry.  (*Id.* at 47.)

However, Plaintiffs and putative class members have satisfied the notice requirement because pre-litigation notice is not required under applicable states' laws and Frigidaire had actual notice that its Washing Machines were defective.   Furthermore, all class members Washing Machines' are governed by uniform warranty provisions and Plaintiffs and class members have provided – and continue to provide – Frigidaire with an opportunity to cure the Washing Machines' defect.   In addition, as explained above, reliance is not required for certifying breach of warranty claims under any of the applicable states' laws.

### a. Notice Requirements Are Not Subject To Individualized Inquiries

Courts in Georgia and other states proposed for Plaintiffs' subclasses do not require pre-litigation notice.  *See, Hudson v. Gaines*, 403 S.E.2d 852, 854 (Ga. Ct. App. 1991) (trial court did not err in ruling that service of the lawsuit constituted "adequate notice of breach of warranty as contemplated by the statute."  .

Frigidaire argues that *Hudson* was limited to the facts of that case and cites *Oden & Sims Used Cars, Inc. v. Thurman*, 301 S.E.2d 673 (Ga. Ct. App. 1983) to argue that pre-suit notice is

23

required in Georgia.  (Opp. at 41, 42.)  However, the *Hudson* court took *Oden* into account in reaching its decision.  "Notice of breach serves two distinct purposes, *as noted in Oden* . . . it opens the way for settlement negotiations between the parties; second, it minimizes the possibility of prejudice by giving the seller ample opportunity to cure the defect, investigate the claim, or reduce damages at an early stage."  *Hudson*, 403 S.E.2d at 854 (emphasis added).  The *Hudson* court went on to hold that pre-suit notice was unnecessary.  *Id.*

Frigidaire also argues that *Hudson* did not require pre-suit notice because the purposes of notice were mooted.  (Opp. at 42) (arguing that there was nothing to settle or investigate since the vehicle at issue had been stolen and confiscated by the police).  However, in *Hudson*, after the vehicle buyer filed suit, the seller attempted to demonstrate that he had properly held title prior to sale to the buyer.  *Id.* at 853.  The buyer claimed significant money damages based on "the purchase price of the vehicles, expenditures for repairs, and interest paid on purchase-money loans."  *Id.*

Thus, based on these facts, it was evident that the buyer's lawsuit furthered rather than frustrated the purposes of notice by providing an opportunity for the parties to settle the buyer's damages and providing the seller with an opportunity to investigate whether he had title to the vehicles.  Other courts have similarly held that post-suit notice does not upset the purposes of notice.  *See, e.g., Goldstein v. Searle,* 378 N.E.2d 1083, 1088  (Ill. Ct. App. 1978) (the purpose of notice does not "necessarily connotes prelitigation negotiation and settlement which would preclude the filing of a complaint as the acceptable means of giving reasonable notice. . . . such should not be the necessary implication, particularly in light of . . . the rule that notice need not be in any particular form.") (citations omitted); *see also Davidson*, 379 P.2d 744, 749 (Ariz. 1963) (defendants who received notice by plaintiff's complaint were not necessarily prejudiced and were still able to inspect and analyze the product at issue).[20]

---

[20]  The same is true here.  Plaintiffs' suit has opened the way for settlement negotiations.  Months after Plaintiffs filed their complaint, the parties engaged in several months of formal mediation.  This case has provided Frigidaire with ample opportunity to investigate the alleged defect, cure the problem and reduce escalating damages.

In addition, the holding in *Hudson* is not limited to the circumstances of that case, contrary to Frigidaire's contention. (Opp. at 42). For instance, *In re Bridgestone/Firestone Inc. v. Wilderness Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001) cited *Hudson* among the many decisions finding that that filing a lawsuit can "satisfy the notice of breach requirement." *In re Bridgestone/Firestone Inc.* found that cases where a notice requirement is satisfied by filing of suit are the more "well-reasoned cases" in part because "the main policies behind the notice of breach requirement . . . [are not] necessarily frustrated if notice is given by filing suit." *Id.*[21]

