# In the United States District Court
## for the Southern District of Georgia
## Augusta Division

MICHAEL TERRILL, ROBERT BROWN,      *
MICHAEL VOGLER, PALECIA BOYD,       *
and DENISE PACK, on behalf of       *
themselves and all others           *
similarly situated,                 *
                                    *
     Plaintiffs                     *
                                    *
vs.                                 *          CV 108-030
                                    *
ELECTROLUX HOME PRODUCTS, INC.      *
d/b/a FRIGIDAIRE®,                  *
                                    *
     Defendant                      *

### ORDER

Presently before the Court are Electrolux's Motion to Dismiss (Dkt. No. 79), Electrolux's Motion to Partially Strike Class Allegations (Dkt. No. 87), and Plaintiffs' Motion for Class Certification (Dkt. No. 97). Electrolux's Motion to Dismiss and Motion to Partially Strike Class Allegations are **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' Motion for Class Certification is **DENIED**.

## I.    Background

The following factual allegations are taken directly from Plaintiffs' First Amended Complaint, and assumed to be true for purposes of Electrolux's Motion to Dismiss. Plaintiffs are five

AO 72A
(Rev. 8/82)

individuals who reside in Wisconsin, Georgia, South Carolina, Texas, and California who purchased Frigidaire front-load washing machines.[1]  Electrolux is incorporated in Delaware and maintains its principal place of business in Augusta, Georgia. (Dkt. No. 66 ¶ 18.)  Electrolux manufactures and sells home appliances, including Frigidaire front-load washing machines, throughout the United States.  (*Id.* ¶¶ 1, 18.)  Frigidaire front-load washing machines are sold in Lowe's, Sears, Best Buy, and other national retailers.  (*Id.* ¶ 31.)  Electrolux's website contains the following representations regarding Frigidaire washing machines:

> **You've Never Done Laundry Like This**
> Whatever your décor, space requirements or family size, Frigidaire® washers and dryers fit your home and your lifestyle.  From our traditional top load washers and gas or electric dryers to the stylishly efficient front load laundry to the space saving laundry center, you can count on Frigidaire for innovation, performance and style.
>
> . . .
>
> **Your laundry never looked so good**
> Frigidaire® is the largest manufacturer of front load laundry in the world.  So you expect contemporary styling that's beautifully designed to fit your lifestyle.
>
> You trust that the iCare Intelligent Fabric Care System™ gently washes and completely dries to keep your clothes looking their best.  With no agitator, you count on tumble action to wash gently and rinse so

---

[1] Frigidaire is a registered trademark of Electrolux.

> completely that your clothes feel fresher
> and last longer.

(*Id.* at 30.)

Plaintiffs allege that Frigidaire front-load washing machines, including models BTF2140E, BLTF2940E, FTF2140E, FWFB9100E, FWFB9200E, GLTF2940E, LTF2140E, and LTF2940E, suffer from a serious design defect. (*Id.* ¶¶ 1-2.) Specifically, Plaintiffs allege that design defects in the steel drum, gasket, and bellows cause the washing machines to accumulate mold and mildew. (*Id.* ¶ 2.) Plaintiffs allege that the mold and mildew accumulation produces a mold and mildew odor on clothes washed in the machines. (*Id.*) Plaintiffs allege that the problem was so severe that some clothing was stained and ruined, and the smell of mold permeated their homes. (*Id.*)

Plaintiffs also allege that Electrolux knew of the defect before Plaintiffs purchased their machines, but refused to warn consumers. (*Id.* ¶ 4.) As evidence of Electrolux's knowledge, Plaintiffs attached an Electrolux internal service flash issued in April 2007. (*Id.* Ex. A.) The service flash states that a convolution in the bellows allows water to remain in the bellows, potentially allowing biofilm to form. (*Id.*) The bellows is a rubber seal around the door and drum that keeps clothing, water, and detergent inside of the wash basket as it cycles. The service flash also states that a new bellows design

that does not have convolutions is "available for such concerns." (*Id.*) The new design is known as "S-shaped," or "S-shaped bellows." Plaintiffs allege that they would not have purchased a Frigidaire front load washing machine had they known of this defect.

All of the Plaintiffs' washing machines came with substantially similar warranties issued by Electrolux. Each warranty consists of three different warranties: a one-year, five-year, and twenty-five-year warranty. The one-year warranty provides that "Frigidaire will pay for: . . . Labor and replacement parts which prove to be defective in materials or workmanship." (Dkt. No. 82-1, 2.) The twenty-five-year warranty provides that "Frigidaire will pay for: . . . Replacement part for an inner wash basket that breaks due to a defect in materials or workmanship." (*Id.* ¶ 4.) The five-year warranty is not at issue.

Each Plaintiff purchased his or her machine in his or her home state, and none purchased a machine directly from Electrolux. Michael Terrill lives in Cedarburg, Wisconsin. In or about April 2005, he purchased a model GLTF2940ESO Frigidaire machine from Kennedy Hahn in Milwaukee, Wisconsin. (Dkt. No. 66 ¶ 13.) He began experiencing mold and mildew problems in mid-2006. (*Id.*) After unsuccessful attempts to clean his machine, he contacted Frigidaire in January 2007. Frigidaire

AO 72A
(Rev. 8/82)

representatives advised him to wipe his machine after each use. (*Id.*)

Robert Brown lives in San Diego, California. (*Id.* ¶ 14.) He purchased a model LTF2140ES3 Frigidaire machine on May 8, 2006 from a Lowe's Home Improvement store in California. (*Id.*) Brown first noticed the alleged defect in July 2006, but waited until May 2009 to contact Electrolux.  Electrolux initially advised him to wipe down his machine after each use and to leave the washer door open when not in use.  (*Id.*)  Electrolux eventually offered to pay for the parts and labor to install a replacement bellows, or to provide a rebate on the purchase of a comparable Frigidaire machine.  (*Id.*)

Michael Vogler lives in San Antonio, Texas.  (*Id.* ¶ 15.) In May 2007, he purchased a model FTF2140ES3 Frigidaire machine at Conn's in San Antonio, Texas.  Vogler alleges that he began experiencing mold and mildew problems in November 2008, and contacted Frigidaire.  (*Id.*)   A Frigidaire representative informed him that his machine's warranty had expired, and all they could do was sell him a new bellows.  (*Id.*)

Palecia Boyd lives in Milledgeville, Georgia.  (*Id.* ¶ 16.) She purchased a model GLTF290ES2 Frigidaire machine in July 2006 from Union Furniture in Macon, Georgia.  (*Id.*)  She began experiencing mold and mildew problems in July 2008.  (*Id.*)

AO 72A
(Rev. 8/82)

Finally, Denise Pack lives in Round O, South Carolina. (*Id.* ¶ 17.)  In July 2006, she purchased a model LTF2140ES3 Frigidaire machine from a Lowe's Home Improvement store in Summerville, South Carolina.  (*Id.*)  She first noticed problems with her machine in August 2006.  (*Id.*)

Terrill originally filed suit on behalf of himself and a proposed nationwide class on March 5, 2008.  On July 31, 2009, Plaintiffs filed their First Amended Complaint, adding the additional Plaintiffs and consumer protection claims.  In lieu of filing an answer, Electrolux filed a Motion to Dismiss. Electrolux has also filed a Motion to Partially Strike Class Allegations, and Plaintiffs have filed a Motion for Class Certification.

## II.  Motion to Dismiss

When ruling on a motion to dismiss, the Court does not decide disputed factual issues.  *See Young Apartments, Inc. v. Town of Jupiter,* 529 F.3d 1027, 1037 (11th Cir. 2008).  Rather, the Court accepts the plaintiff's well-pleaded factual allegations as true, "and then determine[s] whether they plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-51 (2009) (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  If the plaintiff alleges facts that, combined with reasonable

AO 72A
(Rev. 8/82)

inferences, raise the likelihood of recovery from possible to plausible, the motion to dismiss must be denied.  *Iqbal*, 129 S. Ct. at 1949.

