**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

MICHAEL TERRILL, ROBERT
BROWN, MICHAEL VOGLER, PALECIA
BOYD, and DENISE PACK, on behalf of
themselves and all others similarly situated,

           Plaintiffs,

    v.

ELECTROLUX HOME PRODUCTS, INC.,
d/b/a FRIGIDAIRE,

           Defendant.

Case No:  CV-108-030

**PLAINTIFFS' RENEWED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION**

Plaintiffs Robert Brown, Michael Vogler and Palecia Boyd ("Plaintiffs") respectfully move for an order certifying this case as a class action against Electrolux Home Products, Inc. d/b/a Frigidaire ("Frigidaire" or "Defendant"), and appointing Plaintiffs as class representatives.

## I. INTRODUCTION

This case is predicated on a common design defect, a known common solution and uniform warranty provisions that affect every member of the proposed Class. Plaintiffs and putative Class Members purchased front-loading washing machines manufactured by Frigidaire that share an identical design flaw in the form of a gasket that has convolutions in which water accumulates after running a wash cycle. Frigidaire itself has identified this design defect as a common problem and has even proposed a common solution – replacing the gasket with one that has no convolutions. This accumulation of water in the gasket causes mold and mildew to form inside the washing machines, resulting in damaged clothing and preventing consumers from using the washing machines for their ordinary purpose – cleaning clothes.

Based on these allegations, Plaintiffs asserted claims under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-371, *et seq.* (Count I), Breach of Express Warranty (Count II), Breach of the Implied Warranty of Merchantability (Count III), Unjust Enrichment (Count IV), and violations of the Magnusson-Moss Act, 15 U.S.C. § 2301, *et seq.* (Count V). In addition, in the event the Court determined that Georgia law did not apply to all of the claims in this action, Plaintiffs also asserted violations of the California Unfair Competition Law (Count VI), the Texas Deceptive Trade Practices-Consumer Protection Act (Count VII), and the Wisconsin Deceptive Trade Practices Act (Count VIII).

On September 3, 2010, this Court held that Georgia law did not apply to all of the above claims and dismissed the claims asserted by Plaintiffs Terrill and Pack. The remaining claims at issue in this Renewed Motion are: Plaintiff Brown's claims for breach of express and implied warranty, violation of the Magnusson-Moss Act and violation of the California Unfair Competition Law; Plaintiff Vogler's claim for breach of implied warranty, violation of the Magnusson-Moss Act and violation of the Texas Deceptive Trade Practices-Consumer

Protection Act; and Plaintiff Boyd's claim for breach of implied warranty and violation of the Magnusson-Moss Act. The Court held that California law applies to Plaintiff Brown's claims, that Texas law applies to Plaintiff Vogler's claims and that Georgia law applies to Plaintiff Boyd's claims. (September 3, 2010 Order at 8-9 [Dkt. No. 124].) Plaintiffs move to certify three state-based classes consisting of:

1) All persons and entities in the State of California who purchased, other than for re-sale, during the previous four (4) years any of the Washing Machines that were equipped with a convoluted bellow;

2) All persons and entities in the State of Texas who purchased, other than for re-sale, during the previous four (4) years any of the Washing Machines that were equipped with a convoluted bellow; and

3) All persons and entities in the State of Georgia who purchased, other than for re-sale, during the previous four (4) years any of the Washing Machines that were equipped with a convoluted bellow.[1]

As discussed below, the requirements under Federal Rule of Civil Procedure ("Rule") 23(a) and 23(b)(3) are readily satisfied. Frigidaire has admitted that joinder is impracticable and evidence of consumer complaints in Texas, Georgia and California demonstrates that state-based numerosity is satisfied. The common design defect, common problems caused by the design defect and the common solution to the defect evince numerous questions of law and fact that are common to the Plaintiffs and absent Class Members. In addition, typicality is satisfied in that the named Plaintiffs' claims arise from the same unlawful conduct that motivates absent Class Members' claims. Furthermore, the named Plaintiffs will be required to present substantially similar, if not identical, evidence as every other member of the proposed Class. Plaintiffs will also fairly and adequately represent the Class in that Plaintiffs' interests are not contrary or antagonistic to those of the putative Class and Plaintiffs and the Class are represented by qualified counsel that are highly experienced in consumer class action lawsuits.

---

[1] Plaintiffs refined their proposed class definition to include only those consumers with Washing Machines that were equipped with a convoluted bellow in Plaintiffs' Reply Memorandum in Support of Motion for Class Certification. (Pls.' Reply Mem. in Support of Mot. for Class Certification ("Reply") at 5-7 [Dkt. No. 112].)

Rule 23(b)(3)'s predominance and superiority requirements are also met because an examination of Plaintiffs' claims demonstrates that they are subject to generalized proof on a class-wide basis, and an analysis of the four superiority factors demonstrates that the class action mechanism is the superior method for fairly and efficiently adjudicating this action. For these reasons, Plaintiffs' renewed motion for class certification should be granted in its entirety.

## II.  STATEMENT OF FACTS

Plaintiffs allege that Frigidaire front-loading washing machines ("Washing Machines" or "Machines") are inherently defective in that they were designed with a gasket that collects water after each wash cycle. (First Amended Complaint ("FAC") ¶¶ 1, 37.) The standing water in the Washing Machines causes mold and mildew to develop in the Machines, which results in damaged clothing, foul odors and severe allergies. (*Id.* at ¶ 3.) Such mold and mildew problems force consumers to absorb costs related to the repair and cleaning of their Washing Machines and cause their Machines to substantially decrease in value. (*Id.* at ¶¶ 6-7, 40.)

