## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

ROBERT BROWN and MICHAEL VOGLER,
on behalf of themselves and all others similarly
situated,

                       Plaintiffs,

    v.

ELECTROLUX HOME PRODUCTS, INC.,
d/b/a FRIGIDAIRE,

                       Defendant.

Case No:  CV-108-030

## PLAINTIFFS' RENEWED MOTION AND MEMORANDUM OF LAW
## IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT ........................................................................................................4

    A.    Standards For Class Certification ...........................................................4

    B.    Plaintiffs Satisfy The Requirements Of Rule 23(a) ..............................5

        1.    The Class Is So Numerous That Joinder Is Impracticable ..........5

        2.    There Are Questions Of Law And Fact That Are Common To Each Member Of The Class ....................................................7

        3.    Plaintiffs' Claims are Typical Of Those Of The Class .............10

        4.    Plaintiffs Will Fairly and Adequately Represent The Class ......12

    C.    Plaintiffs' Claims Satisfy The Requirements Of Rule 23(b)(3) ...........14

        1.    Common Questions Of Law Or Fact Predominate ...................14

            a.    Plaintiffs' Claims Are Subject To Generalized Proof ....14

                i.    Breach Of Express Warranty .............................15

                ii.    Breach Of Implied Warranty ..............................17

                iii.    Magnuson-Moss Warranty Act...........................19

                iv.    California And Texas State Consumer Protection Statutes ..............................................19

        2.    A Class Action Is Superior For The Fair And Efficient Adjudication Of This Action ..................................................21

IV.    CONCLUSION..........................................................................................24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997)................................................................................ 4

*In re Bellsouth Corp. Secs. Litig.,*
  2006 U.S. Dist. LEXIS 15518 (N.D. Ga. Apr. 3, 2006) ........................ 4

*Bettua v. Sears, Roebuck & Co.,*
  2009 U.S. Dist. LEXIS 7926 (N.D. Ill. Jan. 30, 2009) ........................ 16

*Brenner v. Future Graphics, LLC,*
  258 F.R.D. 561 (2007) ........................................................................ 22

*Busby v. JRHBW Realty, Inc.,*
  513 F.3d 1314, 1321 (11th Cir. 2008) .............................................. 4, 10

*Camafel Bldg. Inspections, Inc. v. BellSouth Adver. & Publ'g Corp.,*
  2008 U.S. LEXIS 18192 (N.D. Ga. Mar. 7, 2008) ............................... 6

*Cartwright v. Viking Indus.,*
  2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 14, 2009)................. 16, 19

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
  2009 U.S. Dist. LEXIS 30937 (N.D. Ga. Feb. 9, 2009) ...................... 23

*Consol. Rail. Corp. v. Town of Hyde Park,*
  47 F.3d 473 (2d Cir. 1995).................................................................... 6

*Cox v. Am. Cast Pipe Co.,*
  784 F.2d 1546 (11th Cir. 1986) ............................................................ 6

*Davis v. Northside Realty Assocs., Inc.,*
  95 F.R.D. 39 (N.D. Ga. 1982)............................................................... 6

*Del Rosario v. King & Prince Seafood Corp.,*
  2006 U.S. Dist. LEXIS 76777 (S.D. Ga. Mar. 7. 2006) ................... 4, 10

*In re Escolastico De Leon-Granados v. Eller & Sons Trees,*
  2006 U.S. Dist LEXIS 73781 (N.D. Ga. Sept. 28, 2006) ..................... 8

*Evans v. U.S. Pipe & Foundry Company,*
  696 F.2d 925 (11th Cir. 1983) .............................................................. 5

*Fitzpatrick v. Gen. Mills, Inc.,*
  635 F.2d 1279 (11th Cir. 2011) .......................................................... 20

*Jenkins v. Raymark Ind.,*
  782 F.2d 468 (5th Cir. 1986) ................................................................ 7

## FEDERAL CASES CONT'.D

*Johnson v. Jaguar Cars, Inc.,*
  2006 U.S. Dist LEXIS (N.D. Ga. June 6, 2006) ..................................................... 19

*Klay v. Humana,*
  382 F.3d 1241 (11th Cir. 2004) ............................................................... 14, 23

*Maudlin v. Wal-Mart Stores, Inc.,*
  2002 U.S. Dist. LEXIS 21024 (N.D. Ga. Aug. 23, 2002) ........................................ 5

*Metro Nat'l Corp. v. Dunham-Bush, Inc.,*
  984 F. Supp. 538 (S.D. Tex. 1997) ................................................................. 18

*In re Miller Indus. Sec. Litig.,*
  186 F.R.D. 680 (N.D. Ga. 1999) ..................................................................... 4

*In re Net Bank, Inc.,*
  259 F.R.D. 656 (N.D. Ga. 2009) ................................................................. 4, 12

*In re Polypropylene Carpet Antitrust Litig.,*
  178 F.R.D. 603 (N.D. Ga. 1997) ................................................................... 23

*Prado-Steiman v. Bush,*
  221 F.3d 1266 (11th Cir. 2000) ................................................................... 10

*Reynolds Metals Co. v. Westinghouse Elec. Corp.,*
  758 F.2d 1073 (5th Cir. 1985) ..................................................................... 18

*In re Scientific-Atlanta, Inc. Secs. Litig.,*
  571 F. Supp. 2d 1315 (N.D. Ga. 2007) ............................................. 10, 12, 14, 22

*Smith v. Ga. Energy,*
  259 F.R.D. 684 (S.D. Ga. 2009) ................................................................... 22

*Stearns v. Select Comfort Retail Corp.,*
  2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009) ....................................... 16

*In re Terazosin Hydrochloride Antitrust Litig.,*
  220 F.R.D. 672 (S.D. Fla. 2004) ................................................................... 23

*In re Theragenics Corp. Secs. Litig.,*
  205 F.R.D. 687 (N.D. Ga. 2002) ................................................................. 4, 5

*In re Tri-State Crematory Litig.,*
  215 F.R.D. 660 (N.D. Ga. 2003) ................................................................... 23

*Walsh v. Ford Motor Co.,*
  807 F.2d 1000 (D.C. Cir. 1986) ................................................................... 23

## FEDERAL CASES

*Wells v. HBO & Co.,*
  1991 U.S. Dist. LEXIS 11312 (N.D. Ga. Apr. 22, 1991) .......................................... 4

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
  2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010) ............................... 18, 19

*Williams v. Mohawk Indus.,*
  568 F.3d 1350 (11th Cir. 2009) .......................................................................... 21

*Williams Corp. v. Kaiser Sand & Gravel Corp.,*
  1992 U.S. Dist. LEXIS 16947 (N.D. Cal. Oct. 9, 1992) ..................................... 13

*Wolin v. Jaguar Land Rover North Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010) ..................................................................... 15, 21

*Wolph v. Acer Am. Corp.,*
  272 F.R.D. 477 (N.D. Cal. 2011) ........................................................................ 19

*In re Zurn Pex Plumbing Prods. Liab. Litig.,*
  2011 U.S. App. LEXIS 13663 (8th Cir. July 6, 2011) ................................... 15, 17

## STATE CASES

*Alford Chevrolet-Geo v. Jones,*
  91 S.W.3d 396 (Tex. Ct. App. 2002) .................................................................... 20

