IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| ROBERT BROWN and MICHAEL VOGLER, on behalf of themselves and all others similarly situated, | Case No: CV-108-030 |
| Plaintiffs, | |
| v. | |
| ELECTROLUX HOME PRODUCTS, INC., d/b/a FRIGIDAIRE, | |
| Defendant. | |

**REPLY IN SUPPORT OF PLAINTIFFS'
<u>RENEWED MOTION FOR CLASS CERTIFICATION</u>**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    OVERVIEW OF PREDOMINATE QUESTIONS THAT WILL REQUIRE COMMON ANSWERS ................................................................................................ 5

III.   ARGUMENT ............................................................................................ 10

    A.    The Proposed Classes Are Not Overbroad ............................................ 10

    B.    Plaintiffs' Warranty Claims Do Not Require Individualized Proof Of Manifestation Of Defect, Notice Or Reliance ....................................... 13

        1.    Manifestation Of Defect Is Not Required Under California And Texas Law ......................................................................................... 13

        2.    Any Notice Requirements Are Not Subject to Individualized Evidence.. 14

        3.    Plaintiff Brown's Express Warranty Claim Is Subject To Common Evidence And Does Not Require Proof Of Reliance ............................... 22

    C.    Plaintiffs' Consumer Protection Claims Are Subject to Class-wide Proof........... 26

        1.    Texas Deceptive Trade Practices-Consumer Protection Act ................... 27

        2.    California Unfair Competition Law ........................................................ 30

    D.    Affirmative Defenses Do Not Preclude Certification ............................ 36

    E.    Plaintiffs Satisfy Typicality and Adequacy ......................................... 38

IV.   CONCLUSION.......................................................................................... 40

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aaronson v. Vital Pharmaceuticals, Inc.*
   2010 U.S. Dist. LEXIS 14160 (S.D. Cal. Feb. 17, 2010) ....................................................... 15

*Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003) ...................................... 37

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................................... 32

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ................................................. 32

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ....................................................................... 24

*Brothers v. Hewlett-Packard Co.*
   2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) ...................................................... 25

*Bzdawka v. Milwaukee County*, 238 F.R.D. 469 (E.D. Wis. 2006) ............................................... 32

*Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517 (S.D. Cal. 2011) ............................. 36

*Cartwright v. Viking Indus., Inc.*
   2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 14, 2009)................................... 15, 17, 24, 32

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004) ............................................. 29

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ....................... 30, 31

*Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617 (S.D. Fla. 2008) ......................................... 18

*Cole v. Asurion Corp.*, 267 F.R.D. 322 (C.D. Cal. 2010)................................................. 19, 20, 36

*Coleman v. Cannon Oil Co.*, 141 F.R.D. 516 (M.D. Ala. 1992) .................................................. 32

*Dickerson v. Electrolux Home Prods., Inc.*
   2011 U.S. Dist. LEXIS 26994 (C.D. Cal. Feb. 3, 2011)........................................................ 22

*Ewert v. eBay, Inc.*
   2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sept. 30, 2010) ...................................... 31, 33, 34

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998).............................................. 32

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*
   242 F.R.D. 568 (W.D. Wash. 2007) ................................................................................ 29, 38

## FEDERAL CASES CONT'D.

*Greenwood v. Compucredit Corp.*
  2010 U.S. Dist. LEXIS 127719 (N.D. Cal. Nov. 19, 2010)...............................................34, 36

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988)...........................................................................32

*In re Brazilian Blowout Litig.*
  2011 U.S. Dist. LEXIS 40158 (C.D. Cal. Apr. 12, 2011) .......................................................17

*In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305 (S.D. Ill. 2007) ...........15

*In re HP Inkjet Printer Litig.*
  2006 U.S. Dist. LEXIS 12848 (N.D. Cal. Mar. 7, 2006).......................................................16

*In re Mercedes-Benz*
  2010 U.S. Dist. LEXIS 23624 (D.N.J. Mar. 15, 2010)...........................................................29

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004).....................................................37

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652 (S.D. Cal. 2010).............24, 36

*In re Scientific-Atlanta, Inc. Sec. Lit.*, 571 F. Supp. 2d 1315 (N.D. Ga. 2007) ...........................39

*In re Sony PS3 Other OS Litig.*
  2011 U.S. Dist. LEXIS 16024 (N.D. Cal. Feb. 17, 2011) .................................................25, 26

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*
  2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010) ...................................18, 26, 37, 38

*Johnson v. Gen. Mills, Inc.*
  2011 U.S. Dist. LEXIS 45120 (C.D. Cal. Apr. 20, 2011) .....................................................31

*Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635 (D. Colo. 1986) ...................................................38

*Kearney v. Hyundai Motor Co.*
  2010 U.S. Dist. LEXIS 68242 (C.D. Cal. June 4, 2010) .......................................................25

*Keilholtz v. Lennox Hearth Prods., Inc.*
  2010 U.S. Dist. LEXIS 145535 (N.D. Cal. Feb. 16, 2010) ...................................................29

*Klein v. O'Neal, Inc.*, 222 F.R.D. 564 (N.D. Tex. 2004)...........................................................17

*Kohen v. Pacific Inv. Mgmt. Co. LLC,* 571 F.3d 672 (7th Cir. 2009)............................................11

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir. 1984) ...................................39

## FEDERAL CASES CONT'D.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ...................................... 19

*Makaeff v. Trump Univ., LLC*
    2010 U.S. Dist. LEXIS 108467 (S.D. Cal. Oct. 12, 2010) ...................................... 33

*Mauro v. GMC*
    2008 U.S. Dist. LEXIS 93897 (E.D. Cal. July 15, 2008) ...................................... 25

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008)........................... 29

*McGown v. Bridgestone/Firestone, Inc.*
    2005 U.S. Dist. LEXIS 25598 (E.D. Tex. Oct. 18, 2005) ...................................... 19

*McManus v. Fleetwood Enters., Inc.*, 320 F.3d 552 (5th Cir. 2003) ....................... 7, 17

*Menagerie Prods. v. Citysearch*
    2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009)...................................... 31

*Mims v. Stewart Title Guar. Co.*, 590 F.3d 298 (5th Cir. 2009) ............................ 10

*O'Shea v. Littleton*, 414 U.S. 488 (1973) ............................................................. 32

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ...................................... 11

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008)........................... 29

*Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 2 (D. Mass. 2003)........................ 38

*Pella v. Saltzman*, 606 F.3d 391 (7th Cir. 2010)............................................... 6, 10

*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash. 2009) ......................... 7, 24

*Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437 (N.D. Cal. 2009)...................... 36

*Pottinger v. Miami*, 720 F. Supp. 955 (S.D. Fla. 1989)...................................... 11

*Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) ............................ 28

*Pub. Employees' Ret. Sys. v. Merrill Lynch & Co., Inc.*
    2011 U.S. Dist. LEXIS 93222 (S.D.N.Y. Aug. 22, 2011) ...................................... 17

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)...................................... 16

*Smith v. Georgia Energy USA, LLC*, 259 F.R.D. 684 (S.D. Ga. 2009) ................... 11, 38

**FEDERAL CASES CONT'D.**

*Stearns v. Select Comfort Retail Corp.*
   2009 U.S. Dist. LEXIS 11297 (N.D. Cal. Dec. 4, 2009) ................................. 18, 22

*Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004) ..................................... 37

*Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505 (D.S.C. 2007) ........................................... 38

*Tietsworth v. Sears, Roebuck & Co.*
   2009 U.S. Dist LEXIS 98532 (N.D. Cal. Oct. 13, 2009) ........................................... 13, 18, 25

*Tietsworth v. Sears, Roebuck & Co.*
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................. 13

*Tietsworth v. Sears, Roebuck & Co.*
   2011 U.S. Dist LEXIS 83316 (N.D. Cal. July 29, 2011) ........................................... 13

*Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................ 17

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000) ................................. 37

*Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011) ................................................. 32

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ........................... 14, 16

*Yamada. v. Nobel Biocare Holding AG*
   2011 U.S. Dist LEXIS 92598 (C.D. Cal. Aug. 12, 2011) .............................. 14, 17, 24, 26, 33

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ................................. 24

**STATE CASES**

*Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396 (Tex. Ct. App. 2002) ........................................... 37

*Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966 (2009) ....................................................... 34, 35, 36

*Compaq Computer Corp. v. LaPray*, 79 S.W.3d 779 (Tex. Ct. App. 2002) ................................. 10

*Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951 (1997) ................................................. 31

*Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844 (Tex. Ct. App. 2005) ........................................... 10

*Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57 (1963) ................................................... 15, 16, 18

## STATE CASES CONT'D.

*Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908 (2001) ........................................ 17

*In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010) ................................ 30, 33, 35

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)................................................... 30, 31, 34, 35, 36

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ......................................................... 34, 35

*JHC Ventures, LP v. Fast Trucking, Inc.*, 94 S.W.3d 762 (Tex. Ct. App. 2002) ......................... 38

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986).................................................... 38

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830 (2009) ............................... 36

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) .......................................................... 30

*Lewis v. Robinson Ford Sales*, 156 Cal. App. 4th 359 (2007)..................................................... 34

*Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2001) ................................ 33

*McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174 (2010).......................................................... 30

*Metowski v. Traid Corp.*, 28 Cal. App. 3d 332 (1972) ......................................................... 15, 20

*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009)..................................................... 15, 16

*Microsoft Corp. v. Manning*, 914 S.W.2d 602 (Tex. Ct. App. 1995).................................... 10, 17

*Pfizer v. Superior Court*, 182 Cal. App. 4th 622 (2010).......................................................... 35, 36

*Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638 (2008) ................................ 33

*Schein v. Stromboe*, 102 S.W.3d 675 (Tex. 2002)...................................................................... 27

*Southwestern Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909 (Tex. 2010)...... 27, 28, 29, 30

*Tracker Marine LP v. Ogle*, 108 S.W.3d 349 (2003) ................................................................ 29

*Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886 (Tex. Civ. App. 1979) ................................ 16

*Wallace v. SmithBarney, Inc.*
    1997 Tex. App. LEXIS 1475 (Tex. Ct. App. March 27, 1997) ............................................. 37

*Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213 (2010) ........................................... 25, 26

**STATE CASES CONT'D.**

*Wilcox v. Hillcrest Mem'l Park*, 696 S.W.2d 423 (Tex. Ct. App. 1985)................................. 19, 20

*Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (1986)............................................ 25

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200, *et seq.* ...................................................................................... 8

Cal. Com. Code § 2607........................................................................................................... 16, 19

Song-Beverly Consumer Warranty Act
    Cal. Civ. Code § 1790, *et seq.*............................................................................................... 15

Texas Deceptive Trade Practices-Consumer Protection Act
    Tex. Bus. & Com. Code Ann. § 17.46......................................................................... 8, 27, 42

**OTHER**

Herbert Newberg & Allan Conte, *Newberg on Class Actions* (4th ed. 2002) ................................ 8

## I.   **INTRODUCTION**

There are few proposed consumer class actions where plaintiffs have the benefit of the defendant company's internal document that defines the *common problem* and the *common solution* to it.

In its Service Flash LN073 ("Service Flash"), Electrolux Home Products, Inc. d/b/a Frigidaire ("Frigidaire" or "Defendant") concedes that there is a "likelihood of a biofilm formation" that has been reduced by the design of its newer Washing Machines.  (Plaintiffs' Renewed Motion and Memorandum of Law in Support of Renewed Motion for Class Certification ("Renewed Motion"), Ex. A.)  Although Frigidaire argues that there are a myriad of reasons why mold and mildew forms in its Washing Machines, Frigidaire has addressed biofilm, or mold and mildew, issues by replacing and re-designing the very component that Plaintiffs allege is defective – the convoluted bellow.  Frigidaire has itself suggested and started to implement a common fix (a new boot design without convolutions) to a common problem (a convoluted boot that accumulates water).  Against this backdrop, Frigidaire argues that class certification is impossible.

As the "SOLUTION" to "water standing in the bottom of the washer boot after completion of a wash cycle . . . [and] the likelihood of a biofilm formation," Frigidaire designed "[a] new boot style that *does not have convolutions . . . .*"  (Renewed Mot., Ex. A (emphasis added).)  Furthermore, Frigidaire indicates that "in 2006, Electrolux began introducing a new 'S' shaped boot design on certain Frigidaire models, which was subsequently phased into other models.  The 'S' shaped bellow *does not have convolutions* in which *water can become trapped.*"  (Defendant's Opposition to Plaintiffs' Motion for Class Certification, filed on January 15, 2010 ("Initial Opposition") at 10 [Dkt. No. 106] (emphasis added).)  Replacement gaskets were also repeatedly recommended or offered by Frigidaire service technicians to address customers' concerns about Washing Machines' mold and mildew problems:

- [Customer:] It Stinks! The rubber door gasket holds water, does not drain the way it is designed. Is there a 'new improved model'? If so please give us an idea how to stop this . . . . [Frigidaire:] At this time we do have another boot with a drain feature to help eliminate the situation you are speaking of . . . the boot was not on your machine when you purchased it, as it is so new that it was not in production yet. However, an authorized servicer could install it for you at no charge under the manufacturer's warranty. They can help with P/N 134515300.[1] (Declaration of Mark J. Tamblyn in Support of Reply Memorandum in Support of Motion for Class Certification ("Tamblyn Decl. ISO Initial Reply") [Dkt. No. 112-1], Ex. A. (Electrolux 001845-46).)

