## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒

ROBERT BROWN and MICHAEL
VOGLER, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

 v.

ELECTROLUX HOME PRODUCTS, INC.
d/b/a FRIGIDAIRE®,

        Defendant.

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO:  CV108-030

## DEFENDANT'S RESPONSE TO PLAINTIFFS' NOTICE OF NEW AUTHORITY

Plaintiffs argue that the decision in *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No. 10-4188, 2012 U.S. App. LEXIS 9002 (6th Cir. May 3, 2012) (attached as Ex. 1 to Mot.), supports class certification in this case. But *Whirlpool* should not weigh into this Court's class-certification analysis for two important reasons:  (1) the overbreadth problems posed by this case are much more pronounced than those presented in *Whirlpool*, which, in any event, applied a weaker overbreadth standard from that routinely followed by other courts; and (2) *Whirlpool* misapplied the commonality requirement of Rule 23, as interpreted by the U.S. Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), by finding one abstractly similar problem in all the subject washing machines to suffice for class treatment, while essentially ignoring the many individualized issues plaintiffs would have to prove to satisfy the elements of their claims.

*First*, the overbreadth problems in this case are far more extreme than those in *Whirlpool*. In *Whirlpool*, the plaintiffs alleged that "thirty-five percent of Whirlpool customers" were affected by the alleged defect, 2012 U.S. App. LEXIS 9002, at *11, leading the Sixth Circuit to brush the overbreadth argument aside on the ground that certification may be appropriate even when "some class members have not been injured," *id.* at *25. Here, by contrast, less than **two-tenths of one percent** of the putative class members required a visit by a service technician to address alleged problems relating to odor, mold or mildew during the warranty period. (Decl. of Chris Hill ¶ 10, Aug. 22, 2011 (attached to Def.'s Opp'n, ECF No. 164 as Ex. 2).) Thus, this case does not merely present "some class members" without injury; rather, "plaintiffs' proposed classes are '**wildly**' overbroad." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL 1703, 2009 U.S. Dist. LEXIS 97594, at *15-16 (N.D. Ill. Oct. 20, 2009) (emphasis added) (refusing to certify consumer-fraud class involving alleged deceptive marketing of tool products where "a great many of the putative class members were not injured").[1]

*Whirlpool*'s overbreadth analysis is, in any event, out of step with the long line of other federal decisions rejecting proposed classes where "only a portion" of the class could allege injury. *Gonzales v. Comcast Corp.*, No. 10-cv-01010-LJO-BAM, 2012 U.S. Dist. LEXIS 196, at

---

[1]      *Whirlpool* went on to suggest that even class members who did not experience mold might nonetheless have been sufficiently injured such that the class was not overbroad by virtue of including them. But the cases on which the court relied – *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010), and *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) – do not support this conclusion. *Wolin* did not address overbreadth or standing – it only addressed predominance. And that case involved cars, which are unique. Unlike defects in washing machines, latent defects in cars arguably cause a legally cognizable injury – even if they never manifest – because the identification of a defect in an automobile can diminish the car's resale value, *see, e.g.*, *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 588 (Ill. 1996), which could be characterized as a meaningful "economic loss" in light of the secondary market for automobiles. No equivalent secondary market exists for washing machines, making it impossible for an owner to credibly claim a loss in value if his or her machine is operating properly. Similarly, *Stearns* is inapposite because that case involved claims of deceptive billing on the Internet – not product malfunction – and therefore has little bearing on the precise question raised in *Whirlpool* and here: whether a class action premised on the allegation that a product is defective may be certified where members of the class have not experienced any problems with the product. *See Stearns*, 655 F.3d at 1017-18.

