IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| ROBERT BROWN and MICHAEL VOGLER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | CASE NO: CV108-030 |
| v. | ) ) | |
| ELECTROLUX HOME PRODUCTS, INC. d/b/a FRIGIDAIRE®, | ) ) ) | |
| Defendant. | ) ) | |

### DEFENDANT'S SUPPLEMENTAL FILING IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION

At the conclusion of the August 2 class-certification hearing, the Court invited both sides to file supplemental briefing to respond to any contentions raised during oral argument. Defendant Electrolux Home Products, Inc. ("Electrolux") respectfully submits this supplemental filing to address two issues that arose at the hearing: (1) the supposed "classwide" special verdict form proposed by plaintiffs; and (2) plaintiffs' continued and misplaced reliance on *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254, at *9 (N.D. Ohio July 12, 2010), *aff'd*, 678 F.3d 409 (6th Cir. 2012).

   1.   **Plaintiffs' "Classwide" Special Verdict Form**

Plaintiffs provided the Court at oral argument with a sample verdict form in an effort to demonstrate that trying their causes of action as a class would be manageable. But plaintiffs'

verdict form only serves to highlight that many of the elements of plaintiffs' claims can only be proven through individualized evidence.

For example, the very first question on plaintiffs' proposed form asks whether the original bellows included with the class members' machines were "defective." (*See* Pls.' Proposed Special Verdict Form at 1.) But the proof each class member could muster of a defect would vary dramatically based on whether he or she ever experienced a problem with his or her washing machine. Even if some purchasers could point to laundry that was allegedly ruined by unexpected mildew and odor, the record shows that the overwhelming majority of the class would have no evidence that their machines were defective because they did not experience any mildew at all. The jury's analysis of whether a washing machine is "defective" would obviously differ depending on the totality of the facts for each class member. As a result, there is no way to prove through common evidence that every single class member experienced a "defect."

Another interrogatory on plaintiffs' proposed verdict form asks whether Electrolux's "failure to disclose" the "defective characteristics of the bellows . . . and the consequences of the defect" was "a material factor in decisions to purchase the machines." (*See* Pls.' Proposed Special Verdict Form at 1.) This is presumably an attempt to address the elements of reliance and causation required under the Texas Deceptive Trade Practices Act and the California Unfair Competition Law respectively. But there would be no way for a jury to determine in a class trial what each consumer considered to be material – or relied on – in purchasing his or her washer. Rather, a jury would need to consider the specific facts surrounding each consumer's purchase. After all, people purchase products for a host of different reasons. Some place great weight on comparative prices, others focus more on how products look, and still others are most concerned with energy efficiency. Here, in particular, there is no way to determine materiality on a classwide basis because many class members may have had knowledge of the potential for odor

2

and mold *before purchasing their washing machines*. Indeed, the record shows that there was significant public discussion of the potential for mold and mildew in front-load washing machines throughout the class period. *See, e.g.*, "Washer & Dryer Update," *Consumer Reports*, Feb. 2005 at 42 ("You need to know: Numerous readers have reported that their front-loading washers developed mold or a musty smell. Using chlorine bleach occasionally and leaving the door ajar should help."). As numerous courts have concluded, these sorts of variations preclude class certification, because each class member would have to separately prove reliance or causation based on what he or she knew before making the purchase and how he or she evaluated that information. *See Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 202 (W.D. Tex. 2004) (denying motion for class certification with respect to DTPA and other claims because, *inter alia*, "[t]he reliance element of Plaintiffs' prima facie case, and of Home Depot's statutory defense, simply presents too many individual issues that are not susceptible to classwide resolution"); *Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622, 631-32 (2010) (decertifying UCL claims asserted by purchasers of Listerine mouthwash because every individual seeking restitution under the statute had to establish that he or she lost money or property "acquired by means of" the unfair competition alleged).

Plaintiff's special verdict form also omits several individualized elements of plaintiffs' claims. For example, nowhere on the form is the jury asked to determine:

- Whether each class member's machine was "unmerchantable" – i.e., whether the class member could not use the machine to wash clothing during the warranty period – as is necessary to sustain plaintiffs' implied-warranty claims under Texas and California law. *See, e.g.*, *Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 659 (1988) (denying certification of implied-warranty claims under California and other states' laws in defective-engine case because "[w]hether the [product] failed to live up" to the implied warranty would require "proof of the history of each [individual's product] and its problems"); *In re Canon Cameras Litig.*, 237 F.R.D. 357, 359-60 (S.D.N.Y. 2006) (denying certification under, *inter alia*, Texas law, where plaintiffs could only show that a "tiny fraction" of cameras malfunctioned).

3

- Whether the problem each class member experienced with his or her machine was the result of a defect and not some other cause, as is required to succeed on their express- and implied-warranty claims under Texas and California law. *See, e.g.*, *In re Microsoft Xbox 360 Scratched Disc Litig.*, No. C07-1121-JCC, 2009 U.S. Dist. LEXIS 109075, at *18-22 (W.D. Wash. Oct. 5, 2009) (declining to certify warranty claims under California and other states' laws because plaintiffs would have to present individualized proof that the injury was caused by a defect in the machine – rather than misuse or some other unrelated cause, creating "individual issues of fact for the jury"); *Payne v. FujiFilm U.S.A., Inc.*, No. 07-385 (GEB), 2010 U.S. Dist. LEXIS 52808, at *17-18 (D.N.J. May 28, 2010) ("Because the great majority of the proposed class has not experienced any malfunction with the FinePix 3800 camera and because individual issues of causation will still need to be adjudicated, the question of whether a defect exists in this case will need to be determined based on facts that are particular to each individual proposed class member.").

