# In the United States District Court
# for the Southern District of Georgia
# Augusta Division

| | | |
|---|---|---|
| MICHAEL TERRILL, | * | |
| ROBERT BROWN, | * | |
| MICHAEL VOGLER, | * | |
| PALECIA BOYD, and | * | |
| DENISE PACK, | * | |
| on behalf of themselves and all others | * | |
| similarly situated, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | CV 108-030 |
| | * | |
| ELECTROLUX HOME PRODUCTS, INC. | * | |
| d/b/a FRIGIDAIRE, | * | |
| | * | |
| Defendant. | * | |

## ORDER

Presently before the Court is Plaintiffs' Motion for Class Certification. See Dkt. No. 158. Upon due consideration, Plaintiffs' motion is **GRANTED.**

## I.   FACTUAL BACKGROUND

This action is predicated on an alleged design defect in Defendant's product. See Dkt. No. 66. The relevant facts are taken principally from Plaintiffs' First Amended Complaint. See

1

id.  Where the parties offer conflicting accounts of the facts and events in question, this Court draws all inferences and presents all evidence in the light most favorable to Plaintiffs. See Larry James Oldsmobile-Pontiac-GMC Truck Co., Inc. v. Gen. Motors Corp., 164 F.R.D. 428, 436-37 (N.D. Miss. 1996) ("[T]he court must take the facts alleged in the light most favorable to the party moving for class certification."); In re Tri-State Crematory Litig., 215 F.R.D. 660, 680-81 (N.D. Ga. 2003).

     Plaintiffs are two (2) individuals who reside in California and Texas.  Defendant is a Delaware corporation whose principal place of business is in Augusta, Georgia.  Dkt. No. 66 ¶ 18. Defendant manufactures and sells home appliances, including Frigidaire front-load washing machines ("Washing Machines" or "Machines"), throughout the United States.  Id. ¶¶ 1, 18. Defendant's website contains the following representations regarding its Washing Machines:

> [Y]ou can count on Frigidaire for innovation, performance and style. . . . Your laundry never looked so good. . . . You [can] trust that the iCare Intelligent Fabric Care System™ gently washes and completely dries to keep your clothes looking their best.  With no agitator, you [can] count on tumble action to wash so gently and rinse so completely that your clothes feel fresher and last longer.

Id. ¶ 30.

2

Plaintiffs each purchased Defendant's Washing Machines. Id. ¶ 1. Plaintiffs allege that the Washing Machines, including models BTF2140E, BLTF2940E, FTF2140E, FWFB9100E, FWFB9200E, GLTF2940E, LTF2140E, and LTF2940E, suffered from a defect in the bellows's design.[1] Id. ¶¶ 1-2. Specifically, the Washing Machines contained a "convoluted bellows." Id. at Ex. A. The alleged design defect in the convoluted bellows caused the Washing Machines to accumulate mold and mildew and emit an odor.[2] Id. ¶ 2. Plaintiffs allege that the effects of the design defect were so severe that clothing was stained and ruined and that an odor permeated their homes. Id. ¶¶ 2, 7. Consequently, Plaintiffs overpaid for the Washing Machines. Id. ¶ 6.

Defendant knew of the design defect before Plaintiffs purchased their Washing Machines.[3] Id. ¶ 4. Defendant failed to warn consumers of the defect. Id. Plaintiffs would not have

---

[1] The bellows is a rubber seal around the washing machine's door and drum that keeps clothing, water, and detergent inside of the wash basket as the basket rotates.

[2] For the purposes of this Order, the Court uses the terms mold, mildew, and biofilm interchangeably.

[3] As evidence of Defendant's knowledge of the alleged defect, Plaintiffs attached Defendant's internal Service Flash issued in April 2007. Dkt. No. 66, at Ex. A. The Service Flash stated that a convolution in the bellows allowed water to remain in the bellows, potentially allowing biofilm to form. Id. The Service Flash also stated that a new bellows design that did not have convolutions was "available for such concerns." Id. The new bellows design was known as the "S-shaped bellows."

purchased the Washing Machines had they known of the design defect.  Id. ¶ 6.

All of the Washing Machines came with substantially similar warranties issued by Defendant.  Each warranty consisted of three (3) different warranties:  a one-year, five-year, and twenty-five-year warranty.  Dkt. No. 164-7, at 2.  The one-year warranty stated, "Full one-year warranty from date of purchase: [Defendant] will pay for[] labor and replacement parts which prove to be defective in materials and workmanship."  Id. (capitalization altered).  The five-year and twenty-five year warranties are not at issue.  See Dkt. No. 124, at 4, 13-16.

Plaintiffs purchased their Machines in their home states.  See Dkt. No. 66 ¶¶ 14-15.  Neither Plaintiff purchased a Machine directly from Defendant.  See id.

Plaintiff Robert Brown lives in San Diego, California.  Id. ¶ 14.  He purchased a model LTF2140ES3 Frigidaire Washing Machine on May 8, 2006, from a Lowe's Home Improvement store in California.  Id.  Plaintiff Brown first noticed the alleged defect in July 2006.  Id.  However, he waited until May 2009 to contact Defendant.  Id.  Defendant initially advised Plaintiff Brown to wipe down his machine after each use and to leave the Machine door open when it was not in use.  Id.  Defendant

4

eventually offered to pay Plaintiff Brown for the parts and labor to install a replacement bellows or to provide a rebate on the purchase of a comparable washing machine.  Id.

Plaintiff Michael Vogler lives in San Antonio, Texas.  Id. ¶ 15.  In May 2007, he purchased a model FTF2140ES3 Frigidaire Washing Machine at Conn's in San Antonio, Texas.  Id.  Plaintiff Vogler began experiencing mildew problems due to the alleged defect in November 2008.  Id.  He contacted Defendant at that time.  Id.  Defendant informed Plaintiff Vogler that his Machine's warranty had expired and that all Defendant could do was sell him a new bellows.  Id.

## II.  PROCEDURAL BACKGROUND

On March 5, 2008, Plaintiffs Michael Terrill, Robert Brown, Michael Vogler, Palecia Boyd, and Denise Pack ("the Initial Plaintiffs") filed an initial complaint against Defendant.  See Dkt. No. 1.  On July 1, 2009, the Initial Plaintiffs filed an amended complaint ("Complaint").  See Dkt. No. 66.  The Initial Plaintiffs sought to bring their suit as a class action on behalf of themselves and others similarly situated.  See id. ¶¶ 19-29.

The Complaint asserts claims for breach of express warranty (Count 2); breach of implied warranty of merchantability (Count 3); unjust enrichment (Count 4); and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (Count 5). See id. ¶¶ 50-76. The Complaint also asserts various state law claims for deceptive trade practices and unfair competition (Counts 1, 6, 7, and 8). See id. ¶¶ 46-49, 77-100.

The Initial Plaintiffs moved for class certification. See Dkt. No. 97. Defendant moved to strike the class allegations. See Dkt. No. 87. The Court denied the Initial Plaintiffs' motion for class certification because the Initial Plaintiffs failed to satisfy the numerosity requirement of Federal Rule of Civil Procedure 23(a). See Dkt. No. 124, at 45-48.

After several orders from this Court, the remaining plaintiffs are Robert Brown and Michael Vogler ("Plaintiffs"). See Dkt. Nos. 124, 152. The remaining claims are Plaintiff Brown's one-year express warranty claim (Count 2), Plaintiffs' implied warranty of merchantability claims (Count 3), Plaintiffs' Magnuson-Moss Warranty Act claims (Count 5), Plaintiff Brown's California Unfair Competition Law ("UCL") claims under the UCL's unfair and fraudulent business practices prongs (Count 6), and Plaintiff Vogler's Texas Deceptive Trade

6

Practices-Consumer Protection Act claim (Count 7). <u>See</u> Dkt. Nos. 124, 150.

Currently before the Court is Plaintiffs' Motion for Class Certification. <u>See</u> Dkt. No. 158. Specifically, Plaintiffs seek to certify two (2) state-based classes consisting of:

- All persons and entities in the State of California who purchased, other than for resale, during the previous four (4) years[4] any of the Washing Machines[5] that were equipped with a convoluted bellows.[6]

- All persons and entities in the State of Texas who purchased, other than for resale, during the previous four (4) years[7] any of the Washing Machines[8] that were equipped with a convoluted bellows.[9]

Dkt. No. 158, at 1-2.