Courts in other states for which Plaintiffs propose subclasses also do not require pre-litigation notice and have held that notice does not require an individualized inquiry. For example, *Thomas v. Louisiana-Pac. Corp.*, 246 F.R.D. 505 (D.S.C. 2007) held that pre-litigation notice was not required for maintaining a class action asserting breach of warranty claims. In *Thomas*, plaintiffs brought a class action alleging that their homes were constructed with a defective exterior trim product that causes water damage and "promotes the growth of *health-threatening mold, mildew, [and] fungi.*" *Thomas*, 246 F.R.D. at 506-07 (emphasis added). Plaintiffs asserted claims for breach of express and implied warranty against the company that designed and manufactured the allegedly defective trim product. *Id.*

The defendants argued that the proposed class could not be certified because "the court will be required to individually inquire as to whether Plaintiffs gave seasonable notice of the breach to Defendants." *Id.* at 513. The court, analyzing *Seaside Resorts v. Club Car, Inc.*, held that retail buyers were not required to provide notice to manufacturers, "'or others who sold the goods further up the chain of commerce.'" *Thomas*, 246 F.R.D. at 512 (quoting *Seaside Resorts*,

---

[21] Furthermore, even were pre-litigation notice required under Georgia law, at least one Georgia court held that whether a consumer provided reasonable pre-litigation notice to a manufacturer should not "deprive a good faith consumer of his remedy" because a "'lay consumer has no reason to know, until he consults a lawyer, that under the terms of the Uniform Commercial Code he is required to give the seller notice that the item sold was not satisfactory.'" *Wal-Mart Stores, Inc. v. Wheeler*, 586 S.E.2d 83, 86 (Ga. Ct. App. 2003) (quotation omitted). Citing to the same Georgia statute Frigidaire attempts to apply in this action (Opp. at 18; Mot. to Dismiss at 21), the *Wheeler* Court held that "delay alone without prejudice caused by such delay is insufficient to bar relief to the plaintiff under O.C.G.A. § 11-2-607(3)(a)." *Wheeler*, 586 S.E.2d at 86.

416 S.E.2d at 663).  As a result, the plaintiffs and putative class members "were not required to notify Defendants of the breach.  Defendants did not sell TrimBoard directly to the Plaintiff or putative class members . . . Because there is no requirement that Plaintiffs and putative class members give notice to Defendants, no individualized inquiry in that regard is necessary." *Thomas*, 246 F.R.D. at 513; *see also Cartwright*, 2009 U.S. Dist. LEXIS 83286, at *27-*28 n.9 (indicating that notice may not be required, that notice "may be given after commencement of suit," and that whether Plaintiffs and class members provided notice "are questions that are likely common to the class.  Accordingly, there is no need for individualized factual determinations among the class regarding notice.") (citations omitted).

Further, several courts have held that the notice requirement is also satisfied where the defendant had actual notice of the product defect and breach.  *See, e.g., Cornerstone Design, Ltd. v. Elumatec USA, Inc.*, 736 N.W.2d 542, at *18 (Wis. Ct. App. 2007) (notice requirement is met when the seller has actual knowledge of the product's failure); *see also Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) (notice satisfied in part by proof of complaints by consumers); *Seaside Resorts*, 416 S.E.2d at 664 (defendant received several repair requests and complaints concerning its defective products and that "[t]his [was] simply a specific instance of the general principle that notice is not required to a party who already has knowledge of a fact giving rise to a claim.") (citation omitted).

Although Frigidaire cites a single Georgia case – *Oden* – to indicate that actual notice cannot satisfy the notice requirement for breach of warranty claims, Frigidaire does not contest that actual notice satisfies the notice requirement under other applicable states' laws.  (Opp. at 40-41.)  Furthermore, Plaintiffs do not allege that actual notice satisfies notice requirements under Georgia law.  Rather, Plaintiffs argue that they satisfied the notice requirement under Georgia law by initiating this lawsuit against Frigidaire.