Plaintiffs' First Amended Complaint includes eight counts. Before turning to the merits of each count, the Court must decide what law applies.  The Court will then examine the merits of Plaintiffs' allegations in the following order: (1) breach of express warranty (Count II); (2) breach of implied warranty (Count III); (3) violation of the Magnuson-Moss Act (Count V); (4) unjust enrichment (Count IV); (5) violation of the Georgia Uniform Deceptive Trade Practices Act (Count I); (6) violation of the California Unfair Competition Law (Count VI); (7) violation of the Texas Deceptive Trade Practices–Consumer Protection Act (Count VII); and (8) violation of the Wisconsin Deceptive Trade Practices Act (Count VIII).

## A. Choice of Law

Before turning to the merits of Electrolux's Motion to Dismiss, the Court must determine which state's laws apply to Plaintiffs' claims.[2]  The Parties agree that Georgia choice-of-law rules govern, but dispute which substantive law ultimately applies.  Plaintiffs contend that Georgia law applies to all of

---

[2] Plaintiffs argue that it is premature to undertake a choice-of-law analysis. Plaintiffs are correct that in some cases the motion to dismiss stage is too early to undertake a choice-of-law analysis.  This is not such a case.  The choice-of-law analysis does not turn on disputed factual issues, and deciding which state's laws apply will help advance the litigation.

AO 72A
(Rev. 8/82)

their claims, regardless of where individual Plaintiffs or class members reside and purchased their machines.  Electrolux argues that the law of the individual Plaintiff's home state governs.  Electrolux is correct with respect to all but Plaintiffs' unjust enrichment claim.

Georgia courts ordinarily apply *lex loci delicti* (law of the state where the injury occurred) to tort actions, *see Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1326 (11th Cir. 2006), and *lex loci contractus* (law of the state of contract) to contract actions, *see Hostetler v. Answerthink, Inc.*, 599 S.E.2d 271, 275 (Ga. Ct. App. 2004).  Plaintiffs, however, rely on *Frank Briscoe Company, Inc. v. Georgia Sprinkler Company, Inc.*, 713 F.2d 1500, 1503 (11th Cir. 1983), for the proposition that "[w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law."  However arcane that approach may be, this Court must follow it.  *See id.* ("A federal court faced with [a] choice of law issue must look for its resolution to the choice of law rules of the forum state.").

While Plaintiffs are correct on the law, their argument with respect to their breach of express warranty, breach of implied warranty, and Georgia Uniform Trade Practices Act claims is based on a flawed assumption.  Plaintiffs appear to assume that those are common-law claims.  Both breach of express and

implied warranty claims, however, are governed by statutes in each of the named-Plaintiffs' home states.  *See* Cal. Com. Code §§ 2313-2317; Cal. Civ. Code §§ 1792, 1793.2; O.C.G.A. §§ 11-2-313 to 317; S.C. Code Ann. §§ 36-2-313 to 317; Tex. Bus. & Com. Code §§ 2.313-317; Wis. Stat. Ann. §§ 402.313-317.  Because breach of express and implied warranty claims are governed by statute, Georgia law does not apply to all of the named-Plaintiffs' express and implied warranty claims.  The Georgia Uniform Deceptive Trade Practices Act is obviously statutory, so the law of each Plaintiff's home state also applies to their consumer protection claims.

Electrolux does not argue that a statute governs Plaintiffs' unjust enrichment claim.  Rather, Electrolux argues that due process precludes application of Georgia law to the claims of those Plaintiffs who do not reside in Georgia (the nonresident Plaintiffs -- all but Plaintiff Boyd).[3]  Electrolux puts forth two arguments in support of its due process theory: (1) the nonresident Plaintiffs' unjust enrichment claims have no real connection to Georgia and (2) applying Georgia law would frustrate the nonresident Plaintiffs' legitimate expectations.

The principal case on the due process limitations of state choice-of-law rules, and the one on which Electrolux relies, is

---

[3] All named Plaintiffs allege that they purchased their machine and suffered an injury in the state in which they reside.

AO 72A
(Rev. 8/82)

*Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965 (1985). *Shutts* involved the application of Kansas law in a class action against Phillips Petroleum for alleged violations of the rights of 28,000 "royalty owners possessing rights to the leases from which [Phillips Petroleum] produced [natural] gas." *Id.* at 799-800. Kansas was not Phillips Petroleum's principal place of business or state of incorporation. *Id.* at 799. Less than 1,000 of the 28,000 class members resided in Kansas, and only one quarter of one percent of the gas leases were on Kansas land. *Id.* at 801.

The Supreme Court first examined whether Kansas law conflicted "in any material way with any other law which could apply." *Id.* at 816. The Court did so because "[t]here can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit." *Id.* Electrolux has not made this initial showing. Nowhere in its Motion to Dismiss briefings has it pointed to a conflict between Georgia unjust enrichment law and the unjust enrichment laws of the Plaintiffs' home states. For that reason alone, Electrolux's due process argument fails. However, even if Electrolux did make this initial showing, its due process claim would still fail.

For Georgia law to apply to the claims of the non-Georgia Plaintiffs, Georgia "must have a 'significant contact or

significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [Georgia] law is not arbitrary or unfair." *Id.* at 821-22 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 101 S. Ct. 633 (1981)). Electrolux argues that Plaintiffs' claims do not have a connection to Georgia because Plaintiffs all purchased their washing machines in their home states, and only Boyd (the Georgia Plaintiff) has alleged any contacts with Georgia.

Electrolux's argument is belied by the Plaintiffs' allegations.[4]  Plaintiffs allege, and Electrolux does not challenge, that Electrolux's principal place of business is located in Augusta, Georgia.  (Dkt. No. 66 ¶ 18.)  Plaintiffs also allege that the corporate decisions surrounding Electrolux's response to the alleged defects were made in Augusta, Georgia.  (*Id.* at ¶ 12.)  Plaintiffs have thus alleged a connection between Georgia and the nonresident Plaintiffs' unjust enrichment claims.

Moreover, Georgia has a significant interest in regulating the conduct of businesses operating within its borders, particularly those whose principal place of business is in

---

[4] Electrolux is correct that only Plaintiff Boyd alleges contacts with the State of Georgia.  The due process inquiry, however, examines the connection between the claim writ-large and the state, not the connection between the individual plaintiffs and the state.

Georgia.   Electrolux conducts a substantial amount of business and employs numerous workers in Georgia.  Georgia has an interest in regulating such a company.  That interest includes extending legal remedies to Electrolux's customers.  Potential customers may feel more comfortable purchasing an Electrolux product if they know a legal remedy exists to cure a potential wrong.  Georgia's interests in the transactions at issue may not be as strong as those of the Plaintiffs' home states, but it is not so disinterested that applying Georgia law would be arbitrary and capricious, or so unforeseen that it would constitute unfair surprise.  Georgia law therefore applies to the nonresident Plaintiffs' unjust enrichment claims.

### B.    Count II: Breach of Express Warranty

Electrolux puts forth numerous arguments in support of its Motion to Dismiss Plaintiffs' express warranty claims.  First, Electrolux argues that none of the Plaintiffs have alleged a defect in material or workmanship covered by the express warranty.  Second, Electrolux argues that Boyd, Terrill, and Vogler allege that they first experienced problems with their machines outside of the warranty period.  Third, Electrolux argues that Boyd, Pack, Terrill, and Brown failed to allege notice and an opportunity to cure.

Electrolux's first argument is unpersuasive.  Electrolux argues that Plaintiffs have merely alleged a problem created by

their use of their machines - specifically their failure to maintain them properly - not a defect in material or workmanship.  Plaintiffs counter that they have alleged a defect in the bellows.  Plaintiffs have the better argument, at least at this stage of the litigation.  Plaintiffs allege that the bellows, which form a seal around the washing machine drum and door, collect water, resulting in mold, mildew, and biofilm buildup in and around the bellows.  This buildup allegedly ruined some clothing and caused other clothing to stain and develop mold and mildew odors.  A washing-machine component that causes clothes to smell like mold and mildew is fairly characterized as defective.  Whether the mold and mildew buildup is attributable to a defect in the bellows or the Plaintiffs' use and maintenance of their machines is a determination that the Court cannot make at this stage.