The common design defect, related mold and mildew problems and solution to the design defect are captured in a single document – Service Flash LN073 ("Service Flash"). (*See* Declaration of Mark J. Tamblyn In Support of Plaintiffs' Motion for Class Certification ("Tamblyn Decl."), Ex. A.) This Service Flash was drafted and eventually issued by Frigidaire in April 2007 (Tamblyn Decl., Ex. B (Def.'s Answer to Pls.' Interrogs. No. 14).)[2] The Service Flash plainly describes the problems that Plaintiffs and all Class Members experience – "[w]hen the door is open at the end of the cycle, a small amount of water is noticed in the convolutions at the six o'clock position." (Ex. A.) The Service Flash indicates that the accumulation of water may cause mold or biofilm to form. (*Id.*) In addition, the Service Flash describes a common solution to the common problem – "[a] new boot style that does not have convolutions . . . ." (*Id.*)

---

[2] All exhibits attached to the Tamblyn Declaration – which is attached to the Renewed Motion as Exhibit A – will hereinafter be referred to only by the specific exhibit letter. Defendants' answers to Plaintiffs' First Set of Interrogatories are attached as individual exhibits and abbreviated as "Rog. Answer." Defendants' answers to Plaintiffs' First Set of Requests for Admissions are attached as individual exhibits and abbreviated as "Admission."

Although Frigidaire knew that its Washing Machines were defective, Frigidaire failed to inform customers of the defects, failed to issue its Service Flash to consumers or retailers and failed to recall its defective Machines. (FAC ¶¶ 4, 39.) Moreover, Frigidaire refuses to pay for the repair or replacement of defective Washing Machines under its manufacturer's warranty. All of the Washing Machines are covered by an identical warranty that requires Frigidaire to pay for "[l]abor and replacement parts which prove to be defective in materials and workmanship" within the first year after purchase. (Ex. C (Tumble Action Washer Warranty).)

Although it was aware of its Washing Machines' mold and mildew problems, Frigidaire sat silent and continued to market and sell its defective Washing Machines to unwitting consumers. (FAC ¶ 8.) Frigidaire represented that its Washing Machines make consumers' clothes "feel fresher and last longer." (*Id.* at ¶ 30.) Even more egregious, Frigidaire's policy is to direct consumers to leave the Washing Machine door ajar when not in use and to wipe down the inside of their Machines after each wash cycle to avoid mold and mildew problems. (*Id.* at ¶ 5.) In doing so, not only does Frigidaire hold consumers responsible for its Washing Machines' mold and mildew problems, it recommends a course of action that is extremely dangerous to children and that it describes as hazardous in its own instruction materials. (*Id.* at ¶ 44.)

## III.  ARGUMENT

### A. Standards For Class Certification

To maintain a class action, Plaintiffs must satisfy the four prerequisites under Rule 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy. *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 613-14 (1997). Plaintiffs must also satisfy one of the requirements under Rule 23(b). *See, e.g., Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). Under Rule 23(b)(3), the Court considers "(1) whether issues of law or fact common to members of the class predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 688 (N.D. Ga. 1999).

Rule 23 is to be given a "liberal rather than a restrictive interpretation," *see, e.g., Eisen v.*

*Carlisle & Jacquelin*, 417 U.S. 156, 168 (1974), and the "Court must accept as true all allegations in Plaintiffs' complaint." *In re BellSouth Corp. Secs. Litig.*, No. 1:02-cv-2142-WSD, 2006 U.S. Dist. LEXIS 15518, at *10 (N.D. Ga. Apr. 3, 2006) (citing *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 687, 694 (N.D. Ga. 2002) ("*Theragenics*")). Moreover, in analyzing the propriety of a class action, "'the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Eisen*, 417 U.S. at 178 (quotation omitted).

Furthermore, "any doubts [regarding the propriety of class certification] are to be resolved in favor of certification . . . ." *Mauldin v. Wal-Mart Stores, Inc.*, No. 1:01-CV-2755-JEC, 2002 U.S. Dist. LEXIS 21024, at *11 (N.D. Ga. Aug. 23, 2002). The Court has significant discretion to create subclasses, impose conditions, revise certification or decertify the class if it determines that certification was improperly granted or to prevent undue complication. *See, e.g., Mauldin*, 2002 U.S. Dist. LEXIS 21024, at *11 (indicating that class certification is conditional and that the court "may amend the certification order or decertify the class at any time prior to a final judgment on the merits.") (citing Rule 23(c)(1)).

## B. Plaintiffs Satisfy The Requirements Of Rule 23(a)

### 1. The Class Is So Numerous That Joinder Is Impracticable

Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members would be impracticable. It is not necessary for plaintiffs to demonstrate that they know the exact size of the class to satisfy numerosity under Rule 23(a)(1). *See, e.g., Evans v. U.S. Pipe & Foundry Company*, 696 F.2d 925, 930 (11th Cir. 1983). Furthermore, "impracticability" does not mean "impossibility;" Plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class." *See, e.g., Theragenics*, 205 F.R.D. at 694.