*Graebel/Houston Movers, Inc. v. Chastain,*
  26 S.W.3d 24 (Tex. Ct. App. 2000) ..................................................................... 20

*Lubin v. Farmers Group, Inc.,*
  2009 Tex. App. LEXIS 8584 (Tex. Ct. App. Nov. 6, 2009) ................................ 20

*Metowski v. Traid Corp.,*
  28 Cal. App. 3d 332 (1972) ................................................................................. 16

*Mexia v. Rinker Boat Co., Inc.,*
  95 Cal. Rptr. 3d 285 (Ct. App. 2009) ..................................................... 16, 17, 18

*Sun Coast Res. V. Cooper,*
  967 S.W.2d 533 (Tex. Ct. App. 1998) ................................................................. 18

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ......................................................................................... 19

*Vintage Homes, Inc. v. Coldiron,*
  585 S.W.2d 886 (Tex. Ct. App. 1979) ................................................................. 17

## FEDERAL STATUTES

Fed.R.Civ.P. 23 ............................................................ 1, 4, 5, 7, 8, 10, 14, 15, 21, 22

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................................ 1, 19

Tex. Bus. & Prof. Code Ann. § 17.46 ..................................................... 1, 19, 20

Tex. Bus. & Prof. Code § 2.607 ................................................................ 18

**MISCELLANEOUS**

3B Moore's Federal Practice
    § 23.05 (1978) ..................................................................................... 6

Plaintiffs Robert Brown and Michael Vogler ("Plaintiffs") respectfully move for an order certifying this case as a class action against Electrolux Home Products, Inc. d/b/a Frigidaire ("Frigidaire" or "Defendant"), and appointing Plaintiffs as class representatives.

## I.   INTRODUCTION

This case is predicated on a common design defect, a known common solution and uniform warranty provisions that affect every member of the proposed Class. Plaintiffs and putative Class Members purchased front-loading washing machines manufactured by Frigidaire that share an identical design flaw in the form of a gasket that has convolutions in which water accumulates after running a wash cycle. Frigidaire itself has identified this design defect as a common problem and has even proposed a common solution – replacing the gasket with one that has no convolutions. The accumulation of water in the gasket causes mold and mildew to form inside the washing machines, resulting in damaged clothing and preventing consumers from using the washing machines for their ordinary purpose – cleaning clothes.

As a result of prior rulings and stipulations, the claims of Plaintiffs Michael Terrill, Palecia Boyd and Denise Pack have been dismissed. (*See* September 3, 2010 Order [Dkt. No. 124]; Order granting motion for judgment on the pleadings, entered on March 15, 2011 [Dkt. No. 150]; Stipulation of Dismissal, entered on May 17, 2011 [Dkt. No. 152]). The remaining issues in this Renewed Motion are streamlined and only involve claims asserted by two proposed class representatives under two states' laws. Plaintiff Brown asserts claims under California law for breach of express and implied warranty, violation of the Magnusson-Moss Act and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. Plaintiff Vogler asserts claims under Texas law for breach of implied warranty, violation of the Magnusson-Moss Act and violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.46. Plaintiffs move to certify two state-based classes consisting of:

1) All persons and entities in the State of California who purchased, other than for re-sale, during the previous four (4) years any of the Washing Machines that were equipped with a convoluted bellow; and

2) All persons and entities in the State of Texas who purchased, other than for re-sale, during the previous four (4) years any of the Washing Machines that were equipped with a convoluted bellow.[1]

As discussed below, the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and 23(b)(3) are readily satisfied.  Frigidaire has admitted that joinder is impracticable and evidence of consumer complaints in California and Texas demonstrates that state-based numerosity is satisfied.  The common design defect, common problems caused by the design defect and the common solution to the defect evince numerous questions of law and fact that are common to the Plaintiffs and absent Class Members.  In addition, typicality is satisfied in that the named Plaintiffs' claims arise from the same unlawful conduct that gives rise to absent Class Members' claims.  Furthermore, the named Plaintiffs will be required to present substantially similar, if not identical, evidence as every other member of the proposed Class.  Plaintiffs will also fairly and adequately represent the Class in that Plaintiffs' interests are not contrary or antagonistic to those of the putative Class and Plaintiffs and the Class are represented by qualified counsel that are highly experienced in consumer class action lawsuits.

Rule 23(b)(3)'s predominance and superiority requirements are also met because an examination of Plaintiffs' claims demonstrates that they are subject to generalized proof on a class-wide basis, and an analysis of the four superiority factors demonstrates that the class action mechanism is the superior method for fairly and efficiently adjudicating the claims.  For these reasons, Plaintiffs' renewed motion for class certification should be granted in its entirety.

## II.   STATEMENT OF FACTS

Plaintiffs allege that Frigidaire front-loading washing machines ("Washing Machines" or "Machines") are inherently defective in that they were designed with a gasket that collects water after each wash cycle.  (First Amended Complaint ("FAC") ¶¶ 1, 37.)  The standing water in the Washing Machines causes mold and mildew to develop in the Machines, which results in

---

[1] Plaintiffs refined their proposed class definition to include only those consumers with Washing Machines that were equipped with a convoluted bellow in Plaintiffs' Reply Memorandum in Support of Motion for Class Certification. (Pls.' Reply Mem. in Support of Mot. for Class Certification ("Reply") at 5-7 [Dkt. No. 112].)

damaged clothing and foul odors. (*Id.* at ¶ 3.) Such mold and mildew problems force consumers to absorb costs related to the repair and cleaning of their Washing Machines and cause their Machines to decrease in value. (*Id.* at ¶¶ 6-7, 40.)

The common design defect, resulting mold and mildew problems, and solution to the defect and problems are captured in a single document – Service Flash LN073 ("Service Flash"). (*See* Declaration of Mark J. Tamblyn In Support of Plaintiffs' Motion for Class Certification ("Tamblyn Decl."), Ex. A.) This Service Flash was drafted and eventually issued by Frigidaire in April 2007 (Tamblyn Decl., Ex. B (Def.'s Answer to Pls.' Interrogs. No. 14).)[2] The Service Flash plainly describes the problems that Plaintiffs and all Class Members experience – "[w]hen the door is open at the end of the cycle, a small amount of water is noticed in the convolutions at the six o'clock position." (Ex. A.) The Service Flash states that the accumulation of water may cause mold or biofilm to form. (*Id.*) In addition, the Service Flash describes a common solution to the common problem – "[a] new boot style that does not have convolutions . . . ." (*Id.*)

Although Frigidaire knew that its Washing Machines were defective, Frigidaire failed to inform customers of the defects, failed to issue its Service Flash to consumers or retailers and failed to recall its defective Machines. (FAC ¶¶ 4, 39.) Moreover, Frigidaire refuses to pay for the repair or replacement of defective Washing Machines under its manufacturer's warranty. All of the Washing Machines are covered by an identical warranty that requires Frigidaire to pay for "[l]abor and replacement parts which prove to be defective in materials and workmanship" within the first year after purchase. (Ex. C (Tumble Action Washer Warranty).)