- [Customer:] Water collects in the rubber seal around the door of the washer leaving a mildew/mold smell in the washer. Should this not drain out? . . . . [Frigidaire:] Note: there is a newer bellows, P/N 134515300, that could be put on this washer. (*Id.*, Electrolux 001473-74.)

- [Customer:] The 'flexible gasket' . . . collects water and mildews (stinks). On page 8 of the Avoid Service checklist page says, 'Water collects in the folds of the bellows at the end of cycle . . . .' Collected water in FL leads to mildew . . . . This has been a problem since we bought the washer . . . . What do you suggest? [Frigidaire:] Note: there is a newer boot, P/N 134515300, that will hold less water. (*Id.*, Electrolux 001465-66.)

Nevertheless, Frigidaire attempts to conjure various individualized fact questions that are simply not relevant to the core question of whether the class device is the most efficient method of addressing the merits of Plaintiffs' claims. According to Frigidaire, consumers are to blame for mold and mildew formation because they failed to wipe down their Washing Machine's boot after each use, did not consistently clean their machine with cleaning tablets, bleach and chlorine, and did not leave the door to their Washing Machine ajar after wash cycles.

Yet, Frigidaire has also instructed that consumers should "***NOT* leave the washer door open**" because doing so could subject children to harm. (First Amended Complaint ("FAC") ¶ 44 (emphasis in the original).) Moreover, customers who *did* follow Frigidaire's undisclosed, post-sale maintenance suggestions still persistently experienced recurring mold and mildew problems:

- Since we have purchased this washer/dryer we have had a mold problem with the seal on the door of the washer retaining water which produces mold and

---

[1] P/N 134515300 is the "new boot" referenced in Frigidaire's Service Flash. (Renewed Mot., Ex. A.)

then a wash load that smells very bad. W[]e have over the years very *religiously left the door open and wiped the seal. We even periodically scrub the inside of the seal with a toothbrush and bleach or alcohol to clean the mold.* Searching online now we find that this is a design flaw which can be corrected with a replacement seal which does not retain the water. I would like for Frigidaire to correct the problem as *even with all our attention* the wash still smells badly. . . . . Progress! I contacted Frigidaire. They finally agreed that once mold is in the machine, *there is nothing you can do to get it out. It will keep coming back. (Save your bleach . . . it will not work.)* They agreed to have a serviceman come out and replace the rubber gasket on my machine at no charge. There is a new model of gasket that doesn't trap the water like the original does. (Tamblyn Decl. ISO Initial Reply, Ex. B (Electrolux 001467-68 (emphasis added).)

- [Customer:] Thanks for all the advice but *you are telling me nothing new.* I thought it was quite clear that the reason my clothes stink is that the water pools in the door seal due to a poor design – isn't that why the design has now been changed only a year later? The holes to drain are on the side of the seal rather than on the bottom so the water never drains out. I would like it fixed *not just advice to do more of what I have already been doing that doesn't work and quite frankly I don't think I should have to be doing with a brand new washing machine.* My old machine was maintenance free – this cos[]t a lot more and was supposed to be so great. I hope you can make it so! [Frigidaire:] I am sorry, but I cannot [*sic*] personally help you with your concession request . . . I forwarded your e-mail to our Customer Care Center. However, the Customer Care Center is a busy place, . . . . (*Id.*, Electrolux 001927 (emphasis added).)

This is consistent with the experiences of the class representatives:

A:   It keeps coming back. And the staining never went away despite everything I did. I soaked [the bellows] in a bucket of bleach water because wiping it down with bleach wasn't making the staining go away.

So I tried soaking it. Didn't get rid of the staining, but I thought it would -- got rid of the active mold. And I took all the preventative measures that they recommended, and this problem gradually came back and has since gotten worse than it was when I first discovered it, although the inside of the bellows is about the same as when I first discovered it.

You know, I keep wiping it down. It keeps coming back. I keep wiping it down, and - - but it's - - gotten worse.

(Declaration of Mark J. Tamblyn in Support of Reply in Support of Renewed Motion for Class Certification ("Tamblyn Declaration"), Ex. A (Vogler Dep.) at 112:13 – 113:3.)

A:    Well, I was told that the problem could be remediated with this extra preventative maintenance, and I went with that assumption, but I discovered that there's nothing that could be done to remediate this and prevent it.  It's going to happen.  It's going to continue to happen.

(*Id.* at 115:23 – 116:3.)

Q:    What are you experiencing with the seal in this washer?

A:    The odor, the mildew, and streaking on the clothes, smell on the clothes . . . . We wipe the bellows out and dry the inside and wipe it down with cleaners . . . .

(*Id.*, Ex. B (Brown Dep.) at 34:20-23; 35:14-16.)

A:    [W]e've done everything that was suggested we do to cure it, and it hasn't resolved the problem.  So I can't imagine anyone is having a different experience.

(*Id.* at 57:7-10.)

None of the arguments raised in Frigidaire's Opposition to Plaintiffs' Renewed Motion for Class Certification ("Opposition") warrant denial of class certification.  As demonstrated herein, the proposed classes are not overbroad as Frigidaire suggests, and the class definition sufficiently provides the Court with standards to determine class membership.  Frigidaire further contends that none of Plaintiffs' claims can be certified due to a myriad of purported "individual issues" that Frigidaire has concocted, such as "whether and why" any absent class member experienced a mold problem.  However, Frigidaire's contentions wholly disregard the very nature of Plaintiffs' latent defect claims.  As shown herein, each claim premised on Frigidaire's inherently defective machines is subject to common proof applicable to all class members. Additionally, as explained herein, any applicable notice requirement under Plaintiffs' warranty claims are not subject to individualized evidence and does not defeat class certification. Likewise, Plaintiffs' consumer protection claims are subject to class-wide proof and are well-suited for class certification.  Frigidaire also suggests that the issue of predominance defeats certification by its unilateral interjection of speculative affirmative defenses.  Acutely aware of this tactic, the majority of courts, including the Eleventh Circuit Court of Appeals, have

uniformly held that the presence of alleged affirmative defenses does not preclude certification. And finally, as shown herein, Frigidaire's assertions that the Plaintiffs fail to satisfy the elements of typicality and adequacy are completely without merit.

For these reasons, and as discussed more fully below, Plaintiffs respectfully submit that the proposed classes should be certified.

## II.   OVERVIEW OF PREDOMINATE QUESTIONS THAT WILL REQUIRE COMMON ANSWERS

Despite Frigidaire's "shotgun" attempt to conjure individual issues on multiple fronts, when the smoke clears the fact remains that this case simply comes down to certain core common questions that will necessarily require common answers. Because the answers to these outcome-determinative questions will be the same for each class member, individual, repetitive trials involving this common evidence would be an inefficient use of judicial resources. This case, involving a common design defect in each machine and a common fix to it, is appropriate for class certification.

Take, for instance, the breach of implied warranty claim that is shared by both Plaintiffs Brown and Vogler. Generally, to prevail on a breach of implied warranty of merchantability claim, the plaintiff must show that, at the time the product was sold, it contained a defect which rendered the product unfit for its ordinary purpose. This claim will involve predominant, outcome-determinative questions which will necessarily require common answers for *each* class member. Examples include:

- ***Is the convoluted boot at the center of Plaintiffs' claim defective?***

Even Frigidaire cannot deny that this is an overreaching common question at the heart of this case. The boot at the center of Plaintiffs' claims was defectively designed in that it contains convolutions which, rather than properly drain water, instead traps water and elements and allows for the propagation of mold and bacteria. Over time, the consequence of this defect results in what Frigidaire acknowledges as "a likelihood of biofilm formation," i.e., mold and mildew. (Renewed Mot., Ex. A.) Indeed, as the "SOLUTION" to "water standing in the bottom

of the washer boot ... [and] the likelihood of biofilm formation," Frigidaire designed "a new boot style that does not have the convolutions" and "in 2006, Frigidaire began the S shaped bellow which does not have convolutions in which water can become trapped." (Initial Opp. at 10.)

Against this backdrop, Frigidaire would be hard-pressed to deny the defective nature of its convoluted boot. Regardless, whether the convoluted boot is or is not defective is undeniably a core common question that predominates over all others. Identical evidence of the defect concerning Frigidaire's pattern and practice regarding the design, manufacture and sale of Frigidaire's Washing Machines would have to be re-litigated in each individual trial if the class here is not certified. *See, e.g., Pella v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) (identical evidence required to prove alleged design defect in aluminum clad windows).

*More importantly*, the answer to this question will not vary from class member to class member. The answer to this common question will involve a substantive merits determination premised on expert analysis, common proof, and conclusions from the trier of fact. But, when the question "is the boot defective?" is answered, it will undeniably be answered for *every* class member.

- ***If the convoluted boot is defective, will its defective nature inevitably result in mold and mildew formation under normal operating procedures which render the washing machine unfit for its ordinary purpose of cleaning clothes?***

Like the common question previously discussed, the answer to this common question will involve a substantive, merits-based determination that will be derived through expert analysis, common proof, and factual conclusions from the jury. But, at the end of the day, when the question is conclusively answered, it will be answered as to *all* class members. And, if at the merits stage the question is answered in the affirmative, then Plaintiffs have proven a recoverable breach of implied warranty of merchantability claim for all class members, despite Frigidaire's repeated attempts to manufacture self-serving individual issues.[2]

---

[2] Frigidaire fails to explain how the question of the existence of the inherent design defect is laden with individual issues. To the contrary, class members had no role in the manufacture of their Washing Machines. The way in which the defective design causes the propagation of mold and mildew, and how mold and mildew manifests are matters of expert proof, which is identical for every Washing Machine sold by Frigidaire, and does not come from

At the merits stage, Plaintiff will offer expert proof demonstrating that, due to the boot's defective design wherein water and grime do not properly drain but instead become trapped, a consumer who operates her Washing Machine under normal, *ordinary* operating procedures will ultimately and inevitably encounter mold and mildew formation that, as in the case of the named Plaintiffs, stains and odorizes clothes.[3]  Plaintiffs will demonstrate through expert proof that the defective nature of the bellows manifests upon the machine's first use, as the bellow does not properly drain water and elements, but instead traps them upon first use and with each subsequent use.

Of course, biofilm buildup and mold growth occur over a period of time.  Obviously, a consumer who purchases a Frigidaire front loader and only uses it once or twice is unlikely to ever have a mold or mildew issue and the machine will have performed as intended.  However, Plaintiffs' implied warranty claim, like *all* implied warranty claims, does not turn on any unusual or unique scenario Frigidaire can concoct.  Rather, Plaintiffs' implied warranty claims are premised on, as Plaintiffs will prove through expert proof, the fact that mold and mildew formation due to the defective design of the boot is inevitable during the consumer's normal and anticipated use and operation of the machine.  Plaintiffs' will demonstrate that when the machine is used as intended and in accordance with Frigidaire's point of sale instructions as to operation and maintenance, the boot's defective propensity to trap water and elements will, nonetheless, inevitably result in mold and mildew formation that can stain and odorize garments.[4]

---

class members.  *Compare Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 540 (W.D. Wash. Jan. 9, 2009) ("commonality exists because all class members allegedly share the same problem: a defective in their ChoiceDek product causing significant recurring molding problems on their decks.  Common questions include whether the product is defective [and] whether Defendant knew or should have known of the defect . . . .").

[3] Indeed, as Plaintiffs testified, even Frigidaire's cumbersome, post-sale remediation suggestions did nothing to cure the persistent mold and mildew problems.  (Tamblyn Decl., Ex. A at 112:13-113:3, 115:23-116:3; *Id.*, Ex. B at 34:20-23; 35:14-16, 57:7-10.)