*61-62 (E.D. Cal. Jan. 3, 2012) ("Plaintiffs' Class definitions are over broad and include Class members who were never injured by Comcast's conduct," where "only a **portion** of Comcast customers utilized Direct Pay, as did Plaintiffs") (emphasis added), *report and recommendation adopted by*, 2012 U.S. Dist. LEXIS 7271 (E.D. Cal. Jan. 23, 2012); *see also, e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) (upholding denial of class certification because the class "could include millions [of consumers] who were not deceived and thus have no grievance" against Coca-Cola); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (finding that class of "all persons within the United States who own[ed] a 20-inch Aluminum iMac" was overbroad because definition included individuals who did not actually purchase their iMac, individuals who were not subject to the allegedly deceptive advertisements and individuals who were not injured by defendant's conduct); *In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 671-72 (N.D. Ill. 2009) (refusing to certify class of all purchasers of one of McDonalds' food products where the proposed class was not limited to persons who necessarily saw or knew of the alleged representations and was therefore "overinclusive"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. MDL 1703, 2007 U.S. Dist. LEXIS 89349, at *3-4, *12-16 (N.D. Ill. Dec. 4, 2007) (denying certification of a proposed class of Craftsman tool purchasers alleging that Sears inaccurately advertised the tools as being "Made in USA" because the proposed class included people who neither saw the advertisements at issue nor cared whether the tools were made in this country); *Almonor v. BankAtlantic Bancorp, Inc.*, 261 F.R.D. 672, 676 (S.D. Fla. 2009) (class definition that encompassed individuals who could not have suffered any harm from defendant's conduct was "overly broad" and "unworkable"); *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 327-29, 334-35 (S.D. Ill. 2009) (denying certification of warranty claims because the proposed class definition included product owners who never made a warranty claim during the warranty period, much less had a claim

denied, and therefore had not suffered any injury); *Conigliaro v. Norwegian Cruise Line Ltd.*, No. 05-21584-CIV-ALTONAGA/Turnoff, 2006 U.S. Dist. LEXIS 95576, at *24-25 (S.D. Fla. Aug. 31, 2006) (refusing to certify class consisting of all passengers on a ship that the defendant sailed into a severe storm, including those who did ***not*** suffer any injury, on overbreadth and other grounds).  By finding no overbreadth problems in a class that, even by plaintiffs' best estimate, consisted primarily of uninjured individuals, the Sixth Circuit strayed from the consistent and better reasoned view of other courts that such overinclusiveness cannot be tolerated.

The majority view reflects important policy concerns that the *Whirlpool* court evidently overlooked.  The rule against overly broad classes advances the substantive tort requirement that a plaintiff must be injured in order to recover.  *See, e.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law.").  This requirement does not disappear merely because class, rather than individual, relief is sought; to the contrary, the "Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'"  *Dukes*, 131 S. Ct. at 2561 (quoting 28 U.S.C. § 2072(b)).  An overly broad class threatens creation of liability to individuals solely by dint of the class-action device – a result expressly condemned by the Supreme Court in *Dukes*, but one certain to result from the Sixth Circuit's decision in *Whirlpool*.  This Court should not follow that example.

***Second***, the *Whirlpool* ruling is also flawed because it misperceived the commonality requirement of Rule 23.  Despite acknowledged differences in the designs of the washing machines at issue and in the knowledge and conduct of the class members, the court concluded that a common question existed because "the plaintiffs have produced evidence of alleged common design flaws in the Duet platforms" – specifically, that while subsequent models eliminated mold problems in the tubs of the machines, "there continued to be other areas in the

4

machine that collected debris." 2012 U.S. App. LEXIS 9002, at *22-23. This conclusion fundamentally misapprehended the commonality requirement by accepting a highly general allegation of defect without considering how that general theory might play out differently in individual cases.

The U.S. Supreme Court recently clarified the contours of this requirement in its seminal ruling in *Dukes*, 131 S. Ct. 2541. In *Dukes*, the Supreme Court held that a sprawling nationwide class encompassing 1.5 million female Wal-Mart employees who alleged discrimination did not meet the commonality requirement under Rule 23. The Court explained that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury" – not "merely that they have all suffered a violation of the same provision of law." *Id.* at 2551 (internal quotation marks and citation omitted). It is not enough in a Title VII case, for example, to allege that the class has suffered discrimination – even "in a single company." *Id.* Rather, the "claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor." *Id.* In other words, the Court explained, there must be "some glue holding the alleged *reasons* for all th[e allegedly discriminatory] decisions together," such that "examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id.* at 2552. The class proposed in *Dukes* – which alleged only a discriminatory "corporate culture," *id.* at 2553 – was "worlds away" from meeting even the commonality requirement of Rule 23, *id.* at 2554.