- Whether each class member provided notice (and an opportunity to cure) to Electrolux as required by Texas implied-warranty law and California express-warranty law. *See, e.g.*, *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008) (whether class members provided notice is a highly "individualized factual inquiry" because "some potential class members may have provided timely notice, while others may have provided untimely notice of Defendant's alleged breach or no notice at all"); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1147-48 (N.D. Cal. 2010) ("Plaintiffs' express warranty claims involve elements that are individual to each purported class member, such as the provision of notice [and] an opportunity to cure").

- Whether each California class member relied on the "repair and replace" warranty in choosing to purchase his or her machine as required under the Song-Beverly Act. *See, e.g.*, *Tietsworth*, 720 F. Supp. 2d at 1147-48 (striking class claim for breach of express warranty because it involved proving reliance which was "individual to each purported class member").

All of these questions must be answered before plaintiffs can prevail on their claims under California and Texas law – and none can be proven with common evidence.[1] In short, "the task

---

[1] Plaintiffs' proposed special verdict form is also problematic because it would not require the jury to determine the actual amount of damages (if any) suffered by the class. Plaintiffs' form would ask the jury to determine both the "average cost per washing machine to replace the original bellows" and "the average loss in value . . . due to the defective bellows." (Pls.' Proposed Special Verdict Form at 2.) It is unclear which figure plaintiffs propose would equal the damages to the class, but neither is workable. As an initial matter, plaintiffs are required to prove that all class members suffered a loss and the actual amount of damages they sustained, not just that some class members lost money and the theoretical "average" of that loss spread across the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) ("disapprov[ing]" a "Trial by Formula" where the "entire class recovery" would have been determined by using, *inter alia*, the average backpay award from a sample set of class members "without further individualized proceedings"). Further, plaintiffs' suggestion that they should be awarded the "average cost" of replacement bellows for all class members – despite the fact that only a tiny fraction of the class has reported a problem with their machines requiring replacement bellows – makes clear that they are simply seeking a "windfall" unconnected to any actual injuries sustained.

for plaintiffs at class certification is to demonstrate that [each] element" of their claims is "capable of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008); *Dukes*, 131 S. Ct. at 2551-52 ("'[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation'") (citation omitted).

Instead of fulfilling that task, plaintiffs' special verdict form shows that they have failed at it. Accordingly, class certification should be denied.

### 2. *Glazer v. Whirlpool*

Plaintiffs also argued, as they have in their written papers, that the U.S. Court of Appeals for the Sixth Circuit's affirmance of the certification order in *Glazer v. Whirlpool* should control the Court's ruling here. This argument should be rejected for several reasons.

First, the two cases involve different causes of action with different elements. In *Whirlpool*, the court certified plaintiffs' claims for negligent failure to warn, negligent design, and tortious breach of warranty, but specifically declined to certify plaintiffs' claim under Ohio's consumer-protection statute. Thus, the case provides no guidance as to whether plaintiffs' breach-of-express-warranty, breach-of-implied-warranty, and consumer-protection claims can be litigated on a classwide basis.

Second, the district court in *Whirlpool* explicitly acknowledged that a key element in each of plaintiffs' claims here – **whether each class member experienced a manifestation of a problem with his/her washer** – could *not* be proven on a classwide basis. Rather, the court specifically noted that each class member would have to step forward to prove that his or her washing machine exhibited a problem after trial. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 69254, at *9-10. Here, plaintiffs are seeking

a single classwide trial that would purportedly resolve all issues, including manifestation, injury, and damages. *Whirlpool* makes clear that such a trial would be inappropriate, especially considering that only a tiny fraction of the class required service for alleged mold problems during the warranty period. For this reason too, plaintiffs' continued reliance on *Whirlpool* is misplaced.

## CONCLUSION

For these reasons, and all of the other reasons set forth in Electrolux's Memorandum In Opposition to Class Certification and at oral argument, the Court should deny plaintiffs' motion for class certification.

Dated: August 13, 2012                                          Respectfully submitted,

| | |
|---|---|
| J. Russell Jackson *(pro hac vice)* | s/ John H. Beisner |
| Peter Luneau | John H. Beisner *(pro hac vice)* |
| SKADDEN, ARPS, SLATE MEAGHER | Jessica Davidson Miller *(pro hac vice)* |
| & FLOM LLP | SKADDEN, ARPS, SLATE MEAGHER |
| Four Times Square | & FLOM LLP |
| New York, New York 10036 | 1440 New York Avenue, N.W. |
| Telephone: (212) 735-3000 | Washington, D.C. 20005 |
| | (202) 371-7000 |
| | |
| | Benjamin Brewton, Bar No. 02530 |
| | TUCKER, EVERITT, LONG, |
| | BREWTON & LANIER |
| | P. O. BOX 2426 |
| | AUGUSTA, GEORGIA 30309 |
| | Telephone: (706) 722-0771 |
| | bbrewton@thefirm453.com |

ATTORNEYS FOR DEFENDANT ELECTROLUX HOME PRODUCTS, INC.

## **CERTIFICATE OF SERVICE**

I certify that on the 13th day of August, 2012, I have served a copy of the foregoing upon all interested parties in accordance with ECF rules by electronically filing the foregoing with the Clerk of Court using the CM/ECF system.

/s/ J. Russell Jackson
J. Russell Jackson
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, New York  10036
Telephone:  (212) 735-3000
russell.jackson@skadden.com