---

[4] Plaintiffs filed their Initial Complaint on March 5, 2008. <u>See</u> Dkt. No. 1. Consequently, the proposed Classes include persons who purchased their Washing Machines on or after March 5, 2004.
[5] Washing Machines are defined as Frigidaire® Front Load Washing Machines, including but not limited to Models BTF2140E, BLTF2940E, FTF2140E, FWFB9100E, FWFB9200E, GLTF2940E, LTF2140E, and LTF2940E. Dkt. No. 112, at 6 n.2.
[6] Defendant's documents use the term "bellows" interchangeably with "gasket" and "boot." Dkt. No. 112, at 6 n.3. For simplicity, the Court uses the term "bellows."
[7] <u>See supra</u> note 4.
[8] <u>See supra</u> note 5.
[9] <u>See supra</u> note 6.

AO 72A
(Rev. 8/82)

Plaintiffs' motion is fully briefed.  See Dkt. Nos. 158, 164, 167.  The Court heard oral argument regarding the motion on August 2, 2012.  See Dkt. No. 184.  The Court has considered the parties' many supplemental filings.  See Dkt. Nos. 174, 175, 182, 183, 185, 186, 187, 188, 189, 190, 191, 194, 195, 196, 197, 198, 199.

## III. LEGAL STANDARD

### A. Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550 (2011) (citation and internal quotation marks omitted). "[T]o justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  Id. (citation and internal quotation marks omitted).

### 1.   Rule 23

Rule 23(a) of the Federal Rules of Civil Procedure ("Rules") contains four (4) prerequisites to class certification.  These are:

8

(1)   "[T]he class is so numerous that
      joinder of all members is
      impracticable";

(2)   "[Q]uestions of law or fact common to
      the class" must exist;

(3)   "[T]he claims or defenses of the
      representative parties [must be]
      typical of the claims or defenses of
      the class"; and

(4)   "[T]he representative parties will
      fairly and adequately protect the
      interests of the class."

Fed. R. Civ. P. 23(a).  These prerequisites are designed to

"limit the class claims to those fairly encompassed by the named

plaintiff's claims."  Dukes, 131 S.Ct. at 2550 (citation and

internal quotation marks omitted).

     Rule 23 also requires that the plaintiff satisfy one of the

prerequisites contained in Rule 23(b).  Plaintiffs assert that

their claims satisfy the prerequisites of Rule 23(b)(3).  See

Dkt. No. 158, at 14-24.  Rule 23(b)(3) requires the court to

find "that the questions of law or fact common to class members

predominate over any questions affecting only individual

members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the

controversy."  "[M]atters pertinent to these findings include:

          (A)   the class members' interests in
                individually controlling the

                            9

prosecution or defense of separate
actions;

(B)  the extent and nature of any litigation
concerning the controversy already
begun by or against class members;

(C)  the desirability or undesirability of
concentrating the litigation of the
claims in the particular forum; and

(D)  the likely difficulties in managing a
class action."

Fed. R. Civ. P. 23(b)(3).

2.  Burden

"Rule 23 does not set forth a mere pleading standard."

Dukes, 131 S.Ct. at 2551. "A party seeking class certification

must affirmatively demonstrate his compliance with the Rule—

that is, he must be prepared to prove that there are in fact

sufficiently numerous parties, common questions of law or fact,

etc." Id.

3.  Court's Analysis

Before certifying a class, the court must conduct a

"rigorous analysis" to determine whether the party seeking

certification meets Rule 23's prerequisites.  Vega v. T-Mobile

USA, Inc., 564 F.3d 1256, 1266 (11th Cir. 2009) (citations omitted).

"When adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." Mazur v. eBay Inc., 257 F.R.D. 563, 566 (N.D. Cal. 2009) (citing Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)).  However, analysis of Rule 23 "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Dukes, 131 S.Ct. at 2551-52 (citation and internal quotation marks omitted).  Thus, the court's analysis "will entail some overlap with the merits of the plaintiff's underlying claim." Id. at 2551.  Consequently, the court may look beyond the pleadings to determine whether the requirements of Rule 23 are met.  Vega, 564 F.3d at 1266.

In making its assessment, the Court "may not resolve the merits of [the] case." Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co., 458 F. App'x 793, 794 (11th Cir. 2012) (citing Heffner v. Blue Cross & Blue Shield of Ala., Inc., 443 F.3d 1330, 1337 (11th Cir. 2006)).  However, a "rigorous

11

analysis" of a party's class certification motion often requires some consideration of the merits. <u>See</u> <u>Dukes</u>, 131 S.Ct. at 2551 ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . ." (citation omitted)); <u>Coastal Neurology</u>, 458 F. App'x at 794 ("Although a district court may not resolve the merits of a case when ruling on a Rule 23 motion, . . . the court may, and sometimes must, inquire into the merits in order to determine whether the requirements of Rule 23 have been satisfied . . . ." (internal citations omitted)).

The court resolves doubts related to class certification in favor of certifying the class.[10]  <u>Rosen v. J.M. Auto Inc.</u>, 270

-----------------------

[10] Defendant asserts that doubts regarding class certification must be resolved in its favor. <u>See</u> Dkt. No. 164, at 10 (quoting <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 321 (3d Cir. 2008) [hereinafter <u>Hydrogen Peroxide</u>]). First, Defendant misquotes the cited case law. <u>Compare</u> Dkt. No. 164, at 10 ("[A] court should not grant 'certification in the face of doubt as to whether a Rule 23 requirement has been met[.]'" (quoting <u>Hydrogen Peroxide</u>, 552 F.3d at 321)) <u>with</u> <u>Hydrogen Peroxide</u>, 552 F.3d at 321 ("[The Third Circuit case, <u>Eisenberg v. Gagnon</u>, 766 F.2d 770 (3d Cir. 1985),] should not be understood to encourage certification in the face of doubt as to whether a Rule 23 requirement has been met."). Second, the cited case law does not support Defendant's argument. In <u>Hydrogen Peroxide</u>, the Third Circuit noted that Rule 23, as amended in 2003, invited the district court to "reject tentative decisions on certification and encourage development of a record sufficient for informed analysis." <u>Hydrogen Peroxide</u>, 552 F.3d at 321. The Third Circuit stated, "Actual, not presumed, conformance with the Rule 23 requirements remains necessary." <u>Id.</u> at 322 (editorial marks and internal quotation marks omitted). In that case, the district court failed to consider some of the defendant's evidence in ruling on the parties' class certification motion. <u>Id.</u>  Because the lower court failed to rigorously

AO 72A
(Rev. 8/82)

F.R.D. 675, 678 (S.D. Fla. 2009); <u>Buford v. H & R Block, Inc.,</u> 168 F.R.D. 340, 346 (S.D. Ga. 1996) <u>aff'd sub nom.</u> <u>Jones v. H & R Block Tax Servs.,</u> 117 F.3d 1433 (11th Cir. 1997).

## IV.  DISCUSSION

Plaintiffs seek class certification on all of their claims. For the reasons stated below, Plaintiffs' motion for class certification on all claims is **GRANTED.**

## A. Class Definition

"Before considering the requirements of Rule 23, the Court must determine whether a class exists that can adequately be defined." <u>Bennett v. Hayes Robertson Grp., Inc.,</u> 880 F. Supp. 2d 1270, 1278 (S.D. Fla. 2012).  The class definition need not contain "an overly strict degree of certainty." <u>Id.</u> (quoting <u>Singer v. AT & T Corp.,</u> 185 F.R.D. 681, 685 (S.D. Fla. 1998)). However, it should not be overly broad, vague, or difficult to

---

consider the evidence, the Third Circuit vacated the lower court's class certification order. <u>Id.</u> at 325. Such a result is consistent with the legal standard articulated by this Court. Importantly, the court in <u>Hydrogen Peroxide</u> did not state that doubts regarding class certification must be resolved in the defendant's favor. Rather, the court stated that "the court should not suppress 'doubt' as to whether a Rule 23 requirement is met." <u>Id.</u> at 321.

apply.  See id.; Rosen v. J.M. Auto Inc., 270 F.R.D. 675, 678 (S.D. Fla. 2009).

"Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct." Mims v. Stewart Title Guar. Co., 590 F.3d 298, 308 (5th Cir. 2009); see also DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1198 (10th Cir. 2010) ("[A] class will often include persons who have not been injured by the defendant's conduct . . . ." (quoting Kohen v. Pac. Inv. Mgmt. Co., 571 F.3d 672, 677 (7th Cir. 2009))).  The "possibility or indeed inevitability" of certifying a class that contains persons who have not been injured "does not preclude class certification." Devaughn, 594 F.3d at 1198 (quoting Kohen, 571 F.3d at 677).  However, "if the [class] definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad." Kohen, 571 F.3d at 677.

1.   Ascertainability

The proposed Classes are defined as:

- All persons and entities in the states of California and Texas who purchased, other than for resale, during

14

the previous four (4) years any of the Washing
Machines[11] that were equipped with a convoluted
bellows.

Dkt. No. 158, at 1-2.  This definition sufficiently defines the
Classes to be certified.  Moreover, the proposed class
definitions provide the Court with practical standards to
determine membership in the Classes.