Frigidaire had actual notice of the alleged defect and breach within a reasonable amount of time and ample opportunities to cure.  In the years before and since the filing of Plaintiffs' Complaint, Frigidaire has received scores of complaints from consumers whose Washing

26

Machines are equipped with the defective boot and who have experienced mold and mildew problems as a result. Frigidaire details the over a thousand service calls received between 2004 and 2008 relating to "mold," "mildew" or "odor." (Opp., Ex. 15 (Fuller Decl.) ¶ 20.)[22] Plaintiffs' First Amended Complaint also references numerous consumer complaints about mold and mildew problems and defective gaskets from several years prior to the filing of the initial and First Amended Complaint. (FAC ¶ 35-36.) In addition, several emails to Frigidaire service technicians reveal that consumers were contacting Frigidaire about their Washing Machines' defective boot and mold and mildew problems in *2006*. (*See, e.g.*, Tamblyn Decl., Ex. A, Electrolux 001845-46, 001927, 001937.)

Beyond consumer complaints, customer service calls and emails to Frigidaire service technicians, Frigidaire's knowledge of the defect and breach is perhaps best demonstrated by the fact that it *changed its bellows design in 2006.* Frigidaire introduced an "'S' shaped bellow . . . in 2006 and subsequently phased [it] into other models . . . ." (Opp., Ex. 11 (Hill Decl.) ¶ 9.) "The 'S' shaped bellow *does not have convolutions in which water can become trapped*." (Opp. at 10 (emphasis added).) Frigidaire's Service Flash LN073 reveals that it was aware that its Washing Machine gaskets were defective in *2007*, close to a year before Plaintiffs' initial Complaint was filed. Indeed, even Frigidaire admits that "[i]nformation regarding the potential for odors and mildew in front load washing machines was well publicized over the class period . . . . In fact, the potential for odor in front load washing machines was sufficiently well-known by *2007* . . . ." (Opp. at 7-8 (emphasis added).)

As early as March *2004*, Frigidaire stated that "new style bellows" was a "service solution" to problems related to "[w]ater left in the bellows (boot) after the cycle is done." (Mot., Ex. I). Furthermore, Frigidaire was testing Washing Machine bellows for mold and mildew growth in *2004*. (Mot. Ex. O.)

---

[22] These results were produced using only the keywords "mold," "mildew" and "odor" as chosen unilaterally by Frigidaire. (*Id.*). It is likely that numerous additional service calls would be found were such keywords as "fungus," "spores," "biofilm," "smell," "boot," "gasket," "bellows" and/or "seal" included in the search.

Frigidaire has had substantial opportunity to cure the alleged defect.  Frigidaire has breached, and continues to breach, its express warranty by refusing to cure the alleged defect on a class-wide basis and instead instructing customers to remedy the problem on their own.  For these reasons, Plaintiffs and class members provided Frigidaire with adequate notice, within a reasonable amount of time and Frigidaire has had ample opportunity to cure.

        **b.**      **Plaintiffs Express Warranty Claims Are Subject To Common Questions Of Law And Fact**

        **i.**      **Uniform Tumble Action Washer Warranty**

Frigidaire argues that the proposed class cannot be certified because individualized questions predominate as to whether class members experienced the alleged defect within Frigidaire's one-year warranty period.  (Opp. at 43-45.)  However, Plaintiffs have plainly alleged that the Washing Machines are covered by Frigidaire's Tumble Action Washer Warranty "*up to the 25th year of ownership*."  (FAC ¶ 51 (emphasis added).)  Consequently, all of the defective Washing Machines at issue in this case are subject to the Tumble Action Washer Warranty.

As Plaintiffs previously argued, both the "Full One-Year Warranty" and "Limited 2nd – 25th Year Warranty" provisions govern the Washing Machines' defects.  Frigidaire does not argue in its Opposition that the alleged defect is not covered by the "Full One-Year Warranty."  Indeed, Frigidaire itself has admitted that its Tumble Action Washer Warranty covers the alleged defects. (*See, e.g.*, Tamblyn Decl., Ex. E (Electrolux 001845 ("At this time we do have another boot with a drain feature to help eliminate the situation . . . an authorized servicer could install it for you at no charge *under the manufacturer's warranty*.  They can help with P/N 134515300.") (emphasis added); Electrolux 002724 (same); Electrolux 002879 (same)).)