Electrolux next argues that Plaintiffs Boyd, Terrill, and Vogler allege problems with their machines that occurred outside of the one-year warranty period.  Plaintiffs counter that the twenty-five-year warranty, not the one-year warranty, applies. The one-year warranty provides that "Frigidaire will pay for: . . . Labor and replacement parts which prove to be defective in materials or workmanship."  (Dkt. No. 82-1, 2.)  The twenty-five-year warranty provides that "Frigidaire will pay for: . . . Replacement part for an inner wash basket that breaks due to a

defect in materials or workmanship." (*Id.*) This issue turns on whether Plaintiffs have alleged that (1) a part of their inner wash baskets (2) has broken (3) due to a defect in materials or workmanship.

Electrolux contends that the bellows is not part of the inner wash basket. Plaintiffs respond that the "bellows is for the inner wash basket in that the bellows component keeps clothing, water, and detergent inside *the basket* during the tumbling wash and rise cycles." (Dkt. No. 88, 20 (internal quotation marks omitted).) Plaintiffs' argument goes too far. They interpret the phrase "part for an inner wash basket" as including any part that allows, or is necessary for, the wash basket to operate properly. And because the bellows component allows the wash basket to operate by keeping laundry, water, and detergent in the wash basket, Plaintiffs argue that it is a part for the inner wash basket. Under Electrolux's interpretation, only the inner wash basket and parts incorporated into the inner wash basket itself are covered.

The twenty-five-year warranty provision reads in full: "Frigidaire will pay for: . . . Replacement part for an inner wash basket that breaks due to a defect in materials or workmanship." (Dkt. No. 82-1, 2.) The most natural reading of that provision is that Frigidaire/Electrolux will pay for a replacement part if an inner wash basket breaks. In other

words, if the inner wash basket breaks, Electrolux will pay for a replacement part that will fix the problem with the inner wash basket. The focus of the warranty, and the trigger for Electrolux's duty under it, is the breaking of the inner wash basket. The twenty-five-year warranty does not cover replacement costs for a defective component that is not part of the inner wash basket, even if the component is necessary for the inner wash basket to function properly. The bellows are therefore not covered under the twenty-five-year warranty.

Plaintiffs also argue that they "allege that a part for the inner wash basket or the inner wash basket itself is 'broken,' and covered by the express warranty, in that neither prevent mold or mildew from forming in the wash basket." (Dkt. No. 88, 12.) Plaintiffs have alleged that the inner wash basket has a "design defect" that causes it to accumulate mold and mildew. (*See* Dkt. No. 66, ¶ 2.) Unlike the one-year warranty, which applies to any part that has a defect in workmanship or materials, the twenty-five-year warranty only applies if the defect causes the inner wash basket to break. Plaintiffs classify their allegation that the inner wash basket fails to prevent mold and mildew from accumulating as an allegation that the inner wash basket is "broken."

A trier of fact could find that a washing-machine basket that allows mold and mildew to form is defective. However, an

AO 72A
(Rev. 8/82)

inner basket is not broken merely because it allows mold and mildew to form.   A washing machine – or more specifically an inner wash basket – could be operational yet suffer from a design defect that reduces its quality and performance.   From a purely physical standpoint, the machine performs exactly as designed, and thus is not "broken."   Yet the machine is still defective because a design flaw in the inner wash basket or bellows allows mold and mildew to form, which causes laundry washed in the machine to have a mold and mildew odor.

Plaintiffs have alleged such a design defect, but have not alleged that the inner wash baskets in their machines are inoperative or have physically broken.   The Court therefore holds that Plaintiffs have not alleged that the inner wash baskets are broken.   Accordingly, the twenty-five-year warranty does not apply, and Boyd, Terrill, and Vogler's breach of express warranty claims fail as a matter of law.

Electrolux also argues that all but Plaintiff Vogler failed to allege proper notice and opportunity to cure.   Specifically, Electrolux argues that Boyd and Pack fail to allege pre-suit notice, and that Terrill and Brown allege notice that is untimely as a matter of law.   Plaintiffs counter that Boyd and Pack provided notice by filing suit, and that all Plaintiffs provided notice within a reasonable time because Electrolux had actual knowledge of the defect.   The Court will not reach

AO 72A
(Rev. 8/82)

whether Boyd and Terrill have given Electrolux reasonable notice and an opportunity to cure.  They have not alleged defects that are covered by their express warranties, so any discussion of notice and opportunity to cure would be superfluous.

Pack resides in South Carolina, and South Carolina law applies to her breach of express warranty claim.  Pack has not alleged that she notified Electrolux that her washing machine was defective prior to filing suit.  Plaintiffs argue that the instant lawsuit provides Electrolux with notice of the defect and that Electrolux's prior knowledge that the bellows design was defective excuses Pack from providing notice.

Electrolux erroneously argues that *Hitachi Electronic Devices (USA), Inc. v. Platinum Technologies, Inc.*, 621 S.E.2d 38 (S.C. 2005), supports its contention that Pack is barred from recovering for breach of an express warranty because she failed to give Electrolux timely notice.  The relevant portion of *Hitachi* concerns the application of S.C. Code Ann. § 36-2-607(3)(a).  Modeled after U.C.C. § 2-607(3)(a), section 36-2-607(3)(a) provides that if a buyer has accepted a seller's tender of goods, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  The *Hitachi* court held that unless the buyer and seller opt out of § 36-2-607(3)(a), "seasonable notice of breach of warranty [is] a condition

precedent to the Seller's obligation to fulfill its remedial promise to repair, replace, or refund."  621 S.E.2d at 169. However, the South Carolina Court of Appeals has construed an identical North Carolina statute as requiring "a retail buyer to notify only the retail seller who tendered the goods to him, not wholesalers, distributors, manufacturers, or others who sold the goods further up the chain of commerce."  *Seaside Resorts Inc., v. Club Car, Inc.*, 416 S.E.2d 655, 663 (S.C. Ct. App. 1992). The defendant in *Hitachi* was not an up-stream manufacturer, but the immediate seller.  *See* 621 S.E.2d at 166.  Pack, however, purchased her machine from a Lowe's store, not directly from Electrolux.

This case falls into a gray area of South Carolina law. *Seaside Resorts* is distinguishable in that it dealt with the implied warranty of merchantability, which, unlike the express warranty at issue here, is breached at the time the defective goods are transferred to the buyer, and the buyer in that case did provide notice to the immediate seller.  *See* 416 S.E.2d at 663-64.  Unlike the implied warranty of merchantability, the express warranty Electrolux issued to Pack is not breached upon Pack's receipt of defective goods.  It is breached if Electrolux fails to comply with its duties under the warranty to remedy the defect.  In this scenario, requiring Pack to provide notice of the defect to Lowe's but not Electrolux would be absurd.  There

18

is thus a strong argument that § 36-2-607(3)(a) does not apply when a manufacturer provides an express repair or replacement warranty to a consumer who purchases the manufacturer's goods from a downstream seller. The Parties have not identified, and the Court has not found, any other South Carolina statute that would apply. If South Carolina's uniform commercial code does not govern this claim, South Carolina common law applies. *See Hitachi*, 621 S.E.2d at 170.

There is a South Carolina common-law case directly on point. In *Draffin v. Chrysler Motors Corp.*, 166 S.E.2d 305, 307 (S.C. 1969), the plaintiff purchased a Chrysler car from an authorized Chrysler dealer. Chrysler, the manufacturer, issued a warranty substantially similar to the one issued by Electrolux: '"Service under this warranty should be performed by any Chrysler Motors Corporation Authorized Dealer, at the dealer's place of business, without charge for replacement parts or labor."' *Id.* The court reaffirmed its earlier holdings "that no liability arises under a warranty such as this, until the warrantor has been given reasonable notice and opportunity to remedy the alleged defects." *Id.* at 308. The court held that the plaintiff put forth sufficient evidence of notice, in

part because he sent a letter to Chrysler notifying it of his complaints six months before filing suit.  *Id.*[5]

Unlike the plaintiff in *Draffin*, Pack did not give Electrolux pre-suit notice of the defect.  Accordingly, no liability has arisen against Electrolux under South Carolina (or Georgia) common law for breach of an express warranty.  If § 36-2-607(a)(3) does govern Pack's claim, she cannot prevail because she failed to give timely notice to the immediate seller *or* manufacturer.  Even if filing suit against Electrolux could satisfy § 36-2-607(a)(3), Pack's claim would still fail because she filed suit over a year after discovering the defect, and *Hitachi* held that notice provided one year after discovery of the defect is untimely as a matter of law.  *See* 621 S.E.2d at 166, 168.  The Court therefore **GRANTS** Electrolux's Motion to Dismiss with respect to Pack's breach of express warranty claim.