Frigidaire itself admits that "it would be impractical" to join all putative Class Members in this action and that "thousands of purchasers have purchased Electrolux brand front load washing machines between March 5, 2004 and the present." (Ex. D (Admission Nos. 1-2).) By Frigidaire's own estimation, it sold approximately 1,336,008 Washing Machines between March

2004 and March 2008. (Ex. E (Rog. Answer No. 1).) In addition, Frigidaire has indicated that approximately 585,000 Washing Machines included the convoluted boot at issue in this litigation. (Reply at 9-10.)

In addition, Plaintiffs have compiled email exchanges between Frigidaire and consumers that establish numerosity as to the proposed state-based classes. (Exs. F-H.) These emails describe mold and mildew problems with the Washing Machines at issue owned by consumers in Texas, Georgia and California. It is critical to understand that, for purposes of numerosity, the number of consumers who actually took the time to contact Frigidaire by email does not represent the totality of Washing Machine sales in Texas, Georgia and California. These communications represent only a *sample* of *emailed* inquiries, based on search criteria of Frigidaire's choosing. The sample does not capture customer complaints made through other media. It is also unknown what search criteria Frigidaire used to produce such emails. For example, Frigidaire may have conducted a search for emailed consumer complaints without including search terms such as "biofilm" – Frigidaire's own term for referencing mold and mildew formation in its Washing Machines' convoluted bellows, as indicated in its Service Flash.

The emails reveal at least thirty-six (36) consumers in Georgia with the Washing Machines at issue who emailed Electrolux about mold and mildew problems (Ex. F), twenty-five (25) such consumers in Texas (Ex. G) and twenty-eight (28) such consumers in California. (Ex. H.) The Eleventh Circuit has recognized that while the exact size of the putative class need not be specified, "generally less than twenty-one is inadequate, more than forty adequate; with numbers between varying according to other factors." *Cox v. Am. Cast Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B MOORE's FEDERAL PRACTICE § 23.05 (1978)); *see also Camafel Bldg. Inspections, Inc. v. BellSouth Adver. & Publ'g Corp.*, Case No. 1:06-CV-1501-JEC, 2008 U.S. Dist. LEXIS 18192, at *23 (N.D. Ga. Mar. 7, 2008). Other courts have also held that the numerosity requirement has been presumptively satisfied when the class comprises forty (40) or more members. *See, e.g., Consol. Rail. Corp. v. Town of Hyde Park,* 47 F.3d 473, 483

(2d Cir. 1995) (holding that 40 or more prospective class members raises a presumption of numerosity); *Davis v. Northside Realty Assocs., Inc.,* 95 F.R.D. 39, 43 (N.D. Ga. 1982) (noting that if a class has more than 40 people in it then numerosity is satisfied; less than 25 people in it, numerosity is lacking).

The above sampling of consumer inquiries is particularly significant in light of Frigidaire's prior representations in pleadings that *consumer complaints represent a small percentage of overall sales.* According to Frigidaire, "[o]nly a small percentage of putative class members ever complained to the Company . . . And those individuals who did experience problems with their washing machines took different approaches to reporting those problems to Electrolux . . . ." (Def.'s Opp. to Pltffs.' Mot. for Class Cert. ("Opposition") at 1.) Based on this evidence, the Court could reasonably determine that scores of consumers in these states who experienced such mold and mildew problems likely did not formally complain or take the time to contact a Frigidaire representative. Indeed, Frigidaire's position is that the mold and mildew problems experienced by consumers are due to consumers' failure to properly care for their washing machines. It follows that consumers who are blamed and held responsible for their washing machine's defects would be unlikely to contact Frigidaire to resolve their washing machine's mold and mildew problems.

The above evidence is also compelling for establishing state-based numerosity given that Frigidaire estimates that it sold over 1 million machines, including approximately 585,000 machines with the convoluted bellows, and that two of the proposed state-based classes – Texas and California – consist of the "two largest states in the country . . . ." (September 3, 2010 Order at 47-48.), and Georgia is not far behind. As a result, numerosity is met.

### 2. There Are Questions Of Law And Fact That Are Common To Each Member Of The Class

Rule 23(a)(2) requires that class members share common questions of law and fact. "The threshold of 'commonality' is not high . . . [T]he rule requires only that resolution of the common question affect all or a substantial number of the class members." *Jenkins v. Raymark*

*Ind.*, 782 F.2d 468, 472 (5th Cir. 1986). Indeed, commonality may be satisfied where there is a single common question of fact or law. *See, e.g.*, *Escolastico De Leon-Granados v. Eller & Sons Trees*, No. 1:05-cv-1473-CC, 2006 U.S. Dist. LEXIS 73781, at *16 (N.D. Ga. Sept. 28, 2006) (indicating that a single common question of fact or law is "sufficient" to satisfy Rule 23(a)(2)).

This case presents numerous questions of law and fact that are common to Plaintiffs and the proposed Class, such as:

- Whether the Washing Machines possess a common defect;

- Whether Frigidaire was aware that the Washing Machines were and are defective;

- Whether Frigidaire concealed the fact that the Washing Machines were and are defective;

- Whether Frigidaire concealed its Service Flash from the buying public;

- Whether Frigidaire was obligated to disclose that the Washing Machines suffer a common defect;

- Whether Frigidaire breached its express warranties;

- Whether Frigidaire breached its implied warranties;

- Whether Frigidaire violated the California's Unfair Competition Law;

- Whether Frigidaire violated the Texas Deceptive Trade Practices-Consumer Protection Act; and

- Whether Plaintiffs and members of the Class are entitled to recover damages, and, if so, the appropriate amount thereof.