Although it was aware of its Washing Machines' mold and mildew problems, Frigidaire sat silent and continued to market and sell its defective Washing Machines to unwitting consumers. (FAC ¶ 8.) Frigidaire represented that its Washing Machines make consumers' clothes "feel fresher and last longer." (*Id.* at ¶ 30.) Even more egregious, Frigidaire's policy is

---

[2]All exhibits attached to the Tamblyn Declaration – which is attached to the Renewed Motion as Exhibit A – will hereinafter be referred to only by the specific exhibit letter. Defendants' answers to Plaintiffs' First Set of Interrogatories are attached as individual exhibits and abbreviated as "Rog. Answer." Defendants' answers to Plaintiffs' First Set of Requests for Admissions are attached as individual exhibits and abbreviated as "Admission."

to direct consumers to leave the Washing Machine door ajar when not in use and to wipe down the inside of their Machines after each wash cycle to avoid mold and mildew problems. (*Id.* at ¶ 5.) In doing so, Frigidaire not only holds consumers responsible for its Washing Machines' mold and mildew problems, but also recommends a course of action – leaving the door ajar – that is extremely dangerous to children and that it describes as hazardous in its own instruction materials. (*Id.* at ¶ 44.) The course of action is not effective in addressing the mold and mildew problems, as the proposed class representatives came to learn.

## III.   ARGUMENT

### A. Standards For Class Certification

To maintain a class action, Plaintiffs must satisfy the four prerequisites under Rule 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy. *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 613-14 (1997). Plaintiffs must also satisfy one of the requirements under Rule 23(b). *See, e.g., Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). Under Rule 23(b)(3), the Court considers "(1) whether issues of law or fact common to members of the class predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 688 (N.D. Ga. 1999).

Rule 23 is to be given a "liberal construction" and the "Court must accept as true all allegations in Plaintiffs' complaint." *In re BellSouth Corp. Secs. Litig.*, No. 1:02-cv-2142-WSD, 2006 U.S. Dist. LEXIS 15518, at *10 (N.D. Ga. Apr. 3, 2006) (citing *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 687, 694 (N.D. Ga. 2002) ("*Theragenics*")); *see also Wells v. HBO & Co.*, No. 1:87-CV-657-JTC, 1991 U.S. Dist. LEXIS 11312, at *2 (N.D. Ga. Apr. 22, 1991). Moreover, in analyzing the propriety of a class action, "'the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Del Rosario v. King & Prince Seafood Corp.*, No. CV 204-036 (Consol. with CV 205-044), 2006 U.S. Dist. LEXIS 76777, at *34 (S.D. Ga. Mar. 7, 2006) (citation omitted); *see also In re Net Bank, Inc.*, 259 F.R.D. 656, 663 (N.D. Ga. 2009).

Furthermore, "any doubts [regarding the propriety of class certification] are to be resolved in favor of certification . . . ." *Mauldin v. Wal-Mart Stores, Inc.*, No. 1:01-CV-2755-JEC, 2002 U.S. Dist. LEXIS 21024, at *11 (N.D. Ga. Aug. 23, 2002). The Court has significant discretion to create subclasses, impose conditions, revise certification or decertify the class if it determines that certification was improperly granted or to prevent undue complication. *Id.* (indicating that class certification is conditional and that the court "may amend the certification order or decertify the class at any time prior to a final judgment on the merits.") (citing Rule 23(c)(1)).

### B. Plaintiffs Satisfy The Requirements Of Rule 23(a)

#### 1. The Class Is So Numerous That Joinder Is Impracticable

Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members would be impracticable. It is not necessary for plaintiffs to demonstrate that they know the exact size of the class to satisfy numerosity under Rule 23(a)(1). *See, e.g., Evans v. U.S. Pipe & Foundry Company*, 696 F.2d 925, 930 (11th Cir. 1983). Furthermore, "impracticability" does not mean "impossibility;" Plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class." *See, e.g., Theragenics*, 205 F.R.D. at 694.

Frigidaire concedes that "it would be impractical" to join all putative Class Members in this action and that "thousands of purchasers have purchased Electrolux brand front load washing machines between March 5, 2004 and the present." (Ex. D (Admission Nos. 1-2).) By Frigidaire's own estimation, it sold approximately 1,336,008 Washing Machines between March 2004 and March 2008. (Ex. E (Interrog. Answer No. 1).) Frigidaire has also stated that approximately 585,000 Washing Machines included the convoluted boot at issue in this litigation. (Reply at 9-10.)

With respect to the specific states at issue, numerosity is plainly satisfied. Frigidaire "distributed approximately 11,183 Washing Machines to the state of California between 2004 and 2007" and "approximately 12,484 Washing Machines to the state of Texas between 2004 and 2007." (Ex. F (Interrog. Answer No. 2(b) and (c)).) Frigidaire has also admitted that the

total number of Washing Machines sold between 2004 and 2007 in each of these states "exceeded 75." (Ex. O. (Resp. to Pls.' First Req. for Admis. Nos. 4 and 7).)  Moreover, Frigidaire has represented that persons or entities with California addresses registered product registration cards for "approximately 1,797 Washing Machines" between 2004 and 2007 and identified persons or entities with Texas addresses that registered "approximately 1,568 Washing Machines" between 2004 and 2007.  (*Id.* (Interrog. Answer No. 3(b) and (c)).)  The Eleventh Circuit has recognized that while the exact size of the putative class need not be specified, "generally less than twenty-one is inadequate, more than forty adequate; with numbers between varying according to other factors."  *Cox v. Am. Cast Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B MOORE's FEDERAL PRACTICE § 23.05 (1978)); *see also Camafel Bldg. Inspections, Inc. v. BellSouth Adver. & Publ'g Corp.*, Case No. 1:06-CV-1501-JEC, 2008 U.S. Dist. LEXIS 18192, at *23 (N.D. Ga. Mar. 7, 2008).  Other courts have also held that the numerosity requirement has been presumptively satisfied when the class comprises forty (40) or more members.  *See, e.g., Consol. Rail. Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (holding that 40 or more prospective class members raises a presumption of numerosity); *Davis v. Northside Realty Assocs., Inc.*, 95 F.R.D. 39, 43 (N.D. Ga. 1982) (noting that if a class has more than 40 people in it then numerosity is satisfied; less than 25 people in it, numerosity is lacking).

Finally, Plaintiffs have compiled email exchanges between Frigidaire and consumers that establish numerosity as to the proposed state-based classes. (Exs. G-H.) These emails describe mold and mildew problems with the Washing Machines at issue owned by consumers in California and Texas. It is critical to understand that, for purposes of numerosity, the number of consumers who actually took the time to contact Frigidaire by email does not represent the totality of Washing Machine sales in California and Texas. These communications represent only a *sample* of *emailed* inquiries, based on search criteria of Frigidaire's choosing. The sample does not capture customer complaints made through other media. It is also unknown what search criteria Frigidaire used to produce such emails. For example, Frigidaire may have conducted a

search for emailed consumer complaints without including search terms such as "biofilm" – Frigidaire's own term for referencing mold and mildew formation in its Washing Machines' convoluted bellows, as indicated in its Service Flash.