[4] Frigidaire's tired contentions about a purported lack of "manifestation" or "injury" are nothing but a smokescreen and miss the mark.  As stated by the Fifth Circuit in *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 552 (5th Cir. 2003) (discussed herein), "these arguments misapprehend the nature of the implied warranty of merchantability cause of action."  Contrary to Frigidaire's assertions, *when* the mold manifests itself does not determine whether a Washing Machine is fit for its ordinary purpose of cleaning.  Rather, *that* the biofilm defect exists *at all* renders the Washing Machines unfit for their ordinary purpose.  Frigidaire's "manifestation" and "injury" arguments ignore the

Again, this pivotal question will be answered by the trier of fact after the parties have submitted their substantive evidence on the issue. However, when the question is answered, it will be conclusively answered for all class members with Washing Machines containing the defective boot. And if it is answered in the affirmative, Plaintiffs have demonstrated a recoverable implied warranty claim not only for themselves, but for all other class members as well.

- ***If the convoluted boot is defective, did the defect exist at the point of sale?***

Plaintiffs must prove this fact as an element of their implied warranty claims. It is a question whose answer will not vary from plaintiff to plaintiff. Indeed, even at this early stage, it is doubtful that the common answer to this common question is even in dispute.

Like the Plaintiffs' breach of implied warranty claims,[5] their claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.46, will also stand or fall on certain pivotal common questions which, when answered, will be answered uniformly for each class member. Examples include:

- ***Did Frigidaire fail to disclose information about this defect and the problems resulting therefrom to the buying public?***

This question involves a uniform concealment of common information as to *each* class member. The proof necessary to evidence this fact will be the same for each class member, and that common evidence will demonstrate that at *no* time has Frigidaire ever disclosed this information to purchasers so they could make informed buying decisions. Frigidaire's internal Service Flash recognizing the common problem and a common solution to it has never been

---

nature of Plaintiffs' claims, which seek recovery for damages arising from a Washing Machine that has a constant and inevitable propensity to propagate mold and biofilm, and must be regularly and frequently treated to control – *not eliminate* – biofilm and mold development.

[5] Plaintiff Brown's expressed warranty claim is also subject to common proof and will lead to common answers. To be certain, every class member received the same standard form warranty with their Washing Machines and Frigidaire has systematically failed to honor it. Frigidaire's policy and practice has been to attribute mold and mildew issues to "poor consumer maintenance" rather than recall their defective machines and provide a replacement bellow or Machine to its customers.

provided by Frigidaire to class members. Frigidaire's standard form point of sale materials say nothing about the defect or of a "likelihood of biofilm formation." In fact, Frigidaire's form "Service Checklist" provided to purchasers at the point of sale identifies "Common concerns that are not the result of defective workmanship or materials in the washer." (Renewed Mot., Ex. J.) Under the concern identified as "Water collects in the folds of the bellows at the end of the cycle," Frigidaire's "POSSIBLE CAUSE/SOLUTION" merely states: "This is a result of the washing action and is part of the normal operation of the washer." (*Id.*)

Clearly, the answer to this pivotal question underlying Plaintiffs' consumer protection claims will be the same for each class member.

- *Did Frigidaire know about this defect and the problems resulting therefrom when the subject washing machines were sold to the class?*

Following presentment of the pertinent evidence, the answer to this question will undeniably be common to the class. And Plaintiffs fully intend to demonstrate that the common answer is "yes."

- *Did Frigidaire's failure to disclose this information cause harm to the class members?*

Once again, the answer to this common question will be the same for each class member; and that common answer is a resounding "yes." Given the unseemly prospect of heavy mold growth in a machine that is intended to clean clothes, it simply defies common sense and logic to think that a reasonable consumer would purchase these machines if its inherent defect and resulting mold and mildew problems were properly disclosed.

The answers to these pivotal and outcome-determinative questions will be common to the class and will predominate over any individual concerns. The evidence required for answering these common questions will be the same for each class member, thus negating any need for repetitive individual trials. Will there be *some* individual questions or issues? Certainly; it is inevitable in any class proceeding. But, at this stage, the relevant inquiry for the Court is whether common questions *predominate* over any individual questions that may exist, thus

making the class procedure the most effective procedural mechanism for resolving this dispute. That is, the key test of predominance is "whether the same issues *would necessarily be re-litigated over and over again if plaintiffs were required to bring separate actions.*" *Pella v. Saltzman*, 257 F.R.D. 471, 478 (N.D. Ill. 2009) (certifying window design defect classes), *aff'd* 606 F.2d 391 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 998 (U.S., Jan. 18, 2011) (No. 10-355). Respectfully, these core questions surrounding Plaintiff's claims predominate over any individual concerns Frigidaire can muster to avoid class certification.

## III.   ARGUMENT

### A.   The Proposed Classes Are Not Overbroad

Frigidaire's argument that the proposed classes are overbroad because they *may* include individuals who suffered no injury is both speculative and legally irrelevant. Frigidaire demands evidence of the harm that has befallen each member comprising this putative class, but actual injury to absent class members need not be proven at this stage. *See, e.g., Mims v. Stewart Title Guar. Co.,* 590 F.3d 298, 306 (5th Cir. 2009) ("Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct."). Frigidaire's argument has been consistently rejected.[6] On this very issue, Judge Richard Posner, writing for a unanimous panel, instructed:

> What is true is that a class will often include persons who have not been injured by the defendant's conduct; indeed this is almost inevitable because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown. Such a possibility or indeed inevitability does not preclude class certification despite statements in

---

[6] *Microsoft Corp. v. Manning,* 914 S.W.2d 602 (Tex. Ct. App. 1995) (holding software that *could not* successfully perform data compression – regardless of whether plaintiff attempted to use this feature – did not or would not perform adequately in its ordinary function so that a "defect" existed causing injury and loss of benefit-of-the-bargain damages); *Everett v. TK-Taito, L.L.C.,* 178 S.W.3d 844 (Tex. Ct. App. 2005) ("An actual malfunction of the product or good is not required to establish an injury; what is required is an allegation that the alleged defect will inevitably manifest itself in the ordinary use of the product and that the defect renders the product unfit for the ordinary purposes for which the product is used."); *Compaq Computer Corp. v. LaPray,* 79 S.W.3d 779, 792 (Tex. Ct. App. 2002) (*rev'd on other grounds,* 135 S.W.3d 657 (Tex. 2004)) ("Software's useful life, however, is indefinite. Even though the defect is not manifest today, perhaps because the user is not using the [advertised] feature, it may manifest itself tomorrow. The only way for [a] buyer to avoid the possibility of injury is to pay for the upgrade, never use the [advertised] feature, or use another operating system. The buyer never gets what he bargained for, i.e., an operating system with an effective [advertised] feature.").

some cases that it must be reasonably clear at the outset that all class members were injured by the defendant's conduct. Those cases focus on the class definition; if the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad.

*Kohen v. Pacific Inv. Mgmt. Co. LLC,* 571 F.3d 672, 677 (7th Cir. 2009) (citations omitted).

Further, the law of this Circuit is clear that a "class definition must provide the Court with practical standards to determine membership in the class." *Smith v. Georgia Energy USA, LLC,* 259 F.R.D. 684, 693 (S.D. Ga. 2009) (*citing Pottinger v. Miami,* 720 F. Supp. 955, 958 (S.D. Fla. 1989)). Combining these two principals, it is evident that the proposed class definitions are not overbroad. The proposed class definitions in this case, which are objectively defined as those persons or entities in Texas and California who purchased, other than for resale, Frigidaire washing machines equipped with a convoluted bellow, meet this requirement and do not sweep into the class individuals who could not possibly (as a matter of law or fact) have been injured by Frigidaire.[7]

Frigidaire relies upon the Seventh Circuit's decision in *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006) (and other cases), for the proposition that the proposed class definitions are overbroad. In *Oshana,* the Seventh Circuit observed that a class action proponent must show "that the class is indeed identifiable as a class." But in *Oshana,* the plaintiff challenged Coca-Cola's failure to disclose the presence of saccharin in fountain-drink Diet Coke, and the proposed class included anyone who had purchased the drink since 1999, whether or not he or she had been deceived about saccharin. Such a definition was over-inclusive, the court concluded: "Such a class could include millions who were not deceived and thus have no grievance under the [Illinois Consumer Fraud and Deceptive Practices Act]. Some people may

---

[7] While Frigidaire challenges ascertainability by arguing that it would be troublesome to identify which class members had Washing Machines with the convoluted bellow (Opp. at 11 n.6), the objective criteria for making such determinations are clearly in evidence in this case. Each Frigidaire washing machine has a model number, serial number, and standard written warranty contained in user guides. Moreover, Electrolux maintains databases which house customer identity information and service or warranty interactions with customers. In addition, although Frigidaire fails to note this in its Opposition (*see* Opp., Ex. 2 (Hill Decl.) at ¶ 6), its own Staff Engineer previous stated that "of the approximately 1,336,008 Electrolux front load washers sold during th[e] [class] period, approximately 585,868 used a convoluted bellow . . . *Electrolux could use dates of manufacture to determine the bellow type for some machines,* . . . ." (*See* Initial Opp., Ex. 11 (Hill Decl.) ¶ 9 (emphasis added); *see also id.,* Ex. 12 (Tumble Action Washer Warranty) and 14 (detailing washing machine product specifications)).

have bought fountain diet coke *because* it contained saccharin, and some people may have bought fountain Diet Coke *even though* it had saccharin." *Id.* at 514. Such factual questions based on deceptive marketing claims are not at all present in this case.

Frigidaire next contends that the proposed classes are overbroad because "[t]he overwhelming majority of the proposed class members who purchased machines with convoluted bellows have never complained about a problem with their washing machine." (Opp. at 13.) Frigidaire claims that "less than two-tenths of a percent of the putative class members required a visit by a service technician to address alleged problems relating to odor, mold or mildew during the warranty period." (*Id.*, Ex. 2 (Hill Decl.) at ¶ 10.)

Plaintiffs' Third Set Of Requests for Production of Documents requested "[A]ll documents, including but not limited to, in service call records, warranty records, information collected, processed, and maintained by Service Bench and/or in Your Quality Evaluation System, or in correspondence, emails or other electronic transmissions submitted to You by consumers, that include the following [eighty-three] terms and Boolean Search terms." (Tamblyn Decl., Ex. C.) Frigidaire, however, decided that for purposes of its Opposition it would be more appropriate to run the search terms "mold" "mildew" or "odor." (Opp., Ex. 2.) Frigidaire cannot seriously argue that a search for the terms "mold" "mildew" and "odor" definitively establishes that less than two-tenths of one percent of consumers logged a complaint regarding the mold and mildew problems at issue in this case. Further, Frigidaire's search was limited to calls logged during the warranty period. However, given the nature of the defect, it is likely that the mold and mildew problems manifested over time, during and after the warranty period. Plaintiffs submit that this is not a reliable means for identifying the frequency or presence of mold; thus, this figure is conceivably just the "tip of the iceberg." This view is supported by Frigidaire's design change of the bellow and its Service Flash. In due course, Plaintiffs will address these issues on the merits.

Finally, Frigidaire argues that the proposed classes are overbroad for yet one more reason: they include persons who purchased but no longer own Frigidaire Washing Machines.

To support this argument Frigidaire, lacking any evidentiary support, advances an unusual argument:

> it is an extremely common practice to leave washers and other large appliances behind when moving to a new home. Here the class period extends back to 2004 – making it very likely that some class members have moved on to new homes and no longer own the washing machines they purchased up to seven years ago. If any of these movers left their Electrolux washers behind, they would have no actionable injury unless they could show that an alleged defect in the washing machines caused them to receive less for the sale of their home than they otherwise would have – a highly unlikely proposition.

(Opp. at 14.)

Frigidaire's baseless assertion that people *may* move and leave their washers at their former houses is purely speculative. As such, the Court should disregard this argument. For the reasons articulated above, the Court should hold that the proposed classes are objectively defined and are not overbroad.

## B. Plaintiffs' Warranty Claims Do Not Require Individualized Proof Of Manifestation Of Defect, Notice Or Reliance

### 1. Manifestation Of Defect Is Not Required Under California And Texas Law

Frigidaire relies upon another washing machine defect case, *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist LEXIS 98532, at **36-37 (N.D. Cal. Oct. 13, 2009), to argue that all class members must possess machines with a manifested defect. In *Tietsworth*, Judge Fogel determined that the plaintiffs had failed to plead their washing machines were unfit for their ordinary purpose for cleaning clothes. By contrast, Plaintiffs in this action specifically make that allegation. (FAC ¶¶ 2, 33, 42, 59, 60, 64).

More importantly, just weeks before Electrolux filed its opposition brief, Judge Fogel expressly held – in the same *Tietsworth* action – that it is *appropriate* to include in a class definition "*proposed class members who purchase the Machines but did not experience a malfunction within the designated timeframe.*" *Tietsworth v. Sears Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2011 U.S. Dist LEXIS 83316, at *10-11 (relying, in part, upon the Ninth

Circuit's class certification defect decision in *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)) (italics added); *see also, Yamada, D.D.S. v. Nobel Biocare Holding AG*, No. 2:10-CV-04849 JHN (PLAx), 2011 U.S. Dist LEXIS 92598, at **14, 16-17 (C.D. Cal. Aug. 12, 2011) (granting class certification in product defect case where plaintiff alleged that products "as designed and manufactured are defective, and therefore, its follows that class members who purchased the implants have suffered injury in fact").