The Sixth Circuit made the same mistake that the Ninth Circuit made in *Dukes*. It assumed that the allegation of an abstractly similar fact – in *Dukes*, a "corporate culture"; in *Whirlpool*, a "common design flaw[]" – is sufficient to establish commonality. In *Dukes*, this contention was rejected because when it came to proof in individual cases, proof of a corporate culture would not be enough; instead, an individual would have to show "why [she was]

disfavored," which would entail a showing of how the general culture manifested in specific discrimination against the plaintiff.  The contention of commonality should have been rejected in *Whirlpool* for the same reason – an abstractly similar "design flaw[]" could not establish defect by itself; rather, the plaintiffs would need to show that the alleged flaw was capable of proving a mold problem in every configuration of the washer.  More than this, the allegedly common "flaw[]" would have to be analyzed in light of the "variations in consumer laundry habits" and differences regarding "remedial efforts undertaken by consumers and service technicians" that the Sixth Circuit acknowledged to be influential on the question of "the amount of biofilm buildup."  2012 U.S. App. LEXIS 9002, at *22.

Other post-*Dukes* cases confirm that commonality cannot be satisfied on the basis of highly generalized issues of fact or law.  *M.D. v. Perry*, No. 11-40789, 2012 WL 974878, at *10 (5th Cir. Mar. 23, 2012) (rejecting attempt to "stretch the notions of commonality by attempting to aggregate several amorphous claims of systemic or widespread conduct into one 'super-claim'") (alteration, some internal quotation marks and citation omitted); *Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 497 (7th Cir. 2012) ("superficial common questions . . . are not enough"; rather, plaintiffs must identify "some question or law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims"); *Groussman v. Motorola, Inc.*, No. 10 C 911, 2011 U.S. Dist. LEXIS 134769, at *10 (N.D. Ill. Nov. 15, 2011) (relying on *Dukes* and holding that plaintiffs could not "satisfy the commonality requirement by general allegations that all proposed class members will argue that Defendants violated ERISA and that Defendants breached their fiduciary duties").

Under a proper commonality analysis, no common issue of fact or law exists in this case.  As explained in defendant's opposition to plaintiffs' renewed motion for class certification, the putative class suffers from an insurmountable number of highly individualized issues that render

class treatment improper.  (*See* Def.'s Opp'n at 1, ECF No. 164.)  In the first place, as previously

discussed, only a tiny fraction of the proposed class has actually experienced any problems with

their washing machines.  Thus, determining whether each class members suffered a loss as a

result of defendant's alleged misconduct would itself be a highly individualized, subjective

inquiry.  *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 276 F.R.D. 336,

345-46 (W.D. Mo. 2011) ("[T]he [consumer-fraud] claims Plaintiffs are asserting require proof

that people were somehow affected or damaged by th[e alleged] omissions," which varied from

class member to class member).  There are numerous other individualized issues that plague the

putative class as well, not the least of which is the fact that class members purchased different

washing machines with different features.  (*See* Def.'s Opp'n at 8.)  Further, the class members

had different levels of knowledge regarding the potential for odor and mildew buildup in front-

load washers before they purchased their machines, and they used and cared for their machines

in different ways.  (*See generally id.* at 34-35.)  Most notably, there were numerous discussions

in consumer buying guides and the general media during the class period (to which many

putative class members would have been exposed) about the potential for mold and mildew in

front-load washing machines (*id.*), making certification particularly improper (*see* Def.'s Notice

of Supp. Auth. at 2-4, ECF No. 173 (summarizing the recent holding in *In re Ford Motor Co. E-*