Defendant asserts that the proposed Classes are not
ascertainable.  Dkt. No. 164, at 11 n.6.  Specifically,
Defendant asserts that it is not "'administratively feasible' to
identify class membership because there was a one-year period
during which [D]efendant sold both washers with convoluted
bellows and washers without [convoluted bellows]."  Id.
Defendant asserts that the Court would need to undertake the
"painstaking task of inspecting each machine purchased" to
determine whether an alleged purchaser falls within the Class
definitions.  Id.

Notwithstanding Defendant's assertion, the proposed Classes
are ascertainable.  Defendant is a highly sophisticated and
modernized company.  It maintains records of model numbers and

---

[11] Washing Machines are defined in note 5.

15

serial numbers of each Washing Machine built.  See Dkt. Nos. 106, at Ex. 14; 164, at Ex. 8.  It also maintains databases of customer information.  See Dkt. No. 164, at Ex. 2 ¶ 9. Moreover, Defendant's staff engineer stated that Defendant could use "dates of manufacture to determine the bellow[s] type for some machines."  See Dkt. No. 167, at 11 (citing Dkt. No. 106, at Ex. 11 ¶ 9).  Thus, serial numbers and build information could be used to identify which Machines contain the bellows design at issue.  Consequently, the proposed Classes are ascertainable.

2.  Breadth

The proposed class definitions are appropriately tailored to the primary issues in the case.  In particular, the class definitions only include purchasers of Washing Machines with the allegedly defective bellows design.  Consequently, the proposed Classes cannot sweep in people who have not been injured by the alleged design defect.

Defendant asserts that the proposed Classes are overbroad. Specifically, Defendant argues that the proposed Classes are "overbroad because they include all washing machine purchasers in California and Texas regardless of whether they have

16

experienced a problem with their machines" and regardless of whether they "sought warranty service."  Dkt. No. 164, at 10-11. Defendant also argues that that the proposed Classes are overbroad because "they include persons who purchased but no longer own" a Washing Machine.  Id. at 14.

The proposed Classes are not overbroad.  Plaintiffs' claim is that all Washing Machines sold with the convoluted bellows were defective.  Consequently, a class defined to include only the purchasers of such Washing Machines is well-tailored to the allegations in Plaintiffs' Complaint.  Moreover, as discussed infra, the putative class members' requests for warranty service are likely irrelevant to many of Plaintiffs' claims.  Thus, the proposed class members' actions in that regard do not render the Classes overbroad.  Finally, Plaintiffs allege that the design defect injured the putative class members from the time of purchase.  Thus, whether the putative class members still own their Washing Machines does not alter the validity of the claims and does not render the class definition overbroad.

Consequently, the proposed class definitions are appropriately fitted to allegations in Plaintiffs' Complaint and to those persons whom could have been injured by Defendant's alleged conduct.

17

B. Numerosity

Rule 23(a)(1) requires "the class [to be] so numerous that joinder of all members is impracticable." "Impracticable" is not synonymous with "impossible." In re Checking Account Overdraft Litig., 275 F.R.D. 666, 671 (S.D. Fla. 2011); In re Theragenics Corp. Sec. Litig., 205 F.R.D. 687, 694 (N.D. Ga. 2002). Impracticability only requires that it be difficult or inconvenient to join all members of the class. In re Checking Account Overdraft Litig., 275 F.R.D. at 671. Factors such as class size and geographic location of the would-be class members are relevant to the consideration of practicality. Id.

"[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (citation and internal quotation marks omitted).

The parties agree that the numerosity requirement is satisfied. See Dkt. Nos. 158, 164.[12] After independently considering the prospective numerosity of the putative class

---

[12] Defendant's counsel also acknowledged this concession in oral argument.

18

members, this Court concurs.  See Valley Drug Co. v. Geneva
Pharm., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003) (noting the
court's independent obligation to examine elements of Rule 23).
Specifically, evidence shows at least twenty-five (25) putative
class members in the proposed Texas class and at least twenty-
eight (28) putative class members in the proposed California
class.  Dkt. No. 158, at 6-7.  The Court notes that these
numbers likely grossly underestimate the potential size of each
proposed class.  In particular, Defendant received more than
1,500 product registration cards from Texas buyers and more than
1,700 product registration cards from California buyers during
the relevant time period.  Id. at 6.  Moreover, Defendant
distributed more than 10,000 washing machines in each state
during the relevant time period.  Id. at 5.

Consequently, the likely number of class members on these
facts easily exceeds the minimum threshold recognized by the
Eleventh Circuit.  More importantly, the number of potential
class members and their likely geographic distribution
throughout each state make joinder of the proposed class members
impractical.  Consequently, Plaintiffs satisfied Rule 23(a)(1)'s
numerosity requirement.

19

C. Commonality

Rule 23(a)(2) requires that "questions of law or fact common to the class" exist.  Notably, Rule 23(a)(2) "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs."  Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D. Fla. 1996).  However, "a class action must involve issues that are susceptible to class-wide proof."  Cooper v. Southern Co., 390 F.3d 695, 714 (11th Cir. 2004), overruled in part on other grounds by Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Dukes, 131 S.Ct. at 2551 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  "The commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members."  Morefield v. NoteWorld, LLC, Nos. 1:10-CV-00117, 1:11-CV-00029, 2012 WL 1355573, at *2 (S.D. Ga. Apr. 18, 2012) (citation and internal quotation and editorial marks omitted); see also Roper v. Consurve, Inc., 578 F.2d 1106, 1113 (5th Cir. 1978).

20

Class members' claims must depend upon a common contention that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551. "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. (citation and internal quotation marks omitted).

Plaintiffs' claims turn upon the theory that the Washing Machines' design was defective. Some of the common issues in this case are:

- Whether the Washing Machines possessed a common defect in their bellows design;

- Whether the design defect in the Washing Machines proximately caused—or inevitably would cause—biofilm, mold, or mildew to grow;

- Whether Defendant adequately warned consumers about the propensity for biofilm, mold, or mildew growth; and

21

- Whether Defendant knew about the Washing Machines' defect at the point of sale.

These issues are capable of classwide resolution. For example, either the Washing Machines contained a common defect— in the form of the bellows design—or they did not. And, either the design defect rendered the Washing Machines substantially certain to fail (or unfit for their ordinary purpose) or it did not. Importantly, these issues are central to the validity of each class member's legal claims. Thus, they will generate common answers that are likely to advance the litigation and drive the resolution of the lawsuit. See id. Consequently, Plaintiffs satisfied Rule 23(a)(2)'s commonality requirement.

D. Typicality

Rule 23(a)(3) requires "the claims . . . of the representative parties [to be] typical of the claims . . . of the class."[13]  Representative "claims need not be identical to

_____

[13] Typicality and commonality are similar, but distinct, requirements. See Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1275 (11th Cir. 2009). "[C]ommonality refers to the group characteristics of the class as a whole . . . ." Id. (citation omitted). "[T]ypicality refers to the individual characteristics of the named plaintiff in relation to the class." Id. (citation omitted). Together, the "commonality and typicality requirements . . . serve as guideposts for determining whether under the

satisfy the typicality requirement." Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012). Rather, "there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" Id. (quoting Prado-Steiman v. Bush, 221 F.3d 1266, 1278-79 (11th Cir. 2000)). "This nexus exists 'if the claims . . . of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" Id. (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)).

Plaintiffs' claims are typical of the putative class members' claims. First, all claims are based on the same legal theories: breach of express and implied contract, violation of the Magnuson-Moss Warranty Act, and violation of specific California and Texas deceptive trade practices and unfair competition statutes. Second, the claims arise from the same

---

particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982)) (internal quotation marks omitted), overruled in part on other grounds by Ash v. Tyson Foods, Inc., 546 U.S. 454, 457-58 (2006).

event, pattern, or practice.  That is, all claims are based on the alleged sale of Washing Machines with the same, known design defect, the same warranties, and the same failure to inform buyers of the design flaw or its consequences.

Defendant asserts that Plaintiffs' claims are subject to unique defenses.  Dkt. No. 164, at 38.  Specifically, Defendant asserts that Plaintiff Vogler experienced problems with his Washing Machine after the warranty period expired.  Id. at 39. Defendant also asserts that Plaintiff Brown admits that Defendant offered to pay for the parts and labor for a replacement bellows or provide a rebate on the purchase of a comparable washing machine.  Id. at 39 (quoting Dkt. No. 164-10, at 9).