The defective boot is a component part for the Washing Machines' inner wash tub and is covered by the manufacturer's warranty between the 2nd to 25th year after the date of purchase.[23] The defective gasket is "for" the inner wash basket of the Washing Machines in that the "bellows

---

[23] Plaintiffs repeatedly alleged that the defective gasket is a part for or related to the inner wash basket in their Complaint. (*See, e.g.*, FAC ¶¶ 2, 13, 33, 51.)

component . . . keeps clothing, water, and detergent inside *the basket* during the tumbling wash and rinse cycles." [Opp., Ex. 15 (Fuller Decl.) ¶7 (emphasis added).) Plaintiffs also allege that the defective gasket is "broken," and thus covered by the 2nd to 25th year warranty provision, in that it fails to prevent mold or mildew from forming in the wash basket. Moreover, the clothes that are being destroyed are *in* the inner wash basket at the time they are damaged. Because the inner wash basket is not properly cleaning Plaintiffs' and class members' clothing, the gasket and inner basket are not operating as intended and are effectively broken.[24]

Each of the defective Washing Machines is covered by a uniform Tumble Action Washer Warranty containing identical warranty provisions. As a result, whether the Tumble Action Washer Warranty covers the Washing Machines is a matter of generalized proof. *See, e.g., Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) (holding that common issues predominated as to whether "Ford's express 'repair or replace' warranty cover[ed] the latent defect at issue" where the same defective part was present in each product and "class members all have the same express warranty claim.") (citation omitted).

> ### ii. Frigidaire Has Refused To Repair On A Class-wide Basis And Any Individual Repairs Are A Matter Of Damages

Frigidaire's Service Flash LN073, issued in April 2007, described the "PROBLEM" of water accumulating in the convolutions of the Washing Machine's boot, that such accumulation of water "CAUSE[D]" the "likelihood of a biofilm formation" and that the likelihood of biofilm (mold) formation was "reduced" in the new model washers. (Mot., Ex. A.) The same Service Flash proposed as a "SOLUTION[:] A new boot style that does not have convolutions . . . for [biofilm formation] concerns." (*Id.*) That a boot with no convolutions was an appropriate class-wide fix to the alleged design defect is readily demonstrated, not only by Service Flash LN073,

---

[24] Frigidaire attempts to limit the 2nd-25th Year warranty provision to the replacement of the inner wash basket. (Opp. at 44 n.17.) However, the Tumble Action Washer Warranty plainly states that Frigidaire will pay for a replacement "*part for*" an inner wash basket. (Mot., Ex. C.) The warranty does not state that Frigidaire will only "pay to replace the inner wash basket." Nevertheless, Plaintiffs have alleged that both the defective gasket and inner wash basket are effectively "broken."

but by Frigidaire's decision to "beg[i]n introducing a new 'S' shaped boot design on certain Frigidaire models, which was subsequently phased into other models.  The 'S' shaped bellow *does not have convolutions in which water can become trapped*."  (Opp. at 10 (citing Hill Decl. ¶ 9) (emphasis added).)

Frigidaire never issued its Service Flash to consumers or retailers and failed to recall its defective Machines.  (FAC ¶¶ 4, 39.)  Also, as Frigidaire argued in its Opposition and previous briefing, Frigidaire does not agree that the alleged defect is even covered under its Tumble Action Washer Warranty.  Rather, Frigidaire's policy as to all class members has been to hold consumers responsible, if not blame consumers, for its Washing Machines' mold and mildew problems.  According to Frigidaire, these problems arose because consumers failed to repeatedly wipe down the inside of their Washing Machines, to dry their Washing Machines' boot after wash cycles, to leave their Washing Machines' door ajar and to run extra wash cycles with particular cleaning solutions.  (Opp. at 6-8.) [25]

As a result, Frigidaire has not, and continues to refuse to, cure the alleged defect.  Because Frigidaire argues that its uniform Tumble Action Washer Warranty does not cover the alleged defect, consistently refuses to remedy this defect and holds consumers responsible for mold and mildew problems, Frigidaire's breach is subject to common proof.