The only remaining breach of warranty claim is that of Brown, who resides in California.  Electrolux argues that

---

[5] To the extent Georgia common law should apply, it is in accord with South Carolina law.  *See, e.g., Knight v. Am. Suzuki Motor Corp.*, 227 Ga. App. 319, 321-22, 612 S.E.2d 546 (2005) ("Georgia law imposes two conditions before a breach of a written warranty can exist: (1) notice of the defect and (2) a reasonable opportunity to repair the defect.").  *Hudson v. Gains*, 199 Ga. App. 70, 403 S.E.2d 852 (1991), is inapposite.  In *Hudson*, the buyer of two dump trucks sued the seller for breach of express and implied warranties of good title.  *Id.* at 70.  The dump trucks were actually stolen.  *Id.* at 71.  After listing the purposes of the notice requirement, the court held that "service of the original suit, made eight months after confiscation, removed the vehicles from control of either party, was reasonable notice in the circumstances of this case."  *Id.* at 72.  Unlike the defendant in *Hudson*, Electrolux could have potentially avoided the alleged breach of warranty had it been given pre-suit notice of the alleged defect.  Even under Georgia law, therefore, service of the Complaint or First Amended Complaint does not satisfy the notice requirement.

AO 72A
(Rev. 8/82)

Brown's claim fails because Brown alleges that he waited three years after discovering the alleged defect to contact Electrolux.  Electrolux's argument is premised on section 2607(a)(3) of the California Commercial Code.  Express warranties issued by manufacturers of consumer goods to retail buyers, however, are governed by California Civil Code § 1793.2, which is part of California's Song-Beverly Consumer Warranty Act.[6]  Unlike the Commercial Code, the Song-Beverly Act does not require timely notice.  *See Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 292-293 (Cal. Ct. App. 2009) ("[UCC] notification requirements . . . do not apply to an action brought under the Song-Beverly Act.").  The Song-Beverly Act imposes a duty on the buyer to deliver nonconforming goods to the manufacturer's service or repair facility, or provide written notice to the manufacturer if physical delivery is not practicable.  Cal. Civ. Code § 1793.2(c).  It does not require the buyer to deliver the goods or send written notice within a reasonable time.  *Id.*

---

[6] Brown does not specify whether he is bringing his express and implied warranty claims under the California Commercial Code or the Song-Beverly Act, presumably because Plaintiffs attempted to bring both under Georgia law. There are instances of federal courts applying the California Commercial Code rather than the Song-Beverly Act in cases where a consumer expressly invokes the Commercial Code. *See, e.g., Clemens v. DiamlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). Because Brown does not specify a Code section under which he brings his claims, his claims fall within Song-Beverly's coverage, and Song-Beverly was enacted to provide consumers with greater protection and remedies than the Commercial Code, the Court will analyze Brown's claims under the Song-Beverly Act.

Brown alleges that he contacted Electrolux about the mold and mildew problems, albeit three years after he first noticed them.  That notification satisfies Brown's duties under the Song-Beverly Act.  Even if the Uniform Commercial Code did apply to Brown's claim, "[t]imely notice of breach is not required where the [consumer] buyers did not purchase the product from the manufacturer directly."  *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *4 n.3 (N.D. Cal. June 5, 2009).  The Court therefore **DENIES** Electrolux's Motion to Dismiss with respect to Brown's breach of express warranty claim.

### C.   Count III: Breach of the Implied Warranty of Merchantability

Electrolux moves to dismiss each Plaintiff's claim for breach of the implied warranty of merchantability.  First, Electrolux argues that none of the Plaintiffs alleged that their machines were unmerchantable at the time of sale.  Second, Electrolux argues that Boyd, Pack, Terrill, and Brown's claims fail because they have not alleged proper notice and an opportunity to cure.  Third, Electrolux argues that Terrill, Brown, and Boyd's claims fail because they have not alleged privity with Electrolux

Electrolux first argues that Plaintiffs have not alleged that their washing machines were unmerchantable.  Electrolux

characterizes Plaintiffs' allegations as mere maintenance issues. Plaintiffs, however, allege that their machines caused their laundry to smell like mold and mildew.  A washing machine that makes laundry smell like mold and mildew has not performed its essential function of washing clothes, even if the machine is mechanically sound.  The evidence may eventually vindicate Electrolux's failure-to-maintain theory.  However, at the motion to dismiss stage, the Court must accept Plaintiffs' factual allegations as true.

Electrolux next argues that Boyd, Terrill, and Vogler fail to allege that their machines were unmerchantable at the time of sale because they used their machines for over a year without experiencing mold and mildew problems.  Plaintiffs, however, allege that their machines were "not of merchantable quality at the time that they were distributed into the stream of commerce by Defendant."  (Dkt. No. 66 ¶ 60.)  Plaintiffs allege that the bellows and inner wash basket suffer from design defects.  If the design of the bellows or inner wash basket really is defective, that defect would have to exist at the time the machines were sold to Plaintiffs, even though the defects did not manifest immediately at the time of sale.[7]  Electrolux's first argument is therefore meritless.

---

[7] The cases Electrolux cites in footnote eight of its Reply Brief are irrelevant.  All of those cases concern defects that *never* manifested.  The named Plaintiffs, by contrast, allege latent defects that *did* manifest.

AO 72A
(Rev. 8/82)

Second, Electrolux argues that Terrill, Brown, Boyd, and Pack's claims fail because they have not alleged reasonable notice and an opportunity to cure.  Plaintiffs and Electrolux rely on the notice arguments they made in connection with Plaintiffs' express warranty claims.

California law does not require a retail purchaser to provide notice and an opportunity to cure before bringing an implied warranty of merchantability claim. *See Mexia*, 95 Cal. Rptr. 3d at 292-293.  Thus, Brown's claim does not fail for lack of timely notice.  Pack's claim does fail, however, because she did not provide notice to the retail seller, and her notice (via this lawsuit) to Electrolux was untimely.  *See Seaside Resorts Inc.*, 416 S.E.2d at 663; *Hitachi*, 621 S.E.2d at 169.  The Court therefore **GRANTS** Electrolux's Motion with respect to Pack's breach of implied warranty claim.

Electrolux's notice argument fails with respect to Boyd's claim because Electrolux has not shown that it was prejudiced by Boyd's delayed notification.[8]  Under Georgia law, a retail purchaser's breach of implied warranty claim may only be dismissed for failure to provide timely notice if the defendant shows that it was prejudiced by the delay.  *See Wal-Mart Stores, Inc. v. Wheeler*, 586 S.E.2d 83, 86-87 (Ga. Ct. App. 2003).

---

[8] It is unlikely that a defendant could ever show prejudice at the motion to dismiss stage.

Because service of a complaint satisfies the notice requirement if no prejudice to the defendant results, *see Hudson*, 403 S.E.2d at 854, Electrolux must show that it was prejudiced by Boyd's failure to give pre-suit notice. Because it has not done so, the Court may not dismiss Boyd's implied warranty claim for failure to give pre-suit notice.