The Washing Machines purchased by Plaintiffs and the Class share a common design defect – a gasket with convolutions that accumulates water at the end of the wash cycle. The standing water in the gasket causes mold and mildew to develop inside the Washing Machines.

Frigidaire acknowledged the design defect and mold and mildew problems as a common problem in its April 2007 Service Flash. The Service Flash applied to at least eight (8) different models of Washing Machines, all of which are included in Plaintiffs' proposed Class definition. Under the heading "PROBLEM," Frigidaire stated that "[w]hen the door is opened at the end of

the cycle, a small amount of water is noticed in the convolutions of the boot at the six o'clock position." (Ex. A.) Frigidaire also identifies the mold and mildew problems that are "caused" by the gasket design. Frigidaire explains that standing water in the convolutions of the gasket may explain customers' "perceived concern" about "biofilm formation." (*Id.*) Moreover, Frigidaire has prescribed a common fix to the common problem: "A new boot style that does not have convolutions is now available for such concerns." (*Id.*) In this document alone, Frigidaire itself describes common questions that are sufficient to satisfy Rule 23(a)(2).

Frigidaire also identifies this common problem in product training materials, its "Avoid Service Checklist" and a 2004 service bulletin. One Frigidaire training presentation describes "THE PROBLEM [as] [c]onsumer concern that front load door gaskets may develop mold and mildew." (Ex. I (Product Training Presentation).) Its Avoid Service Checklist identifies the problem of "[w]ater collect[ing] in folds of the bellows at the end of the cycle" as a "*common concern.*" (Ex. J (Avoid Service Checklist) (emphasis added).) In addition, as early as March 2004, Frigidaire stated that "new style bellows" was a "service solution" to problems related to "[w]ater left in the bellows (boot) after the cycle is done." (Ex. K (2004 Service Bulletin).)

Frigidaire's wide distribution of the Service Flash and the numerous consumer inquiries and complaints involving mold and mildew problems also points to the commonality of these issues. Frigidaire distributed its Service Flash to "all Authorized Service Persons in the United States." (Ex. L (Admission No. 19).) In addition, numerous consumers placed telephone calls to Frigidaire or Authorized Service Persons to complain about mold and mildew problems in their Washing Machines' tub and bellows. (Ex. M (Service Call Logs); *see also* Exs. F-H (consumer emails to Frigidaire)).

Furthermore, all of the Washing Machines at issue are subject to Frigidaire's Tumble Action Washer Warranty, including provisions that require Frigidaire to pay for the repair and replacement of Washing Machine components. (Ex. C.) Plaintiffs allege that Frigidaire breached its written warranty by consistently failing to pay to replace or repair the Washing Machines' defective gaskets. (FAC ¶ 52.) Rather than make such payments or repairs,

Frigidaire's policy was to recommend that consumers wipe down the inside of their Machines and leave the Washing Machine door open after each use. (*Id.* at ¶¶ 5, 43, 52; Ex. N (Letter to Consumer); Defendant's Memorandum of Law In Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Motion to Dismiss") at 13. [Dkt. No. 80]). However, Frigidaire warns against its own policy – its Owner's Guide instructs owners "***NOT* [to] leave the washer door open.** An open door could entice children to han[g] on the door or crawl inside the washer." (FAC ¶ 44.)

The uniform defect, proposed solution, form warranty and Frigidaire's policy of requiring consumers to address Washing Machine defects present numerous common questions of fact and law. As a result, commonality is readily satisfied under Rule 23(a)(2).

### 3. Plaintiffs' Claims Are Typical Of Those In The Class

Rule 23(a)(3) requires that the named Plaintiffs' claims are typical of the class as a whole. "'Typicality measures whether a sufficient nexus exists between the claims of the name representatives and those of the class at large.'" *Busby*, 513 F.3d at 1322-23 (quotation omitted).

Whereas commonality focuses on the characteristics of the class as a whole, "typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (citation omitted). However, as with commonality, typicality does not require the assertion of identical claims and defenses, *see, e.g., Del Rosario v. King & Prince Seafood Corp.*, No. CV 204-036, 2006 U.S. Dist. LEXIS 76777, at *39 (S.D. Ga. Mar. 7, 2006) (citation omitted), nor that the same facts underlie the claims of the named plaintiffs and class members. *See, e.g., id.* at 1279 n.14 (indicating that typicality is satisfied even if factual distinctions exist between the named plaintiffs' claims and the claims of the class as a whole) (citation omitted); *see also In re Scientific-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1326 (N.D. Ga. 2007) ("*Scientific-Atlanta*") ("the test for typicality "'is not demanding.'") (quotation omitted). Rather, the named plaintiffs' claims need only have the "'same essential characteristics'" as the claims of the rest of the class. *Del Rosario*, 2006 U.S. Dist. LEXIS 76777, at *38 (quotation omitted).