The emails reveal at least twenty-eight (28) consumers in California with the Washing Machines at issue who emailed Electrolux about mold and mildew problems (Ex. G (California consumer emails)) and twenty-five (25) such consumers in Texas (Ex. H (Texas consumer emails)). The above sampling of consumer inquiries is particularly significant in light of Frigidaire's prior representations in pleadings that *consumer complaints represent a small percentage of overall sales*. According to Frigidaire, "[o]nly a small percentage of putative class members ever complained to the Company . . . And those individuals who did experience problems with their washing machines took different approaches to reporting those problems to Electrolux . . . ." (Def.'s Opp. to Pltffs.' Mot. for Class Cert. ("Opposition") at 1.) Based on this evidence, the Court could reasonably determine that scores of consumers in California and Texas who experienced such mold and mildew problems likely did not formally complain or take the time to contact a Frigidaire representative. Indeed, Frigidaire's position is that the mold and mildew problems experienced by consumers are due to consumers' failure to properly care for their washing machines. It follows that consumers who are blamed and held responsible for their washing machine's defects would be unlikely to contact Frigidaire to resolve their washing machine's mold and mildew problems.

Based on Frigidaire's specific admissions, recent state-specific discovery responses, and the evidence compiled by Plaintiffs, numerosity is satisfied.

### 2. There Are Questions Of Law And Fact That Are Common To Each Member Of The Class

Rule 23(a)(2) requires that class members share common questions of law and fact. "The threshold of 'commonality' is not high . . . [T]he rule requires only that resolution of the common question affect all or a substantial number of the class members." *Jenkins v. Raymark Ind.*, 782 F.2d 468, 472 (5th Cir. 1986). Indeed, commonality may be satisfied where there is a

7

single common question of fact or law. *See, e.g.*, *Escolastico De Leon-Granados v. Eller & Sons Trees*, No. 1:05-cv-1473-CC, 2006 U.S. Dist. LEXIS 73781, at *16 (N.D. Ga. Sept. 28, 2006) (indicating that a single common question of fact or law is "sufficient" to satisfy Rule 23(a)(2)).

This case presents numerous questions of law and fact that are common to Plaintiffs and the proposed Class, such as:

- Whether the Washing Machines possess a common defect;

- Whether Frigidaire was aware that the Washing Machines were and are defective;

- Whether Frigidaire concealed the fact that the Washing Machines were and are defective;

- Whether Frigidaire concealed its Service Flash from the buying public;

- Whether Frigidaire was obligated to disclose that the Washing Machines suffer a common defect;

- Whether Frigidaire breached its express warranties;

- Whether Frigidaire breached its implied warranties;

- Whether Frigidaire violated the California's Unfair Competition Law;

- Whether Frigidaire violated the Texas Deceptive Trade Practices-Consumer Protection Act; and

- Whether Plaintiffs and members of the Class are entitled to recover damages, and, if so, the appropriate amount thereof.

The Washing Machines purchased by Plaintiffs and the Class share a common design defect – a gasket with convolutions that accumulates water at the end of the wash cycle. The standing water in the gasket causes mold and mildew to develop inside the Washing Machines.

Frigidaire has acknowledged the design defect and that mold and mildew problems are a common problem associated with this defect, in part, through its April 2007 Service Flash. The Service Flash applied to at least eight (8) different models of Washing Machines, all of which are included in Plaintiffs' proposed Class definition. Under the heading "PROBLEM," Frigidaire stated that "[w]hen the door is opened at the end of the cycle, a small amount of water is noticed

in the convolutions of the boot at the six o'clock position." (Ex. A.)  Frigidaire also identifies the mold and mildew problems that are "caused" by the gasket design.  Frigidaire explains that standing water in the convolutions of the gasket may explain customers' "perceived concern" about "biofilm formation." (*Id.*)  Moreover, Frigidaire has prescribed a common fix to the common problem:  "A new boot style that does not have convolutions is now available for such concerns." (*Id.*)  In this document alone, Frigidaire itself describes common questions that are sufficient to satisfy Rule 23(a)(2).

Frigidaire also identifies this common problem in product training materials, its "Avoid Service Checklist" and a 2004 service bulletin.  One Frigidaire training presentation describes "THE PROBLEM [as] [c]onsumer concern that front load door gaskets may develop mold and mildew." (Ex. I (Product Training Presentation).)  Its Avoid Service Checklist identifies the problem of "[w]ater collect[ing] in folds of the bellows at the end of the cycle" as a "*common concern.*" (Ex. J (Avoid Service Checklist) (emphasis added).)  In addition, as early as March 2004, Frigidaire stated that a new bellows model was the solution to problems related to the accumulation of water in the bellows after wash cycles were completed. (Ex. K (2004 Service Bulletin).)

Frigidaire's wide distribution of the Service Flash and additional evidence of numerous consumer inquiries and complaints involving mold and mildew problems also point to the commonality of these issues.  Frigidaire distributed its Service Flash to "all Authorized Service Persons in the United States." (Ex. L (Admission No. 19).)  Furthermore, numerous consumers placed telephone calls to Frigidaire or Authorized Service Persons to complain about mold and mildew problems in their Washing Machines' tub and bellows. (Ex. M (Service Call Logs); *see also* Exs. G-H (consumer emails to Frigidaire)).

All of the Washing Machines at issue are also subject to the Frigidaire's Tumble Action Washer Warranty, which is uniform as to all proposed Class Members. (Ex. C.)  Plaintiffs allege that Frigidaire breached its written warranty by consistently failing to repair or replace Plaintiffs and absent Class Members' defective Machines. (FAC ¶ 53.)  Rather than make such payments

or repairs, Frigidaire's policy was to recommend that consumers wipe down the inside of their Machines and leave the Washing Machine door open after each use. (*Id.* at ¶¶ 5, 43, 52; Ex. N (Letter to Consumer); Defendant's Memorandum of Law In Support of Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Motion to Dismiss") at 13. [Dkt. No. 80]). However, Frigidaire elsewhere warns against its own policy – its Owner's Guide instructs owners "*NOT* [to] **leave the washer door open.** An open door could entice children to han[g] on the door or crawl inside the washer." (FAC ¶ 44.)

The uniform defect, proposed solution, form warranty and Frigidaire's policy of requiring consumers to address Washing Machine defects present numerous common questions of fact and law. As a result, commonality is readily satisfied under Rule 23(a)(2).

### 3.   Plaintiffs' Claims Are Typical Of Those Of The Class

Rule 23(a)(3) requires that the named Plaintiffs' claims are typical of the class as a whole. "'Typicality measures whether a sufficient nexus exists between the claims of the name representatives and those of the class at large.'" *Busby*, 513 F.3d at 1322-23 (quotation omitted).

Whereas commonality focuses on the characteristics of the class as a whole, "typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (citation omitted). However, as with commonality, typicality does not require the assertion of identical claims and defenses, *see, e.g.*, *Del Rosario v. King & Prince Seafood Corp.*, No. CV 204-036, 2006 U.S. Dist. LEXIS 76777, at *39 (S.D. Ga. Mar. 7, 2006) (citation omitted), nor that the same facts underlie the claims of the named plaintiffs and class members. *See, e.g.*, *id.* at 1279 n.14 (indicating that typicality is satisfied even if factual distinctions exist between the named plaintiffs' claims and the claims of the class as a whole) (citation omitted); *see also In re Scientific-Atlanta, Inc. Secs. Litig.*, 571 F. Supp. 2d 1315, 1326 (N.D. Ga. 2007) ("*Scientific-Atlanta*") ("the test for typicality "'is not demanding.'") (quotation omitted). Rather, the named plaintiffs' claims need only have the "'same essential characteristics'" as the claims of the rest of the class. *Del Rosario*, 2006 U.S. Dist. LEXIS 76777, at *38 (quotation omitted).