Finally, it is noteworthy that Plaintiffs specifically allege that the Washing Machines have diminished value as a result of their defect.  (FAC ¶¶ 6, 81, 92.)  This allegation is uniform as to all class members, whether they have experienced a manifestation of the defect or not. While Electrolux attempts to confront this express allegation by contending without evidence that there is no secondary market for washing machines (Opp. at 13 n.7), this is an issue for trial that will be resolved by common evidence that does not depend on individual circumstances (*i.e.* purchasers have nothing to do with the manufacturing of a machine equipped with a defective part). *See, e.g., Wolin*, 617 F.3d at 1173 ("[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicle were sold with an alignment defect.").

Accordingly, this Court should certify the proposed classes for a class wide determination on the merits.

### 2.     Any Notice Requirements Are Not Subject to Individualized Evidence

The common question of whether Frigidaire had notice that its Washing Machines were defective and that it breached its form warranty generates a consistent and resounding answer: "Yes."  Both named Plaintiffs provided Frigidaire with notice, Frigidaire was aware of these defects long before the filing of this lawsuit and it has had ample opportunities to investigate and cure its Washing Machines' mold and mildew problems prior to and after this case was initiated.

Frigidaire seeks to apply an improper standing requirement *within* the proposed Class. However, "[i]n the context of a class action lawsuit, standing is generally 'assessed solely with respect to class representatives, not unnamed members of the class.'" *Cartwright v. Viking Indus., Inc.*, No. 2:07-cv-02159-FCD-EFB, 2009 U.S. Dist. LEXIS 83286, at *26 n.9 (E.D. Cal.

Sept. 14, 2009) (quoting *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 310 (S.D. Ill. 2007)).  Notice is not an individualized concern in this case.

<blockquote>

**a.**     **Proof of Notice Is Not Required As To Every Absent Class Member, If At All**

</blockquote>

While the Song-Beverly Consumer Warranty Act ("Song-Beverly"), Cal. Civ. Code §

1790, *et seq.*, requires a buyer to provide notice to a manufacturer if delivery of the

nonconforming good is not practicable, Cal. Civ. Code § 1793.2(c), neither party can cite to a

case where this requirement applies to *every absent class member*.  The principle articulated in

*Metowski v. Traid Corp.*, 28 Cal. App. 3d 332 (1972) is instructive – where the defendant was

aware of the breach at the time of sale, "*demand for notice of the breach from each and every*

*member of the class may be a meaningless ritual* . . . Conceivably, the statutory demand for

notice might be satisfied by proof of complaints from *some but not all* buyers of the product."

*Id.* at 339 (emphasis added).

Furthermore, as this Court has recognized, Song-Beverly *enhances* the consumer

protections afforded under the Commercial Code,[8] and the notice requirement under the

Commercial Code is *excused* as to "[a] manufacturer[] with whom [consumers] have not dealt . .

. it becomes a booby-trap for the unwary.  The injured consumer is seldom 'steeped in the

business practice which justifies the rule,' and at least until he has had legal advice it will not

occur to him to give notice to one with whom he has had no dealings.'"  *Greenman v. Yuba*

*Power Prods.*, 59 Cal. 2d 57, 61 (1963) (citations omitted).  The reasoning articulated by the

California Supreme Court in *Greenman* has been followed by several district courts in

California.  *See, e.g., Aaronson v. Vital Pharmaceuticals, Inc.*, No. 09-CV-1333 W(CAB), 2010

U.S. Dist. LEXIS 14160, at *5 (S.D. Cal. Feb. 17, 2010) ("In claims against a manufacturer of

goods, however, *California law does not require notice* . . . Because [plaintiff's] claims are

---

[8] *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303-04 (2009) (Song-Beverly "'is strongly pro-consumer' . . . .[and] 'makes clear its pro-consumer remedies are *in addition* to those available to a consumer pursuant to the [Uniform] Commercial Code . . . .'") (citations omitted); *see also* September 3, 2010 Order at 21 [Dkt. No. 124] ("Song-Beverly was enacted to provide consumers with greater protection and remedies than the Commercial Code, . . . .").

against [defendant] in its capacity as a manufacturer, not as a seller, *notice is not required*.")
(emphasis added); *In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2006 U.S. Dist. LEXIS
12848, at **14-17 (N.D. Cal. Mar. 7, 2006) (notice under Cal. Com. Code § 2607 is "*no longer
required*" under California law "where the action is against a manufacturer on a warranty that
arises independently of a contract of sale, *such as a manufacturer's express warranty* . . .
Regardless, 'notice . . . can under California law *follow* commencement of suit . . . .'") (emphasis
added) (citations omitted); *cf. Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988-89 (N.D. Cal.
2009) (noting the *Greenman* exception to the notice requirement but nevertheless dismissing a
claim for failure to give notice to the manufacturer where the product was purchased directly
from the manufacturer's online store).[9]

Here, Frigidaire has unequivocally stated that it did not sell Washing Machines directly to
consumers. (Renewed Mot., Ex. F (Electrolux Home Product, Inc.'s Responses to Plaintiffs'
Second Set of Interrogatories) at Nos. 1(b) and 1(c) (Frigidaire states that it sold its Washing
Machines to *distributors and retailers for resale*).) As a result, notice is irrelevant to this Court's
Rule 23 analysis of Plaintiff's express warranty claim under California law.[10]

To the extent notice is required, it need not be demonstrated as to each putative class
member for purposes of satisfying predominance. To be sure, if the Court were to accept
Frigidaire's argument that plaintiffs must show individualized evidence of notice, no class
actions involving warranty claims would ever be certified in California or Texas. Clearly, this
has not been the case. *See, e.g., Wolin*, 617 F.3d at 1170, 1174 ("These [warranty] claims
[involving the manufacturer's Limited Warranty covering repairs to correct defects in materials
and workmanship] require common proof of the existence of the defect and a determination

---

[9] *See also Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888 (Tex. Civ. App. 1979) (rejecting appellant manufacturer's argument that the notice requirement was not met where the appellee purchaser never notified it of the alleged breach and holding that "the notice requirement of Section 2.607 applies only as between a buyer and his immediate seller.").

[10] Frigidaire cannot deny that notice is *not* required for Plaintiff's breach of implied warranty claim under California law. (Sept. 3, 2010 Order at 24 ("California law does not require a retail purchaser to provide notice and an opportunity to cure before bringing an implied warranty of merchantability claim.") (citing *Mexia*, 174 Cal. App. 4th at 1307).)

whether [defendant] violated the terms of its Limited Warranty.  Accordingly, we conclude that common issues predominate regarding [defendant's] obligations under its Limited Warranty.");  *Cartwright*, 2009 U.S. Dist. LEXIS 83286, at \*\*4, 26 n.9 (rejecting defendant's argument that notice of breach of the *manufacturer's warranty* covering "'*defects in materials and workmanship*'" required individualized determinations because "[f]irst, it is unclear under the circumstances of this case whether notice is required . . . Second, notice may be given after commencement of suit . . . Third, whether plaintiffs and the class were required to give notice and/or whether they provided sufficient notice are questions that are likely common to the class. Accordingly, there is no need for individualized factual determinations among the class regarding notice.") (emphasis added)[11]; *Yamada*, 2011 U.S. Dist. LEXIS 92598, at \*11 (certifying warranty claims involving "the same device with the same alleged defect . . . and covered by the same warranty."); *In re Brazilian Blowout Litig.*, No. CV 10-8452-JFW (MANx), 2011 U.S. Dist. LEXIS 40158, at \*29 (C.D. Cal. Apr. 12, 2011) (certifying breach of express warranty claim); *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 917-923 (2001) (certifying breach of warranty claims involving inherently defective product); *McManus*, 320 F.3d at 552 (district court did not abuse its discretion in certifying plaintiff's breach of implied warranty claim under Rule 23(b)(3)); *Klein v. O'Neal, Inc.*, 222 F.R.D. 564, 567-68 (N.D. Tex. 2004) (granting class certification where claims included breach of warranty); *Manning*, 914 S.W.2d at 609 (certifying breach of warranty claims involving software product with latent defects).[12]

---

[11] Frigidaire states that Plaintiffs' arguments under *Cartwright* are without merit in light of *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541 (2011). (Opp. at 25.)  However, "the facts in *Wal-Mart*, a case in which three named plaintiffs sought to represent a class of 1.5 million women in an employment discrimination suit, are entirely distinguishable from the facts of the instant [consumer] class action.  Accordingly, . . . *Wal-Mart has little to no bearing on the issues before the Court.*"  *Pub. Employees' Ret. Sys. v. Merrill Lynch & Co., Inc.*, No. 08 Civ. 10841 (JSR), 2011 U.S. Dist. LEXIS 93222, at \*\*26-27 (S.D.N.Y. Aug. 22, 2011) (emphasis added).  Indeed, this case is far more similar to *Cartwright* – which involves defective window products that were covered under the defendant manufacturer's warranty for "defects in material and workmanship" – than *Wal-Mart*.  Nevertheless, Frigidaire is incorrect that the questions presented in *Cartwright* and in this case are not susceptible to common answers.  For instance, whether every absent Class member is required to provide notice and what constitutes sufficient notice can be answered in singular fashion under California and Texas law.

The California cases upon which Frigidaire relies are readily distinguishable.  For example, in *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 U.S. Dist. LEXIS 112971 (N.D. Cal. Dec. 4, 2009), the court found that an individualized notice inquiry made class treatment improper "given the varying allegations as to notice provided by the named plaintiffs . . . ." *Id.* at *47.  Indeed, the plaintiffs' second amended complaint in *Stearns* was rife with contradictory and generalized allegations concerning notice. *Id.* at **12-13, 23.  The *Stearns* court also found that, as to two of the seven named plaintiffs, timely notice was not required because they "purchased their beds through Sleep Train, a retailer" and not from the manufacturer directly. *Id.* at *22 n.4 (citing in part *Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57 (1963)).  Here, Plaintiffs Brown and Vogler have not introduced such generalized and inconsistent notice issues and, as with all of the putative class members, purchased their Washing Machines from sellers or re-sellers, not from Frigidaire.

In addition, *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010), like *Stearns*, analyzed notice with respect to the *retailer*, not the *manufacturer* with which consumers had no dealings in making their purchases. *Id.* at 1130-31 (describing *Sears'* one-year limited warranty, extended warranties an "Service Smart Protection Agreement"); *id.* at 1140 (analyzing whether plaintiffs provided timely notice to *Sears*).  Indeed, the court did not analyze whether timely notice was required or provided to Whirlpool, the manufacturer, in ruling on plaintiffs' express warranty claim. *Id.* at 1141-42.

Furthermore, Frigidaire provides no support for its assertion that Texas law requires proof that each individual absent class member must provide notice of breach of warranty. Rather, Frigidaire simply cites Texas cases that describe notice as a requirement for bringing a

---

[12] Frigidaire cites *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617 (S.D. Fla. 2008) to argue that proof of individual notice by absent class members is required in Texas and California.  However, *Cohen* is a non-binding decision by a Florida district court and is factually and legally inapposite.  *Cohen* analyzes a Florida statute and does not involve a design defect or form manufacturer's warranty.  Also unlike this case, *Cohen* did not review or consider consumer complaints, comments or inquiries submitted to the defendant about its defective product, nor defendant's actual knowledge or awareness of its defective product.

warranty claim.[13]  These cases provide no guidance on class certification.  In any event, the common question of whether notice is required as to absent class members is subject to a common answer under the respective laws of California and Texas, and as applied to the two proposed state-based classes.

The Seventh Circuit in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) held that the pre-suit notice provision in a statute is not a relevant consideration in federal class certification proceedings because such pre-litigation notice requirements "do[] not grant or deny a substantive right." *Id.* at 346.  Instead, it affects when a substantive right may be exercised. *Id.* The court found that if "the purpose of the . . . notice requirement is . . . to prevent a suit from ever being filed (by encouraging the parties to reach an agreement extra-judicially), such a notice requirement is not substantive." *Id.*  The *Mace* court thus concluded that, under the *Erie* doctrine, such pre-litigation notice requirements are procedural and preempted by Rule 23 in federal courts. *Id.*

The same analysis applies here.  The pre-suit notice provision that Frigidaire attempts to apply in this case, Cal. Comm. Code. § 2607, is derived from the UCC.  The official comment to the corresponding UCC provision states that the express purpose of the UCC's notice requirement is to "open[] the way for normal settlement through negotiation." UCC § 2-607 at Official Comment 4.  This is precisely the type of purpose that renders notice to be merely procedural. *Mace*, 109 F.3d at 346 (Whether the start of [plaintiff's] lawsuit was delayed [until notice was provided] or not at all (under Rule 23) is a matter of procedure, not substance.  The application of Rule 23 does not abridge, enlarge or modify any substantive right . . . [Plaintiff's] class action should be allowed to proceed.").  Likewise, in this case any failure to provide timely notice is strictly procedural and should not bar certification under Rule 23.