*350 Van Products Liability Litigation (No. II)*, which denied class certification in part because

"'consumers who saw these reports and understood the E-350 van to have significant handling

problems will have a difficult time proving causation, and in doing so, they would not rely on

common proof'") (quoting No. 03-4558, 2012 U.S. Dist. LEXIS 13887, at *56 (D.N.J. Feb. 6,

2012)).  Finally, plaintiffs' claims are even further individualized because many putative class

members were never exposed to Electrolux's allegedly false representations in the first place (*see*

Def.'s Opp'n at 34-36)**,** another variable that precludes class treatment, as the Ninth Circuit

recently held in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  (*See* Def.'s Notice of Supp. Auth. at 1-2 (summarizing the decision in *Mazza* in support of the proposition that class treatment is impermissible where the class has not been uniformly exposed to the allegedly unlawful conduct).)

In short, as in *Dukes*, there is no "glue" that holds the class together – no "common answer to the crucial question":  whether defendant's alleged misconduct caused each class member injury with respect to his or her washing machine.  *Dukes*, 131 S. Ct. at 2552.  For these reasons as well, *Whirlpool* was wrongly decided and should not be considered by this Court in deciding plaintiffs' pending motion for class certification.[2]

## CONCLUSION

For the foregoing reasons, the Court should find that plaintiffs' supplemental authority is unpersuasive and deny plaintiffs' renewed motion for class certification.

Dated:  May 9, 2012                              Respectfully submitted,

| | |
|---|---|
| John H. Beisner | s/ J. Russell Jackson |
| Jessica Davidson Miller | J. Russell Jackson *(pro hac vice)* |
| SKADDEN, ARPS, SLATE MEAGHER | Peter Luneau |
| & FLOM LLP | SKADDEN, ARPS, SLATE MEAGHER |
| 1440 New York Avenue, N.W. | & FLOM LLP |
| Washington, D.C.  20005 | Four Times Square |
| (202) 371-7000 | New York, New York 10036 |

---

[2]      The *Whirlpool* court's predominance analysis was also flawed – not only because it rested on a faulty commonality analysis, but because it rested **entirely** on that analysis.  Specifically, the court believed that its commonality analysis sufficed to show predominance.  *See* 2012 U.S. App. LEXIS 9002, at *27 ("In light of all that we have already said, we have no difficulty affirming the district court's finding that common questions predominate over individual ones[.]").  This conclusion is clearly wrong and contrary to binding authority in this Circuit, which holds that commonality and predominance require distinct inquiries.  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1269 (11th Cir. 2009) ("[T]he district court[] . . . interming[l[ed] [] the commonality and predominance inquiries[, which] demonstrate[d], at best, imprecision in the organization of the class certification order or, at worst, a fundamental misapplication of Rule 23.").  Had the court undertaken a proper predominance analysis, it would have found that the plaintiffs' claims were rife with individualized issues, including whether each washer was defective, whether the alleged defects caused each class member to sustain a loss, and whether any class member misused his or her washer.  *See* 2012 U.S. App. LEXIS 9002, at *24-26 (summarily rejecting these issues).  As set forth above and in defendant's class-certification briefing, this case involves all of those individualized issues (and many others), precluding class treatment of plaintiffs' claims.  (*See* Def.'s Opp'n at 15-37.)

Telephone: (212) 735-3000
russell.jackson@skadden.com

Benjamin Brewton, Bar No. 02530
TUCKER, EVERITT, LONG,
BREWTON & LANIER
P. O. BOX 2426
AUGUSTA, GEORGIA 30309
Telephone: (706) 722-0771
bbrewton@thefirm453.com

ATTORNEYS FOR DEFENDANT ELECTROLUX HOME PRODUCTS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 9th day of May, 2012, I have served a copy of the foregoing upon all interested parties in accordance with ECF rules by electronically filing the foregoing with the Clerk of Court using the CM/ECF system.

<u>/s/ J. Russell Jackson</u>
J. Russell Jackson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
<u>russell.jackson@skadden.com</u>