Defendant's assertions do not render Plaintiffs' claims atypical.  Specifically, the presence of unique defenses does not necessarily defeat typicality.  See, e.g., Wahl v. Midland Credit Mgmt., Inc., 243 F.R.D. 291, 298 (N.D. Ill. 2007) (finding that "the presence of a unique defense against [the plaintiff did] not destroy typicality"); In re Checking Account Overdraft Litig., 286 F.R.D. 645, 656 (S.D. Fla. 2012) (finding that the "defenses asserted against the [p]laintiffs [did not] threaten to become the focus of th[e] litigation" and that the

24

plaintiff's claims were typical of the class). Moreover, if an affirmative defense against the class representatives becomes a distraction from the larger issues affecting the proposed class as a whole, a new class representative can take the class representative's place. See, e.g., Wahl, 243 F.R.D. at 298 n.4; Nelson v. IPALCO Enters., Inc., No. IP02-477CHK, 2003 WL 23101792, at *6 n.2 (S.D. Ind. Sept. 30, 2003) ("If the problem of [individual defenses] arises later in a case, it is more likely to affect the issue of adequate representation, which could be solved by merely having a new class representative step forward . . . .").

The claims of Plaintiffs and the purported class members concern the same alleged conduct by Defendant, allege the same harm, and arise from the same legal theories. See, e.g., Morefield, 2012 WL 1355573, at *2; Kornberg, 741 F.2d at 1337 (finding typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Thus, Plaintiffs' claims are typical of those of the proposed class. Consequently, Plaintiffs satisfied Rule 23(a)(3)'s typicality requirement.

25

### E. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The "adequacy of representation" analysis "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." Id.

"[M]inor conflicts alone will not defeat a party's claim to class certification . . . ." Id. The conflict must be "fundamental," such that it relates to the specific issues in controversy. Id. (citation omitted). "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." Id. "In such a situation, the named representatives cannot vigorously prosecute the interests of the class through qualified counsel because their interests are actually or potentially antagonistic to, or in conflict with, the interests

26

AO 72A
(Rev. 8/82)

and objectives of other class members." Id. (citation and
internal quotation marks omitted).

Neither Plaintiffs nor their counsel have interests
contrary or antagonistic to those of the absent class members.
The central issues in this case—the existence, unlawfulness,
and effect of the alleged design defect in Defendant's product—
are common to the claims of Plaintiffs and the purported class
members. Like each absent class member, Plaintiffs have strong
interests in proving the alleged design defect and its inherent
effects, establishing Defendant's allegedly unlawful conduct,
demonstrating the impact of the design defect, and obtaining
redress. Plaintiffs thus share the interests of, and can
adequately represent, the proposed Classes.

Defendant asserts that Plaintiff Vogler experienced
problems with his Washing Machine after the warranty period
expired. Dkt. No. 164, at 39. Defendant also asserts that
Plaintiff Brown admits that Defendant offered to pay for the
parts and labor for a replacement bellows or provide a rebate on
the purchase of a comparable washing machine. Id. at 39
(quoting Dkt. No. 164-10, at 9). Defendant's assertions do not
render Plaintiffs inadequate class representatives.
Specifically, such minor variations in facts specifically

27

related to the proposed class representatives are not

"fundamental." The critical issues related to the alleged

design defect, the effects of that defect, and Defendant's

alleged deception, fraud, and breach of warranties remain.

Those issues will drive the litigation. Consequently,

Plaintiffs are well-positioned to vigorously prosecute the

proposed class action.

Plaintiffs' counsel "are qualified, experienced, and

generally able to conduct the proposed litigation." See Belton

v. Georgia, No. 1:10-CV-0583-RWS, 2011 WL 925565, at *5 (N.D.

Ga. Mar. 14, 2011) (quoting Griffin v. Carlin, 755 F.2d 1516,

1533 (11th Cir. 1985)). The law firms seeking to represent the

class include qualified and experienced lawyers. The Court has

reviewed the firms' resumes setting forth their experience and

expertise in class actions. See Dkt. No. 159-1, at Exs. R, S,

T.

The Court is satisfied that the lead Plaintiffs and the

firms seeking appointment as class counsel will properly and

adequately prosecute the proposed class action. Consequently,

Plaintiffs satisfied Rule 23(a)(4)'s adequacy requirement.

28

## F. Predominance

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Thus, a plaintiff must affirmatively establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 701 (N.D. Ga. 2012) (alteration in original) (quoting Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997)). "It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." Klay v. Humana, 382 F.3d 1241, 1254 (11th Cir. 2004) (citation and editorial marks omitted), abrogated in part on other grounds by Bridge v. Phx. Bond & Indem. Co., 553 U.S. 639 (2008).

The court must "consider the claims, defenses, relevant facts, and applicable substantive law."[14] DWFII Corp. v. State Farm Mut. Auto. Ins. Co., 469 F. App'x 762, 765 (11th Cir. 2012)

---

[14] This Court previously determined that the law of each individual Plaintiff's home state governs Plaintiffs' claims. See Dkt. No. 124, at 7-8.

(per curiam) (quoting Klay, 382 F.3d at 1254) (internal
quotation marks omitted).  "Whether an issue predominates can
only be determined after considering what value the resolution
of the class-wide issue will have in each class member's
underlying cause of action."  Klay, 382 F.3d at 1255 (quoting
Rutstein v. Avis Rent-A-Car Sys., 211 F.3d 1228, 1234 (11th Cir.
2000)).

     "Common issues of fact and law predominate if they have a
direct impact on every class member's effort to establish
liability and on every class member's entitlement to injunctive
and monetary relief."  Id. (citation, internal quotation marks,
and editorial marks omitted).  "Where, after adjudication of the
classwide issues, plaintiffs must still introduce a great deal
of individualized proof or argue a number of individualized
legal points to establish most or all of the elements of their
individual claims, such claims are not suitable for class
certification under Rule 23(b)(3)."  Id.; see also DWFII Corp.,
469 F. App'x at 765.

     The former Fifth Circuit provided a method for evaluating
predominance.  See Alabama v. Blue Bird Body Co., 573 F.2d 309,
319-29 (5th Cir. 1978).  The Eleventh Circuit adopted that
approach.  See Klay, 382 F.3d at 1255; see also Vega v. T-Mobile

30

USA, Inc., 564 F.3d 1256, 1270 (11th Cir. 2009).  Under that test, "if common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class should not have a substantial effect on the substance or quantity of evidence offered.'"  Klay, 382 F.3d at 1255 (quoting Blue Bird Body, 573 F.2d at 322) (editorial marks omitted).  Thus, "the addition of more plaintiffs to a class [that necessitates] the presentation of significant amounts of new evidence, . . . strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important."  Id. (citing Blue Bird Body, 573 F.2d at 322).  "If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate."  Id.

     To determine whether questions of law or fact common to class members predominate over questions affecting individual members, the court separately analyzes each of Plaintiffs' claims.  See Blades v. Monsanto Co., 400 F.3d 562, 569 (8th Cir. 2005) (noting that determining whether predominance exists "necessarily requires an examination of the underlying elements necessary to establish liability for plaintiffs' claims" (citing

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001))).

   . 1.   Express Warranty

   Plaintiff Brown asserts that Defendant breached its express warranty in violation of California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), California Civil Code § 1790 et seq. Dkt. Nos. 66 ¶¶ 50-53; 124, at 21 n.6.

   "A plaintiff pursuing an action under the Song-Beverly Act has the burden to prove the following elements: (1) the product had a defect or nonconformity covered by the express warranty; (2) the product was [either] presented to an authorized representative of the manufacturer for repair [or the manufacturer or an appropriate service and repair facility was notified of the defect or nonconformity]; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts."[15]

---

[15] Defendant proposes a different formulation of the elements required under the Song-Beverly Act's express warranty provision. See Dkt. No. 164, at 27-28 (citing Kearney v. Hyundai Motor Co., No. SACV 09-1298 DOC (MLGx), 2010 WL 9093204, at *6 (C.D. Cal. June 4, 2010), for the proposition that a plaintiff "must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty that proximately caused plaintiff's injury"). However, the court in Kearney based its rule on case law that

AO 72A
(Rev. 8/82)

Gonzalez v. Drew Indus. Inc., 750 F. Supp. 2d 1061, 1073 (C.D. Cal. 2007) (citing Robertson v. Fleetwood Travel Trailers of Cal., Inc., 50 Cal. Rptr. 3d 731 (Cal. Ct. App. 2006)); Cal. Civ. Code § 1793.2.

Common issues exist with respect to the express warranty's terms and coverage, the presence of a universal design defect, and causation. Specifically, Plaintiffs assert that every Washing Machine included the same express warranty. Moreover, Plaintiffs assert that every Washing Machine was defectively designed and that the inherent defect reduced the value of their Washing Machines by inevitably causing mold and mildew problems.