That some individuals "*did* receive a new bellow" (Opp. at 46 (emphasis in the original)) is a matter of damages and does not defeat predominance.  *See, e.g., Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 572 (N.D. Ga. 2007) ("'[T]he presence of individualized damages issues does not prevent a finding that common issues in the case predominate.'") (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004)); *see also Beattie v. Century-Tel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (whether a consumer authorized or benefitted from the misleading telephone repair plan "goes only to the issue of damages and does not preclude a finding that the

---

[25]  Frigidaire's recommendation that consumers should leave their Washing Machine's door ajar is, by its own admission, extremely dangerous to children.  (FAC at ¶ 44.)  Furthermore, consumers experienced recurring mold and mildew problems even after following Frigidaire's recommendations for preventing mold and mildew from developing in it Washing Machines.  (Tamblyn Decl., Ex. B.)

typicality requirement is satisfied.").

### 4.   Unjust Enrichment

Frigidaire also argues that Plaintiffs' unjust enrichment claims are likewise marred by several of the same purported "individual issues" afflicting Plaintiffs' warranty and deceptive trade practices claims, such as the purported "individual inquiry" of whether a particular absent class member experienced problems and why.  For the same reasons already discussed herein by Plaintiffs, these repetitive contentions are no more a barrier to certification of Plaintiffs' unjust enrichment claims than they are to any of Plaintiffs' other claims.

Each Plaintiffs' claim for unjust enrichment "is based upon the universally recognized moral principle that one who has received a benefit has the duty to make restitution when to retain such benefit would be unjust." *Puttkammer v. Minth*, 226 N.W.2d 361, 363 (Wis. 1978). This common overarching principle applies in all five states.  *In re ConAgra Peanut Butter Prods. Liab. Litig.*, 2008 WL 2132233 at *3 (N.D. Ga. May 21, 2008); *Smith v. Georgia Energy USA, LLC*, 259 F.R.D. 684 (S.D. Ga. 2009); *Cartwright v. Viking Indus., Inc.*, 2009 WL 2982887 (E.D. Cal. Sept. 14, 2009); *Earthlink, Inc. v. Eaves*, 293 Ga. App. 75, 666 S.E.2d 420 (Ga. App. 2008); *QHG of Lake City, Inc. v. McCutcheon*, 600 S.E.2d 105, 108 (S.C. Ct. App. 2004); *Heldenfels Bros v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Here, evidence of Frigidaire's knowledge of the defect and Frigidaire's continued realization of benefits will be made by generalized proof across the class which interpose no individual issues.[26]

Courts addressing factual claims similar to those here have recognized the propriety of class treatment for unjust enrichment claims.  *See, e.g., Kelley v. Microsoft*, 251 F.R.D. 544 (W.D. Wash. 2008).  In *Kelley*, the court held that "Plaintiffs may maintain an unjust enrichment claim on the theory that [defendant's] marketing campaign artificially inflated the demand for

---

[26] The *In re Ruzulin Products Liability*, 210 F.R.D. 61 (S.D.N.Y. 2002) decision cited by Frigidaire misses the mark. The defendants in *In re Rezulin* were in no way aware of the risk/defect of the drug at issue at the time it was sold. In contrast, it is beyond dispute that Frigidaire had knowledge of the subject defect and nonetheless continued to sell defective Washing Machines.

and price of [the product].  Common issues – whether [defendant] retained a benefit (increased or sustained [product], whether [defendant] knew of that benefit [required under Washington law], and whether Plaintiffs paid more than they should have – will predominate." *Kelley v. Microsoft*, 251 F.R.D. 544 (W.D. Wash. 2008).  Plaintiffs' unjust enrichment claims against Frigidaire likewise present similar common issues which predominate.