Electrolux argues that Terrill's six-month delay between discovering the defect and reporting it to Electrolux is unreasonable as a matter of law. Under Wisconsin law, whether notice is reasonable and timely is typically a context-specific inquiry. *See Paulson v. Olson Implement Co., Inc.*, 319 N.W.2d 855, 862 (Wis. 1982) (holding that a two-month delay was not unreasonable because "the purpose of the notice provision, enabling the seller to cure the defect, [had] been effected."). *Paulson* held that notice is required to allow the seller to cure the defect, to minimize the plaintiff's loss, and to minimize the seller's potential liability and loss. *Id.*

The Court cannot say, at this stage of the litigation, that Terrill's six-month delay in notifying Electrolux of his claim is unreasonable as a matter of law. Terrill alleges that he discovered the mold and mildew problems in mid-2006 and reported them to Electrolux six months later. Terrill did not file suit until March 5, 2008. Electrolux thus had over a year to negotiate a pre-suit settlement or repair the alleged defect.

Additionally, Terrill's failure to provide quicker notice did not increase Electrolux's actual or potential liability to him. Accordingly, the Court will not dismiss Terrill's implied warranty claim for failure to provide notice.

Electrolux next argues that Boyd, Terrill, and Brown's implied warranty claims fail because they do not allege privity with Electrolux.  Georgia law governs Boyd's claim, Wisconsin law governs Terrill's, and California law governs Brown's.

Georgia law generally requires direct privity between the seller and buyer of goods for the implied warranty of merchantability to apply.  *See Keaton v. A.B.C. Drug Co.*, 467 S.E.2d 558, 560-61 (Ga. 1996).  Plaintiffs, however, cite two Georgia Court of Appeals cases that hold privity exists between a buyer and manufacturer if the manufacturer extends an express warranty to the buyer.  *See Chrysler Corp. v. Wilson Plumbing Co., Inc.*, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974) ("While ordinarily . . . there is no implied warranty existing between a manufacturer and an ultimate consumer, this is due to the fact that no privity of contract exists between the two. . . . However, where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists."); *Jones v. Cranman's Sporting Goods*, 237 S.E.2d 402,

406 (Ga. Ct. App. 1977) ("The weapon here was 'fully guaranteed' by the distributor to the ultimate consumer. As such it became part of the bargain of sale and thus privity existed."). Electrolux responds by citing Northern District of Georgia cases that held an express warranty is not sufficient to establish privity between the manufacturer and retail purchaser. *See Whitehead v. John Bleakley RV Ctr., Inc.*, No. 1:09-CV-468-TWT, 2010 WL 925091, at *7 (N.D. Ga. Mar. 8, 2010); *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005).

This Court must follow the opinions of the Georgia Court of Appeals in matters of Georgia law "unless there is 'persuasive data' that the Supreme Court of Georgia might render a decision contrary to [the Court of Appeals]." *Doyle v. Volkswagenwerk Aktiengelellschaft*, 81 F.3d 139, 143 (11th Cir. 1996) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S. Ct. 179 (1940)). The Court does not have such persuasive data. Aside from citing the Northern District cases, Electrolux has not explained why the Supreme Court of Georgia would not follow *Chrysler Corp* and *Jones*.

Additionally, the Georgia Court of Appeals recently stated that "when a buyer purchases a product from a retailer, *and* there is no privity of contract between the manufacturer and the buyer, no implied warranty runs from the manufacturer to the

purchaser." *McQueen v. Minolta Bus. Solutions, Inc.*, 620 S.E.2d 391, 393 (Ga. Ct. App. 2005) (emphasis added). If a manufacturer is never liable to a retail purchaser for breach of the implied warranty of merchantability, the phrase "and there is no privity of contract between the manufacturer and the buyer" would be superfluous. Significantly, the *McQueen* court supported this proposition of law with a citation to *Chrysler Corp*, thus indicating continued approval of *Chrysler Corp*'s holding. *See id.* The Court therefore holds that, under Georgia law, a manufacturer who extends an express warranty to a retail buyer is in privity of contract with the buyer.[9] Electrolux's Motion is therefore **DENIED** with respect to Boyd's breach of the implied warranty of merchantability claim.

Electrolux also argues that Terrill's implied warranty claim fails because he has not alleged privity with Electrolux. Under Wisconsin law, "[p]rivity is a requirement for a cause of action based on implied warranty." *Northridge Co. v. W.R. Grace & Co.*, 471 N.W.2d 179, 187 n.15 (Wis. 1991). Plaintiffs cite *Paulson* for the proposition that privity exists where a manufacturer makes express representations. *Paulson*, however, involved an express warranty created by the manufacturer's representations to the purchaser, not an implied warranty of merchantability. *See* 319 N.W.2d at 858-59. The *Paulson* court

_____

[9] The manufacturer in *McQueen* offered an express warranty to the retail buyer, but the retail buyer failed to "activate" it. *McQueen*, 620 S.E.2d at 393.

AO 72A
(Rev. 8/82)

held that the manufacturer's representations to the buyer
created a unilateral contract between the purchaser and
manufacturer, separate and distinct from the sales contract.
See id. at 859.  That holding is too far removed from the
implied warranty context for the Court to conclude that
Wisconsin recognizes an express warranty or manufacturer-
representation exception to the privity requirement.

The Western District of Wisconsin, which has greater
familiarity with Wisconsin law than this Court, held that the
privity requirement was not met in a case where the manufacturer
issued an express warranty.  See Ball v. Sony Elecs., Inc., No.
05-C-307-S, 2005 WL 2406145, at *1, *4 (W.D. Wis. 2005).  This
Court will follow Ball and hold that Terrill has not alleged
privity with Electrolux.  The Court therefore **GRANTS**
Electrolux's Motion to Dismiss with respect to Terrill's breach
of the implied warranty of merchantability claim.

Federal district courts in California are split over
whether vertical privity is required for an implied warranty
claim governed by the Song-Beverly Act.  See In re NVIDIA GPU
Litig., No. C 08-04312 JW, 2009 WL 4020104, at *4 & n.7 (N.D.
Cal. Nov. 19, 2009) (discussing the split among district courts
in California).  The Court agrees with the NVIDIA court that
"[t]he plain language of the Song-Beverly Act does not require

vertical contractual privity between a manufacturer and a

consumer." *Id.* at *4.  The Act states:

> Unless disclaimed in the manner prescribed
> by this chapter, every sale of consumer
> goods that are sold at retail in this state
> shall be accompanied by the manufacturer's
> and the retail seller's implied warranty
> that the goods are merchantable.  The retail
> seller shall have a right of indemnity
> against the manufacturer in the amount of
> liability under this section.

Cal. Civ. Code § 1792.  The Act thus contemplates an implied

warranty of merchantability flowing from the manufacturer and

retailer.  The Court therefore holds that vertical privity is

not required, and **DENIES** Electrolux's Motion to Dismiss with

respect to Brown's implied warranty of merchantability claim.

### D.  Count V: Magnuson-Moss Warranty Act Claims

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*,

provides a vehicle for consumers to sue a warrantor for

violations of a written or implied warranty.  *See Schimmer v.*

*Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004).  While the

Act proscribes minimum federal requirements for "full"

warranties, *see* 15 U.S.C. § 2304(e), it generally "calls for the

application of state written and implied warranty law, not the

creation of additional federal law." *Monticello*, 369 F. Supp.

2d at 1356.  Plaintiffs have not alleged or argued that

Electrolux's warranty fails to satisfy a minimum federal

standard.  Plaintiffs' Magnuson-Moss claims thus turn on whether

their alleged violations of state warranty law survive Electrolux's Motion to Dismiss.[10]

Terrill and Pack's express and implied warranty claims both fail. Accordingly, the Court **GRANTS** Electrolux's Motion to Dismiss with respect to their Magnuson-Moss claims. Vogler and Boyd's express warranty claims fail, but their implied warranty claims survive. Brown's express and implied warranty claims survive Electrolux's Motion. The Court therefore **DENIES** Electrolux's Motion to Dismiss with respect to Brown, Vogler, and Boyd's Magnuson-Moss claims.

The Parties dispute whether revocation is an available remedy under Magnuson-Moss. The Court does not have sufficient facts or briefing before it to resolve the issue at this stage. Therefore, the Court will not decide, at this stage, if revocation is an available remedy.