Here, the named Plaintiffs' claims arise from the same unlawful conduct that motivates absent Class Members' claims. Each of the named Plaintiffs and putative Class Members purchased a Frigidaire Washing Machine, including those models explicitly referenced in Frigidaire's Service Flash – Models BTF2140E, BLTF2940E, FTF2140E, FWFB9100E, FWF9200E, GLTF2940E, LTF2140E and LTF2940E. (FAC ¶ 1; Ex. A). Moreover, each of those models have design defects that cause mold and mildew problems and that could be addressed by the common fix described in the Service Flash. (Ex. A.) In addition, all of the Washing Machines purchased by the Plaintiffs are governed by the same warranty that applies to absent Class Members' Machines. Frigidaire has breached its written warranty as to the Plaintiffs and absent Class Members in an identical fashion, by its refusal to pay for labor and/or replacement parts to address its Washing Machines' design defect and related mold and mildew problems. Furthermore, Plaintiffs' and absent Class Members' claims are predicated on Frigidaire's representations and material omissions concerning its Washing Machines. The factual allegations and claims asserted by the Plaintiffs are substantially similar, if not identical, to those asserted by absent Class Members. As a result, typicality is satisfied.

### 4. Plaintiffs Will Fairly And Adequately Represent The Class

The final element under Rule 23(a) requires that the class representatives will fairly and adequately protect the interests of the class. Rule 23(a)(4). The adequacy requirement encompasses two inquiries: (1) whether there are conflicts of interest between named plaintiffs and absent class members and (2) whether plaintiffs' counsel are "'qualified, experienced, and generally able to conduct the proposed litigation.'" *In re NetBank, Inc.*, No. 1:07-CV-2298-BBM, 2009 U.S. Dist. LEXIS 69031, at *15 (N.D. Ga. Aug. 7, 2009) (quotation omitted). Minor conflicts will not defeat class certification. *See, e.g.*, *Scientific-Atlanta*, 571 F. Supp. 2d at 1331 (holding that conflicts between the named plaintiff and class members must be "'fundamental'" and relate to "'specific issues in controversy.'") (quotation omitted).

Plaintiffs readily satisfy both requirements under Rule 23(a)(4). Plaintiffs do not have any interests that are contrary or antagonistic to those of putative Class Members. On the

contrary, as discussed above, the interests of the named Plaintiffs are aligned with absent Class Members' interests in that they share a common goal of establishing Frigidaire's liability. The named Plaintiffs, as with every member of the putative Class, were injured after purchasing Frigidaire's defective Washing Machines, by Frigidaire's material omissions concerning its Washing Machines' defects, its breach of written and implied warranties and Frigidaire's failure to adequately warn consumers of its Washing Machines' defects.

Plaintiffs have also demonstrated their willingness to vigorously prosecute the interests of the Class through qualified counsel. Plaintiffs' counsel have propounded and reviewed discovery, performed substantial investigation of Plaintiffs' claims, and opposed Defendants' two motions to dismiss [Dkt. Nos. 39 and 88] and two motions to strike. [Dkt. Nos. 45 and 89]. Wexler Wallace LLP ("Wexler Wallace"), McCallum Hoaglund Cook & Irby, LLP ("McCallum Hoaglund") and Bell & Brigham are highly experienced in litigating class actions[3] and have aggressively litigated Plaintiffs' class claims since this action was initiated. As a result, adequacy is met.

### C. Plaintiffs Satisfy The Requirements Of Rule 23(b)(3)

Plaintiffs must also meet the predominance and superiority requirements under Rule 23(b)(3). Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions and that the class action mechanism is superior to other methods of adjudicating the case. *See, e.g., Amchem*, 521 U.S. at 615.

### 1. Common Questions Of Law Or Fact Predominate

Predominance requires that the "issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Scientific-Atlanta*, 571 F. Supp. 2d at 1336 (quotation omitted). However, predominance does not require that all questions of law and fact are

---

[3] *See* Exs. O (Wexler Wallace firm resume), P (McCallum Hoaglund firm resume) and Declaration of Lee W. Brigham in Support of Plaintiffs' Renewed Motion and Memorandum of Law in Support of Renewed Motion for Class Certification ("Brigham Decl."), attached hereto as Exhibit B.

common, "but only that some questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

### a. Plaintiffs' Claims Are Subject To Generalized Proof

All of Plaintiffs' claims are subject to generalized proof. A review of these claims demonstrates that common questions of fact or law readily predominate over any questions that might affect individual Class Members.

### i. Breach Of Express Warranty

Plaintiffs' breach of express warranty claim relates to the uniform provisions of Frigidaire's Tumble Action Washer Warranty, which accompanies every Washing Machine purchased by Plaintiffs and absent Class Members. Plaintiffs allege that Frigidaire breached its warranty by failing to cure a common design defect inherent in all of its Washing Machines. *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173-74 (9th Cir. 2010) (predominance was met as to plaintiff's express warranty claim where all of the proposed class members were covered by the same warranty, alleged the same defect, and common proof was required to prove the existence of the defect and defendant's refusal to repair).