10

Here, the named Plaintiffs' claims arise from the same unlawful conduct that motivates absent Class Members' claims.  Each of the named Plaintiffs and putative Class Members purchased a Frigidaire Washing Machine, including those models explicitly referenced in Frigidaire's Service Flash – Models BTF2140E, BLTF2940E, FTF2140E, FWFB9100E, FWF9200E, GLTF2940E, LTF2140E and LTF2940E.  (FAC ¶ 1; Ex. A).  Moreover, each of those models have design defects that cause mold and mildew problems and that could be addressed by the common fix described in the Service Flash.  (Ex. A.)

Like all members of the putative Class, Plaintiff Brown testified that

[A]t first it was not my frame of mind to think the machine was bad.  At first I assumed it was something that we were perhaps doing, . . . And after we covered all of the bases I could cover, then it came to the machine . . . . I think anybody that's got this model has got this [mold and mildew] problem whether they know it or not . . . . we've done everything that was suggested we do to cure it, and it hasn't resolved the problem.  So I can't imagine anyone is having a different experience.

(Ex. P (Brown Dep.) at 50:18-22, 57:3-10.)

Similarly, Plaintiff Vogler testified:

I know that water collects in the bottom of the bellows and does not drain the way they have the drain holes set up, and I think it's a specific problem to that particular part of that machine. . . . The bellows is where the problem is, and you have to force a rag into the fold of the bellows and mop up the water that's in there. . . . I would say it has folds in it.  It has some kind of holes that look like they're designed to drain the water out of them, but they don't work very well. They're kind of off to the side and - - At any rate, the - - the defect is, there's water left in them after the fact that you cannot see unless you pull the thing open. But nevertheless, it causes problems, . . . I'm not the only one that has this issue. All of the machines that were built within a certain time period had the same problem with the bellows and bad design, which everyone who had that has water sitting in the bottom of it when they use it, which leads to mold, which leads to smelly clothes or stained clothes or problems of that nature.  And I'm not the only one who is in this situation. . . . I thought that I was taking care of the issue based on the recommendations given to me.  And, you know, when you buy a washing machine, you expect it to last 10 or 15 years.  And I had spent almost $400 on it and couldn't really afford to just buy another one a year later, so I dealt with it as best I could.  And I was told that if I wiped down the bellows every day that it

was used and let it air out that there wouldn't be a problem. And I went so far as to remove the bellows, soak it in bleach, treat it with some other stuff. I did everything that I could to alleviate all of the mold that was existing. And according to what I was told if I wiped it down every day, the problem would not recur, so that's what I was doing. . . . Well, I was told that the problem could be remediated with this extra preventative maintenance, and I went with that assumption, but I discovered that there's nothing that could be done to remediate this and prevent it. It's going to happen. It's going to continue to happen. . . . That there's nothing I can do, yeah. I thought that if I did a lot of extra stuff, wiping down with bleach, wiping down every time it's wet, et cetera, et cetera, et cetera, that it could be at least tolerable and that I could put off replacing it a little longer, but it's no longer tolerable in any stretch of the imagination.

(Ex. Q (Vogler Dep.) at 34:5-9, 105:5-8, 105:21-106:4, 150:24-151:7, 89:7-23, 115:23-116:3, 116:10-16.)

In addition, all of the Washing Machines purchased by the Plaintiffs are governed by the same warranty that applies to absent Class Members' Machines. Frigidaire has breached its written warranty as to the Plaintiffs and absent Class Members in an identical fashion, by its refusal to pay to repair or replace its defective Washing Machines to address mold and mildew problems. Furthermore, Plaintiffs' and absent Class Members' claims are predicated on Frigidaire's misrepresentations and material omissions concerning its Washing Machines. The factual allegations and claims asserted by the Plaintiffs are substantially similar, if not identical, to those asserted by absent Class Members. As a result, typicality is satisfied.

### 4. Plaintiffs Will Fairly And Adequately Represent The Class

The final element under Rule 23(a) requires that the class representatives will fairly and adequately protect the interests of the class. Rule 23(a)(4). The adequacy requirement encompasses two inquiries: (1) whether there are conflicts of interest between named plaintiffs and absent class members and (2) whether plaintiffs' counsel are "'qualified, experienced, and generally able to conduct the proposed litigation.'" *In re NetBank, Inc.*, 259 F.R.D. at 666 (citation omitted). Minor conflicts will not defeat class certification. *See, e.g., Scientific-Atlanta*, 571 F. Supp. 2d at 1331 (holding that conflicts between the named plaintiff and class members must be "'fundamental'" and relate to "'specific issues in controversy.'") (quotation omitted).

12

Plaintiffs readily satisfy both requirements under Rule 23(a)(4).  Plaintiffs do not have any interests that are contrary or antagonistic to those of putative Class Members.  Plaintiff Brown stated that he seeks to represent "Californians" who have Washing Machines equipped with the defective gasket (Ex. P at 20:16-19) and indicated that, through this lawsuit, he hoped to achieve a "fair shake for everybody in California that has this problem." (*Id.* at 53:24-54:3.)  In addition, Plaintiff Brown has demonstrated a clear understanding of his duties as a class representative and knowledge of the case.  When asked about his understanding of the duties of a class representative, he replied "*[j]ust what I'm doing right now* [participating in a deposition], cooperating, staying in touch with the attorneys regarding whatever is asked of me, . . . ." (*Id.* at 58:7-11 (emphasis added). *See, e.g.*, *Williams Corp. v. Kaiser Sand & Gravel Corp.*, No. C-91-4028 SAW, 1992 U.S. Dist. LEXIS 16947, at *12 (N.D. Cal. Oct. 9, 1992) (adequacy was satisfied even where the named plaintiff "displayed the minimal interest in and familiarity with the nature of the allegations and his duties as class representative . . . .")

Likewise, Plaintiff Michael Vogler stated that he seeks to represent "the purchasers of the Electrolux washing machines with the defective bellows in the State of Texas." (Ex. Q at 151:19-21.)  He further testified that "I would like Frigidaire to - - or Electrolux to stand behind their machines for all of the purchasers of this product that had this bellows, particularly those in Texas, which is the class I'm representing . . . If I see that something is established for all of the people affected by this then I'll feel that justice has been done. Now, I would like to have seen Electrolux do this without having to be prompted, but they did not behave that way." (*Id.* at 147:16-20, 147:24-148:4.)  When asked about his understanding of his duties as a class representative, Mr. Vogler replied "to represent them as - - the people in the class as best I can, to come to depositions and court, if necessary, to provide all of the information that I have to the lawyers so they can present the case." (*Id.* at 155:1-5.)

As discussed above, the interests of the named Plaintiffs are aligned with absent Class Members' interests in that they share a common goal of establishing Frigidaire's liability.  The named Plaintiffs, as with every member of the putative Class, were injured after purchasing

Frigidaire's defective Washing Machines, by Frigidaire's material omissions concerning its Washing Machines' defects, its breach of written and implied warranties and Frigidaire's failure to warn consumers adequately of its Washing Machines' defects.