---

[13] For example, *Cole v. GMC*, 484 F.3d 717 (5th Cir. 2007) held that predominance was not met because of the variation in notice requirements under different state laws.  *Cole* did not analyze whether every absent class member had to provide notice. *Id.* at 727.  In addition, *Wilcox v. Hillcrest Mem'l Park*, 696 S.W.2d 423 (Tex. Ct. App. 1985) and *McGown v. Bridgestone/Firestone, Inc.*, No. 9:05-CV-9, 2005 U.S. Dist. LEXIS 25598 (E.D. Tex. Oct. 18, 2005) were not class actions and thus did not analyze whether failure to prove notice as to each absent class member defeated predominance under Rule 23.

For these reasons, any notice of breach of warranty need not be demonstrated as to every putative class member.

### b. Frigidaire Had Notice And Ample Opportunity To Cure The Defect

Frigidaire had actual notice of the alleged defect and ample opportunities to cure. Plaintiffs Brown and Vogler provided Frigidaire with notice prior to initiating their lawsuits against Frigidaire. (*See, e.g.*, FAC ¶¶ 14-15.) Furthermore, in the years before and since the filing of this lawsuit, Frigidaire has received scores of complaints from consumers whose Washing Machines are equipped with the defective boot and who have experienced mold and mildew problems as a result.[14]

Frigidaire details the over a thousand service calls received between 2004 and 2008 relating to "mold," "mildew" or "odor." (Initial Opp., Ex. Ex. 15 (Fuller Decl.) ¶ 20.)[15] Plaintiffs' FAC also references numerous consumer complaints about mold and mildew problems and defective gaskets from several years prior to the filing of that complaint and the commencement of this lawsuit. (FAC ¶ 35-36.) In addition, several emails to Frigidaire service technicians reveal that consumers were contacting Frigidaire about their Washing Machines' defective boot and mold and mildew problems in *2006*. (*See, e.g.*, Tamblyn Decl. ISO Initial

---

[14] *Wilcox* and *Cole* do not stand for the proposition that "actual notice" cannot satisfy any notice requirement for asserting a breach of warranty claim under Texas law. (Opp. at 25-26.) Indeed, *Wilcox* does not analyze whether the defendant actually knew of the alleged defect or received customer complaints, inquiries or comments about its defective product. Unlike *Wilcox*, this case does not involve a manufacturer "who was never even made aware that the product in question was defective . . . ." *Wilcox*, 696 S.W.2d at 424. Furthermore, whereas this case involves only two states' laws, the court in *Cole* was faced with a massive fifty-one jurisdiction class action, where the plaintiffs never specifically addressed the notice requirement for bringing a breach of warranty claim. *Cole*, 484 F.3d at 727. The *Cole* court states that it "previously" refused to presume notice but never applies Texas law on notice to the facts of the case. To be sure, in *Cole*, the court was required to analyze notice under the laws of fifty-one different jurisdictions. Frigidaire does not contest that "actual notice" of the defect may satisfy any notice requirement under California law. *See, e.g.*, *Metowski*, 28 Cal. App. 3d at 339 (notice may be satisfied by "*proof of complaints* from some but not all the buyers of a product.") (emphasis added).

[15] These results were produced using only the keywords "mold," "mildew" and "odor" as chosen unilaterally by Frigidaire. (*Id.*). As mentioned above, it is likely that numerous additional service calls would be found were such keywords as "fungus," "spores," "biofilm," "smell," "boot," "gasket," "bellows" and/or "seal" included in the search. Furthermore, Frigidaire may itself be unsure how many service calls involving mold and mildew issues were placed by consumers. While the Fuller Declaration describes over a thousand such calls, Frigidaire represents that there were 846 calls involving "mold," "mildew" or "odor" in its opposition brief. (Opp. at 5-6.)

Reply, Ex. A (Electrolux 001845-46, 001927, 001937).)

Beyond consumer complaints, customer service calls and emails to Frigidaire service technicians, Frigidaire's knowledge of the defect and breach is perhaps best demonstrated by the fact that it *changed its bellows design in 2006.* Frigidaire introduced an "'S' shaped bellow . . . in or about January 2006 and subsequently phased [it] into other models . . . ." (Opp., Ex. 2 (Hill Decl.) ¶ 6.) Frigidaire has previously distinguished its "S" shaped bellow from the convoluted bellow at issue in this case: "The 'S' shaped bellow *does not have convolutions in which water can become trapped.*" (Initial Opp. at 10 (emphasis added).) In addition, Frigidaire's Service Flash LN073 reveals that it was aware that its Washing Machine gaskets were defective in *2007,* close to a year before Plaintiffs' initial Complaint was filed. Even Frigidaire admits that "[i]nformation regarding the potential for odors and mildew in front load washing machines was well publicized over the class period . . . . In fact, the potential for odor in front load washing machines was sufficiently well-known by *2007 . . . ."* (*Id.* at 7-8 (emphasis added).)

As early as March *2004,* Frigidaire stated that "new style bellows" was a "service solution" to problems related to "[w]ater left in the bellows (boot) after the cycle is done." (Renewed Mot., Ex. K.) Furthermore, Frigidaire was testing Washing Machine bellows for mold and mildew growth in *2004.* (Tamblyn Decl. in Support of Motion for Class Certification, filed on Dec. 10, 2009, Ex. O [Dkt. No. 98].)[16]

Frigidaire has breached, and continues to breach, its express warranty by refusing to cure the alleged defect on a class-wide basis and instead instructing customers to remedy the problem on their own. Frigidaire has had substantial opportunities over the previous years to cure the alleged defect. For these reasons, Frigidaire is incorrect that individualized evidence of notice prevents certification of Plaintiffs' warranty claims.

---

[16] Frigidaire does not, and cannot, contest that Plaintiffs are required to provide it with opportunities to cure prior to bringing a breach of implied warranty claim under California law. Song-Beverly does not require "that the buyer allow the seller or manufacturer an opportunity to repair the product prior to bringing an action for breach of the implied warranty of merchantability." *Mexia,* 174 Cal. App. 4th at 1307 (citation omitted).

3. **Plaintiff Brown's Express Warranty Claims Is Subject To Common Evidence And Does Not Require Proof Of Reliance**

a. **Frigidaire Has Refused To Repair On A Class-wide Basis And Any Individual Repairs Are A Matter Of Damages**

As an initial matter, Frigidaire is incorrect that its uniform written warranties do not apply to the design defect at issue in this case. (Opp at 26.) Frigidaire cannot disavow what it has already conceded, nor ignore how a California court has ruled on this very issue in another case.

This Court expressly found that "[Frigidaire] concedes that the warranties are valid *and govern Plaintiffs' defect claims.*" (Sept. 3, 2010 Order at 33 (emphasis added).) Moreover, in a case involving mold and mildew problems *in some of the same Washing Machine models as those at issue in this case*, the court in *Dickerson v. Electrolux Home Prods., Inc.*, No. CV 10-5163-R, 2011 U.S. Dist. LEXIS 26994 (C.D. Cal. Feb. 3, 2011) held that the

> Plaintiffs have adequately pled a defect in 'material or workmanship' covered by the express warranty at issue. Pursuant to *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128 (N.D. Cal. July 21, 2010), the failure to repair the washing machines constitutes a breach of express warranty for materials or workmanship. Further, contrary to Defendant's argument, the Ninth Circuit has held that design defects are covered by the language of 'materials and workmanship' and the express warranty applies to the machines for this reason as well.

*Dickerson*, 2011 U.S. Dist. LEXIS 26994, at *4 (citing *Stearns*, 763 F. Supp. 2d at 1148). As a result, every putative class member owns a Washing Machine with a design defect that is covered under Frigidaire's form warranty.[17]

Frigidaire's argument that Plaintiffs must demonstrate that Frigidaire refused to honor its written warranty as to every absent class member presumes that each class member is required to provide notice in the first place. As discussed earlier, that analysis is incorrect. Furthermore, by taking the position that its warranty does not cover the defective bellows, Frigidaire *supports*

---

[17] The *Dickerson* court denied certification in part based on manageability concerns, where the plaintiffs' claims implicated seven (7) different states' laws and the plaintiffs failed to analyze similarities between states' laws with respect to their warranty and consumer protection claims. (*Dickerson* Dkt. No. 45.) These concerns are not present in this case, where Plaintiffs are seeking certification of two separate state-based classes.

Plaintiffs' argument that it has a uniform policy and practice of refusing to repair and replace its defective Machines.

To be sure, Frigidaire's position, as to every member of the class, is that the consumer is to blame for their Washing Machines' mold and mildew problems.  (Opp. at 4-5, 7) (stating that mold and mildew problems arose in consumers' Washing Machines because they failed to repeatedly wipe down the inside of the Machines, dry their Washing Machines' boot after wash cycles, leave their Washing Machines' door ajar after use and run extra wash cycles with particular cleaning solutions).)[18]

Although Frigidaire has decided that its convoluted bellow should be replaced and has demonstrated an ability to address the problem – it began to design washing machines with "S" shaped bellows without convolutions in which water could become trapped (Opp. at 3) – it has failed to recall the defective Washing Machines or uniformly provide the "S" shaped bellow to consumers who have contacted Frigidaire about mold and mildew problems.  (*See, e.g.*, Renewed Mot., Ex. G at Electrolux 00349 (advising California customer who contacted Frigidaire about mold and mildew issues that "WE WILL NOT AUTH[ORIZE] REPL[ACEMENT] OF SEAL THAT IS NOT A MANUFACTORS [*sic*] DEF[ECT] . . . ."); *see also id.* at Electrolux 00320 (Customer "says she has mold and water residue on the gasket of the washer. [C]ust[omer] was edu[cated] on cleaning out the unit with a cleaning abrasive [*sic*]. [A]nd informed cust[omer] to run glyccn [*sic*] [cleaning solution product] in the unit to get rid of the mold smell. [C]ust]omer was also informed to wipe clean all the water around the gasket and leave [the door] ajar to dry out the excess water.")).  The proof required for demonstrating Frigidaire's breach of warranty is uniform:  Frigidaire's policy and practice of refusing to repair or replace its defective bellows and Machines.

---

[18] Frigidaire's recommendation that consumers should leave their Washing Machine's door ajar is, by its own admission, extremely dangerous to children.  (FAC ¶ 44.)  Furthermore, consumers experienced recurring mold and mildew problems even after following Frigidaire's recommendations for preventing mold and mildew from developing in its Washing Machines. (*See infra*, at p. 2-4.)