---

dealt with a superseded version of the California UCC——a version which explicitly required "reliance." See Kearney, 2010 WL 9093204, at *6 (citing Williams v. Beechnut Nutrition Corp., 229 Cal. Rptr. 605, 608 (Cal. Ct. App. 1986)). Plaintiff Brown brought his claim pursuant to the current version of California's Civil Code. Consequently, the Court is not persuaded that the rule applied by the court in Kearney applies in this case, if at all.

The Court cautions the parties to be precise in distinguishing between the Song-Beverly Act and the California UCC (including superseded versions of these statutory provision). The Court recognizes that these statutes are complimentary. See, e.g., Cal. Civ. Code § 1790.3 (stating that "[t]he remedies provided . . . are cumulative and shall not be construed as restricting any remedy that is otherwise available"). However, these provisions are not interchangeable. In fact, where provisions of the California UCC conflict with the rights guaranteed to buyers under the provisions of the Song-Beverly Act, the provisions of the Song-Beverly Act prevail. See id. Consequently, the parties would do well to be particular when citing to California case law and, where appropriate to rely on cases that analyze the California UCC, to provide a reason for why that case law provides a useful analogy to the Court.

33

Finally, Plaintiffs assert that the express warranty covered the design defect.

Defendant argues that individual issues exist because each putative class member was required to provide pre-suit notice and an opportunity to cure the alleged defect.[16]   See Dkt. No. 164, at 23-24.   However, whether each class member was required to give pre-suit notice and whether Defendant's prior knowledge of the design defect satisfied or nullified any alleged notice requirement are questions that are common to the proposed class. Thus, the individualized factual issue regarding the notice provided by each putative class member is reached only if the common answers to inquiries regarding the legal requirements for notice reveal that individualized notice and opportunity to cure were required from each putative class member.

Consequently, the following common issues exist:

(1) whether the Washing Machine's bellows had a design defect,

_____

[16] The Court notes that much of the cited case law does not involve the application of California law in general or California's Song-Beverly Act in particular.  For example, the court in Stearns v. Select Comfort Retail Corp. applied notice requirements from the Uniform Commercial Code.  No. 08-2746 JF (PVT), 2009 WL 4723366, at *6-7 (N.D. Cal. Dec. 4, 2009); see also Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010) (ostensibly applying the Song-Beverly Act, but citing the California Commercial Code for the proposition that a plaintiff "must plead that she provided the defendant with pre-suit notice of the breach" (citing Cal. Com. Code § 2607)).  However, Plaintiff Brown alleges violations of the Song-Beverly Act.  Thus, the notice requirements of that Act control.

AO 72A
(Rev. 8/82)

(2) whether the defect reduced the value of the Washing Machine, (3) whether the express warranty covered the design defect at issue in this case, (4) whether each class member was required to give pre-suit notice, and (5) whether Defendant's prior knowledge of the design defect satisfied or nullified any alleged notice requirement.  See, e.g., Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1173-74 (9th Cir. 2010) (finding similar predominant issues when certifying a class action for breach of warranty related to an allegedly defective car part); Daffin v. Ford Motor Co., 458 F.3d 549, 554 (6th Cir. 2006) (same); Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 536 (C.D. Cal. 2012) (applying California substantive law and federal procedural law and finding common issues predominated where a "claim [would] succeed if plaintiffs [were] able at trial to show that all class vehicles [were] substantially certain to manifest the [design defects] alleged in the complaint").  These issues predominate the factual inquiries into (1) the notice provided by each individual putative class member (if such an inquiry is required at all) and (2) Defendant's efforts to cure, and efficacy in curing, the defect after notice was provided.

35

2.   Implied Warranty of Merchantability

Plaintiffs assert that Defendant breached its implied warranty of merchantability in violation of California and Texas law.  Dkt. No. 66 ¶¶ 54-61.  Plaintiff Brown's claim is brought pursuant to the Song-Beverly Act.  See Dkt. No. 124, at 21 n.6. Plaintiff Vogler's claim is brought pursuant to the Texas Business and Commercial Code § 2.314.[17]

    a. California Law

The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  Cal. Civ. Code § 1792.  Goods are merchantable if they:

> (1)   Pass without objection in the trade under
>         the contract description[;]
>
> (2)   Are fit for the ordinary purposes for which
>         such goods are used[;]

---

[17] Plaintiffs' Complaint and filings do not clarify the statutory provision under which Plaintiff Vogler brings his claim.  However, the Complaint states that the claim is brought pursuant to state law for an alleged "breach of the implied warranty of merchantability."  See Dkt. No. 66, at 19.  Consequently, the Court assumes that Plaintiffs' Complaint refers to Texas's statutory provision, Tex. Bus. & Com. Code § 2.314, Implied Warranty: Merchantability; Usage of Trade.

36

(3)   Are adequately contained, packaged, and labeled[; and]

(4)   Conform to the promises or affirmations of fact made on the container or label.

Id. § 1791.1(a).

The implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer." Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 852 (N.D. Cal. 2012) (quoting Am. Suzuki Motor Corp. v. Superior Court, 44 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1995)). "Instead, it provides for a minimum level of quality." Id. (quoting Am. Suzuki Motor Corp., 44 Cal. Rptr. 2d at 529). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." Id. (quoting Mexia v. Rinker Boat Co., 95 Cal. Rptr. 3d 285, 289 (Cal. Ct. App. 2009)); see also Keegan v. Am. Honda Motor Co., Inc., 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012) ("[A] plaintiff claiming breach of an implied warranty of merchantability must show that the product did not possess even the most basic degree of fitness for ordinary use." (citation and internal quotation marks omitted)). "Such fitness is shown if the product is in safe condition and substantially free of defects . . . ." Elias, 903 F. Supp. 2d at 852 (alteration in original) (quoting Mexia, 95 Cal. Rptr. 3d

37

at 289). The implied warranty is "coextensive in duration with an express warranty which accompanies the consumer goods." Cal. Civ. Code § 1791.1(c) (noting certain limitations to the duration of the implied warranty).

Common issues exist with respect to whether the Washing Machines had a design defect, whether that design defect rendered the Washing Machines unmerchantable, whether the alleged latent defect necessarily breached Defendant's implied warranty of merchantability during the warranty period, and whether the defect reduced the value of the Washing Machines. Specifically, Plaintiffs assert that every Washing Machine included the same implied warranty. Moreover, Plaintiffs assert that every Washing Machine was defectively designed and that the inherent defect rendered the machines unmerchantable by inevitably causing mold and mildew problems. Plaintiffs also argue that the design defect reduced the value of their Washing Machines. Finally, Plaintiffs assert that the implied warranty covered the design defect.

Defendant argues that individual issues exist because each putative class member must prove that his machine was unmerchantable during the warranty period. See Dkt. No. 164, at 17-20. In particular, Defendant argues that individualized

38

facts are required to show the particular "problem" with each machine, whether and how that problem affected the putative class member's laundry, and whether the putative class member continued to use the machine.[18]  See id. at 18.  However, a common issue exists that will likely defeat many, if not all, of the individualized factual issues asserted by Defendant. Specifically, whether an implied warranty claim is defeated when a latent defect existed during the warranty period but was discovered after the warranty period is an issue common to all putative class members.  See, e.g., Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 924 (C.D. Cal. 2010) (citing California case law for the rule that "so long as a latent defect existed within the one-year period, its subsequent discovery beyond that time [does] not defeat an implied warranty claim").  Thus, the individualized factual issues regarding the effect of the alleged design defect on each putative class

---

[18] Defendant cites case law in support of its argument.  See Dkt. No. 164, at 19.  However, the cited cases deal with products with "rare malfunctions," where the vast majority of consumers did not experience problems with the products.  Id.  Plaintiff contends that all Washing Machines sold with the convoluted bellows design were defective.  Thus, unlike a case where a factual inquiry into each user's experience is required, this case has many common issues.  For example, the scope and duration of the implied warranty and the cause of the alleged defect are issues that are likely to yield answers that are common to the proposed Classes.

member's laundry and the extent to which the purchasers continued to use the defective Machines are reached only if the common answers to inquiries regarding the legal requirements for discovery of a latent design defect reveal that individualized discovery within the warranty period is required for each putative class member.

Defendant also argues that individual issues exist as to causation. See Dkt. No. 164, at 20-22. However, Plaintiffs assert that every Washing Machine was defectively designed and that the inherent defect reduced the value of the Washing Machines by inevitably causing mold and mildew problems, thus making the machines unfit for their ordinary purpose. Whether Plaintiffs are correct is a common issue that will produce a common answer.

Consequently, the following common issues exist: (1) whether the Washing Machine's bellows had a design defect, (2) whether that design defect rendered the Washing Machines unmerchantable, (3) whether an implied warranty is breached where a latent defect exists during the warranty period but is discovered after the warranty period expires, (4) whether the implied warranty of merchantability covered the design defect at issue in this case, and (5) whether the latent defect reduced

40

the value of the Washing Machines.  These issues predominate the factual inquiries—assuming such inquiries are even required—concerning (1) the types of individualized problems that each putative class member encountered with his machine, (2) when those problems arose, and (3) whether the putative class members continued to use their machines.