### 5.   Affirmative Defenses Do Not Preclude Certification

Frigidaire suggests that its purported affirmative defenses at trial also make fatal certification.  Yet, the Eleventh Circuit has held that a presence of affirmative defenses does not preclude class certification.  *See, e.g., Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259-61 (11th Cir. 2003) (affirmative defenses which pertain primarily to damages rather than liability do not preclude predominance and may be resolved during the damages phase); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420-21 (5th Cir. 2004), *cert. denied sub nom. Am. Nat. Ins. Co. v. Bratcher*, 543 U.S. 870, 125 S.Ct. 277, 160 L.Ed.2d 117 (2004); *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296, n. 4 (1st Cir. 2000).[27]

Further, the defenses of accord and satisfaction and waiver as to customers who have had their Washing Machines repaired or who received rebates pose no threat to certification.  Those customers are readily identifiable through Frigidaire's records and may be excluded, if appropriate, in the class definition.

Frigidaire also raises the prospect of product misuse.  While this defense has no applicability in this case involving an inherent design defect, it is nonetheless subject to the same standards and law in all five states where the focus is on the foreseeability of the misuse.[28]

---

[27] The cases cited by Frigidaire are inapposite and due to be rejected.  For instance, it is no surprise that the court in *Parks Automotive Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567 (D.S.C. 2006), found predominating individual issues arising from affirmative defenses to claims of bad faith in the delivery of damaged vehicles by a manufacturer to its multitude of dealers, where the defenses (as well as the claim itself) depended upon individual communications and the course of dealing between specific dealership employees.

[28] Frigidaire acknowledges that in determining the defense of misuse, both Texas and California focus on whether the use of the product was foreseeable.  Likewise, the states of Georgia, South Carolina, and Wisconsin also focus on the foreseeability of the product misuse.  *See, e.g., Sanders v. Lull Intern., Inc.*, 411 F.3d 1266 (11th Cir. 2005) ("Under Georgia law, 'product misuse' is defined as use of a product in manner that could not reasonably be foreseen by defendant."); *Hansen v. New Holland North America, Inc.*, 574 N.W.2d 250 (Wis. App. 1997) ("Misuse

Likewise, the law concerning contributory negligence and comparative negligence is not even applicable to warranty claims in the states of Georgia, California, South Carolina, and Texas (implied warranty).[29]   In Wisconsin, this defense does not raise predominating individual issues. *See, e.g., Markweise v. Peck Foods Corp.*, 556 N.W.2d 326 (Wis. App. 1996) (certifying class notwithstanding individual issues raised by contributory negligence defense, among others). Indeed, the consistency of the law in these states highlights the call for class certification.

Thus, consistent with Eleventh Circuit law, Frigidaire's affirmative defenses present no obstacle to class certification.

### D.   Plaintiffs Satisfy The Typicality And Adequacy Requirements Of Rule 23(A).

Frigidaire argues the named Plaintiffs' warranty claims do not meet the typicality and adequacy requirements of Rule 23(a).   As previously shown, however, all the Plaintiffs are members of the class in that they purchased defective Washing Machines, were damaged, and timely brought this action.   Nonetheless, Frigidaire claims that (i) some of the Plaintiffs purportedly did not experience problems with their Washing Machines until after the expiration of the one-year warranty period and (ii) some of the Plaintiffs allegedly did not provide reasonable notice of the breach of warranty.   Frigidaire's arguments in these respects are flawed.

First, each of the named Plaintiffs' problems with their Washing Machines were present within the applicable warranty periods.   The inherent design defect Plaintiffs complain about existed *from day one* when the Frigidaire knowingly sold a defective product, unfit for its

---

is not a complete defense if the misuse was reasonably foreseeable by the manufacturer."); *Small v. Pioneer Machinery, Inc.*, 494 S.E.2d 835 (S.C. App. 1997).