---

[10] Plaintiffs point out that one court has held that "notice prior to the commencement of a class action under [the Act] is not required" unless the written warranty explicitly requires notice. *See Mendelson v. Gen. Motors Corp.*, 432 N.Y.S.2d 132, 136 (N.Y. Sup. Ct. 1980). To the extent *Mendelson* adopts a general class-action exception to state notice requirements, this Court declines to follow it. Plaintiffs have not argued that the state-specific notice requirements are superseded by Magnuson-Moss's minimum requirements, and the Court will not excuse any of the named-Plaintiffs' failure to comply with their home state's notice requirements. Plaintiffs also point out that "several courts have held that the opportunity to cure requirement may be met under [Magnuson-Moss] where the manufacturer knew of the defects at the time of sale." (Dkt. No. 88, 28.) Electrolux, however, challenges the named-Plaintiffs' failure to comply with state-law notice and opportunity to cure requirements, not Magnuson-Moss's notice and opportunity to cure requirements. (*See* Dkt. No. 82, 26) ("Thus, to the extent that the plaintiffs' claims fail for lack of proper notice or privity under the applicable state law, they also fail under [Magnuson-Moss].") Whether Plaintiffs complied with the Magnuson-Moss notice and opportunity to cure requirements is not currently at issue. Thus, none of the exceptions to those requirements are relevant to the notice issues at hand.

AO 72A
(Rev. 8/82)

### E.   Count IV: Unjust Enrichment

Because unjust enrichment is a common-law claim, Georgia choice-of-law rules require application of Georgia law to each Plaintiff's unjust enrichment claim.  *See Frank Briscoe Co.*, 713 F.2d at 1503.  "[U]njust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." *Wachovia Ins. Servs., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga. Ct. App. 2009).  "Unjust enrichment applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit . . . which the benefitted party equitably ought to return or compensate for."  *Tuvim v. United Jewish Cmtys., Inc.*, 680 S.E.2d 827, 829-30 (Ga. 2009) (internal quotation marks omitted).

Electrolux first argues that Plaintiffs have not conferred a direct benefit on Electrolux.  Electrolux has not cited a Georgia authority restricting unjust enrichment claims to direct benefits, and the Court has not found any through its own research.  Additionally, each Plaintiff's purchase of an Electrolux product confers a marginal benefit on Electrolux – both in the economic and colloquial sense of the term.  That benefit may be small, but it is a benefit nonetheless.  The Court therefore declines to dismiss Plaintiffs' unjust enrichment claim on that basis.

AO 72A
(Rev. 8/82)

Electrolux next argues that Terrill, Vogler, Boyd, and Pack cannot rely on unjust enrichment because they also allege contract-based warranty claims.  This argument has merit. Plaintiffs are correct that Federal Rule of Civil Procedure 8 allows pleading of alternative and inconsistent claims. Plaintiffs admit that they cannot recover under their warranty and unjust enrichment claims, but argue that they are entitled to proceed under both theories until trial or judgment.

A plaintiff may plead inconsistent remedies, even if the plaintiff may not recover both.  But "[w]hile a party may plead equitable claims in the alternative, the party may only do so if one or more of the parties contests the existence of an express contract governing the subject matter of the dispute." *Goldstein v. The Home Depot, U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009).  Electrolux concedes that the warranties are valid and govern Plaintiffs' defect claims.[11]

If Plaintiffs are unable to recover on their warranty claims, it will be because they are not entitled to recover under the written contracts, or because Plaintiffs did not satisfy their duties under state warranty law.  Plaintiffs will not lose their warranty claims because the warranties are not valid or do not exist as a matter of fact.  Plaintiffs concede

---

[11] Electrolux's representations in its Motion to Dismiss prohibit it from challenging the validity or existence of the warranties.  (*See* Dkt. No. 90, 20-22.)

that they cannot use an unjust enrichment claim to expand the terms of their warranties.  (*See* Dkt. No. 88, 35-36 n.6.) However, that would be the result if Plaintiffs' express warranty claims fail but they are allowed to recover under an unjust enrichment theory.  And to the extent Plaintiffs rely on allegations of fraudulent or deceptive conduct, such allegations are properly brought under tort and consumer protection claims, not an unjust enrichment/quasi-contract claim.  The Court therefore **GRANTS** Electrolux's Motion to Dismiss with respect to Terrill, Vogler, Boyd, and Pack's unjust enrichment claims, but **DENIES** it with respect to Brown's claim.[12]

### F.   Count One: Georgia Uniform Deceptive Trade Practices Act

The Georgia Uniform Deceptive Trade Practices Act provides that "a person likely to be damaged by a deceptive trade practice of another may be granted" injunctive relief.  O.C.G.A. § 10-1-373(a).  Deceptive trade practices include representing "that goods or services have . . . characteristics, ingredients, uses, [or] benefits . . . that they do not have," and representing "that goods or services are of a particular standard, quality, or grade . . . if they are of another." O.C.G.A. § 10-1-372(a)(5), (a)(7).  "[T]he sole remedy available under the [Act] is injunctive relief."  *Moore-Davis Motors, Inc.*

---

[12] Electrolux has not moved to dismiss Brown's claim on this basis.

*v. Joyner*, 556 S.E.2d 137, 140 (Ga. Ct. App. 2001). An injunction is only available to remedy future wrongs '"and does not afford a remedy for what is past."' *Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002) (quoting *Hunter v. George*, 458 S.E.2d 830, 832 (Ga. 1995)).

Electrolux raises three arguments in support of its Motion to Dismiss: (1) Plaintiffs have not alleged an affirmative misstatement, other than mere "puffery"; (2) Plaintiffs have not alleged reliance; and (3) Plaintiffs are not likely to be harmed absent injunctive relief. Electrolux's third argument is correct. Plaintiffs' Georgia deceptive trade practices claim is based entirely on past wrongs. Plaintiffs allege that Electrolux misrepresented the quality and abilities of Frigidaire front-load washing machines, that Plaintiffs relied on these misrepresentations when they purchased their machines, and that they suffered damages as a result. Plaintiffs do not allege that they will be damaged in the future absent an injunction targeted at Electrolux's advertising campaigns, much less allege *how* they will be damaged. The Court therefore **GRANTS** Electrolux's Motion to Dismiss with respect Plaintiffs' Georgia Deceptive Trade Practices Act claim.

### G.    Count VI: California's Unfair Competition Law

Brown brings a claim under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*, on behalf of

himself and a proposed California subclass.  The UCL's focus

and purpose is to "protect the general public against

unscrupulous business practices."  *In re Tobacco II Cases*, 207

P.3d 20, 30 (Cal. 2009).  It does so by prohibiting three

distinct forms of unfair competition: "practices which are

unlawful, unfair, or fraudulent."  *Id.* at 29.  Brown alleges

that Electrolux engaged in all three forms of unfair

competition.  Electrolux argues that Brown's allegations do not

state a viable claim under any of the three.

### 1.  Unlawful Business Practices

A business practice is unlawful under the UCL if it

violates a predicate law.  *See Dougherty v. Am. Honda Motor Co.,*

*Inc.*, 51 Cal. Rptr. 3d 118, 128 (Cal. Ct. App. 2006).

Electrolux argues that Brown cannot satisfy the unlawful prong

because the statutory claims he alleges fail as a matter of law.

The Court, however, denied Electrolux's Motion with respect to

Brown's claims, including his Magnuson-Moss claim.  However,

Brown does not rely on the statutory violations he alleges in

the First Amended Complaint.  Rather, he argues that he has

alleged a violation of section 17500 of the California Business

& Professional Code, California's False Advertising Act.  (*See*

Dkt. No. 88, 36-37.)  Electrolux responds that Brown never

mentions the False Advertising Act in the First Amended

Complaint.  Electrolux is correct. Brown does allege that

36

Electrolux produced false and misleading advertisements, but he does not allege – or even mention – a violation of section 17500.  Thus, Brown's UCL claim cannot go forward under the unlawful prong.