The defect at the heart of this case relates to the design of the Washing Machines' boot and its failure to prevent mold and mildew from developing in the Washing Machine. Frigidaire's Service Flash describes the common problem (Ex. A (indicating that water accumulates in the boot and describing concerns about "biofilm formation . . . .")) and the common solution to the problem. (*Id.* (providing a "new boot style that does not have convolutions").) As mentioned above, Frigidaire also identifies these issues as "*common concerns*" in its "Avoid Service Checklist" (Ex. J (emphasis added)), in a product training presentation[4] and in its 2004 Service Bulletin.[5]

Moreover, Frigidaire's breach is demonstrated by its policy of refusing to repair or

---

[4]*See* Exhibit I (describing "THE PROBLEM [as] [c]onsumer concern that front load door gaskets may develop mold and mildew.")

[5]Frigidaire's March 2004 Service Bulletin describes ordering a new bellows kit as a "service solution" to problems related to "[w]ater left in the bellows (boot) after the cycle is done." (Ex. K.)

replace its Washing Machines' defective boot. Indeed, Frigidaire attempts to avoid responsibility for such repairs by explicitly stating that the accumulation of water in the bellows is "not the result of defective workmanship or materials in this washer." (Ex. J.) Frigidaire instead maintains that the mold and mildew problems are due to consumers' poor maintenance habits and instructs consumers to address these problems by "wip[ing] the inside steel basket of their Machines after each wash cycle to avoid mold and mildew problems, and [] leav[ing] the door open on the Machines when not in use." (FAC ¶ 5; Ex. Q (Care and Cleaning Procedures); Ex. R (Admission No. 9); Mot. to Dismiss at 13). At least one court has called Frigidaire's argument "plainly inappropriate." *Bettua v. Sears, Roebuck and Co.*, No. 08 C 1832, 2009 U.S. Dist. LEXIS 7926, at *16 (N.D. Ill. Jan. 30, 2009).

Whether putative class members provided timely notice to Frigidaire will not introduce individualized issues in that Plaintiffs' express warranty claim does not require timely notice under California law. (September 3, 2010 Order at 21-22 (citing *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 292-93 (Ct. App. 2009) and *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367, at *13 n.3 (N.D. Cal. June 5, 2009)). To the extent notice is required, "whether plaintiffs and the class were required to give notice and/or whether they provided sufficient notice are questions that are likely common to the class." *Cartwright v. Viking Indus.*, No. 2:07-CV-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286, at *26 n.9 (E.D. Cal. Sept. 14, 2009).

In addition, Frigidaire's actual notice of the defect can be demonstrated by common evidence that applies equally to all absent Class Members. *See, e.g.*, *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) (notice may be satisfied by "proof of complaints from some but not all the buyers of a product."). Frigidaire was aware that its Washing Machines were defective several years prior to this lawsuit. Consumers informed Frigidaire of its Washing Machine's mold and mildew problems as early as *2004*. (Ex. M.) Frigidaire's service call databases produced over 1,106 complaints between March 2004 and March 2008 after entry of such narrow search terms as "mold," "mildew" and "odor." (Fuller Decl. at ¶ 20). Furthermore,

Frigidaire's Service Flash reveals that it had actual notice of Washing Machine defects as early as April 2007. (Ex. A).

For the aforementioned reasons, common issues predominate over any issues that might affect individual class members with respect to Plaintiffs' breach of express warranty claim.

### ii. Breach Of Implied Warranty

"A product is defective and breaches the implied warranty of merchantability when it is 'not fit for the ordinary purposes for which such goods are used' . . . [A] claim of breach of implied warranty [also] requires proof that the goods are defective at the time they were sold." *Knight v. Am. Suzuki Motor Corp.*, 612 S.E.2d 546, 551 (Ga. Ct. App. 2005) (quotation omitted).

Here, all of the Washing Machines suffer from the same latent design defect: a bellow with convolutions that accumulates water and ultimately fails to prevent mold and mildew from forming in the Washing Machines. (Ex. A.) This defect, and the mold and mildew problems that result, damage, stain and otherwise ruin consumers' clothing. (*See, e.g.*, FAC ¶ 13 (Plaintiff "discovered black streaks on garments and towels removed from his machine. He then discovered mold and mildew deposits around the steel drum inside his machine, along with a noxious odor."); *Id.* at ¶ 36 ("It seems like such a bad design . . . [I] do not even want to wash my clothes in this mess." (quotation omitted))). This design defect renders the Machines unfit for the products' ordinary purpose – cleaning clothes.

Moreover, because the defect at issue is a latent *design* defect and an inherent problem in all of the Washing Machines, the presence of the defect at the time of sale is a common issue. As a result, common questions of law or fact regarding Plaintiffs breach of implied warranty claim predominate over any individual issues.

In addition, as with Plaintiffs' express warranty claim, any notice requirements do not undermine predominance with respect to Plaintiffs' implied warranty claim. "California law does not require a retail purchaser to provide notice . . . before bringing an implied warranty of merchantability claim." (September 3, 2010 Order at 24 (citing *Mexia*, 95 Cal. Rptr. 3d at 292-93).) While notice is required under Texas law, it need not be provided in any particular form.

*See, e.g.*, *Metro Nat'l Corp. v. Dunham-Bush, Inc.*, 984 F. Supp. 538, (S.D. Tex. 1997) (notice was met where defendant had specific notice that its products were defective); *see also Reynolds Metals Co. v. Westinghouse Elec. Corp.*, 758 F.2d 1073, 1078 (5th Cir. 1985) (notice provisions under Tex. Bus. & Com. Code § 2.607 are "not stringent and are liberally construed"). As a result, for the same reasons that actual notice may be demonstrated by common evidence that applies equally to all absent Class Members, Frigidaire also had notice of Plaintiffs' implied warranty claim under Texas law. Such notice requirements do not prevent class certification. *See, e.g.*, *Sun Coast Res. v. Cooper*, 967 S.W.2d 525, 533 (Tex. Ct. App. 1998) (certifying warranty claims brought on behalf of gasoline purchasers against manufacturers and distributors of defective gasoline product).