Plaintiffs have also demonstrated their willingness to vigorously prosecute the interests of the Class through qualified counsel. Plaintiffs' counsel have propounded and analyzed discovery, performed substantial investigation of Plaintiffs' claims, and in large part successfully opposed Defendants' two motions to dismiss [Dkt. Nos. 39 and 88] and two motions to strike. [Dkt. Nos. 45 and 89]. Plaintiffs' counsel are highly experienced in litigating class actions.[3] The record is clear that this litigation has been vigorously litigated, and against one of the most well-resourced law firms in the country. As a result, adequacy is satisfied.

### C. Plaintiffs Satisfy The Requirements Of Rule 23(b)(3)

Plaintiffs must also meet the predominance and superiority requirements under Rule 23(b)(3). Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions and that the class action mechanism is superior to other methods of adjudicating the case. *See, e.g., Amchem*, 521 U.S. at 615.

#### 1. Common Questions Of Law Or Fact Predominate

Predominance requires that the "issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Scientific-Atlanta*, 571 F. Supp. 2d at 1336 (quotation omitted). However, predominance does not require that all questions of law and fact are common, "but only that some questions are common and that they predominate over individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

##### a. Plaintiffs' Claims Are Subject To Generalized Proof

All of Plaintiffs' claims are subject to generalized proof. A review of these claims

---

[3] *See* Exs. R (Wexler Wallace LLP firm resume), S (McCallum Hoaglund Cook & Irby LLP firm resume) and T (Bell & Brigham LLP firm resume).

demonstrates that common questions of fact or law readily predominate over any questions that might affect only individual Class Members.

### i.    Breach Of Express Warranty

Plaintiffs' breach of express warranty claim relates to the uniform provisions of Frigidaire's Tumble Action Washer Warranty, which accompanies every Washing Machine purchased by Plaintiffs and absent Class Members.  Plaintiffs allege that Frigidaire breached its warranty by failing to cure a common design defect inherent in all of its Washing Machines. Courts often find that common issues predominate over individualized issues in cases involving such claims.  *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173-74 (9th Cir. 2010) (predominance was met as to plaintiff's express warranty claim where all of the proposed class members were covered by the same warranty, alleged the same defect, and common proof was required to prove the existence of the defect and defendant's refusal to repair); *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 10-2267, 2011 U.S. App. LEXIS 13663, at *30 (8th Cir. July 6, 2011) (granting certification of plaintiffs' warranty claims involving inherently defective plumbing systems and holding that "the interpretation of [defendant's] warranty and its application to all of the [plaintiffs] is a common question that lends itself to efficient class wide resolution under Rule 23") (citation omitted).

The defect at the heart of this case relates to the design of the Washing Machines' boot and its failure to prevent mold and mildew from developing in the Washing Machine. Frigidaire's Service Flash describes the common problem (Ex. A (indicating that water accumulates in the boot and describing concerns about "biofilm formation . . . .")) and the common solution to the problem.  (*Id.* (providing a "new boot style that does not have convolutions").)  As discussed above, Frigidaire also identifies these issues as "*common concerns*" in its "Avoid Service Checklist." (Ex. J (emphasis added).)

Moreover, Frigidaire's breach is demonstrated by its policy of refusing to repair or replace its Washing Machines.  Indeed, Frigidaire attempts to avoid responsibility for such repairs or replacements by explicitly stating that the accumulation of water in the bellows is "not

the result of defective workmanship or materials in this washer." (Ex. J.) Frigidaire instead maintains that the mold and mildew problems are due to consumers' poor maintenance habits and instructs consumers to address these problems by "wip[ing] the inside steel basket of their Machines after each wash cycle to avoid mold and mildew problems, and [] leav[ing] the door open on the Machines when not in use." (FAC ¶ 5; Ex. U (Care and Cleaning Procedures); Ex. V (Admission No. 9); Mot. to Dismiss at 13). At least one court has called Frigidaire's argument "plainly inappropriate." *Bettua v. Sears, Roebuck and Co.*, No. 08 C 1832, 2009 U.S. Dist. LEXIS 7926, at *16 (N.D. Ill. Jan. 30, 2009).

Whether putative class members provided timely notice to Frigidaire will not introduce individualized issues because Plaintiffs' express warranty claim does not require timely notice under California law. (September 3, 2010 Order at 21-22 (citing *Mexia v. Rinker Boat Co., Inc.*, 95 Cal. Rptr. 3d 285, 292-93 (Ct. App. 2009) and *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367, at *13 n.3 (N.D. Cal. June 5, 2009)). Further, to the extent notice is required, "whether plaintiffs and the class were required to give notice and/or whether they provided sufficient notice are questions that are likely common to the class." *Cartwright v. Viking Indus.*, No. 2:07-CV-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286, at *26 n.9 (E.D. Cal. Sept. 14, 2009).

In addition, Frigidaire's actual notice of the defect can be demonstrated by common evidence that applies equally to all absent Class Members. *See, e.g., Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) (notice may be satisfied by "proof of complaints from some but not all the buyers of a product."). Frigidaire was aware that its Washing Machines were defective several years prior to this lawsuit. Consumers informed Frigidaire of its Washing Machine's mold and mildew problems as early as *2004*. (Ex. M.) Frigidaire's service call databases produced over 1,106 complaints between March 2004 and March 2008 after entry of such narrow search terms as "mold," "mildew" and "odor." (Fuller Decl. at ¶ 20). Furthermore, Frigidaire's Service Flash reveals that it had actual notice of Washing Machine defects as early as April 2007. (Ex. A).

For the aforementioned reasons, common issues predominate over any issues that might affect individual class members with respect to Plaintiffs' breach of express warranty claim.

### ii.    Breach Of Implied Warranty

A defective product breaches the implied warranty of merchantability if the product at issue is not fit for the ordinary purposes for which such products are used and the product was defective, or the defect was undiscoverable, at the time it was sold. *See, e.g., Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 887-88 (Tex. Ct. App. 1979); *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d at 290-91.

Here, all of the Washing Machines suffer from the same latent design defect:  a bellow with convolutions that accumulates water and ultimately fails to prevent mold and mildew from forming in the Washing Machines.  (Ex. A.)  This defect, and the mold and mildew problems that result, damage, stain and otherwise ruin consumers' clothing.  (*See, e.g.*, Ex. P at 34:22-23 (Plaintiff Brown experienced an "odor, [] mildew, and streaking on the clothes, smell on the clothes."); Ex. Q at 85:16-86:6, 87:16-20 (Plaintiff Vogler described mold, mildew and odor problems with his Washing Machine); FAC ¶ 36 ("It seems like such a bad design . . . [I] do not even want to wash my clothes in this mess." (quotation omitted))).  This design defect renders the Machines unfit for the products' ordinary purpose – cleaning clothes.  (*See* September 3, 2010 Order at 23 ("A washing machine that makes laundry smell like mold and mildew has not performed its essential function f washing clothes, even if the machine is mechanically sound.").)

Moreover, because the defect at issue is a latent *design* defect and an inherent problem in all of the Washing Machines, the presence of the inherent defect at the time of sale is a common issue.  As a result, common questions of law or fact regarding Plaintiffs' breach of implied warranty claim predominate over any individual issues. *See, e.g., In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2011 U.S. App. LEXIS 13663, at *34, *36 (affirming the district court's rulings that in the case of warranty claims based on "universal and inherent product defect" plaintiffs may rely on common evidence, that "the question of proximate cause will not involve predominately individualized determinations, and resolution of that issue would be common to

the class.") (internal quotations omitted).