Frigidaire's occasional concessions and instances where it has actually compensated consumers (Opp. at 27) are a matter of damages, not predominance. It is well-settled in the Ninth Circuit that "damage calculations alone cannot defeat certification. We have said that '[t]he amount of damages is invariably an individual question and does not defeat class action treatment.'" *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *see also Yamada*, 2011 U.S. Dist. LEXIS 92598, at *15 (same); *Cartwright*, 2009 U.S. Dist. LEXIS 83286, at *22 (same).[19]

Furthermore, common proof will determine whether it was reasonable for Plaintiff and putative class members to decline Frigidaire's concessions, particularly where Frigidaire has unilaterally refused to compensate consumers for damages incurred as a result of the Machine's mold and mildew problems, for Washing Machines that have been damaged beyond repair or where Frigidaire offers a replacement gasket while simultaneously blaming the consumer for their Washing Machine's mold and mildew problems. To be sure, it is reasonable that a consumer who purchased a defective product that repeatedly fails to request a new product or full refund from the manufacturer of that product. Indeed, this is a class-wide merits inquiry which warrants a common response. Frigidaire's counsel has already framed the question: "Do

---

[19] Any individual damages inquiry may also be managed through well-established judicial management procedures, including through the certification of particular issues. (*See, e.g.*, Rule 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.") "Accumulated experience in class action litigation has led to several recognized approaches for managing and resolving related individual issues . . . most individual issues are composed of subissues that are often amenable to common treatment. Thus, complex individual issues can frequently be simplified by factoring out various subissues with common elements for class treatment. Finally, there are numerous means available for resolving irreducible individual issues, primarily through the use of delegation to magistrates, special masters, and others, and by the development . . . of simplified procedure for resolving individual claims under the supervision of the court." Herbert Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002) § 9:59 at 447-48 ("Newberg"). Although in a settlement context, the court in *Pelletz v. Weyerhaeuser Co.* provides an example of a potential judicial procedure for managing individual damages issues. Plaintiff's allegations in *Pelletz* concerned allegedly defective decking and railing products that resulted in fungal, mold, or mildew growth and caused extensive permanent discoloration. *Pelletz*, 255 F.R.D. at 539. "Plaintiffs allege that Defendants knew about the defect but concealed it from consumers." *Id.* To recover under the settlement, a class member was required to submit a photograph and complete a form, and the defendant had an opportunity to inspect and challenge any submitted claim: "For Class members whose decks exhibit 'Significant Mold Spotting,' (which is determined by an analysis of photographs submitted by the Class member) and who agree to allow [defendant] to inspect their deck and take a small sample for testing will receive one free cleaning and the application of a mold inhibitor. Whether or not the Class member is entitled to further relief depends upon whether mold returns within 18 months." *Id.* at 542-43.

you think anybody else might have been reasonable in accepting [Frigidaire's] offer [of a replacement bellows or partial rebate]?" (Opp., Ex. 10 (Brown Dep.) at 47:19-20.)[20]

### b. Reliance Is No Longer Required Under California Law

Frigidaire's argument that every class member must show reliance on its written warranty is also misplaced. (Opp. at 28.) "[A]ctual reliance is no longer an element of an express warranty claim under California law." *In re Sony PS3 Other OS Litig.*, No. C 10-1811 RS, 2011 U.S. Dist. LEXIS 16024, at *10 (N.D. Cal. Feb. 17, 2011) (citation omitted); *see also Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (reversing the trial court's order decertifying the class and holding that "[t]he lower court ruling rests on the incorrect legal assumption that a breach of express warranty claim requires proof of prior reliance . . . breach of express warranty arises in the context of contract formation in which reliance plays no role.").[21] As a result, it is unnecessary to inquire whether Plaintiff Brown and each putative class member

---

[20] *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb. 12, 2007) and *Mauro v. GMC*, No. CIV. S-07-892 FCD GGH, 2008 U.S. Dist. LEXIS 93897 (E.D. Cal. July 15, 2008) are legally and factually distinguishable. In *Brothers*, the court provided no analysis of whether individualized evidence was required for establishing each absent class member's breach of express warranty claim. Furthermore, the defendant *performed*, and the plaintiff *accepted*, the repairs performed by the defendant under the written warranty. Furthermore, the court in *Brothers* found that the repair "corrected the asserted screen display problems." *Brothers*, 2007 U.S. Dist. LEXIS 13155, at *13. In addition, *Mauro* was decided under Rule 12(b)(6) and analyzed whether the named plaintiff met the various requirements that appeared on the face of the warranty. *Mauro* did not analyze Song Beverly nor reach the question of whether every absent class member had to meet the requirements for asserting an express warranty claim to satisfy predominance under Rule 23. *Mauro*, 2008 U.S. Dist. LEXIS 93897, at **15-16, 21-22 (the court held that "it need not reach this alternative argument for dismissal of the claim.") To the extent class claims were addressed, *Mauro* held that plaintiff's express warranty claim was insufficient in part where plaintiff admitted that "many class members have *not* experienced issues from the defect or presented their vehicles to an authorized dealer for repair." *Id.* at *25 (emphasis in the original). These facts are not present here.

[21] Both *In re Sony PS3 Other OS Litig.* and *Weinstat* were decided *after Tietsworth*, which Frigidaire cites for arguing that proof of class-wide reliance is necessary. Frigidaire also cites *Kearney v. Hyundai Motor Co.*, No. SACV-09-1298 DOC (MLGx) to argue that reliance must be proven under Song-Beverly. However, *Kearney* provides no analysis of reliance under Song-Beverly. In addition, *Kearney* relies entirely on *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (1986) ("*Beechnut*") for its description of the requirements for proving breach of express warranty under Song-Beverly. However, the *Beechnut* court articulated a test for breach of express warranty that included reliance based on Cal. U. Comm. Code § 2313, the very statute which *Weinstat* held no longer includes a reliance requirement. *See Weinstat*, 180 Cal. App. 4th at 1227 ("Pre-Uniform Commercial Code law governing express warranties required the purchaser to prove reliance . . . The California Uniform Commercial Code, however, does not require such proof."). The above analysis also demonstrates that this test formerly applied to transactions where the purchaser relied on representations made by *sellers* at the time of purchase in deciding whether to make a purchase. These are not the circumstances of this case, as Frigidaire did not sell the Washing Machines at issue to Plaintiffs and absent class members.

relied on Frigidaire's written warranty "at the time that they purchased their washing machines . . . [and] that they relied on that warranty in deciding to buy their washers." (Opp. at 28.)[22]

However, to the extent reliance is required under breach of express warranty,[23] it need not be demonstrated on a class-wide basis. *See, e.g.*, *Yamada*, 2011 U.S. Dist. LEXIS 92598, at **20-21 (analyzing reliance as to the named plaintiff and certifying breach of warranty claims).[24] Furthermore, Plaintiff Brown has expressly stated that he knew and understood the terms of Frigidaire's form warranty when he purchased his Washing Machine. He personally inquired about the "duration and what [was] covered" under the warranty. "It's a question I ask as a matter of course." (Opp., Ex. 10 at 28:11-18.)

### C.   Plaintiffs' Consumer Protection Claims Are Subject to Class-wide Proof

Plaintiffs' action is well-suited for a consumer protection/deceptive trade practices claim. As Frigidaire's own Service Flash and other evidence demonstrates, Frigidaire was well-aware of the inherent design defect in its bellows and acknowledged the consequences thereof: "A likelihood of biofilm formation." (Renewed Mot., Ex. A.) Despite its knowledge, Frigidaire did *nothing* to inform the buying public of the defect, the problems resulting therefrom, or of measures to take to address the problem (including the availability of a new boot). Indeed, Frigidaire's form "Service Checklist" provided to purchasers at the point of sale identifies "Common concerns that are not the result of defective workmanship or materials in the washer." (*Id.*, Ex. J.) Under the concern identified as "Water collects in the folds of the bellows at the end

---

[22] Based on this recent development in California law, Frigidaire cannot now argue that the analysis of reliance and holding in *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254 (N.D. Ohio) ("*Whirlpool*") is unique to Ohio. In fact, California law may be *broader* than Ohio given that reliance has been eliminated as a requirement for pleading an express warranty claim in California. *Whirlpool's* analysis of reliance under breach of warranty is also harmonious with the reliance analysis under the UCL. (See § III.2.) As a result, as in *Whirlpool*, "'[w]hen there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance,' rather than requiring individualized proof of actual reliance."

[23] Frigidaire does not argue that reliance is a requirement for Plaintiff's breach of implied warranty claim under California law.

[24] While *Yamada* considered defendant's argument that plaintiff did not meet the reliance requirement under breach of express warranty, the court did not analyze the recent decisions eliminating the reliance requirement in *Weinstat* and *In re Sony PS3 Other OS Litigation*.

of the cycle," Frigidaire's "POSSIBLE CAUSE/SOLUTION" states only: "This is a result of the washing action and is part of the normal operation of the washer." (*Id.*) This is completely at odds with Frigidaire's internal Service Flash that was never provided to purchasers. In short, Frigidaire uniformly failed to disclose – in all documents provided to consumers at any time – the fact of the defect on the existence of (or even potential for) mold problems so that consumers could make informed purchase decisions.

Frigidaire's failure to disclose this important information when selling its products was intentional. Frigidaire knew that no reasonable consumer would purchase its Washing Machines if the defective nature of them were disclosed. Plaintiffs in this action, like any reasonable consumer would, testified that they would *not* have purchased Frigidaire's Washing Machine had this information been disclosed by Frigidaire. (Renewed Mot. at 20-21.)

### 1.   Texas Deceptive Trade Practices-Consumer Protection Act

Despite Frigidaire's attempt to suggest otherwise, the presence, if any, of a reliance element under Plaintiff Vogler's "failure to disclose" DTPA claim does not equate to a *per se* denial of class certification as to that claim. *See, e.g., Schein v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002) ("[t]his does not mean, of course, that reliance or other elements of their causes of action cannot be proved class-wide with evidence generally applicable to all class members; class-wide proof is possible if class-wide evidence exist."). As previously shown, Texas courts have recognized and accepted *class-wide* proof of reliance, particularly where that common proof of reliance is evidenced by each class member's payment of money in an allegedly deceptive transaction. (Renewed Mot. at 20.) To be certain, despite Frigidaire's citation to lower appellate court decisions in Texas supporting its position, the Texas Supreme Court recently reaffirmed the fact that class-wide issues and proof of reliance can predominate and properly be shown in circumstances where, like those present here, form documents, uniform conduct, and class-wide payment by each class member are in play. *Southwestern Bell Tel. Co. v. Mktg. on Hold, Inc.,* 308 S.W.3d 909 (Tex. 2010).

In *Southwestern Bell*, the defendant, like Frigidaire here, argued that individual proof of reliance precluded a finding of predominance. *Id.* at 921. The plaintiff contended that class members were subjected to a uniform misrepresentation in their standard form bills and that, by making payment, class members relied on the uniform misrepresentation. *Id.* at 921. The Texas Supreme Court stated:

> Whether Southwestern Bell was authorized to charge municipal fees on the services in question and whether class members relied on that representation, STA contends, are thus susceptible to class-wide proof. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1258-59 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081, 125 S.Ct. 877, 160 L.Ed.2d 825 (2005) (reasoning that where the defendant's alleged misconduct is standardized, circumstantial evidence can be used to show class-wide reliance). STA also argues that the potential individualized inquiries identified by Southwestern Bell are hypothetical and speculative. We agree.

*Southwestern Bell*, 308 S.W.3d at 921.

Beginning its analysis, the Texas Supreme Court recognized that the determinative inquiry for class certification purposes was whether individual inquiries regarding reliance would predominate. *Id.* at 921-922. Noting that the defendant employed standard form bills and uniform conduct as to the fees at issue, the trial court found, and the Texas Supreme Court agreed, that evidence of reliance could be demonstrated by showing class members' payment of the bill. *Id.* at 922. In the words of the Texas Supreme Court, "Plaintiffs had no choice but to rely on the misrepresentations." *Id.* at 922 (citing *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 667-68 (9th Cir. 2004) (recognizing that reliance can be shown where it provides the "common sense" or "logical explanation" for the behavior of plaintiffs and the members of the class, in which case reliance could be established class-wide)).

The same is true here. Plaintiffs and class members had no choice but to be induced by Frigidaire's failure to disclose because purchasers did not know, as Frigidaire knew, that the Washing Machines contained an inherent design defect with the bellows that was present at the point of sale. Like the common and uniform misrepresentation at issue in *Southwestern Bell*, the information Frigidaire failed to disclose is common and uniform as to each class member.

28

Likewise, the standard form materials Frigidaire provided at the point of sale are common and uniform to all class members, and *none* of these materials, or any other materials provided by Frigidaire, say anything about the defect and the problems resulting therefrom. As in *Southwestern Bell*, common issues and proof of reliance for the class as a whole predominate and can be demonstrated on a class-wide basis. As stated by one Texas appellate court: "[p]leading the claim this way [deceptive due to failure to disclose] eliminates most of the fact questions on reliance – surely every buyer relied on that omission, as no one would buy [the product] with that knowledge." *Tracker Marine LP v. Ogle*, 108 S.W.3d 349, 360 (2003).[25]

Further, as in *Southwestern Bell*, Frigidaire's unsupported conjecture that some unidentified class member somewhere "may" have acted inconsistently with reliance is nothing but a red herring and does nothing to defeat predominance. For example, Frigidaire speculates that some unidentified class member may have seen an article in a *Consumer Reports* magazine about mold problems in front-load washers. Despite Frigidaire's apparent vast knowledge of mold problems in front load washer, notably there is no mention of such problems in any of the materials Defendant provides to consumers. This tired and worn argument commonly made by class defendants was made in *Southwestern Bell* and properly rejected by the Texas Supreme Court:

---

[25] This recognition is consistent with case law from other jurisdictions. *See, e.g., Baughman*, 727 N.E.2d at 1275 ("When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements."); *see also, In re Mercedes-Benz*, 2010 U.S.Dist.LEXIS 23624, at *139-40 ("Based on the fact that the consumer fraud claim in this case is premised on omissions rather than misrepresentations, the Court [holds] that Plaintiffs will be able to establish causation by common proof; they must simply show that Mercedes knew that analog Tele Aid service would not be available after 2007, but did not inform the class members of that development until after they had purchased vehicles that contained analog-only systems and subscribed to Tele Aid."); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) ("Proof of the omissions will *not* be based upon information each class member received from the furnaces, but on what Carrier allegedly concealed in light of what consumers reasonably expect") (emphasis in original); *Keiholtz v. Lennox Hearth Prods., Inc.*, 2010 U.S.Dist. LEXIS 14553, at *30-35 (N.D. Cal. Feb. 16, 2010) (certifying nationwide omission-based consumer fraud class under California CLRA and UCL); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008) (certifying nationwide omission-based class involving defective gearshifts under California's CLRA and UCL); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 626-27 (C.D. Cal. 2008) (certifying nationwide omission-based class involving misleading product advertisements under California's CLRA and UCL); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004), *Rule 23(f) pet. den.* 402 F.3d 952 (9th Cir. 2005) (certifying omission-based defective engine manifold case under California's CRA).