### b. Texas Law

Plaintiff Vogler's breach of implied warranty claim is brought pursuant to Texas Business and Commercial Code § 2.314.[19] "To prevail on a claim of breach of implied warranty of merchantability, a plaintiff must show . . . (1) that the merchant sold goods to the plaintiff; (2) that the goods were unmerchantable, that is, unfit for ordinary purposes; (3) that the plaintiff notified the defendant of the breach; . . . (4) that the plaintiff suffered injury;" and (5) that the warranty's breach proximately caused the loss sustained.  Hartford v. Lyndon-DFS Warranty Servs., Inc., No. 01-08-00398-CV, 2010 WL 2220443, at *11 (Tex. App. May 28, 2010) (citing Tex. Bus. & Com. Code § 2.314, cmt. 3; Hyundai Motor Co. v. Rodriguez, 995

_____

[19] See supra note 17.

41

S.W.2d 661, 667-68 (Tex. 1999); and Roventini v. Ocular Scis., Inc., 111 S.W.3d 719, 723 (Tex. App. 2003)); Tex. Bus. & Com. Code § 2.314 cmt. 13 (noting that the plaintiff must show that (1) the warranty existed, (2) the warranty was broken, and (3) the warranty's breach proximately caused the loss sustained); see also Everett v. TK-Taito, L.L.C., 178 S.W.3d 844, 853 (Tex. App. 2005). The plaintiff must also prove "that the goods were defective at the time they left the manufacturer's or seller's possession." McManus v. Fleetwood Enters., Inc., 320 F.3d 545, 552 (5th Cir. 2003) (quoting Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 444 (Tex. 1989)).

Common issues exist with respect to whether Defendant sold the Washing Machines, whether those machines had a design defect at the time of sale, whether that design defect rendered the Washing Machines unmerchantable, whether the alleged latent defect necessarily breached Defendant's implied warranty of merchantability during the warranty period, and whether the defect reduced the value of the Washing Machines. Specifically, it is undisputed that Defendant's Washing Machines were equipped with a bellows. Whether the bellows' design rendered the Washing Machines defective at the time that those machines left Defendant's possession is a common question. Critically, it is

42

a question whose answer will not vary among class members because the inquiry is focused on the time that the Washing Machines left Defendant's possession.

Defendant argues that individual issues exist because each putative class member must prove that the member's Washing Machine failed during the warranty period.  See Dkt. No. 164, at 17-19.  However, Plaintiffs assert that the Washing Machines were defectively designed and unfit for their ordinary purposes at the time of sale.  Thus, Plaintiffs assert that Defendant breached the warranty at the moment that each class member purchased his machine.  Plaintiffs' theory is susceptible to common answers.  Either the machines were delivered in breach of the implied warranty of merchantability or they were not.  Thus, no individualized inquiries into when the breach occurred are necessary.

Defendant also asserts that the cause and measure of damages will vary among class members.  See id. at 17-22.  However, this argument misapprehends the nature of the implied warranty of merchantability cause of action.  This is a contract cause of action.  See McManus, 320 F.3d at 552.  Specifically, Plaintiffs seek the difference in the value of the Washing Machine delivered and the value of the Washing Machine as

43

AO 72A
(Rev. 8/82)

warranted.  See Tex. Bus. & Com. Code § 2.714(b).  Thus, "the
damages sought by [Plaintiffs] are not rooted in the alleged
defect of the product as such, but in the fact that they did not
receive the benefit of their bargain."  McManus, 320 F.3d at 552
(quoting Coghlan v. Wellcraft Marine Corp., 240 F.3d 449, 455
n.4 (5th Cir. 2001)).  Consequently, the appropriate questions
are whether the Washing Machines were defective with respect to
a washing machine's "ordinary purpose" and, if so, whether the
defect prevented purchasers from receiving the benefit of their
bargains.  Tex. Bus. & Com. Code § 2.314.  Whether any class
member suffered an injury other than the alleged bargain-based
harm does not defeat Plaintiffs' claim.  See McManus, 320 F.3d
at 552.

Defendant argues that individual issues exist because each
putative class member must prove that the member notified
Defendant of the alleged breach of warranty.  See Dkt. No. 164,
at 22-26.  However, Defendant provided no case law supporting
its argument that each putative class member must provide such
notice.  Moreover, whether classwide or individualized notice is
required is a common question with a common answer.  Also,
whether Defendant's prior knowledge of the design defect
satisfied or nullified any alleged notice requirement is a

44

question that is common to the proposed class.  Thus, the individualized factual issue regarding the notice provided by each putative class member is reached only if the common answers to inquiries regarding the legal requirements for notice reveal that individualized notice was required from each putative class member.

Consequently, the following common issues exist: (1) whether Defendant sold the Washing Machines, (2) whether the Washing Machines' bellows had a design defect at the time of sale, (3) whether that design defect rendered the Washing Machines unmerchantable, (4) whether the defect prevented the purchasers from receiving the benefit of their bargain, (5) whether each class member was required to give pre-suit notice, and (6) whether Defendant's prior knowledge of the design defect satisfied or nullified any alleged notice requirement.  These issues predominate the factual inquiries into the notice provided by each individual putative class member (if such an inquiry is required at all).

3.   Magnuson-Moss Act

Plaintiffs assert that Defendant violated the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act ("Magnuson-

45

Moss Act"), 15 U.S.C. § 2301 et seq. Dkt. No. 66 ¶¶ 68-76. The court looks to the substantive law of the applicable state to determine whether Magnuson-Moss Act claims are viable. See, e.g., Johnson v. Jaguar Cars, Inc., No. CIV.A.1:05CV3161-RLV, 2006 WL 1627125, at *2 (N.D. Ga. June 6, 2006). Thus, for the reasons stated above, common issues predominate any individualized issues with respect to Plaintiffs' Magnuson-Moss Act claims.

   4.   California Unfair Competition Law

   Plaintiff Brown asserts that Defendant violated California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq. Dkt. No. 66 ¶¶ 77-84.

   The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. In a prior Order, this Court found that Plaintiff Brown's claims could proceed under the following prongs of the UCL: unfair business practices or fraudulent business practices. See Dkt. No. 124, at 41.

46

a. Unfair Business Practice

Plaintiff Brown alleges a UCL cause of action based on unfair business practices.  "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (citation omitted); see also Daugherty v. Am. Honda Motor Co., Inc., 51 Cal. Rptr. 3d 118, 129 (Cal. Ct. App. 2006).

The elements of an unfair business practices claim are susceptible to classwide proof.[20]  In particular, common issues exist as to whether a consumer is substantially injured when the consumer's Washing Machine soils, rather than cleans, clothing and whether a consumer is injured by a household appliance that cultures mold, mildew, and foul odors.  Common issues also exist as to whether there is any countervailing benefit to consumers or competition and whether the consumers could reasonably have avoided their alleged injuries.  Because each element of the

_____

[20] Defendant appears to agree.  See generally Dkt. No. 164, at 31-34 (arguing that individualized evidence is required to prove a violation of the UCL's fraudulent business practices prong while failing to argue that such evidence is required to prove a violation of the UCL's unfair business practices prong).

unfair business practices claim is susceptible to classwide proof, such common issues necessarily predominate.

> b. Fraudulent Business Practice

Plaintiff Brown alleges a UCL cause of action based on fraudulent business practices. "A fraudulent business practice is one which is likely to deceive the public." McKell v. Wash. Mut., Inc., 49 Cal. Rptr. 3d 227, 239 (Cal. Ct. App. 2006) (citing Mass. Mut. Life Ins. Co. v. Superior Court, 119 Cal. Rptr. 2d 190, 195 (Cal. Ct. App. 2002)).

A UCL fraud claim can "be based on representations to the public which are untrue." Id. It can be based on representations that "may be accurate on some level, but will nonetheless tend to mislead or deceive." Id. at 239 (citation omitted).

"[A] UCL fraud claim requires no proof that the plaintiff was actually deceived." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025-26 (9th Cir. 2008) (citing Daugherty v. Am. Honda Motor Co., 51 Cal. Rptr. 3d 118, 128-29 (Cal. Ct. App. 2006)). "Instead, the plaintiff must produce evidence showing 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" Id. at 1026

(quoting <u>Brockey v. Moore</u>, 131 Cal. Rptr. 2d 746, 756 (Cal. Ct. App. 2003)). Thus, a plaintiff must allege with specificity that the defendant's alleged misrepresentations: "1) were relied upon by the named plaintiffs; 2) were material; 3) influenced the named plaintiffs' decisions to purchase the defective Machines; and 4) were likely to deceive members of the public." <u>Tietsworth v. Sears</u>, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (citing <u>In re Tobacco II Cases</u>, 207 P.3d 20, 39-41 (Ca. 2009) [hereinafter "<u>Tobacco II</u>"]).