[29]   Frigidaire concedes that neither the defense of contributory negligence nor comparative fault is available under California law.  Similarly, this defense is not available under the law of Georgia or South Carolina. *See, e.g., Ford Motor Co. v. Lee*, 237 Ga. 554, 229 S.E.2d 379 (Ga. 1976), *aff'd and rev'd in part*, 237 Ga. 554, 229 S.E.2d 379, *on remand*, 140 Ga. App. 579, 231 S.E.2d 571 (ruling that contributory negligence is not a defense to a warranty action); *Imperial Die Casting Co. v. Covil Insulation Co.*, 216 S.E.2d 532 (S.C. 1975).  Texas law does not apply comparative fault principles to claims for exemplary damages or to UCC breach of warranty claims. *See, e.g., JHC Ventures, L.P. v. Fast Trucking, Inc.*, 94 S.W.3d 762 (Tex. App. San Antonio 2002) (refusing to extend comparative fault principles to UCC breach of warranty claims); Tex. Civ. Prac. And Rem. Code §§ 33.012(a) (comparative/proportionate fault principles not applicable to claims for exemplary damages).

intended purpose. Because the defect pre-existed Plaintiffs' purchase and would have marginalized the product's performance from the first load of wash, the defect is covered under the one-year warranty.

Each Washing Machine also contained an "inner wash basket" which carried a warranty for up to twenty-five (25) years. The inner wash basket is an integral component in the washing and cleaning process of the Washing Machines, and it has been specifically alleged that the defective materials and workmanship in the inner wash basket has caused damages. Consequently, not only did the Frigidaire knowingly sell defective products to the Plaintiffs, the defects were present and caused damage to Plaintiffs within both of the applicable one-year and twenty-five (25) year warranty periods.

Second, Plaintiffs provided timely and proper notice of the breach. *See Hudson,* 403 S.E. 2d at 852; *SunTrust Bank v. Hightower*, 660 S.E. 2d 745 (Ga. Ct. App. 2008). Plaintiffs and all class members have met notice requirements because Frigidaire had actual, pre-existing knowledge of the problems and failed to take remedial action. As Plaintiffs have alleged and shown, Frigidaire had full and complete notice of the defect, had an opportunity to repair the Plaintiff class members' defective washing machines, and failed or refused to make appropriate repairs after being given a reasonable opportunity to cure the defect. *See, e.g.*, FAC, ¶'s 52-53.

Accordingly, each of the Plaintiffs has met the adequacy and typicality requirements of Rule 23.

## III.   **CONCLUSION**

For the reasons set forth above, and those discussed in Plaintiffs' underlying Motion, Plaintiffs respectfully request that their motion for class certification be granted.

Date: February 16, 2010

/s/R. Brent Irby
R. Brent Irby (State Bar No. 224232)

Charles A. McCallum, III
MCCALLUM, HOAGLUND, COOK & IRBY, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama  35216
Telephone:  (205) 824-7767
Facsimile:  (205) 824-7768
Email: birby@mhcilaw.com
        cmccallum@mhcilaw.com

Lee W. Brigham
BELL & BRIGHAM
457 Greene Street
Augusta, Georgia  30903
Telephone:  (706) 722-2014
Facsimile:  (706) 722-7552
Email:  lee@bellbrigham.com

Mark J. Tamblyn (*pro hac vice*)
Ian J. Barlow (*pro hac vice*)
WEXLER WALLACE LLP
455 Capitol Mall, Suite 231
Sacramento, California  95814
Telephone:  (916) 492-1100
Facsimile:  (916) 492-1124
Email:  mjt@wexlerwallace.com
        ijb@wexlerwallace.com

Kenneth A. Wexler (*pro hac vice*)
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022
Email:  kaw@wexlerwallace.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2010, I electronically filed the following documents:

1. **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;**
2. **DECLARATION OF MARK J. TAMBLYN IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION; and**
3. **PLAINTIFFS' EVIDENTIARY OBJECTIONS TO EXHIBITS TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MOTION TO STRIKE.**

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Benjamin H. Brewton
TUCKER, EVERITT, LONG, BREWTON & LANIER
Post Office Box 2426
Augusta, Georgia 30903
Telephone: (706) 722-0771

John H. Beisner
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000

J. Russell Jackson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000

/s/R. Brent Irby
R. Brent Irby (State Bar No. 224232)
MCCALLUM, HOAGLUND,
 COOK & IRBY, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama 35216
Telephone: (205) 824-7767