### 2.    Unfair Business Practices

The UCL does not define "unfair," and California appellate courts have not applied a consistent definition.  *See Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 694-96 (Cal. Ct. App. 2010).  Electrolux cites cases that limit unfairness to allegations "tethered to specific constitutional, statutory, or regulatory provisions."  (Dkt. No. 82, 33) (citing *Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389, 394-95 (Cal. Ct. App. 2002); *Van Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007)); *see also Durell*, 108 Cal. Rptr. 3d at 696.  These cases base their holdings on *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 973 P.2d 527, 543 (Cal. 1999), a UCL unfairness case brought by a corporate competitor, not a consumer.  *See Durell*, 108 Cal. Rptr. 3d at 695-96.  The *Cal-Tech* court, however, limited its decision to UCL suits brought by competitors, and numerous California courts limit its holding to that context. *See id.*  Courts that do not apply *Cal-Tech* to consumer suits consider a business practice unfair if a '"consumer injury is substantial, is not outweighed by any countervailing benefit to

consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."' *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-cv-00288 JF, 2009 WL 3320486, at *7 (N.D. Cal. Oct. 13, 2009) (quoting *Daugherty*, 51 Cal. Rptr. 3d at 129); see also *In re NVIDIA GPU Litig.*, 2009 WL 4020104, at *11.  Plaintiffs rely on that formulation, which many California courts describe as a cost-benefit approach.

Neither approach has a textual basis, and the latter approach is more consistent with the UCL's purpose of protecting consumers. The Court does not have to decide which approach is correct, because Brown's allegations satisfy both.[13]  Brown alleges that he "relied upon the material false and/or misleading information provided by Defendant with respect to the value, quality, and standard of the Washing Machines."  (Dkt. No. 66 ¶ 82.)  Providing false or misleading advertisements violates the legislative policy set forth in section 17500, described above.[14]  Brown's claims are therefore tethered to a specific legislative policy.  Brown also alleges that Electrolux's conduct fails the cost-benefit test other courts apply:  "The utility of Defendant's marketing and sale of the

---

[13] Electrolux does not argue that the advertisements at issue are puffery in the UCL section of its Brief.

[14] The unfairness prong merely requires an allegation to be tethered to a legislative policy; it does not require an actual statutory violation, like the unlawful prong.  Brown may thus proceed under the unfairness prong without amending the First Amended Complaint to allege a violation of section 17500, even though he may not do so under the unlawful prong.

AO 72A
(Rev. 8/82)

Washing Machines to the public is significantly outweighed by
the gravity of the harm they impose on Plaintiff Brown and the
California Sub-class."  (*Id.* ¶ 79.)

Electrolux also argues that Brown's unfairness claim fails
because "courts have repeatedly held that this 'unfairness'
prong of the UCL does not apply to claims – like those alleged
here – that arise from basic product marketing and subsequent
product malfunction after the expiration of the express
warranty."  (Dkt. No. 90, 17) (citing *Tietsworth*, 2009 WL
3320486, at *7; *Daugherty*, 51 Cal. Rptr. 3d at 129-30).  Brown,
however, alleges that his washing machine malfunctioned within
two to three months after he purchased it – well within
Electrolux's one-year warranty.  (Dkt. No. 66 ¶ 14.)  *Tietsworth*
and *Daugherty* are therefore irrelevant, and Brown's UCL claim
may proceed under the unfairness prong.

### 3.   Fraudulent Business Practice

Electrolux argues that Brown's fraudulent business practice
claim fails because he has not alleged a duty to disclose the
alleged defect to consumers, that he relied on the failure to
disclose to his detriment, or that he suffered an injury in
fact.  Electrolux's second and third arguments are easily
dismissed.  Brown clearly alleges that he would not have
purchased a Frigidaire front-load washing machine had he known
of the defective bellows (reliance), and that he lost money when

he purchased the allegedly defective machine (injury in fact).
Brown does allege that Electrolux offered to replace his
bellows, but that would mitigate Brown's damages, not eliminate
them.

The Ninth Circuit recently addressed the duty to disclose
issue.  It held that a manufacturer's failure to disclose a
defect is actionable under the UCL if the defect is "material in
the sense that it is likely to deceive a reasonable consumer."
*Clemens*, 534 F.3d at 1025.  The Ninth Circuit affirmed the
district court's grant of summary judgment on Clemens's UCL
fraud claim because he "produced no evidence to suggest that a
reasonable consumer would have expected or assumed any
particular . . . lifespan in excess of the warranty period."
*Id.* at 1026.

Unlike the product at issue in *Clemens*, Brown's washing
machine allegedly malfunctioned before the warranty expired.
Under the logic of *Clemens* and the California cases on which it
relies, it would not be unreasonable for Brown to expect his
washing machine to function properly for the duration of the
express warranty.  Moreover, the defect Brown alleges Electrolux
failed to disclose – that its washing machines have significant
mold and mildew issues – is material.  A consumer who knows of
the alleged mold and mildew issues is less likely to purchase an

AO 72A
(Rev. 8/82)

Electrolux product than one who does not.  Brown may therefore proceed under the fraudulent prong as well.

Brown's claims under the unfairness and fraud prongs of the UCL survive Electrolux's Motion to Dismiss.  Accordingly, Electrolux's Motion to Dismiss is **DENIED** with respect to Brown's UCL claim.

### H.    Count VII: **Texas Deceptive Trade Practices-Consumer Protection Act**

Vogler brings an action under the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.46, on behalf of himself and a Texas subclass.  Section 17.46(b) sets forth a non-exhaustive list of twenty-seven examples of "false, misleading, or deceptive acts or practices." Vogler relies on subsections (b)(5), (b)(7), and (b)(24). Subsections (b)(5) and (b)(7) require affirmative misrepresentations.  Subsection (b)(24) punishes failure to disclose information if the decision not to disclose "was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

Electrolux argues that Vogler's claim must be dismissed because he has not alleged an affirmative misrepresentation – only non-actionable puffery – and has not alleged reliance. Electrolux's first argument fails because section 17.46(b)(24)

specifically makes failure to disclose actionable.  Vogler
alleges that Electrolux "omitted and concealed material facts
from Plaintiff Vogler and the Texas Sub-Class."  (Dkt. No. 66 ¶
88(a).)  Vogler also alleges reliance:   "Had Defendant
disclosed all material information regarding the Washing
Machines to Plaintiff Vogler and the Texas Sub-class, they would
not have purchased the Washing Machines."  (*Id.* ¶ 91.)  The
Court therefore **DENIES** Electrolux's Motion to Dismiss with
respect to Vogler's Texas Deceptive Trade Practices-Consumer
Protection Act claim.

Electrolux argues that if the Court does not dismiss
Vogler's claim, the Court must abate the claim because Vogler
failed to give the pre-suit notice required by section 17.505.
The Court agrees.  Section 17.505(a) requires that written
notice be given sixty days before filing suit.  The notice must
advise Electrolux "in reasonable detail of [Vogler's] specific
complaint and the amount of economic damages, damages for mental
anguish, and expenses . . . ."  Tex. Bus. & Com. Code Ann. §
17.505(a).  Vogler does not allege that he provided *written*
notice.  Even if he did, notifying Electrolux that he
experienced mold and mildew problems and requesting a new
bellows does not satisfy the detailed notice requirements of
section 17.505.  The Court therefore orders Vogler's Deceptive
Trade Practices claim abated for sixty days after Vogler serves

AO 72A
(Rev. 8/82)

written notice on Electrolux.  Vogler must provide notice within twenty days of the date this Order issues, and notify the Court when he does so.  If Vogler fails to provide timely notice, the Court will dismiss his claim.

## I.    Count VIII: Wisconsin Deceptive Trade Practices Act

Terrill brings a claim under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18, on behalf of himself and a Wisconsin subclass.  Unlike the Texas Deceptive Trade Practices Act, the Wisconsin Act requires an affirmative misrepresentation.  *See Tietsworth v. Harley-Davidson*, 677 N.W.2d 233, 245 (Wis. 2004).  Additionally, commercial puffery is not an actionable statement of fact.  *Id.* at 245-46. Electrolux argues that the misrepresentations on which Terrill bases his claim are mere puffery.