Under Georgia law, "service of a complaint satisfies the notice requirement if no prejudice to the defendant results . . . ." (September 3, 2010 Order at 25 (citing *Hudson v. Gaines*, 403 S.E.2d 852, 854 (Ga. Ct. App. 1991).) Service of the complaint constitutes a common form of notice as to all putative Georgia Class Members and whether Frigidaire was prejudiced by the timing of such notice is an issue particular to Frigidaire, not members of the Class. Indeed, the Court has determined that Frigidaire was not prejudiced at the motion to dismiss stage and had not shown it was prejudiced by Plaintiff Boyd's failure to provide pre-suit notice. (September 3, 2010 Order at 24 n.8 and 25.) The purpose of notice has not been frustrated; Frigidaire was aware that its Washing Machines were defective several years prior to this lawsuit, has had ample opportunity to investigate and cure the alleged defects and Plaintiffs' lawsuit has "open[ed] the way for settlement[6] through negotiation between the parties." *Wal-Mart Stores, Inc. v. Wheeler*, 586 S.E.2d 83, 86 (Ga. Ct. App. 2003) (citing *Oden & Sims Used Cars v. Thurman*, 301 S.E.2d 673, 675 (Ga. Ct. App. 1983)).

//

---

[6] Plaintiffs' suit has opened the way for settlement negotiations. Months after Plaintiffs filed their complaint, the parties engaged in several months of formal mediation. In addition, parties participated in a mandatory settlement conference on April 26, 2010. (May 1, 2010 Minute Order [Dkt. No. 116].)

### iii. Magnuson-Moss Warranty Act

Courts typically look to substantive state law to determine whether a Magnuson-Moss Warranty Act, 15 U.S.C.S. § 2301, *et seq.*, claim is viable. *See, e.g., Johnson v. Jaguar Cars, Inc.*, No. 1:05-CV-3161-RLV, 2006 U.S. Dist. LEXIS 41166, at *7 (N.D. Ga. June 6, 2006) (citation omitted). Accordingly, predominance is met with respect to Plaintiffs' Magnuson-Moss Warranty Act claim for the same reasons this requirement is satisfied as to Plaintiffs' warranty claims under California, Texas and Georgia law.

### iv. California and Texas State Consumer Protection Statutes

Plaintiffs' claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTP-CPA"), Tex. Bus. & Com. Code § 17.46(b) are subject to generalized proof as to the California and Texas classes. The UCL provides actionable claims for representations and failures to disclose where members of the public are likely to be deceived. *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). California law looks to the likely effect such a practice would have on a reasonable consumer, an issue which is "subject to common proof by the class." *Cartwright*, 2009 U.S. Dist. LEXIS 83286, at *37. In addition, California does not require individualized proof of deception, reliance or injury. *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th at 312.

Similarly, the TDTP-CPA provides actionable claims for misrepresentations and omissions of material fact. *See* Tex. Bus. & Com. Code § 17.46(b)(24) (failure to disclose); *Id.* at §§ 17.46(b)(5)-(7) (representations). Although it is unclear whether reliance is a requirement under the TDTP-CPA, reliance may nevertheless be established on class-wide basis. *See, e.g., Lubin v. Farmers Group, Inc.*, No. 03-03-00374-CV, 2009 Tex. App. LEXIS 8584, at *83, *86 (Tex. Ct. App. Nov. 6, 2009). Indeed, putative Class Members' payments for the defective Washing Machines alone can establish reliance on a class-wide basis. *Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396, 405 (Tex. Ct. App. 2002) (consumers' payment of a tax they did not owe "alone is an allegation of reliance."); *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24

17

(Tex. Ct. App. 2000) (holding that reliance was met on a class-wide basis where a common issue was whether insurance premiums were collected from the class). To be sure, the "purchase" of a Washing Machine is a requirement under the proposed Class definition.

Frigidaire's representations that "your laundry never looked so good" and that "your clothes feel fresher and last longer" (FAC ¶ 30; Ex. S (Frigidaire Advertisements)) and its failure to disclose the Washing Machines' inherent defects and related mold and mildew problems are actionable misrepresentations under the UCL and TDTP-CPA. The representations made in Frigidaire's advertisements, the concealment of mold and mildew problems related to the defective design of its Washing Machines together with its policy of blaming consumers for such problems, and its failure to provide relief are class-wide issues that are pertinent to Plaintiffs' statutory consumer protection claims. *See, e.g.*, *Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so.") (citation omitted).

Therefore, common questions of law and fact predominate as to Plaintiffs' UCL and TDTP-CPA claims.

### b. The Proposed State-Based Classes Are Eminently Manageable

Plaintiffs' claims are also not rendered unmanageable based on overwhelming variations in state law. Rather, each of the proposed state-based classes is governed by a single state's laws. Such state-based classes eliminate the potential complexities and confusion of applying numerous states' laws to class members' various claims or a single state's law to a nationwide class. *See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 701 n.45 (S.D. Fla. 2004) (holding that Rule 23(b)(3) was satisfied in part where plaintiffs sought to "'apply state law to separate state classes that include those persons who purchased [the product] in each state.' Therefore, each state's substantive antitrust law will apply to that particular state class' claims.") (citation omitted); *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (variations in state law may be managed by creating subclasses of "states that have similar

legal doctrines.") (quotations omitted).

For the reasons described above, predominance is satisfied under Rule 23(b)(3).

### 2. A Class Action Is Superior For The Fair And Efficient Adjudication Of This Action

Rule 23(b)(3) requires that the class action mechanism is "'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1358 (11th Cir. 2009) (quoting Rule 23(b)(3)). Courts generally consider the following four factors in determining whether superiority is met:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3)(A)-(D). A review of these four factors demonstrates that a class action is the superior method for adjudicating this controversy.

First, "no absent class member has indicated an interest in controlling the prosecution of a separate action." *Ga. Energy*, 2009 U.S. Dist. LEXIS 69812, at *33. Indeed, the costs individual plaintiffs would have to bear in pursuing this litigation would likely be prohibitive and quickly subsume any potential recovery. *See, e.g.*, *Ga. Energy*, 2009 U.S. Dist. LEXIS 69812, at *34-*35 ("The 'most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit,'" where the cost for individual putative class members to litigate their suits would exceed their individual damages) (quotation omitted).

Second, there are no other cases that have been filed on behalf of the proposed Class that are based on the same allegations or disputes as in this matter. Third, Georgia's aggregate contacts with this case make it efficient for the parties and the Court to litigate this action in this District. *See, e.g.*, *Brenner*, 258 F.R.D. at 570 (holding that the third factor under superiority involves considerations of "economies of time, effort, and expense; . . . ."). Indeed, Frigidaire was headquartered in the District until recently, its Major Appliances Warranty requires

consumers to contact Frigidaire's offices in this District, Frigidaire conducts business in this District, and makes decisions concerning the marketing, sales, design and warranty of its Washing Machines in this District. As a result, much of the evidence and witnesses that are vital to this case are located in this District. *See, e.g.*, *Scientific-Atlanta*, 571 F. Supp. 2d at 1344 (holding that the forum was appropriate because it was close to defendant's headquarters and "therefore many of the witnesses.").

With regard to the fourth factor, "[manageability] will rarely, if ever, be in itself sufficient to prevent certification of a class. 'Courts are generally reluctant to deny class certification based on speculative problems with case management.' . . . Even potentially severe management issues have been held insufficient to defeat class certification.'" *Klay*, 382 F.3d at 1272-73) (quotation omitted). Furthermore, this factor does not require a court to assess "whether this class action will create significant management problems, but instead determin[e] whether it will create relatively more management problems than any of the alternatives (including, [numerous] separate lawsuits by the class members)." *Id.* at 1273.[7]

As demonstrated above, any potential manageability problems are addressed by Plaintiffs' proposed state-based classes. Should the Court find that these classes still render the proposed class action unmanageable, the Court has a wide variety of tools at its disposable to address any management problems even after a class is certified. For instance, the Court may "decertify[] the class after the liability trial . . . creat[e] subclasses; or [] alter[] or amend[] the class." *In re Tri-State Crematory Litig.*, 215 F.R.D. at 699 n.28 (quotation omitted); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2009 U.S. Dist. LEXIS 30937, at *35 (N.D. Ga. Feb. 9, 2009) ("These tools are sufficient to handle any manageability problems that may arise in the litigation."). Accordingly, each of the four factors

---

[7] Courts have found the "hardships presented by [pursuing numerous individual actions to be] monumental: Separate proceedings would produce duplicate efforts, unnecessarily increase the costs of litigation, impose an unwarranted burden on this Court . . . and create the risk of inconsistent results for similarly situated parties. Additionally, the cost associated with individual claims may require claimants with potentially small claim amounts to abandon otherwise valid claims simply because pursuing those claims would not be economical." *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 625 (N.D. Ga. 1997) (quotation omitted).

under superiority is readily satisfied and class treatment is superior to other methods of adjudication.

## IV.  **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that their renewed motion for class certification be granted.

_____

Lee W. Brigham
Georgia Bar No. 081698
BELL & BRIGHAM
457 Greene Street
Augusta, Georgia  30903
Telephone:  (706) 722-2014
Facsimile:  (706) 722-7552
Email:  lee@bellbrigham.com

R. Brent Irby (*pro hac vice*)
Charles A. McCallum, III (*pro hac vice*)
MCCALLUM, HOAGLUND,
  COOK & IRBY, LLP
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama  35216
Telephone:  (205) 824-7767
Facsimile:  (205) 824-7768
Email: birby@mhcilaw.com
          cmccallum@mhcilaw.com

Mark J. Tamblyn (*pro hac vice*)
Ian J. Barlow (*pro hac vice*)
WEXLER WALLACE LLP
455 Capitol Mall, Suite 231
Sacramento, California  95814
Telephone:  (916) 492-1100
Facsimile:  (916) 492-1124
Email:  mjt@wexlerwallace.com
          ijb@wexlerwallace.com

Kenneth A. Wexler (*pro hac vice*)
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022

Email:  kaw@wexlerwallace.com