   In addition, as with Plaintiffs' express warranty claim, any notice requirements do not undermine predominance with respect to Plaintiffs' implied warranty claim.  "California law does not require a retail purchaser to provide notice . . . before bringing an implied warranty of merchantability claim."  (September 3, 2010 Order at 24 (citing *Mexia*, 95 Cal. Rptr. 3d at 292-93).)  While notice is required under Texas law, it need not be provided in any particular form.  *See, e.g., Metro Nat'l Corp. v. Dunham-Bush, Inc.*, 984 F. Supp. 538, 561-62 (S.D. Tex. 1997) (notice was met where defendant had specific notice that its products were defective); *see also Reynolds Metals Co. v. Westinghouse Elec. Corp.*, 758 F.2d 1073, 1078 (5th Cir. 1985) (notice provisions under Tex. Bus. & Com. Code § 2.607 are "not stringent and are liberally construed").  As a result, for the same reasons that actual notice may be demonstrated by common evidence that applies equally to all absent Class Members, Frigidaire also had notice of Plaintiffs' implied warranty claim under Texas law.  Accordingly, the notice requirement does not prevent certification of Plaintiff's implied warranty claim under Texas law.  *See, e.g., Sun Coast Res. v. Cooper*, 967 S.W.2d 525, 533 (Tex. Ct. App. 1998) (certifying warranty claims brought on behalf of gasoline purchasers against manufacturers and distributors of defective gasoline product).

   The court in *In re: Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010) ("*Whirlpool*") certified a state-wide class asserting, in part, a breach of warranty claim on facts substantially similar to those underlying this case.  The plaintiffs in *Whirlpool* alleged that they purchased washing machines that contained a design defect causing the machines to

   *accumulate mold, resulting in unpleasant odors and ruined laundry*.  The plaintiffs further allege that *Whirlpool knew* of the machines' propensity to experience mold problems yet failed to disclose that knowledge to the plaintiffs before they bought their machines.  *The mold problems in their machines allegedly persisted despite their various efforts to implement Whirlpool's suggested remedies.*

*Id.* at *4 (emphasis added). *Whirlpool* held that the predominance was satisfied in part because whether Whirlpool knew of the defect and adequately informed consumers of the defect were common questions that predominated over individual ones.  Furthermore, the court found that individualized proof of actual reliance was unnecessary where the plaintiffs alleged nondisclosure of a material fact. *Id.* at *11, *14.  As in *Whirlpool*, Plaintiffs' warranty claims in this case present common questions of fact and law that predominate over any individual issues.

### iii.   Magnuson-Moss Warranty Act

Courts typically look to substantive state law to determine whether a Magnuson-Moss Warranty Act, 15 U.S.C.S. § 2301, *et seq.*, claim is viable.  *See, e.g., Johnson v. Jaguar Cars, Inc.*, No. 1:05-CV-3161-RLV, 2006 U.S. Dist. LEXIS 41166, at *7 (N.D. Ga. June 6, 2006) (citation omitted).  Accordingly, predominance is met with respect to Plaintiffs' Magnuson-Moss Warranty Act claim for the same reasons this requirement is satisfied as to Plaintiffs' warranty claims under California and Texas law.

### iv.   California and Texas State Consumer Protection Statutes

Plaintiffs' claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTP-CPA"), Tex. Bus. & Com. Code § 17.46(b) are subject to generalized proof as to the California and Texas classes.  The UCL provides actionable claims for misrepresentations and failure to disclose where members of the public are likely to be deceived.  *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  California law looks to the likely effect such a practice would have on a reasonable consumer, an issue which is "subject to common proof by the class." *Cartwright*, 2009 U.S. Dist. LEXIS 83286, at *37.  In addition, California does not require individualized proof of deception, reliance or injury.  *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th at 312; *see also Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482, 488 (N.D. Cal. 2011) (granting class certification on behalf of consumers who purchased defective notebook computers and holding in part that proof of manifestation of the defect was not a prerequisite to class certification, that class members' actual injuries need not be identical, and that an

individualized showing of reliance was not required).

The Eleventh Circuit's analysis of consumer protection claims under the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*. in

*Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011) is also instructive and similar to

that applied under the UCL. In *Fitzpatrick*, the Eleventh Circuit held that the district court

correctly determined that "an answer to the paramount question of whether [the product] works

as advertised will directly and substantially impact every class member's liability case and

entitlement to relief . . . recovery under the FDUTPA does not hinge on whether a particular

plaintiff actually relied on [defendant's] claims about [the product's performance] . . . ."

*Fitzpatrick*, 635 F.3d at 1282-83.

Similarly, the TDTP-CPA provides actionable claims for misrepresentations and

omissions of material fact. *See* Tex. Bus. & Com. Code § 17.46(b)(24) (failure to disclose); *Id.*

at §§ 17.46(b)(5)-(7) (representations). Although it is unclear whether reliance is a requirement

under the TDTP-CPA, reliance may nevertheless be established on class-wide basis. *See, e.g.,*

*Lubin v. Farmers Group, Inc.*, No. 03-03-00374-CV, 2009 Tex. App. LEXIS 8584, at *83, *86

(Tex. Ct. App. Nov. 6, 2009). Indeed, putative Class Members' payments for the defective

Washing Machines alone can establish reliance on a class-wide basis. *Alford Chevrolet-Geo v.*

*Jones*, 91 S.W.3d 396, 405 (Tex. Ct. App. 2002) (consumers' payment of a tax they did not owe

"alone is an allegation of reliance."); *Graebel/Houston Movers, Inc. v. Chastain*, 26 S.W.3d 24

(Tex. Ct. App. 2000) (holding that reliance was met on a class-wide basis where a common issue

was whether insurance premiums were collected from the class).

Frigidaire's failure to disclose the Washing Machines' inherent defects and related mold

and mildew problems (*see, e.g.,* FAC ¶ 30; Ex. W (Frigidaire Advertisements ("your laundry

never looked so good" and "your clothes feel fresher and last longer")) are actionable

misrepresentations under the UCL and TDTP-CPA that are common to the proposed Class.

Plaintiffs have expressly stated that they would not have purchased their Frigidaire Washing

Machines had they known that the Washing Machines' design resulted in mold and mildew

problems. (*See*, *e.g.*, Ex. P (37:21-38:3, 60:3-4 ("If I had known there was a mold and mildew issue, I wouldn't have gone anywhere near that machine."); *see also* Ex. Q at 143:3-16 & 16-20, 176:8-11 ("Primarily, they sold me a washer with a defective bellows, did not tell me that I would have the possibility or likelihood of having mold issues and mildew issues. That's the primary thing. Secondarily, if they believed that wiping down the bellows and leaving the door open are required maintenance for it, they did not tell me that, which is an inconvenience which also would have deterred me from buying the machine. And I certainly would not have bought a machine that I thought would give me mold and mildew issues. . . . If they had told me that I was going to have mold issues and I was going to have to take excessive preventative maintenance to deal with those mold issues, I would never have bought that machine. . . . If you had known that the machine that you were purchasing contained a defective boot or bellows, would you have bought the machine?  No.")).  Frigidaire's misrepresentations and nondisclosure of mold and mildew problems related to the defective design of its Washing Machines together with its policy of blaming consumers for such problems, and its failure to provide relief are class-wide issues that are pertinent to Plaintiffs' statutory consumer protection claims.  *See*, *e.g.*, *Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so.") (citation omitted).  Therefore, common questions of law and fact predominate as to Plaintiffs' UCL and TDTP-CPA claims.

For the reasons described above, predominance is satisfied under Rule 23(b)(3).

### 2.  A Class Action Is Superior For The Fair And Efficient Adjudication Of This Action

Rule 23(b)(3) requires that the class action mechanism is "'superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1358 (11th Cir. 2009) (quoting Rule 23(b)(3)).  Courts generally consider the following four factors in determining whether superiority is met:

(A) the interest of members of the class in individually controlling the prosecution

21

> or defense of separate actions; (B) the extent and nature of any litigation
> concerning the controversy already commenced by or against members of the
> class; (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; (D) the difficulties likely to be encountered in the
> management of a class action.

Rule 23(b)(3)(A)-(D).  A review of these four factors demonstrates that a class action is the

superior method for adjudicating this controversy.

First, "no absent class member has indicated an interest in controlling the prosecution of

a separate action." *Smith v. Ga. Energy*, 259 F.R.D. 684, 696 (S.D. Ga. 2009).  Indeed, the costs

individual plaintiffs would have to bear in pursuing this litigation would likely be prohibitive and

quickly subsume any potential recovery. *See, e.g., id.* at 697 ("The 'most compelling rationale

for finding superiority in a class action [is] the existence of a negative value suit,'" where the

cost for individual putative class members to litigate their suits would exceed their individual

damages) (quotation omitted).

Second, there are no other cases that have been filed on behalf of the proposed Class that

are based on the same allegations or disputes as in this matter.  Third, Georgia's aggregate

contacts with this case make it efficient for the parties and the Court to litigate this action in this

District. *See, e.g., Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 570 (2007) (holding that

the third factor under superiority involves considerations of "economies of time, effort, and

expense; . . . .").  Indeed, Frigidaire was headquartered in the District until recently, its Major

Appliances Warranty requires consumers to contact Frigidaire's offices in this District, Frigidaire

conducts business in this District, and makes decisions concerning the marketing, sales, design

and warranty of its Washing Machines in this District.  As a result, much of the evidence and

witnesses that are vital to this case are located in this District. *See, e.g., Scientific-Atlanta*, 571 F.

Supp. 2d at 1344 (holding that the forum was appropriate because it was close to defendant's

headquarters and "therefore many of the witnesses.").

With regard to the fourth factor, this case is eminently manageable in that only two

states' laws are at issue and each of the proposed state-based classes is governed by a single

state's laws.  Such state-based classes eliminate any potential complexities and confusion of

applying numerous states' laws to class members' various claims or a single state's law to a

nationwide class. *See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 701

n.45 (S.D. Fla. 2004) (holding that Rule 23(b)(3) was satisfied in part where plaintiffs sought to

"'apply state law to separate state classes that include those persons who purchased [the product]

in each state.' Therefore, each state's substantive antitrust law will apply to that particular state

class' claims.") (citation omitted); *see also Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C.

Cir. 1986) (variations in state law may be managed by creating subclasses of "states that have

similar legal doctrines.") (quotations omitted).

"[Manageability] will rarely, if ever, be in itself sufficient to prevent certification of a

class. 'Courts are generally reluctant to deny class certification based on speculative problems

with case management.' . . . Even potentially severe management issues have been held

insufficient to defeat class certification.'" *Klay*, 382 F.3d at 1272-73) (quotation omitted).

Furthermore, this factor does not require a court to assess "whether this class action will create

significant management problems, but instead determin[e] whether it will create relatively more

management problems than any of the alternatives (including, [numerous] separate lawsuits by

the class members)." *Id.* at 1273.[4]

Should the Court find that these two classes still render the proposed class action

unmanageable, the Court has a wide variety of tools at its disposable to address any management

problems even after a class is certified. For instance, the Court may "decertify[] the class after

the liability trial . . . creat[e] subclasses; or [] alter[] or amend[] the class." *In re Tri-State*

*Crematory Litig.*, 215 F.R.D. 660, 699 n.28 (N.D. Ga. 2003) (quotation omitted); *see also*

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2009 U.S. Dist.

LEXIS 30937, at *35 (N.D. Ga. Feb. 9, 2009) ("These tools are sufficient to handle any

---

[4] Courts have found the "hardships presented by [pursuing numerous individual actions to be] monumental: Separate proceedings would produce duplicate efforts, unnecessarily increase the costs of litigation, impose an unwarranted burden on this Court . . . and create the risk of inconsistent results for similarly situated parties. Additionally, the cost associated with individual claims may require claimants with potentially small claim amounts to abandon otherwise valid claims simply because pursuing those claims would not be economical." *In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 625 (N.D. Ga. 1997) (quotation omitted).

manageability problems that may arise in the litigation."). Accordingly, each of the four factors under superiority is readily satisfied and class treatment is superior to other methods of adjudication.

## IV.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that their renewed motion for class certification be granted.

Date:  July 13, 2011

**WEXLER WALLACE LLP**

_/s/ Mark J. Tamblyn_
Mark J. Tamblyn (*pro hac vice*)

Ian J. Barlow (*pro hac vice*)
455 Capitol Mall, Suite 231
Sacramento, California  95814
Telephone:  (916) 492-1100
Facsimile:  (916) 492-1124
Email:  mjt@wexlerwallace.com
             ijb@wexlerwallace.com

R. Brent Irby (*pro hac vice*)
Charles A. McCallum, III (*pro hac vice*)
**MCCALLUM, HOAGLUND,**
 **COOK & IRBY, LLP**
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama  35216
Telephone:  (205) 824-7767
Facsimile:  (205) 824-7768
Email:  birby@mhcilaw.com
             cmccallum@mhcilaw.com

Lee W. Brigham
Georgia Bar No. 081698
**BELL & BRIGHAM**
457 Greene Street
Augusta, Georgia  30903
Telephone:  (706) 722-2014
Facsimile:  (706) 722-7552
Email:  lee@bellbrigham.com

Kenneth A. Wexler (*pro hac vice*)
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022
Email:  kaw@wexlerwallace.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2011, I electronically filed the foregoing renewed motion and memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Benjamin H. Brewton
TUCKER, EVERITT, LONG, BREWTON & LANIER
Post Office Box 2426
Augusta, Georgia  30903
Telephone:  (706) 722-0771
Facsimile:  (706) 722-7028
Email:  bbrewton@thefirm453.com

John H. Beisner
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
1440 New York Avenue, N.W.
Washington, D.C.  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
Email:  john.beisner@skadden.com

J. Russell Jackson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
Email:  russell.jackson@skadden.com


              */s/ Mark J. Tamblyn*
Mark J. Tamblyn (*pro hac vice*)
WEXLER WALLACE LLP
455 Capitol Mall, Suite 231
Sacramento, CA 95814
Telephone:  (916) 492-1100
Facsimile:  (916) 492-1124
Email:  mjt@wexlerwallace.com

26