> Southwestern Bell's argument that some of its customers *may* have called customer service to obtain an adjustment, failed to pay the bill entirely, or otherwise acted inconsistently with a showing of reliance is mere hypothesis and does not defeat class-wide proof of reliance.

*Id.* at 923. (emphasis in original)

As a result, Plaintiffs' DTPA claims should be certified.

### 2.   California Unfair Competition Law

#### a.   Frigidaire's Application Of *Tobacco II Is Incorrect*

The substantial protections provided to consumers under California's UCL are available without individual proof of deception, reliance and injury. "The Legislature framed the UCL's substantive provisions in 'broad, sweeping language' . . . and provided 'courts with broad equitable powers to remedy violations.'" *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011) (citations omitted); *see also McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 187 (2010) ("The scope of the UCL is quite broad.") (citations omitted). Frigidaire's application of the UCL is incorrect (Opp. at 31-34) and represents a dramatic departure from well-established California law.[26]

"Contrary to [Frigidaire's] argument that [Plaintiffs' UCL claims] . . . 'require an in-depth analysis of each potential class member's motivation' [for purchasing their Washing Machine] . . . the state supreme court has stated that 'relief under the UCL is available without individualized proof of deception, reliance and injury.'" *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ("*Tobacco II*")). Just last year, the California Court of Appeal reaffirmed this standard in *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) ("*Steroid*").

---

[26] Frigidaire does not appear to challenge, nor does it analyze, the unfair prong of the UCL, despite that the Court has held that "Brown's UCL claim may proceed under the unfairness prong." (Sept. 3, 2010 Order at 39.) To be sure, Frigidaire cannot dispute that reliance "is not an element under the 'unfair' . . . prong[] of the [UCL]." *Rand v. Am. Nat'l Ins. Co.*, No. C 09-0639 SI, 2010 U.S. Dist. LEXIS 82584, at *9 (N.D. Cal. June 22, 2010); *see also Lorenzo v. Qualcomm*, No. 08cv2124 WQH (LSP), 2009 U.S. Dist. LEXIS 69843, at *18 (S.D. Cal. Aug. 10, 2009) ("For claims based on the 'unfair' . . . prong of the UCL, courts have held that the plaintiff need not allege reliance on misrepresentations, but must allege 'causation more generally.'") (citation omitted). Frigidaire instead focuses on the fraudulent prong of the UCL.

> Questions arose as to the effect of the Proposition 64 amendments on UCL class actions, particularly whether each class member must now establish that he or she suffered injury in fact and lost money as a result of the unfair competition. The California Supreme Court answered this question in *Tobacco II*, concluding that the standing provision added by Proposition 64 'was not intended to have any effect at all on unnamed members of UCL class actions.' Therefore, while a named plaintiff in a UCL class action now must show that he or she suffered injury in fact and lost money or property as a result of the unfair competition, once the named plaintiff meets that burden, *no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members.*

*Id.* (quoting *Tobacco II*, 46 Cal. 4th at 321) (emphasis added); *see also Menagerie Prods. v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 U.S. Dist. LEXIS 108768, at *24 (C.D. Cal. Nov. 9, 2009) (same).[27]

Plaintiff Brown is not required to "demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *Tobacco II*, 46 Cal. 4th at 327. Furthermore, a *presumption* of reliance is appropriate here. "[T]he Supreme Court of California has explained in the UCL context, 'a presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material.'" *Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC(ANx), 2011 U.S. Dist. LEXIS 45120, at *7 (C.D. Cal. Apr. 20, 2011) (citation omitted). "A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or non-existence in determining his choice of action in the transaction in question, . . . ." *Tobacco II*, 46 Cal. 4th at 327 (internal quotations and citation omitted); *see also Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997). In addition, "[b]ecause materiality is determined based on an objective, reasonable person standard, the issue of whether the alleged misrepresentations were material *can be addressed with class-wide evidence.*" *Ewert v. eBay, Inc.*, Nos. C-07-02198 RMW and C-07-04487 RMW, 2010 U.S. Dist. LEXIS 108838, at *24 (N.D. Cal. Sept. 30, 2010) (emphasis added). In addition, a presumption of reliance is appropriate where the "plaintiffs 'have *primarily* alleged omissions, . .

---

[27] Frigidaire is also incorrect that every absent class member must establish standing under Article III. "[I]n *In re Tobacco II Cases* the California Supreme Court concluded after a reasoned analysis that *unnamed class members in an action under the Unfair Competition Law ("UCL"), as amended in 2004 by the passage of Proposition 64, are not required to establish standing.*" *Chavez*, 268 F.R.D. at 376 (citing *Tobacco II*, 46 Cal. 4th at 324).

. .'" *Cartwright*, 2009 U.S. Dist. LEXIS 83286, at *38 (emphasis in the original) (citation omitted).

Here, Plaintiff's UCL claim is based on Frigidaire's uniform omissions and failure to adequately disclose that its Washing Machines were equipped with a defective bellow that resulted in mold and mildew problems. "Brown clearly alleges that he would not have purchased a Frigidaire front-load washing machine had he known of the defective bellows (reliance), and that he lost money when he purchased the allegedly defective machine (injury in fact). Brown does allege that Frigidaire offered to replace his bellows, but that would mitigate Brown's damages, not eliminate them." (Sept. 3, 2010 Order at 39-40.) Plaintiff Brown has also unequivocally described the materiality of Frigidaire's omissions and nondisclosures. (*See, e.g.,* Renewed Mot., Ex. P (Brown Dep.) at 37:21-38:3, 60:3-4 ("If I had known there was a mold and mildew issue, I wouldn't have gone anywhere near that machine."); *see also* Tamblyn Decl., Ex. D (Plaintiff Robert Brown's Responses and Objections to Electrolux Home Products, Inc.'s First Set of Interrogatories at No. 8 ("Plaintiff generally recalls viewing and hearing advertisements or marketing materials concerning Frigidaire front-load washing machines. Plaintiff does not recall seeing or hearing any disclosures concerning mold, mildew and odor problems associated with Frigidaire front-load washing machines and would not have purchased his Frigidaire Washing Machine had he known that it had a defective bellow that caused mold, mildew and foul odors to form in the Washing Machine."); Sept. 3, 2010 Order at 40 ("[T]he defect  Brown alleges Electrolux failed to disclose – that its washing machines have significant mold and mildew issues – is *material*.") (emphasis added)).[28]

---

[28] Frigidaire is simply incorrect that absent class members must satisfy standing under Article III. (Opp. at 32 n.13.) Frigidaire's position, which relies in part on *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011), conflicts with controlling Ninth Circuit case law and decisions by several other district courts. In the Ninth Circuit, "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *see also Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001); *Casey v. Lewis*, 4 F.3d 1516, 1519 (9 Cir. 2007) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1973)). Furthermore, court after court has rejected the analysis performed in *Webb*, which interprets typicality and adequacy concerns as a failure of standing. *See, e.g., See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422-23 (6th Cir. 1998); *Hassine v. Jeffes*, 846 F.2d 169, 175 (3d Cir. 1988) (noting the district court's erroneous use of the term "standing"); *Bzdawka v. Milwaukee County*, 238 F.R.D. 469, 473-74 (E.D. Wis. 2006) (citation omitted); *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 522-24 (M.D. Ala. 1992) (rejecting defendants' argument that a court should inquire whether

Under the UCL, Plaintiffs must demonstrate that members of the public were *likely to be deceived*, not that every member of the putative Class was actually deceived. *See, e.g., Makaeff v. Trump Univ., LLC*, No. 10-CV-940-IEG (WVG), 2010 U.S. Dist. LEXIS 108467, at *18 (S.D. Cal. Oct. 12, 2010) (The UCL "only requires a showing that members of the public 'are likely to be deceived.'") (quoting *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638 , 645 (2008)). Here, "it is reasonable to assume that no rational member of the putative class would have purchased and used [their Washing Machines] had he or she been aware of the alleged defective design." *Yamada*, 2011 U.S. Dist. LEXIS 92598, at *12 (citation omitted). "A consumer who knows of the alleged mold and mildew issues is less likely to purchase an Electrolux product than one who does not." (Sept. 3, 2010 Order at 40-41.)

It is irrelevant that some absent Class Members may have reviewed an article about mold and mildew problems associated with front-load washers. (Opp. at 34-35.) "The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all." *Steroid*, 181 Cal. App. 4th at 157-58 (quoting *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2001).[29]

Indeed, the court in *Ewert* rejected the same argument that Frigidaire makes in this case. In *Ewert*, plaintiffs alleged that eBay violated the UCL in part by representing that it listed items

---

absent class members have standing in determining whether to grant certification); Newberg § 2.7 at 88 ("[P]assive members need not make any individual showing of standing, because standing issues focus on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court."). As a result, Frigidaire's arguments and authorities which improperly conflate standing and Rule 23's requirements should be rejected.

[29] The various articles and publications submitted by Frigidaire are also irrelevant to Plaintiffs' claims in that they: 1) do not constitute disclosures by *Frigidaire*; 2) discuss mold and mildew issues but do not disclose that the particular Washing Machines at issue in this case are equipped with a defective bellows; 3) attribute mold and mildew problems to poor consumer maintenance (*see, e.g.*, Opp. at 4 ("'Leaving the door ajar between uses and using chlorine bleach occasionally should help.'") (quoting the 2006 and 2007 *Consumer Reports Buying Guides*); and were published in part outside of the proposed Class Period. (*See, e.g.*, Opp. Ex. 4 (*Consumer Reports Buying Guide 2009*); *see also* Opp., Ex. 12 (Lisa Davis, "Woman vs. Washing Machine," The Anniston Star (Anniston, Ala.), Oct. 4, *2009*, at 31; Opp. at 35 n.14 (citing website article from *August 28, 2008*)).

for sale immediately after the seller submitted the item without disclosing that the listings were actually subject to delays and could not be located by potential buyers. *Ewert*, 2010 U.S. Dist. LEXIS 108838, at **3-4. Plaintiffs also alleged that eBay does not extend the listing period paid for by the sellers "to compensate for these delays. Accordingly, plaintiffs alleged that they did not receive the full duration requested for their listings." *Id.* at *4. eBay asserted that plaintiffs could not recover under the UCL "without proving that funds were obtained '*by means of*' the alleged fraudulent conduct." *Id.* at *21 (emphasis added). eBay argued that "[b]ecause class members who knew that auctions could be delayed did not rely upon eBay's allegedly fraudulent representations in purchasing listings, eBay argues that individualized inquiry is needed to determine which class members knew about the potential for delays." *Id.*

The *Ewert* court disagreed. "Faced with virtually the same argument raised by eBay, the California Supreme Court expressly rejected the idea that 'plaintiff must present individual proof that each allegedly defrauded consumer seeking restitution did not *know* of the fraud, and that this requirement destroys the basis for a class suit.'" *Id.* at *22 (citation omitted). As with the eBay, "[t]he problem with [Frigidaire's] argument is it rests upon a faulty premise – that individual proof of reliance is required to recover under the UCL . . . ." *Id.* at **21-22; *see also Lewis v. Robinson Ford Sales*, 156 Cal. App. 4th 359, 370 (2007) ("an otherwise proper class certification should not be defeated through arguments that some customers were verbally told about the adjusted cash prices for the vehicle.")

The UCL does not require individualized proof of deception, reliance or injury.

**b.      The Cases On Which Frigidaire Relies Are Inapposite**

Frigidaire attempts to negate the California Supreme Court's holding in *Tobacco II* in part by citing a series of state appellate court cases, such as *Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966 (2009) and *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ("*Vioxx*"). However, the interpretations of *Tobacco II* in *Cohen* and *Vioxx* have been rejected by other California courts. *See, e.g., Greenwood v. Compucredit Corp.*, No. 08-04878 CW, 2010 U.S. Dist. LEXIS 127719, at **14-15 (N.D. Cal. Nov. 19, 2010) ("To the extent that the court of

34

appeal's decision in Cohen might be read to require individualized evidence of class members'
reliance, it is inconsistent with Tobacco II . . . . *This is a question of the meaning of a California
state law, on which the California Supreme Court's decision in Tobacco II is determinative.*")
(emphasis added); *see also Steroid*, 181 Cal. App. 4th at 155, 158-160 (disagreeing with *Cohen's*
interpretation of *Tobacco II* and holding that *Vioxx* was irrelevant because it was based on
particular medical findings and valuation issues, where the issue of materiality involved whether
consumers would have paid more for a product over another, not whether the consumer would
have purchased a particular product at all had he or she known it contained an illegal substance).

Furthermore, *Pfizer v. Superior Court*, 182 Cal. App. 4th 622 (2010) is readily
distinguishable from this case. The plaintiff's UCL claim in *Pfizer* was based primarily on the
*affirmative misrepresentation* that Listerine brand mouthwash was as "effective as floss." *Id.* at
625-26. Plaintiff's proposed class was defined in part as "'All persons who purchased Listerine
with labels that state 'as effective as floss,' . . . ." *Id.* at 626. The court held that the proposed
class definition was "grossly overbroad because many class members, if not most, were never
exposed to the alleged misrepresentations," particularly where the "record reflect[ed] that of 34
different Listerine mouthwash bottles, 19 never included any label that made any statement
comparing Listerine mouthwash to floss." *Id.* at 631-32. In addition, the court found that the
majority of consumers who purchased Listerine did so "not because of any exposure to Pfizer's
allegedly deceptive conduct, but rather, because they were brand-loyal customers or for other
reasons." *Id.* Indeed, the Pfizer identified Listerine labels that admonished consumers to "'floss
daily' or 'not a replacement for floss'." *Id.* at 626.

These facts are not present here. In this case, Frigidaire has *uniformly failed to disclose*
that the Washing Machines at issue are equipped with a defective boot which accumulates water
and results in mold and mildew formation. All putative class members were "exposed" to this
nondisclosure and – unlike whether mouthwash is a substitute for floss – whether a Washing
Machine will properly clean clothes and be free of mold, mildew and odors after normal

continued use is *material* to every putative class member's decision to purchase the Machine. *Pfizer* has no impact on this case.[30]

Numerous California courts continue to follow, as they must, *Tobacco II*'s holding that an individual examination of absent class members' injury and causation under the UCL is improper for purposes of Rule 23(b)(3). *See, e.g., Greenwood*, 2010 U.S. Dist. LEXIS 127719, at **14-15; *Cole v. Asurion Corp.*, 267 F.R.D. 322, 328 (C.D. Cal. 2010) (ending its inquiry into predominance after finding that "individual questions of reliance are no barrier to class certification on Plaintiff's claims under [the UCL]."); *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 668 (S.D. Cal. 2010) ("the absent class members need not prove individual reliance . . . ."); *Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) ("The individual circumstances of each class member's [transaction] need not be examined because the class members are not required to prove reliance and damage. Common issues will thus predominate on the UCL claim.") (emphasis added).

For the above reasons, predominance is satisfied.

### D.   Affirmative Defenses Do Not Preclude Certification

Frigidaire suggests that its speculative affirmative defenses also warrant denial of class certification. Yet, the Eleventh Circuit, as well as several other courts, have long held that the

---

[30] Similarly, *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517 (S.D. Cal. 2011) and *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830 (2009) departed from well-settled interpretations of *Tobacco II* and are readily distinguishable from this case. In *Campion*, the plaintiff alleged that a home warranty insurance provider misrepresented it would pay for covered items and maintained policies to deny legitimate claims. *Campion*, 272 F.R.D. at 525. *Campion's* examination of *Tobacco II* was prompted in part by evidence that putative class members "had a far greater chance of the claim being covered than denied, and at least certain claims . . . were legitimately denied." *Id.* at 533. In addition, *Campion* found, relying on the criticized *Cohen* opinion, that an individualized examination of reliance was warranted due to alleged affirmative representations as opposed to a failure to inform. However, the *Campion* court expressly distinguished itself from cases involving "uniform materials omission[s] to the proposed class." *Campion*, 272 F.R.D. at 536. Likewise, the *Kaldenbach* court distinguished itself from cases involving identical "nondisclosures by the defendants made to the entire class" where "there was no issue about the defendants' uniform business practices giving rise to the UCL claim." *Kaldenbach*, 178 Cal. App. 4th at 849. The court held that "there is no such uniformity" where plaintiff's UCL claim was based largely on various oral and written affirmative misrepresentations made through a variety of channels. *Id.* at 849-850. The distinction recognized in *Campion* and *Kaldenbach* applies here. Unlike *Cohen*, *Kaldenbach* and *Campion*, this case involves Frigidaire's uniform omissions and failure to adequately inform consumers that their Washing Machines were inherently defective and subject to mold and mildew problems. As a result, *Campion* and *Kaldenbach* are also of no assistance to Frigidaire.

presence of affirmative defenses does not preclude class certification. *See, e.g., Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1259-61 (11th Cir. 2003) (affirmative defenses which pertain primarily to damages rather than liability do not preclude predominance and may be resolved during the damages phase); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420-21 (5th Cir. 2004), *cert. denied sub nom. Am. Nat. Ins. Co. v. Bratcher*, 543 U.S. 870, 125 S.Ct. 277, 160 L.Ed.2d 117 (2004); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296, n. 4 (1st Cir. 2000).[31]  For example, "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintif[fs], does not preclude certification of a class action so long as the necessary commonality and ... predominance[] are otherwise present." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004) (internal quotation marks omitted); *see also Whirlpool*, 2010 U.S. Dist. LEXIS 69254 at *14 n.4.  "Texas courts have held that the existence of differing affirmative defenses will not prevent class certification." *Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396, 405 fn. 8 (citing Texas cases).

Indeed, the defenses of accord and satisfaction and waiver as to customers who have had their Washing Machines repaired or who received rebates pose no threat to certification. Those customers are readily identifiable through Frigidaire's records and may be excluded, if necessary.

Frigidaire also raises the prospect of product misuse.[32]  Frigidaire's effort to assert the presence of individual issues related to purported product misuse is a common defense tactic in product defect class certification litigation, and it is a tactic that has found little acceptance with the courts.  In fact, the very same argument was rejected by the court in the *Whirlpool* decision

---

[31] The cases cited by Frigidaire are inapposite and due to be rejected. For instance, in *Wallace v. SmithBarney, Inc.*, No. 09-96-100cv, 1997 Tex. App. LEXIS 1475 (Tex. App. March 27, 1997), it is no surprise that the court found predominating individual issues arising from affirmative defenses to claims regarding the unsuitability of retirement products and unauthorized trades. Questions of suitability regarding investment products and proper authorization surrounding trades were individual to each class member.

[32] While this defense has no applicability in a case of this nature involving an inherent design defect and the consumer's normal and ordinary use of the product, it is nonetheless subject to the same standards and law in both Texas and California, where the focus is on the foreseeability of the misuse.

which concluded that "individual differences in Whirlpool's owner misuse defense do not preclude certification because ... the mold problems persisted *regardless* of whether owners followed Whirlpool's recommended fixes." *Whirlpool*, 2010 U.S. Dist. LEXIS 69254, at *15 n. 4 (emphasis in the original).  Likewise, Plaintiffs in this case are alleging that, under normal and ordinary operating procedures, the inherent defect in Frigidaire's washers nonetheless caused biological growth inside of the machines regardless of any particular user's washing habit.[33] Whether such common evidence establishes proximate causation is a merits-inquiry reserved for trial.  As such, Frigidaire does not, because it cannot, cite any authority requiring Plaintiffs to *dis*prove all other causes in order to show that common evidence will prove the theory of liability.

Additionally, despite Frigidaire's contention to the contrary, assertions of comparative negligence are not applicable to implied warranty claims of this nature, where damages are not sought for death or personal injury.  *See, e.g.*, *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *see also*, *JHC Ventures, LP v. Fast Trucking, Inc.*, 94 S.W.3d 762 (Tex. App. San Antonio 2002) (refusing to extend comparative fault principles to UCC breach of warranty claims).

Thus, consistent with Rule 23 principles in this Circuit and elsewhere, Frigidaire's affirmative defenses present no obstacle to class certification.

### E.    Plaintiffs Satisfy Typicality and Adequacy

Frigidaire's argument that Plaintiffs do not satisfy the typicality requirement suffers from the same debility as its repeated predominance arguments – it mischaracterizes what Plaintiffs

---

[33] *See also Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505 (D.S.C. 2007) (predominant common question whether house siding was defective even if it is installed and maintained properly); *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 2, 28 (D. Mass. 2003) (predominant common question whether "Goodyear's hose [installed in home radiant floor heating systems] is defective and fails both under ordinary, foreseeable conditions and even 'ideal' conditions as defined by Goodyear."); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (predominant "common question is whether Carrier's furnaces are defective by design, regardless of any individual factors such as installation, maintenance, or type of fuel used."); *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 641 (D. Colo., 1986) (whether the V8-6-4 engine was defectively designed created predominant question); *Smith v. Behr Process Corp.*, 113 Wash. App. 306, 323 (Wash. Ct. App. 2002) (predominance found when class members' claims arose from a common nucleus of operative facts involving the formulation, manufacture, and sale of Behr's allegedly defective sealant products).

are required to prove and misdirects the Court's attention to issues that are not relevant. Contrary to Frigidaire's depiction of typicality, a representative party's claims need not be identical to those of potential class members. *In re Scientific-Atlanta, Inc. Sec. Lit.*, 571 F.Supp.2d 1315, 1326 (N.D. Ga. 2007). Rather, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. *See, e.g., Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Id.*

Here, the named Plaintiffs' claims and the putative class members' claims arise from Frigidaire's uniform misconduct, *i.e.*, the defective convoluted bellow inherent in the Frigidaire Washing Machines. The named Plaintiffs and putative Class Members purchased a Frigidaire Washing Machine, including those specifically referenced in Frigidaire's Service Flash – Models BTF2140, BLTF2940E, FTF2140, FWFB9100E, FWF9200E, GLTF2940, LTF2140 and LTF2940E. (FAC ¶ 1; Ex. A). In sum, Plaintiffs Brown and Vogler each purchased a Frigidaire Washing Machine containing a defective convoluted bellow, they were not informed that the Washing Machines would cause mold problems, and they suffered Mold Problems as a result of the defective convoluted bellow.

Frigidaire seemingly conflates typicality with adequacy. Frigidaire purports to challenge the adequacy of Plaintiffs Brown and Vogler but fails to argue any facts suggesting that Plaintiffs Brown and Vogler will not adequately protect the interests of the class. Nor does Frigidaire challenge the adequacy of class counsel. Frigidaire's challenges to typicality and adequacy are unavailing.

///

///

///

///

///

## IV.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that their renewed motion for class certification be granted.

Date:  September 14, 2011

**WEXLER WALLACE LLP**

   /s/ Mark J. Tamblyn
Mark J. Tamblyn (*pro hac vice*)

Ian J. Barlow (*pro hac vice*)
455 Capitol Mall, Suite 231
Sacramento, California  95814
Telephone:  (916) 492-1100
Facsimile:  (916) 492-1124
Email:  mjt@wexlerwallace.com
          ijb@wexlerwallace.com

R. Brent Irby (*pro hac vice*)
Charles A. McCallum, III (*pro hac vice*)
**MCCALLUM, HOAGLUND,
   COOK & IRBY, LLP**
905 Montgomery Highway, Suite 201
Vestavia Hills, Alabama  35216
Telephone:  (205) 824-7767
Facsimile:  (205) 824-7768
Email:  birby@mhcilaw.com
          cmccallum@mhcilaw.com

Lee W. Brigham
Georgia Bar No. 081698
**BELL & BRIGHAM**
457 Greene Street
Augusta, Georgia  30903
Telephone:  (706) 722-2014
Facsimile:  (706) 722-7552
Email:  lee@bellbrigham.com

Kenneth A. Wexler (*pro hac vice*)
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, Illinois  60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022
Email:  kaw@wexlerwallace.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2011, I electronically filed the foregoing Reply in Support of Plaintiffs' Renewed Motion for Class Certification with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Benjamin H. Brewton
TUCKER, EVERITT, LONG, BREWTON & LANIER
Post Office Box 2426
Augusta, Georgia 30903
Telephone: (706) 722-0771
Facsimile: (706) 722-7028
Email: bbrewton@thefirm453.com

John H. Beisner
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: john.beisner@skadden.com

J. Russell Jackson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Email: russell.jackson@skadden.com

/s/ Mark J. Tamblyn
Mark J. Tamblyn (*pro hac vice*)
WEXLER WALLACE LLP
455 Capitol Mall, Suite 231
Sacramento, CA 95814
Telephone: (916) 492-1100
Facsimile: (916) 492-1124
Email: mjt@wexlerwallace.com