The elements of reliance and influence relate to Plaintiff Brown and, therefore, do not require classwide proof. <u>McAdams v. Monier, Inc.</u>, 105 Cal. Rptr. 3d 704, 717 (Cal. Ct. App. 2010) (noting that "relief under the UCL . . . is available without individualized proof of deception, reliance and injury" (citation omitted)). The remaining elements are susceptible to classwide proof. In particular, common issues exist as to (1) what Defendant said or did not say to consumers, (2) whether Defendant's alleged omissions regarding the design were material, and (3) whether Defendant's alleged omissions were likely to deceive the public. <u>See, e.g.</u>, <u>Ewert v. eBay, Inc.</u>, Nos. C-07-02198 RMW, C-07-04487 RMW, 2010 WL 4269259, at *8 (N.D. Cal. Oct. 25, 2010) ("Because materiality is determined

49

based on an objective, reasonable person standard, the issue of whether the alleged misrepresentations were material can be addressed with class-wide evidence."); but see Fairbanks v. Farmers New World Life Ins. Co., 128 Cal. Rptr. 3d 888, 903-04 (Cal. Ct. App. 2011) (finding no common issue regarding whether the public was "likely to be deceived" where the defendants' alleged misrepresentations were not uniform).

Defendant argues that individual issues exist because each putative class member must prove causation and reliance. See Dkt. No. 164, at 31-34. However, "California courts have repeatedly held that relief under the UCL including restitution is available without individualized proof of deception, reliance and injury." McAdams, 105 Cal. Rptr. 3d at 717 (quoting Tobacco II, 207 P.3d at 39) (editorial marks omitted); see also Pfizer Inc. v. Superior Court, 105 Cal. Rptr. 3d 795, 803 (Cal. Ct. App. 2010) (quoting Tobacco II, 207 P.3d at 35) ("[R]elief under the UCL is available without individualized proof of deception, reliance and injury."); In re Steroid Hormone Prod. Cases, 104 Cal. Rptr. 3d 329, 336 (Cal. Ct. App. 2010) ("[W]hile a named plaintiff in a UCL class action now must show that he or she suffered injury in fact and lost money or property as a result of the unfair competition, once the named plaintiff meets that

50

burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members.").

In support of its position, Defendant directed this Court to many California cases.  See Dkt. No. 164, at 32-33.  However, such cases are readily distinguishable.  In particular, the courts that did not certify class actions for lack of predominant common issues did so because consumers were exposed to non-uniform business practices and different types of information.  See, e.g., Pfizer Inc., 105 Cal. Rptr. 3d at 803 (finding that more than half of various types of mouthwash at issue "never included any label that made any [misrepresentation]"); Kaldenbach v. Mut. of Omaha Life Ins. Co., 100 Cal. Rptr. 3d 637, 652 (Cal. Ct. App. 2009) (noting that the trial court could properly conclude that "there was no showing of uniform conduct likely to mislead the entire class" because the claim involved actions of many different insurance agents with different training and materials); Cohen v. DIRECTV, Inc., 101 Cal. Rptr. 3d 37, 48 (Cal. Ct. App. 2009) (distinguishing facts from Tobacco II by noting that the UCL did not "authorize an award for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an

51

allegedly wrongful business practice"). Other courts failed to certify the class because they rejected the plaintiffs' theories of recovery. See, e.g., Campion v. Old Republic Home Prot. Co., 272 F.R.D. 517, 533 (S.D. Cal. 2011) (finding the plaintiff's theory of recover "too speculative to entitle [the class members] to restitution"); In re Vioxx Class Cases, 103 Cal. Rptr. 3d 83, 101 (Cal. Ct. App. 2009) (holding that the plaintiff's proposed drug comparator was invalid).

Because individualized proof of reliance and injury is not required for non-representative class members, the issues of reliance and injury do not foreclose Plaintiff Brown's UCL class action. See, e.g., Yamada v. Nobel Biocare Holding AG, 275 F.R.D. 573, 578 (C.D. Cal. 2011) ("The . . . the alleged omissions and affirmative misrepresentations were consistently made and are therefore common to all members of the putative class."); Wiener v. Dannon Co., 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("For a class action, an inference of reliance arises as to the entire class only if the material misrepresentations were made to all class members."); Negrete v. Allianz Life Ins. Co. of N. Am., 238 F.R.D. 482, 492 (C.D. Cal. 2006) (holding that the court could reasonably assume that no rational class member would have purchased the product had he known of the alleged

AO 72A
(Rev. 8/82)

misrepresentation).  Accordingly, Plaintiff Brown may prove with generalized evidence that Defendant's conduct was "likely to deceive" purchasers of the Washing Machines.  Consequently, common issues predominate individualized issues in Plaintiff Brown's unfair business practices claim.

  5. Texas Deceptive Trade Practices-Consumer Protection Act

  Plaintiff Vogler asserts that Defendant violated Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41 et seq.  Dkt. No. 66 ¶¶ 85-92.

  The DTPA "contains a list, commonly referred to as the DTPA 'laundry list,' of actions declared to constitute false, misleading, or deceptive acts."  Checker Bag Co. v. Washington, 27 S.W.3d 625, 634 (Tex. App. 2000) (citing Tex. Bus. & Com. Code § 17.46(b) and Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 385-86 (Tex. 2000)).  To succeed in a DTPA laundry-list suit, the plaintiff must show that "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  Satterfield v. Vess, No. 2-04-287-CV, 2005 WL 1838978, at *4 (Tex. App. Aug. 4, 2005) (citing Tex. Bus. & Com. Code § 17.50(a)(1) and Doe v. Boys Clubs of Greater

AO 72A
(Rev. 8/82)

Dall., 907 S.W.2d 472, 478 (Tex. 1995)). "A DTPA claim can also arise from the breach of express or implied warranties or from any unconscionable action or course of action." Duke v. Caterpillar, Inc., No. 01-03-00840-CV, 2005 WL 568071, at *4 (Tex. App. Mar. 10, 2005) (citing Tex. Bus. & Com. Code §§ 17.50(a)(2)-(3)).

Reliance on the alleged misrepresentation is also an element of a DTPA cause of action. Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 693 (Tex. 2002). The plaintiff's burden to prove reliance "is in no way altered by the assertion of claims on behalf of a class." Id. However, a class representative can produce classwide evidence of reliance. Id. at 693-94.

From October 2002, when the Supreme Court of Texas delivered its decision in Schein, until July 2008, no Texas court found evidence of classwide reliance for a DTPA cause of action. See Tex. S. Rentals, Inc. v. Gomez, 267 S.W.3d 228, 237 (Tex. App. 2008). This Court is aware of no case delivered after July 2008 where a Texas court found evidence of classwide reliance for such a claim. However, Plaintiffs directed the

54

Court to <u>Southwestern Bell Telephone Co. v. Marketing on Hold</u>
<u>Inc.</u>, 308 S.W.3d 909 (Tex. 2010).[21]   <u>See</u> Dkt. No. 167, at 27-30.
In <u>Southwestern Bell</u>, a plaintiff attempted to certify a class
for claims involving, <u>inter alia</u>, breach of express warranty
under Texas law.   308 S.W.3d at 914.   Breach of express warranty
claims, like DTPA claims, require the plaintiff to prove
reliance.   <u>See</u> <u>Schein</u>, 102 S.W.3d at 686 n.23 (applying Texas
law and noting that reliance is an element of a breach of
express warranty claim to the extent that the affirmation or
promise "becomes part of the basis of the bargain").   In
<u>Southwestern Bell</u>, the defendant phone company allegedly
overrepresented municipal fees on invoices to its customers.
308 S.W.3d at 914.   Those customers paid the amount shown as due
and owing on their invoices.   <u>Id.</u>   Consequently, the customers
overpaid.   <u>Id.</u>   The Texas Supreme Court held that the trial
court did not abuse its discretion by certifying the class claim

─────────────────────

[21] Plaintiffs also directed the Court to <u>Lubin v. Farmers Group, Inc.</u>, No. 03-
03-00374-CV, 2009 WL 3682602 (Tex. App. Nov. 6, 2009).  However, that case
involved alleged violations of Texas's Insurance Code.  There, the court
upheld the lower court's certification of a settlement class because the
"predominate issue . . . [was] whether [the defendant] overcharged its
policyholders, not whether [the defendant] made individual
misrepresentations."  <u>Lubin</u>, 2009 WL 3682602, at *21.  Thus, the decision in
<u>Lubin</u> is unhelpful to rendering a decision here, as this case does not
involve the Texas Insurance Code or a settlement class.

55

for breach of warranty. Id. at 922. Specifically, the Texas Supreme Court held that the trial court did not abuse its discretion in finding that the necessary element of reliance could be demonstrated by classwide proof because "evidence of reliance [could] be demonstrated from the records of [the defendant] by showing that the members of the putative class paid the bill after it was presented." Id.

Similar classwide proof can show reliance here. In Southwestern Bell, class members could show their reliance on the invoices' numerical statements through classwide proof that customers paid the amounts shown on their bills. See id. at 922-23. Similarly, the putative class members here can show their reliance on Defendant's failure to disclose the Washing Machines' alleged design defect and the inevitable consequences of that defect through classwide proof that they purchased Machines to clean and freshen their clothes rather than to soil and odorize them. See, e.g., Tracker Marine, L.P. v. Ogle, 108 S.W.3d 349, 360 (Tex. App. 2003) (finding that a boat manufacturer's failure to disclose in marketing brochures that its boats were "unsuited for use in a maritime environment" was equivalent to affirmatively stating "these boats are no good in water" and noting that pleading such a claim "eliminate[d] most

56

fact questions on reliance" because "every buyer relied on the omission, as no one would buy [a boat] with [knowledge that it was not suitable for water]").

Although each proposed class member made individualized assessments for deciding to purchase a machine, each class member presumably relied on the fact that Defendant provided Washing Machines suited for cleaning and freshening clothing. Thus, each class member's reliance on Defendant's alleged misrepresentations or omissions is demonstrable through classwide proof.  Furthermore, commons issues exist as to the other elements of Plaintiffs' DTPA claim.  Specifically, whether the class members were consumers and whether Defendant made a misrepresentation that caused the class member's injuries can be demonstrated by classwide proof.

Because each element of Plaintiff Vogler's DPTA claim is susceptible to classwide proof, such common issues necessarily predominate.

6.   Affirmative Defenses

Defendant asserts that Plaintiffs' claims are subject to "individualized inquiries regarding a number of affirmative defenses."  Dkt. No. 164, at 36.  Defendant further asserts that

AO 72A
(Rev. 8/82)

its affirmative defenses may differ with respect to each putative class member.  Id. at 36-37 (listing, for example, product misuse and accord and satisfaction).  The Court is not persuaded by Defendant's arguments for several reasons.

First, unique affirmative defenses rarely predominate where a common claim is established.  See In re Checking Account Overdraft Litig., 286 F.R.D. 645, 656 (S.D. Fla. 2012).

Second, Defendant's brief lists many possible affirmative defenses; however, such defenses are not raised in Defendant's Answer.  Compare Dkt. No. 164, at 36 (listing accord and satisfaction, waiver, and contributory and comparative negligence) with Dkt. No. 127, at 8-9 (failing to list such defenses).

Third, Defendant failed to explain how any affirmative defense predominates the common issues.  As noted earlier in this Order, many defenses raised in Defendant's Answer are common to the proposed Class.  For example, standing, notice, and privity are defenses likely subject to common evidence and answers.  Also, Defendant's defense that the putative class members misused the Washing Machines has classwide application.  Specifically, whether the putative class members can show that the Machines were defective and that such defect led to the

58

problems of which Plaintiffs complain are common issues. Defendant may be able to rebut Plaintiffs' evidence on these issues by introducing evidence of the effect of product misuse. However, such defense goes to the common issue of causation. Thus, it is consistent with—and does not undermine—the purposes of certifying a class action.

Finally, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. 2003), aff'd sub nom., Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) (citing Supreme Court, Second Circuit, and Fifth Circuit cases). Thus, although Defendant's allegation that each purported class member failed to mitigate the member's own damages weighs against class certification, that issue does not preclude class certification where many other common issues exists and predominate the potentially individualized issue of mitigation of damages.

Thus, the affirmative defenses pled by Defendant do not predominate the common issues related to Plaintiffs' claims.

7.   Conclusion

For the multiple reasons stated above, common questions and answers predominate individualized questions and answers for each of Plaintiffs' claims.  Accordingly, the Court finds that each of Plaintiffs' claims meet the predominance requirement of Rule 23(b)(3).[22]

G. Superiority

Rule 23(b)(3) requires "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  "In making its determination [regarding superiority], the Court must find that difficulties in management will not render th[e] action improper for certification."  In re Theragenics Corp. Sec. Litig., 205 F.R.D. 687, 697 (N.D. Ga. 2002) (citation omitted).  Class certification "cannot be denied because the number of potential class members makes the proceeding complex or difficult."  Id.

---

[22] If the course of litigation reveals that individualized inquiries into notice, Defendant's representations to each class member, or product use are required, the Court has the flexibility to create subclasses or to decertify the class altogether.  See Fed. R. Civ. P. 23(c)(1); Keilholtz v. Lennox Hearth Prods. Inc., 268 F.R.D. 330, 342 (N.D. Cal. 2010); see also Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1273 (11th Cir. 2000) (noting that Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at any time prior to a decision on the merits).

60

(citation omitted).  Difficulties in management of a case become significant "only if they make the class action a less 'fair and efficient' method of adjudication than other available techniques."  Id. at 697-98 (citation omitted).

Here, class treatment is superior to other available methods for the fair and efficient adjudication of the claims before the Court.  A single, coordinated proceeding is superior to hundreds of discrete and disjointed suits addressing the same facts and legal issues.  "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."  In re Checking Account Overdraft Litig., 275 F.R.D. 666, 679 (S.D. Fla. 2011) (quoting Kennedy v. Tallant, 710 F.2d 711, 718 (11th Cir. 1983)); see also In re Checking Account Overdraft Litig., 275 F.R.D. at 679 ("[W]here, as here, 'it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" (quoting Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 339 (1980))).

Moreover, the claims of each class member in this case are so small that it would cost them much more to litigate an

61

individual case than they could ever hope to recover in damages. Thus, there is no reason to believe that the putative class members have a particular interest in controlling their own litigation.

Furthermore, concentrating the litigation in this forum is logical and desirable.  Finally, the proposed Classes appear to be manageable, as they each contain discreet legal issues involving individual state and federal law.

For the multiple reasons stated above, class treatment is superior to other available methods for the fair and efficient adjudication of this controversy.  Accordingly, the Court finds that Plaintiffs satisfied the superiority requirement of Rule 23(b)(3).

**V.    CONCLUSION**

For the reasons stated above, Plaintiffs' claims satisfy Rule 23(a)'s prerequisites and Rule 23(b)(3)'s requirements. Consequently, Plaintiffs' Motion for Class Certification is **GRANTED**.  Dkt. No. 158.

The Court **CERTIFIES** the following Classes:

AO 72A
(Rev. 8/82)

- <u>California Class</u>:  All persons and entities who purchased, other than for resale, after March 5, 2004[23] and while in the State of California, any Frigidaire® Front Load Washing Machine, including but not limited to Models BTF2140E, BLTF2940E, FTF2140E, FWFB9100E, FWFB9200E, GLTF2940E, LTF2140E, and LTF2940E, equipped with a convoluted bellows.

- <u>Texas Class</u>:  All persons and entities who purchased, other than for resale, after March 5, 2004[24] and while in the State of Texas, any Frigidaire® Front Load Washing Machine, including but not limited to Models BTF2140E, BLTF2940E, FTF2140E, FWFB9100E, FWFB9200E, GLTF2940E, LTF2140E, and LTF2940E, equipped with a convoluted bellows.

The claims of the California Class are the one-year express warranty claim (Count 2), the implied warranty of merchantability claim (Count 3), the Magnuson-Moss Warranty Act claim (Count 5), and claims under the UCL's unfair and fraudulent business practices prongs (Count 6).  The claims of

---

[23] <u>See</u> <u>supra</u> note 4.
[24] <u>See</u> <u>supra</u> note 4.

63

the Texas Class are the implied warranty of merchantability claim (Count 3), the Magnuson-Moss Warranty Act claim (Count 5), and the Texas Deceptive Trade Practices-Consumer Protection Act claims (Count 7).

The Court **APPOINTS** Plaintiff Brown to be the representative of the California Class. The Court **APPOINTS** Plaintiff Vogler to be the representative of the Texas Class.

After considering Rule 23(g)'s factors, the Court **APPOINTS** the following firms as class counsel: Bell & Brigham; McCallum, Hoaglund, Cook & Irby, LLP; and Wexler Wallace LLP.

The Court **DIRECTS** class counsel to provide the best notice practicable to class members as required by Rule 23(c)(2)(B). A proposed notice setting forth the content and delivery method of said notice shall be filed with the Court within thirty (30) days of today's date.

**SO ORDERED**, this 11TH day of October, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

64