In response to Electrolux's argument, Terrill points to Paragraphs 93, 95, 96, 97, and 98 of the First Amended Complaint.  Paragraphs 95, 96, 97, and 98 are nothing more than conclusory allegations, which do not satisfy Federal Rule of Civil Procedure 8, let alone the heightened-pleading requirement of Rule 9(b).  Paragraph 93 incorporates all prior allegations. Plaintiffs identify two statements contained on Electrolux's website in Paragraph 30:

> **You've Never Done Laundry Like This**
> Whatever your décor, space requirements or
> family size, Frigidaire® washers and dryers

> fit your home and your lifestyle.  From our
> traditional top load washers and gas or
> electric dryers to the stylishly efficient
> front load laundry to the space saving
> laundry center, you can count on Frigidaire
> for innovation, performance and style.
>
> . . .
>
> **Your laundry never looked so good**
> Frigidaire® is the largest manufacturer of
> front load laundry in the world.  So you
> expect contemporary styling that's
> beautifully designed to fit your lifestyle.
>
> You trust that the iCare Intelligent Fabric
> Care System™ gently washes and completely
> dries to keep your clothes looking their
> best.  With no agitator, you count on tumble
> action to wash gently and rinse so
> completely that your clothes feel fresher
> and last longer.

Electrolux argues that these statements are puffery.  The
Court agrees.  Puffery is an '"exaggeration[] reasonably to be
expected of a seller as to the degree of quality of his product,
the truth or falsity of which cannot be precisely determined."'
*Tietsworth*, 677 N.W.2d at 245 (quoting *State v. American TV*, 430
N.W.2d 709, 712 (Wis. 1988)).  The statement that most closely
resembles an assertion of fact is "your clothes feel fresher and
last longer."  Whether something is fresher or last longer when
washed in a Frigidaire machine can only be tested against a
benchmark, such as a competitor's machine.  The statement,
however, does not identify a benchmark against which the machine
can be compared.  Without an identified benchmark, the statement

AO 72A
(Rev. 8/82)

is incapable of being rejected.  Thus, it is puffery.  The Court therefore **GRANTS** Electrolux's Motion to Dismiss with respect to Terrill's Wisconsin Deceptive Trade Practices Act claim.

## III. Motion to Dismiss Conclusion

Electrolux's Motion to Dismiss (Dkt. No. 79) is **GRANTED** with respect to all of Terrill and Pack's claims; Vogler's express warranty and unjust enrichment claims; and Boyd's express warranty, unjust enrichment, and Georgia Uniform Deceptive Trade Practices Act claims.  All of these claims are dismissed without prejudice.  Electrolux's Motion is **DENIED** with respect to all of Brown's claims; Vogler's implied warranty, Maguson-Moss, and Texas Deceptive Trade Practices-Consumer Protection Act claims; and Boyd's implied warranty and Magnuson-Moss claims.   Vogler's Texas Deceptive Trade Practices-Consumer Protection Act claim is **ABATED** for sixty days following Brown's service of notice on Electrolux, which must occur within twenty (20) days of the date this Order issues.

## IV.  Motion to Partially Strike Class Allegations & Motion for Class Certification

After Electrolux filed its Motion to Dismiss, Electrolux filed a Motion to Partially Strike Class Allegations (Dkt. No. 87), and Plaintiffs filed a Motion for Class Certification (Dkt.

AO 72A
(Rev. 8/82)

No. 97).  Plaintiffs seek two alternative forms of class certifications.  In the event Georgia law applies to all Plaintiffs' and class members' claims regardless of their residence, Plaintiffs seek to certify a nationwide class composed of "[a]ll persons and entities in the United states who purchased, other than for resale, any of the Washing Machines during the previous four (4) years."  (Dkt. No. 66 ¶ 19.)  In the event Georgia law does not apply to the claims of all class members, Plaintiffs seek to certify California, Georgia, South Carolina, Texas, and Wisconsin subclasses.  (*Id.* ¶ 20.)

The proposed class definition for the subclasses are limited to persons and entities in the specified state, but are otherwise identical to the proposed nationwide class.  (*Id.*)  In their Reply Brief, Plaintiffs limited their proposed nationwide class, and state subclasses, to purchasers of machines equipped with the convoluted bellows.  The new proposed class includes "[a]ll persons and entities in the United States who purchased, other than for resale, during the previous four (4) years any of the Washing Machines that were equipped with a convoluted bellow."  (Dkt. No. 112, 15-16.)

Georgia law does not apply to the claims of all class members regardless of residence.  The Court therefore **GRANTS** Electrolux's Motion to Partially Strike with respect to Plaintiffs' proposed nationwide class, and **DENIES** Plaintiffs'

46

Motion for Class Certification with respect to the proposed nationwide class.[15]  Additionally, the Court has dismissed all of Terrill and Pack's claims.  The Court therefore **DENIES** Plaintiffs' Motion for Class Certification with respect to the Wisconsin and South Carolina subclasses.  The remaining proposed subclasses are Texas, Georgia, and California.

The Court may not certify a class unless the named plaintiffs have standing and every putative class meets all four Federal Rule of Civil Procedure 23(a) prerequisites.  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).  The Rule 23(a) prerequisites are numerosity, commonality, typicality, and adequacy of representation.  *Id.*  Plaintiffs have the burden of establishing all four prerequisites.  *See id.* at 1267.

Plaintiffs fail to satisfy the numerosity requirement.  Even though Electrolux does not challenge numerosity, the Court may not certify a class without determining that each prerequisite is satisfied.  *See, e.g., In re Terazosin Hydrochloride*, 220 F.R.D. 672, 684-85 (S.D. Fla. 2004).  Electrolux estimates that it sold approximately 585,000 machines that included convoluted bellows during the proposed-class period.  Plaintiffs, however, have not provided any evidence –

---

[15] Electrolux's Motion to partially Strike Class Allegations is **DENIED** in all other respects.  The Court will determine whether to certify Plaintiffs proposed subclasses in the context of Plaintiffs' Motion to Certify Class.

or even allegations – as to the number of machines sold in Texas, Georgia, or California.  One may logically infer that numerosity is satisfied when a plaintiff seeks to certify subclasses for the two largest states in the country consisting of purchasers of a consumer durable with sales exceeding 500,000, but drawing such an inference without any supporting evidence is an abuse of discretion:

> Yes, T-Mobile is a large company, with many retail outlets, and, as such, it might be tempting to assume that the number of sales associates the company employed in Florida [the fourth most populous state] during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1). However, a plaintiff still bears the burden of establishing every element of Rule 23, and a district court's factual findings must find support in the evidence before it.  In this case, the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation. Accordingly, the district court abused its discretion . . . .

*Vega,* 564 F.3d at 1267-68 (internal citations omitted).  Because Plaintiffs have not presented any state-specific evidence regarding the number of purchasers, the numerosity requirement is not satisfied, and the Court may not certify any of Plaintiffs' proposed subclasses.  Plaintiffs' Motion for Class Certification is therefore **DENIED.**

48

AO 72A
(Rev. 8/82)

## V.   Conclusion

Electrolux's Motion to Dismiss (Dkt. No. 79) is **GRANTED IN PART** and **DENIED IN PART**.  Electrolux's Motion to Dismiss (Dkt. No. 79) is **GRANTED** with respect to all of Terrill and Pack's claims; Vogler's express warranty and unjust enrichment claims; and Boyd's express warranty, unjust enrichment, and Georgia Uniform Deceptive Trade Practices Act claims.  All of these claims are dismissed without prejudice.  Electrolux's Motion is **DENIED** with respect to all of Brown's claims; Vogler's implied warranty, Maguson-Moss, and Texas Deceptive Trade Practices-Consumer Protection Act claims; and Boyd's implied warranty and Magnuson-Moss claims.  Vogler's Texas Deceptive Trade Practices-Consumer Protection Act claim is **ABATED** for sixty days following Vogler's service of notice on Electrolux, which must occur within twenty (20) days of the date this Order issues. Electrolux's Motion to Partially Strike Class Allegations (Dkt. No. 87) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' Motion for Class Certification (Dkt. No. 97.) is **DENIED**.

**SO ORDERED**, this 3rd day of September, 2010.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA